# Exhibit 34

*Kapitel IX, 3.4.5.*

### 3.4.5. Deliktsværneting

Sager, hvor der påstås straf, erstatning eller oprejsning i anledning af rets-
krænkelser, kan anlægges ved retten på det sted, hvor retskrænkelsen er
foregået (skadesstedet), jf. Rpl § 243. Reglen hindrer således ikke, at sag-
søger i stedet anlægger sagen ved sagsøgtes hjemting.

Hvis handlingen, der forårsagede skaden, blev foretaget i en anden rets-
kreds end den retskreds, hvor skadens virkning indtrådte, må det formentlig
antages, at sagsøgeren har valgfrihed mellem sagsanlæg ved handlingsste-
det og sagsanlæg ved virkningsstedet, jf. U 2011.2772 V og U 2014.254 Ø,
dvs. at begge steder anses for skadessteder i relation til Rpl § 243.[36] Rpl §
243 gælder kun skadessteder i Danmark. Om sagsanlæg, hvor skadestedet
er i et andet EU-land (eller i et EFTA-land), se DF art. 7, nr. 2.

Rpl § 243 omfatter sager om krav på erstatning uden kontrakt, uanset om
ansvarsgrundlaget er culpa eller objektivt ansvar.[37] Reglen omfatter således
ikke blot traditionelle sager om erstatning uden for kontrakt, men tillige ek-
sempelvis sager om produktansvar, sager om ansvar for motorkøretøjer og
hunde samt sager om injurier.

Det må formentlig antages, at Rpl § 243 ikke finder anvendelse ved er-
statning i kontrakt, dvs. i tilfælde hvor kravet udspringer af en kontrakt.
Dette gælder, uanset om kravet har »deliktskarakter«.[38] En forsikringstager,
der har tegnet en ulykkesforsikring, kan således ikke sagsøge forsikrings-
selskabet på ulykkesstedet, jf. U 1990.8/2 Ø, hvor en ejendomsejer ikke
kunne anlægge sag efter Rpl § 243 mod sit tyveriforsikringsselskab. På
tilsvarende vis kan en bygherre ikke anlægge sag på det sted, hvor ejen-
dommen er beliggende, mod en hovedentreprenør, der har forvoldt skade på
bygherrens ejendom. Hvis en bygherre sagsøger en underentreprenør, der ik-
ke står i kontraktforhold til bygherren, men alene til en hovedentreprenør,
er grundlaget for bygherrens krav afgørende for, om kravet omfattes af Rpl
§ 243. Er grundlaget for kravet, at bygherren er indtrådt i hovedentreprenø-
rens kontraktmæssige rettigheder mod dennes underentreprenør, må sagen
falde uden for Rpl § 243. Er forholdet derimod det, at bygherren sagsøger
underentreprenøren for en skade, som underentreprenøren har forvoldt på
bygherrens ejendom, må sagen derimod anses for omfattet af Rpl § 243, jf.
herved U 1986.922 H, hvor en sag om produktansvar for skader på nogle af
sagsøgers kedler kunne anlægges efter Rpl § 243 mod en underentreprenør,
der ikke stod i kontraktforhold til sagsøgeren.

---

36. Jf. nærmere Peter Nørgaard U 2014 B s. 300 f. Om spørgsmålet se endvidere Bern-
    hard Gomard og Michael Kistrup: Civilprocessen, s. 133-134, og Kommenteret Rets-
    plejelov, Bind I, s. 535.
37. Jf. Bernhard Gomard og Michael Kistrup: Civilprocessen, s. 133.
38. Jf. Sag C-548/12 (Marc Brogsitter) om den tilsvarende regel i DF art. 7, nr. 2.

214

### *4.4. Sager der efter sin art ikke omfattes af DF*

DF omfatter som hovedregel alle civile sager, men der gælder visse undta-
gelser til dette udgangspunkt, jf. afsnit 2. Eksempelvis omfattes omstødel-
sessager, der anlægges af et konkursbo (eller i forbindelse med anden insol-
vensbehandling), ikke af DF. Dette medfører, at det – ligesom i tilfælde
hvor en sagsøgt ikke har bopæl i EU (eller i EFTA) – som altovervejende
hovedregel alene er Rpl, der afgør, om sagen kan anlægges i Danmark.
Sagen kan således anlægges her, hvis der er værneting i Danmark efter de i
afsnit 5 omtalte regler, uanset den sagsøgte har bopæl i EU/EFTA. Dette
medfører bl.a., at sagen kan anlægges her efter Rpl § 246, stk. 2-3, der in-
deholder regler, som muliggør sagsanlæg i Danmark alene på grundlag af,
at den sagsøgte midlertidigt opholder sig her (opholdsværneting) eller har
aktiver (gods) her (godsværneting). Eksempelvis kan et dansk konkursbo
anlægge omstødelsessag i Danmark mod den begunstigede (sagsøgte), hvis
denne opholder sig her eller har aktiver her, jf. nærmere afsnit 5.4 om Rpl §
246, stk. 2-3. Domme i sager, der efter sin art ikke omfattes af DF, kan i
sagens natur ikke kræves fuldbyrdet i andre EU-lande (eller i EFTA) efter
reglerne i DF.

> I sager, der efter sin art omfattes af DF, kan der ikke anlægges sag i Danmark mod
> en fysisk eller juridisk person med bopæl i EU/EFTA på grundlag af reglerne om
> opholds- og godsværneting, jf. DF art. 5, stk. 2. Se eksempelvis U 2000.493/1 Ø,
> hvor der ikke kunne anlægges sag her på grundlag af godsværneting mod et sel-
> skab med svensk hjemsted.

## 5. Sager, hvor sagsøgte hverken har dansk hjemting eller bopæl i EU/EFTA

### *5.1. Hvilke personer har hverken dansk hjemting eller bopæl i EU/EFTA*

Sager, der anlægges mod en sagsøgt, der hverken har dansk hjemting eller
bopæl i noget sted i EU (inklusive Danmark) eller i EFTA, er behandlet
særskilt i dette afsnit, dels fordi der i disse sager ikke kan blive tale om
sagsanlæg ved den sagsøgtes danske hjemting, dels fordi disse sager som
altovervejende hovedregel ikke reguleres af DF, jf. nærmere afsnit 5.2 om DF
art. 6. Spørgsmålet, om en sådan sag kan anlægges i Danmark (og i givet fald
i hvilken retskreds), reguleres som udgangspunkt alene af Rpl § 246, jf. nær-
mere afsnit 5.3-5.4.

Gruppen af personer, der hverken har dansk hjemting eller bopæl i et
EU-/EFTA-land, omfatter:

238

a) Fysiske personer, der har bopæl uden for EU og EFTA, samt fysiske personer uden bopæl nogetsteds, der opholder sig et kendt sted i udlandet.

Endvidere omfattes fysiske personer, der hverken har nogen bopæl eller kendt opholdssted, hvis såvel den sidst kendte bopæl som det sidst kendte opholdssted var i udlandet.

b) Juridiske personer, der har hovedkontor uden for EU/EFTA, og som hverken har hjemsted eller sin hovedvirksomhed noget sted i EU (inklusiv Danmark) eller i et EFTA-land. Dette kunne eksempelvis være et selskab, der har hovedkontor, hjemsted og hovedvirksomhed i USA, uanset om eksempelvis et medlem af direktionen har bopæl i Danmark.

Endvidere omfattes juridiske personer, der slet ikke har noget hovedkontor, og som hverken har hjemsted eller sin hovedvirksomhed noget sted i EU eller EFTA, hvis ingen af den juridiske persons direktions- og bestyrelsesmedlemmer har bopæl i Danmark.

Om afgrænsningen af, hvornår en person har dansk hjemting henholdsvis bopæl i et EU-/EFTA-land, henvises i øvrigt til afsnit 3.1.

## *5.2. Generelt om sagsanlæg ved danske domstole mod sagsøgte der hverken har dansk hjemting eller bopæl i EU/EFTA*

Adgangen til at anlægge sag i Danmark mod en sagsøgt, der hverken har dansk hjemting eller bopæl i EU/EFTA, reguleres som udgangspunkt af Rpl § 246. Rpl § 246 angiver, hvilken dansk retskreds, sagen kan anlægges i, og regulerer dermed implicit spørgsmålet, om sagen overhovedet kan anlægges her. Rpl § 246 tager med andre ord både stilling til, om sagen kan anlægges her og i givet fald i hvilken retskreds. Som nævnt i afsnit 5.1 finder DF som udgangspunkt ikke anvendelse i sager, hvor den sagsøgte har bopæl uden for EU/EFTA. Undtagelse hertil gælder dog for forbruger-, ansættelses- og enekompetencesager samt for visse forsikringssager, jf. DF art. 6, stk. 2, og DF art. 11, stk. 2, hvor reglerne i DF således supplerer Rpl § 246. Er der tale om en sag, hvor de danske domstolene har enekompetence efter DF art. 24, kan sagen alene anlægges i Danmark, uanset om den sagsøgte har bopæl uden for EU/EFTA.

Rpl § 246, stk. 1, angiver en række primære værneting, der som nævnt for visse sagstypers vedkommende suppleres af reglerne i DF. Har sagsøgte et eller flere primære værneting i Danmark, kan sagsøgeren frit vælge hvilken af disse, som sagsøgeren vil benytte. De 7 primære værneting er virksomhedsværnetinget, ejendomsværnetinget, opfyldelsesværnetinget, deliktsværnetinget, forbrugerværnetinget, ansættelsesværnetinget og forsikringsværne-

*Chapter IX, 3.4.5.*

### 3.4.5. Torts Venue

Suits, which involve a penalty, restitution or redress as a result of a law violation, may be brought to the court in the place where the law violation took place (place of injury), cf. Rpl § 243. Thus, the regulation does not prevent the plaintiff instead from litigating in the defendant's home venue.

If the action, which caused the damage, was carried out in another jurisdiction where the effect of the injury occurred, presumably the plaintiff may have a free choice between litigation in the place of the action and the place of its effect, cf. U 2011.2772 V and U 2014.254 Ø, i.e. both places are considered places of injury in relation to Rpl §243.[36] Rpl § 243 applies only to places of injury within Denmark. For litigation, where the place of injury is in another EU country (or in an EFTA country), see DF art. 7, no. 2.

Rpl § 243 covers suits of claim for restitution without a contract, regardless whether the basis of liability is culpa or objective liability.[37] Thus, the regulation includes not only traditional suits of restitution outside of a contract, but, for example, suits concerning product liability, suits concerning motor vehicles and dogs, and suits concerning injuries as well.

It may be presumed that Rpl § 243 would not have an application for restitution in a contract, that is, in a suit where the claim arises from a contract. This applies regardless whether the claim has a "tort character".[38] Thus, a policyholder who has taken out accident insurance may not sue the insurance company at the place of the accident, cf. U 1990.8/2 Ø, where a property owner would not be able to bring a suit against his theft insurance company according to Rpl § 243. Correspondingly, a building owner may not bring a suit at the place where the property is located, against a main contractor, who has caused damage to the building owner's property. If a building owner sues a subcontractor who is not in a contractual relation with the building owner, but only to the main contractor, the foundation for the building owner's claim is decisive for whether the claim is covered by Rpl § 243. If the foundation for the claim is that the building owner is joined in the main contractor's contractual rights against his subcontractor, the suit may fall outside of Rpl § 243. However, if the relationship is such that the building owner sues the subcontractor for damage that the subcontractor caused to the building owner's property, the suit may be considered covered by Rpl § 243, cf. U 1986.922 H, where a suit concerning product liability for damage to some of the plaintiff's boilers could be brought, according to Rpl § 243, against a subcontractor who was not in a contractual relation with the plaintiff.

---

36. Cf. further Peter Nørgaard U 2014 B p. 300f. On this question see further Berhard Gomard and Michael Kistrup: Civil Process, p. 133-134, and Civil Procedure Law Commentary, Vol. 1, p. 535.
37. Cf. Berhard Gomard and Michael Kistrup: Civil Process, p. 133.
38. Cf. Suit C-548/12 (Marc Brogsitter) concerning the corresponding regulation in DF art. 7 no. 2.

214

*Chapter IX.4.4.*

### 4.4 Suits that according to their nature are not covered by DF

As a general rule DF covers all civil suits, but there are certain exceptions to this starting point, cf. section 2. For example, reversal suits that are brought by a bankruptcy estate (or in connection with other insolvency proceedings) are not covered by DF. This implies that – as in the case where a defendant does not have a place of residence in the EU (or EFTA) – as an overwhelmingly general rule it is Rpl alone that decides if the suit can be litigated in Denmark. The suit can then be litigated here if there is a venue in Denmark according to the regulations mentioned in section 5 regardless of whether the defendant has a place of residence in Denmark. This implies, for instance, that the suit may be litigated here according to Rpl § 246 art. 2-3, which contains regulations that enable litigation in Denmark solely on the basis that the defendant resides here temporarily (stay venue) or has assets (property) here (property venue). For example, a Danish bankruptcy estate may litigate a reversal suit in Denmark against the defendant if the latter is staying here or has assets here, cf. further section 5.4 of Rpl § 246 art. 2-3. Judgements in suits which are not by their nature covered by DF may not be required, by their nature, to be enforced in other EU countries (or in EFTA) according to the regulations in DF.

> In suits that according to their nature are covered by DF, as a suit may not be litigated in Denmark against a physical person or a legal person with a place of residence in the EU/EFTA on the basis of regulations concerning residence and property venue, cf. DF art. 5, para. 2. See, for instance, U 2000.493/1 Ø, where a suit could not be brought here on the basis of a property venue against a company with Swedish headquarters.

5. Suits where a defendant neither has a Danish home venue nor a place of residence in the EU/EFTA

### 5.1 What persons have neither a Danish home venue nor a place of residence in the EU/EFTA

Suits brought against a defendant who neither has a Danish home venue nor a place of residence anywhere in the EU (including Denmark) or in the EFTA, are treated specifically in this section, partly because in these suits it is not a matter of litigation at the defendant's Danish home venue, partly because these suits, as an overwhelmingly general rule, are not covered by DF, cf. further section 5.2 concerning DF art. 6. The question of whether such suits can be litigated in Denmark (and in what jurisdiction in the given suit), is regulated as a starting point only by Rpl § 246, cf. further section 5.3-5.4.

Th group of people who have neither a Danish home venue or place of residence in an EU/EFTA country includes:

a)  Physical persons who have a place of residence outside the EU and EFTA and physical persons without a place of residence anywhere, who reside in a known place in a foreign country.

   Furthermore, it covers physical persons who have neither any place of residence nor known place of tenancy, if the last known place of residence as well as the last known place of tenancy was in a foreign country.

b)  Legal persons who have a main office outside the EU and EFTA and neither have a headquarters nor chief activity anywhere in the EU (including Denmark) or in an EFTA country. This could be, for example, a company that had a main office, headquarters and main business in the USA regardless of whether a member of the board has a place of residence in Denmark.

   Furthermore, it covers legal persons who do not have any main office at all and neither have headquarters nor its business anywhere in the EU of EFTA, if none of the legal person's board members are domiciled in Denmark.

Refer further in section 3.1 concerning the demarcation of when a person has a Danish home venue or a place of residence in an EU and EFTA country.

## 5.2   *General remarks concerning litigation in Danish courts against defendants who neither have a Danish home venue nor place of residence in the EU/EFTA*

Access to bringing a suit in Denmark against a defendant who neither has a Danish home venue nor place of residence in the EU/EFTA is regulated as a starting point by Rpl § 246. Rpl § 246 states which Danish jurisdiction the suit may be litigated and thereby regulates implicitly the question whether the suit can be possibly litigated here. In other words, Rpl § 246 takes a position both on whether the suit can be litigated here and in the given suit in what jurisdiction. As mentioned in section 5.1, DF does not apply as a starting point in suits where the defendant has a place of residence outside the EU/EFTA. An exception to this, however, concerns consumer, employment and exclusive competence suits as well as certain insurance suits, cf. DF art. 6, para. 2 and DF art. 11, para. 2, where the regulations in DF complement Rpl § 246. If it is a matter of a suit where the Danish courts have exclusive competence according to DF art. 24, the suit may only be litigated in Denmark regardless of whether the defendant has a place of residence outside the EU/EFTA.

   Rpl § 246, art. 1 indicates a series of primary venues that for certain types of suits in question are complemented by the regulations in DF. If the defendant has one or several primary venues in Denmark, the plaintiff my freely choose which of these the plaintiff will use. The 7 primary venues are company venues, property venues, performance venues, tort venues, consumer venues, employment venues and insurance venues [sentence cut-off, bottom of page]



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK    )
)       ss:
COUNTY of NEW YORK    )

### ***CERTIFICATE OF ACCURACY***

This is to certify that the attached document, "'Den Civile Retspleje' (Civil Procedure) by Ulrik Rammeskow Bang-Pederse et al., 4th ed. at 214 238-39" - originally written in Danish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 4/14/2022

Heather Cameron
Projects Manager
Consortra Translations

Sworn to and signed before ME
This 14th day of April, 2022

Notary Public



JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your
legal
translation
partner