# Exhibit 49

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

*November 2012, GlobalDenmark Translations*

# Securities Trading Act etc.[1]

Consolidating Act no. 855 of 17 August 2012

---

This is an Act to consolidate the Securities Trading etc. Act, cf. Consolidating Act no. 883 of 9 August 2011 with amendments consequential upon section 2, nos. 1-13, 20-30, 32-37, 39-47 and 49-53 of Act no. 155 of 28 February 2012, section 3 of Act no. 273 of 27 March 2012 and section 3 of Act no. 477 of 30 May 2012.

The amendments consequential upon section 2, nos. 14-19, 31, 38 and 48 of Act no. 155 of 28 February 2012 have not been included in this Consolidating Act as the amendments have not yet entered into force. The date of entry into force of the amendments shall be laid down by the Minister for Business and Growth, cf. section 11(4) of Act no. 155 of 28 February 2012.

## I
## Introductory provisions
## Part 1
*Securities trading*

**1.-(1)** This Act shall apply to securities trading.

**(2)** Securities trading shall mean

---

[1] This Act shall include provisions implementing Directive 98/26 of 19 May 1998 of the European Parliament and of the Council on settlement finality in payment and securities settlement systems, Official Journal 1998, no. L 166, p. 45 (the Finality Directive), parts of Directive 2000/64/EC of 7 November 2000, Official Journal 2000, no. L 290, p. 27 amending Council Directives 85/611/EEC, 92/49/EEC, 92/96/EEC and 93/22/EEC (exchange of information with third countries), parts off Directives 79/279/EEC, 80/390/EEC, 82/121/EEC and 88/627/EEC which are now consolidated in Directive 2001/34/EC of 28 May 2001 of the European Parliament and of the Council on the admission of securities to official stock exchange listing and on information to be published on those securities, Official Journal 2001, no. L 184, p. 1 (Consolidated Admission and Reporting Directive), Directive 2002/47/EC of 14 June 2002 of the European Parliament and of the Council on financial collateral arrangements, Official Journal 2002, no. L 168, p. 43 (Collateral Directive), Directive 2003/6/EC of 28 January 2003 of the European Parliament and of the Council on insider dealing and market manipulation (market abuse), Official Journal 2003, no. L 96, p. 16 (Market Abuse Directive), parts of Directive 2003/71/EC of 4 November 2003 of the European Parliament and of the Council on the prospectus to be published when securities are offered to the public or admitted to trading and amending Directive 2001/34/EC, Official Journal 2003, no. L 345, p. 64 (Prospectus Directive), Commission Directive 2003/124/EC of 22 December 2003 implementing Directive 2003/6/EC of the European Parliament and of the Council as regards the definition and public disclosure of inside information and the definition of market manipulation, Official Journal 2003, no. L 339, p. 70, Commission Directive 2004/72/EC of 29 April 2004 implementing Directive 2003/6/EC of the European Parliament and of the Council as regards accepted market practices, the definition of inside information in relation to derivatives on commodities, the drawing up of lists of insiders, the notification of managers' transactions and the notification of suspicious transactions, Official Journal 2004, no. L 162, p. 70, parts of Directive 2004/25/EC of the European Parliament and of the Council on takeover bids, Official Journal 2004, no. L 142, p. 12 (Takeover Directive), parts of Directive 2004/109/EC of 15 December 2004 of the European Parliament and of the Council on the harmonisation of transparency requirements in relation to information about issuers whose securities are admitted to trading on a regulated market and amending Directive 2001/34/EC, Official Journal 2004, no. L 390, p. 38 (Transparency Directive), parts of Directive 2004/39/EC of 21 April 2004 of the European Parliament and of the Council on markets in financial instruments amending Council Directives 85/611/EEC and 93/6/EEC and Directive 2000/12/EC of the European Parliament and of the Council and repealing Council Directive 93/22/EEC, Official Journal 2004, no. L 145, p. 1 (MiFID Directive), parts of Directive 2006/31/EC of 5 April 2006 of the European Parliament and of the Council amending directive 2004/39/EC on markets in financial instruments, as regards certain deadlines, Official Journal 2006, no. L 114, p. 60 (Postponement Directive), Directive 2009/44/EC of 6 May 2009 of the European Parliament and of the Council amending Directive 98/26/EC on settlement finality in payment and securities settlement systems and Directive 2002/47/EC on financial collateral arrangements as regards linked systems and credit claims, Official Journal 2009, no. L 146, p. 37, parts of Directive 2010/73/EC of 24 November 2010 of the European Parliament and of the Council amending Directives 2003/71/EC on the prospectus to be published when securities are offered to the public or admitted to trading and 2004/109/EC on the harmonisation of transparency requirements in relation to information about issuers whose securities are admitted to trading on a regulated market, Official Journal 2010, no. L 327, p. 1 (amending the Prospectus Directive) and Regulation no. 1031/2010/EU of 12 November 2010 of the European Parliament and of the Council on the timing, administration and other aspects of auctioning of greenhouse gas emission allowances pursuant to Directive 2003/87/EC of the European Parliament and of the Council establishing a scheme for greenhouse gas emission allowances trading within the Community.

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

**November 2012, GlobalDenmark Translations**

1) public offering of securities,
2) purchase and sale of securities for own or third party's account,
3) transmission of purchase and sale of securities,
4) professional advice with respect to securities,
5) portfolio management, and
6) issue underwriting.

**(3)** This Act shall also apply to the operation of regulated markets and multilateral trading facilities, clearing activities, book-entry activities, etc. and designated payment systems.

**(4)** Section 87(1) and (8) shall apply correspondingly for service suppliers and sub-suppliers to outsourcing undertakings, cf. section 2c, nos. 3 and 4.

**1a.** (Repealed).

**2.-(1)** The provisions of this Act with respect to securities shall apply to the following instruments:

1) Negotiable securities (except for payment instruments) that can be traded on the capital market, including
   a) shares in companies and other securities equivalent to shares in companies, partnerships and other businesses, and share certificates,
   b) bonds and other debt instruments, including certificates for such securities, and
   c) any other securities of which securities as mentioned in a) or b) can be acquired or sold, or give rise to a cash settlement, the amount of which is fixed with securities, currencies, interest rates or returns, commodities indexes and other indexes and targets as reference,
2) money market instruments, including treasury bills, certificates of deposits and commercial papers, with the exception of payment instruments,
3) units in collective investment schemes covered by the Investment Associations, etc. Act, as well as holdings in other collective investment undertakings,
4) options, financial-futures, swaps, Forward Rate Agreements (FRAs), and any other derivative agreement concerning securities, currencies, interest rates or returns, or other derivatives, financial indexes or financial targets which can be subject to physical or cash settlements,
5) options, futures, swaps, Forward Rate Agreements (FRAs), and any other derivative agreement concerning commodities for cash settlement, or which can be settled in cash if one of the parties so wishes (for other reasons than breach or termination),
6) options, futures, swaps, and any other derivative agreement concerning commodities for physical settlement, if traded on a regulated market or a multilateral trading facility,
7) options, futures, swaps, forward contracts or any other derivative agreement concerning commodities not covered by no. 6 and which can be physically settled, and have no commercial purpose, and which have characteristics similar to other derivative financial instruments, taking into consideration whether they are cleared and settled through acknowledged clearing institutions or are covered by regular determination of a margin,
8) Credit derivatives,
9) financial contracts for difference (CDFs),
10) options, futures, swaps, Forward Interest-Rate Agreements (FRAs) and any other derivative agreement regarding climatic variables, freight rates, emissions allowances or inflation rates, or other official financial statistics for cash settlement, or which can be settled in cash if one of the parties so wish (for other reasons than breach or termination) and any other derivative agreement concerning assets, rights, obligations, indexes and targets not covered by nos. 1 to 9, and which have characteristics similar to other derivative financial instruments, taking into consideration whether they are traded on a regulated

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

market or through a multilateral trading facility, cleared and settled through acknowledged clearing institutions or are covered by regular determination of a margin, and

11) negotiable mortgage deeds on real property or chattels.

**(2)** The Danish FSA may lay down regulations to the effect that specified instruments not mentioned in subsection (1) be covered by all or part of the regulations on securities of this Act.

**2a.-(1)** "Equity securities" shall, in part 6 of this Act and in regulations issued pursuant to section 23(7) and (8) and section 24(2), mean shares and other negotiable securities equivalent to shares as well as any other type of negotiable securities giving the right to acquire any of the aforementioned securities as a consequence of their being converted or the rights conferred by them being exercised, provided that securities of the latter type are issued by the issuer of the underlying shares or by an entity belonging to the group of the said issuer.

**(2)** "Non-equity securities" shall, in part 6 of this Act and in regulations issued pursuant to section 23(7) and (8) and section 24(2), mean all securities other than those mentioned in subsection (1).

**2b.** "Offering of securities to the public" shall, in this Act, mean any communication to natural and legal persons in any form and by any means, presenting sufficient information on the terms of the offer and the securities to be offered, so as to enable an investor to decide to purchase or subscribe to these securities.

**2c.-(1)** For the purposes of this Act the following definitions shall apply:

1) *Outsourcing:* Delegation to a supplier by an undertaking of significant areas of activity, which are subject to supervision by the Danish FSA.

2) *Outsourcing undertaking:* An undertaking covered by section 7(1) which outsources activities to a service supplier.

3) *Service supplier:* An undertaking that performs outsourced tasks for the outsourcing undertaking.

4) *Chain outsourcing:* Outsourcing by a service supplier of tasks, which the service supplier is to perform in accordance with an agreement with the outsourcing undertaking, to a sub-supplier and the sub-supplier's possible chain outsourcing of the tasks to the next link in the chain of sub-suppliers as well as possible chain outsourcing to other links in the chain of sub-suppliers.

**3.-(1)** All securities transactions shall be carried out fairly and in conformity with good securities trading practices. The Danish FSA may order that matters which are contrary to the 1st clause be rectified.

**(2)** The Minister for Economic and Business Affairs shall lay down more detailed regulations on good securities trading practices.

**(3)** The Consumer Ombudsman may institute legal proceedings regarding violations of regulations on good securities trading practices, cf. subsection (1), and regulations issued pursuant to subsection (2), including legal proceedings on prohibitions and orders, compensation and recovery of amounts demanded unlawfully. The provisions of section 20, section 22(2), section 23(1), section 27(1) and section 28 of the Marketing Practices Act shall apply correspondingly to legal proceedings which the Consumer Ombudsman wishes to institute in pursuance of the provision of the 1st clause. The Consumer Ombudsman may be

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

appointed as group representative in group actions, cf. Part 23a of the Administration of Justice Act.

**(4)** The Danish FSA shall notify the Consumer Ombudsman, if the Danish FSA becomes aware of a possibility that the clients of an undertaking may have suffered losses as a result of the undertaking having not complied with subsection (1) or regulations issued in pursuance of subsection (2).

**(5)** Notwithstanding section 84a, the Consumer Ombudsman shall have access to all information in proceedings by the Danish FSA covered by subsection (1).

**3a.** The Minister for Economic and Business Affairs shall lay down more detailed regulations on the use of digital communication, including electronic signatures, when exchanging information in accordance with this Act between citizens and undertakings on the one hand and the public administration on the other hand, as well as storage of information.

## Part 2
*Securities dealers*

**4.-(1)** For the purposes of this Act, a "securities dealer" shall mean

1) financial undertakings licensed as banks, to the extent that such undertakings are licensed under section 9(1) of the Financial Business Act, and financial undertakings licensed as investment firms,

2) financial undertakings licensed as mortgage-credit institution or investment management company to the extent that such undertakings are licensed under section 9(1) of the Financial Business Act,

3) credit institutions, investment companies and management companies, which have been granted a licence in another Member State of the European Union or a country with which the Union has entered into an agreement for the financial area, if such institution or company legally carries out securities trading either through a branch or by providing services in Denmark, cf. sections 30 and 31 respectively of the Financial Business Act, and

4) credit institutions and investment companies, which have been granted a licence in another Member State of the European Union with which the Union has not entered into an agreement for the financial area, if such institution or company legally carries out securities trading either through a branch or by providing services in Denmark, cf. sections 1(3) and 33 respectively of the Financial Business Act.

**(2)** The Danish FSA may lay down regulations to the effect that the provisions of this Act regarding the obligations of a securities dealer shall also apply to foreign credit institutions and investment companies that are not covered by section 1, no. 3 or 4, and that, pursuant to section 20(4), have been accepted as members of a regulated market, or that, in pursuance of section 64(3), have entered into participation agreements with a central securities depository.

**4a.** (Repealed).

**5.** (Repealed).

**6.** (Repealed).

## Part 3
*Common provisions*

**7.-(1)** For the purposes of this Act the following definitions shall apply:

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

1) an "operator" shall mean a limited company operating on a regulated market,

2) a "clearing centre" shall mean a limited company carrying out securities clearing activities with a licence pursuant to section 8, and

3) a "central securities depository" shall mean a limited company carrying out book-entry activities.

**(2)** The undertakings mentioned in subsection (1) shall have a board of directors and a board of management, cf. however subsections (3) and (4).

**(3)** Provisions regarding the board of directors or members hereof in section 12(1) and section 12d(5), shall, for SEs (Societas Europea) with a two-tier management system, only apply with the changes necessary to the supervisory organ or members thereof.

**(4)** Provisions regarding the board of directors or members hereof and provisions regarding the management in section 9; section 12a(1) and (3); section 12c; section 12d(1)-(3); 12e(2), section 13; section 15(3), section 28a(2); section 37(1), 1st clause; section 60(4); section 84b(2), no. 2, and subsection (3); section 87(1); section 95(1); and section 96(1) shall, for SEs with a two-tier management system in addition to the management body, also apply to the supervisory organ or members thereof with the changes necessary.

**(5)** The time limits fixed in or pursuant to this Act shall take effect from the day following the day when the event triggering the time limit occurred. This shall apply to calculation of time limits involving days, weeks, months and years.

**(6)** Where the time limit is indicated in weeks, said time limit shall expire on the day in the week when the event triggering the time limit occurred, cf. subsection (5).

**(7)** If the time limit is indicated in months it shall expire on the day in the month when the event triggering the time limit occurred, cf. subsection (5). If the day when the event triggering the time limit occurred is the last day of a month, or if the time limit expires on a date which does not exist, the time limit shall always expire on the last day of the month, irrespective of its length.

**(8)** If a time limit expires during a weekend, on a holiday, 5 June, 24 December or on 31 December, the time limit shall be extended to the next business day.

**7a.-(1)** For the purposes of this Act, a "designated payment system" shall mean a payment system registered pursuant to section 57a(1), 1st clause.

**(2)** For the purposes of this Act, a company that operates an alternative market place shall mean a company that operates a multilateral trading facility as an alternative market place, cf. section 17(2, 2nd and 3rd clauses.

**(3)** For the purposes of this Act, "a foreign clearing centre" shall mean an undertaking approved under section 8a.

**8.-(1)** Activities covered by section 7(1), and an operator operating a multilateral trading facility on a regulated market may not be commenced until the Danish FSA has granted a licence herefor. The securities clearing activities carried out by Danmarks Nationalbank (Denmark's central bank) shall not be covered by the 1st clause.

**(2)** Conditions for such licence shall be

1) that the activities are carried out by a limited company designated with the Danish Business Authority,

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

2) that the company has a share capital of no less than DKK 8 million as regards operators of regulated markets, and no less than DKK 40 million as regards clearing centres and central securities depositories,

3) that the company has submitted the required information, including an operating plan, organisational charts, procedures and control and safeguard arrangements,

4) that the members of the applicant's board of directors and board of management satisfy the requirements of section 9, and

5) that the owners of qualifying interests meet the requirements of sections 10 and 10a.

**(3)** As regards a central securities depository, the licence shall also be conditional upon the central securities depository having capital resources, cf. section 82.

**(4)** Licences of clearing centres shall also be conditional upon the prevailing regulations and participation agreements of the relevant clearing centre containing provisions laid down pursuant to section 57c.

**(5)** In the event that the Danish FSA refuses an application for a licence, the applicant shall be notified, with a reason for refusal, no later than six months following receipt of the application or, if the application is incomplete, no later than six months after the applicant has submitted the information necessary to make the decision. At all events, a decision shall be made no later than 12 months after receipt of the application. If the Danish FSA has not made a decision on a full and complete application for a licence no later than six months after receipt of the application, the company may bring the matter before a court.

**8a.-(1)** A foreign clearing centre may, pursuant to subsections (3) or (4) become licensed as an approved foreign clearing centre, for clearing securities traded between securities dealers where at least one of these securities dealers have been granted a licence for securities trading in Denmark, cf. section 9 of the Financial Business Act and where such trading takes place on a regulated market, an alternative market place or at a multilateral trading facility in Denmark.

**(2)** A foreign clearing centre may not commence the activities described in subsection (1) until the Danish FSA has granted a licence herefor under subsections (3) or (4).

**(3)** The Danish FSA shall approve the securities clearing activities of a foreign clearing centre in another Member State of the European Union or a country with which the Union has entered into an agreement for the financial area for carrying out clearing activities in Denmark as an approved foreign clearing centre, unless the Danish FSA can prove that a licence involves a risk that a regulated market or an alternative market place will not function appropriately, or that the financial markets otherwise will not function in a safe, efficient and technically responsible manner.

**(4)** The Danish FSA shall approve that a foreign clearing centre which has been granted a licence to carry out securities clearing activities in a country outside the European Union, with which the Union has not entered into an agreement for the financial area may carry out clearing activities in Denmark as an approved foreign clearing centre, if the Danish FSA has proven that the securities clearing can be carried out in an otherwise safe, efficient and technically responsible manner for the Danish financial markets.

**(5)** In the evaluation pursuant to sections 3 and 4, the Danish FSA shall take into account legislation and supervision by which the clearing centre is covered in its home country. The Danish FSA shall also consider whether participants and investors are protected to a similar extent as in securities clearing in a clearing centre licensed pursuant to section 8 of this Act. The Danish FSA shall also consider whether the applicant has appropriate procedures and controls in place to counter if a participant is not able to meet his obligations in connection

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

with securities clearing. The Danish FSA also shall also take into account whether the applicant's IT systems and IT procedures are suitable in relation to ensuring effective and secure securities clearing, and whether the applicant can expect compliance with his obligations pursuant to this Act and regulations laid down pursuant to this Act.

**(6)** The Danish FSA shall be responsible for notifying a decision no later than three months after receipt of an application containing the information necessary in order to make a decision. At all events, a decision shall be made no later than six months after receipt of the application. If the Danish FSA has not made its decision no later than three months after receipt of a complete application for approval, the foreign clearing centre may bring the case before the courts.

**(7)** The Danish FSA may stipulate requirements for approval pursuant to subsections (3) or (4). The Danish FSA may also stipulate supplementary requirements for licence in issue. The approved foreign clearing centre, shall, in such cases, be subject to a time limit for informing when such supplementary terms shall be complied with.

**(8)** The Danish FSA may lay down more detailed regulations regarding the information to be provided by undertakings in connection with submission of an application for approval pursuant to subsections (3) and (4), regarding ongoing disclosure obligations and reporting requirements for approved foreign clearing centres, regarding requirements for cooperating with home country supervision and regarding other conditions relevant for the securities clearing.

**8b.-(1)** A foreign operator who has been granted a licence to operate a regulated market or a multilateral trading facility in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, may permit remote members; participants or users in Denmark, to gain access to the regulated market or the multilateral trading facility if the Danish FSA has received notification hereof from the supervisory authorities in the home country of the operator.

**(2)** A foreign operator may obtain a licence from the Danish FSA to operate a regulated market or a multilateral trading facility in Denmark, if the operator is established in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, and if the competent authority in the home country of the operator has granted the operator a licence and supervises the operator in accordance with legislation in the operator's home country in which Title III of Directive 2004/39/EC (the MiFID Directive) has been implemented. The licence may be granted if the operator complies with the conditions laid down in section 8(2), with the changes necessary. The requirements for the Danish FSA laid down in section 8(5) shall apply to the processing of the application.

**(3)** For foreign operators which have been granted a licence pursuant to subsection (2), this Act shall apply to the operator and its activities in Denmark.

**8c.-(1)** A regulated market may be granted a licence in Denmark as an auction platform pursuant to Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation).

**(2)** A licence pursuant to subsection (1) shall be conditional upon compliance by the regulated market and its operator with Parts 3 and 4 of this Act with the changes necessary.

**(3)** If the operator of the regulated market is not established in Denmark, licence may be granted pursuant to subsection (1), provided that

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

1) the regulated market complies with the requirements laid down in Parts 3 and 4 of this Act with the changes necessary, and

2) the operator is established in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, and the competent authority in the home country of the operator has granted the operator a licence and supervises the operator in compliance with the legislation of the home country, according to which Title III of Directive 2004/39/EC (the MiFID Directive) has been implemented.

**(4)** An operator may be licensed to operate a regulated market that is licensed as an auction platform pursuant to Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation) in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, provided that

1) the operator complies with the requirements laid down in Parts 3 and 4 of this Act with the changes necessary, and

2) the competent authority in the home country of the regulated market grants the regulated market a licence pursuant to Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation) and supervises the regulated market in accordance with the legislation of the home country, according to which Title III of Directive 2004/39/EC (the MiFID Directive) has been implemented.

**(5)** If the Danish FSA refuses an application for a licence, the applicant shall be notified of reasons within six months of receipt of the application or, should the application be incomplete, within six months of the applicant sending the information required for the decision. At all events, a decision shall be made no later than twelve months after receipt of the application. If the Danish FSA has not made its decision no later than six months after receipt of a complete application for a licence, the applicant may bring the case before the courts.

**9.-(1)** A member of the board of directors or board of management of a company covered by section 7(1) shall have appropriate experience in carrying out his duties and responsibilities in the undertaking in question.

**(2)** A member of the board of directors or board of management of a company covered by section 7(1) shall comply with the following:

1) Shall not, at present or in the future, be held criminally liable for violation of the Criminal Code, financial legislation, or other relevant legislation, if such violation entails a risk that the person in question may fail to carry out his duties and responsibilities adequately.

2) Shall not have filed for financial reconstruction, have filed for bankruptcy or debt restructuring, or be under financial reconstruction, bankruptcy proceedings or debt restructuring.

3) Shall not have behaved or behave such that there is reason to assume that the person in question will not perform his duties or responsibilities adequately. In the assessment of whether a member of the board of directors or board of management behaves or has behaved inadequately, emphasis will be on maintaining confidence in the financial sector.

**(3)** Members of the board of directors or board of management of an undertaking covered by section 7(1) shall submit information to the Danish FSA on the circumstances mentioned in subsection (2) in connection with their appointment to the management of the undertaking, and if the circumstances subsequently change.

**(4)** The person(s) who actually manages an already approved operator of the activities of a regulated market in accordance with the regulations in the Directive on markets in financial

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

instruments (the MiFID Directive) shall be assumed to comply with the requirements in subsection (1) in connection with an application for a licence to operate on a regulated market.

**10.-(1)** Any natural or legal person or natural or legal persons acting together who intend directly or indirectly to acquire a qualifying interest, cf. section 5(3) of the Financial Business Act, in a company covered by section 7(1) shall apply to the Danish FSA in advance for approval of the intended acquisition. The same shall apply to an increase in the qualifying interest which, after the acquisition, results in the interest equalling or exceeding a limit of 20%, 33% or 50% respectively of the share capital or voting rights, or results in company covered by section 7(1) becoming a subsidiary undertaking.

**(2)** The Danish FSA shall confirm in writing, and no later than after two business days, receipt of the application, cf. subsection (1). The same shall apply correspondingly for receipt of material pursuant to subsection (4).

**(3)** From the date of the written confirmation of receipt of the application, cf. subsection (2), and receipt of all documents required to be enclosed with the application, the Danish FSA shall have an assessment period of 60 business days to carry out the assessment mentioned in section 10a. At the same time as confirming receipt of the application, cf. subsection (2), the Danish FSA shall notify the intended acquirer of the date on which the assessment period expires.

**(4)** Up to the fiftieth business day in the assessment period the Danish FSA may request any further information necessary for the assessment. The request shall be in writing. The first time such a request is submitted, the assessment period shall be interrupted for the period between the date of the request and the receipt of a reply to this. Such interruption may not, however, exceed 20 business days, cf. however subsection (5).

**(5)** The Danish FSA may extend the interruption of the assessment period mentioned in subsection (4) by up to ten business days, provided

1) the intended acquirer is domiciled or subject to legislation in a country outside the European Union with which the Union has not entered into an agreement for the financial area, or
2) the intended acquirer is a natural or legal person who has not been granted a licence to carry out the activities mentioned in sections 7-11 or section 308 of the Financial Business Act or the activities mentioned in section 16 of this Act in Denmark, in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area.

**(6)** If the Danish FSA refuses an application for approval of the intended acquisition, this shall be explained in writing and notified to the intended acquirer immediately after the decision. The notification shall be within the assessment period. The intended acquirer may request that the Danish FSA make public the reason for the refusal.

**(7)** If, during the course of the assessment period, the Danish FSA does not give written refusal of the application for the intended acquisition, the acquisition shall be considered approved.

**(8)** The Danish FSA may, when approving acquisitions or increases pursuant to subsection (1), stipulate a time limit for the completion of such acquisitions or increases. The Danish FSA may extend such a time limit.

**(9)** The Danish FSA shall lay down regulations regarding when an acquisition shall be included in the calculation pursuant to subsection (1).

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**10.a-(1)** In its assessment of an application received pursuant to section 10(1), the Danish FSA shall ensure that account is taken of sensible and proper management of the company in which the acquisition is intended. The assessment shall also take into account the likely influence of the intended acquirer on the company, the suitability of the intended acquirer, and the financial soundness of the intended acquisition in relation to the following criteria:

1) The reputation of the intended acquirer.
2) The reputation and experience of the person(s) who will manage the company after the acquisition.
3) The financial situation of the intended acquirer, particularly with respect to the nature of the business operated or intended to be operated in the company covered by section 7(1) in which the acquisition is intended.
4) Whether the company can continue to comply with the supervision requirements in the legislation, in particular whether the group of which the company may become a part has a structure which makes it possible to perform effective supervision and effective exchange of information between the competent authorities as well as to determine how responsibilities are to be divided between the competent authorities.
5) Whether, in connection with the intended acquisition, there are grounds to suspect that money laundering or terrorist financing, cf. sections 4 and 5 of the Act on Measures to Prevent Money Laundering and Financing of Terrorism, will occur.

**(2)** The Danish FSA may refuse an application for approval of an intended acquisition if, on the basis of the criteria mentioned in subsection (1), there are reasonable grounds to believe that the intended acquirer will hinder sensible and proper management of the company, cf. subsection (1), or in the opinion of the Danish FSA the information submitted by the intended acquirer is not sufficient.

**(3)** The Danish FSA may not take account of the financial needs of the market in its assessment pursuant to subsection (1).

**10b.** Any natural or legal person or natural and legal persons acting together who intend directly or indirectly to sell a qualifying interest or reduce a qualifying interest in a company covered by section 7(1), such that the sale entails that the limit of 20%, 33% or 50% respectively of the share capital or voting rights is no longer achieved, or entails that the company ceases to be a subsidiary of the relevant parent, shall notify the Danish FSA of this in writing in advance, stating the size of the planned future holding.

**10c.-(1)** Where a company covered by section 7(1) learns of acquisitions or sales of holdings as specified in section 10(1) and section 10b, said company shall immediately notify the Danish FSA hereof.

**(2)** A company covered by section 7(1) shall, no later than February each year, submit information to the Danish FSA of the names of the owners of capital who own qualifying interests in the company as well as information on the sizes of said interests.

**(3)** An operator of a regulated market shall publish the names of all direct and indirect owners of the company. Furthermore, the names of direct and indirect owners of qualifying interests in the company and the sizes of said interests shall be made available to the public.

**10d.-(1)** Where the owners of capital holding one of the interests mentioned in section 10(1) in a company covered by section 7(1) do not fulfil the requirements of section 10a(1), the Danish FSA may withdraw the voting rights associated with the equity investments of the relevant owner, or order said company to follow specific guidelines.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** The Danish FSA may withdraw the voting rights associated with equity investments owned by natural or legal persons who do not comply with the duty in section 10(1) to submit prior application for approval. Said equity investments shall have their full voting rights restored if the Danish FSA is able to approve the acquisition.

**(3)** The Danish FSA shall withdraw the voting rights associated with equity investments owned by a natural or legal person who have acquired equity investments as specified in section 10(1) notwithstanding the fact that the Danish FSA has refused approval of this acquisition of equity investments.

**(4)** Where the Danish FSA has withdrawn voting rights pursuant to subsections (1)-(3), the relevant equity investment shall not be included in calculations of the voting capital represented at general meetings.

**11.** A company covered by section 7(1) and a company operating a multilateral trading facility shall inform the Danish FSA if the company becomes aware of or suspects that somebody has violated this Act, executive orders issued pursuant to this Act or has grossly or repeatedly violated the regulations laid down by an operator of a regulated market, a clearing centre, a central securities depository or by a company operating a multilateral trading facility.

**12.-(1)** The board of directors of a company covered by section 7(1) shall consist of no less than five persons.

**(2)** A company covered by section 7(1) may not, without the consent of the Danish FSA, enter into agreements on outsourcing or other matters of far-reaching importance with other undertakings with respect to operating a regulated market, securities clearing activities and book-entry activities as well as money transmission services.

**(3)** A company covered by section 7(1) may not merge with another company without the approval of the Danish FSA.

**12a.-(1)** A company covered by section 7(1) shall not, without the approval of the board of directors, which shall be entered in the minute book, establish any exposures, etc. with other companies in which the members of the board of management or members of the board of directors of the company act as members of the board of management or members of the board of directors.

**(2)** The exposures specified in subsection (1) shall be granted in accordance with the usual business terms of the company and on terms based on market conditions. The external auditors of the company shall make a statement in the audit book on the financial statements whether the requirements set out in the 1st clause have been met.

**(3)** The board of directors and the board of management shall, in particular, monitor the propriety and progress of the exposures mentioned in subsection (1).

**(4)** The regulations in subsections (1), (2), 1st clause, and (3) shall also apply to exposures established with companies in which persons related to the managing director by marriage, kinship or relationship by marriage in the direct line of ascent or descent or as brothers and sisters are members of the board of management.

**12b.-(1)** Persons employed by the board of directors of a company covered by section 7(1) in pursuance of legislation or provisions in the articles of association, and employees for whom there is a significant risk of conflicts between own interests and the interests of the company shall not, at their own expense, or through companies they control,

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

1) take up loans or draw on previously established credits to be used for acquisitions of securities when the securities acquired are provided as collateral for said loan or credit,

2) acquire, issue, or trade in derivative financial instruments, except to hedge risk,

3) acquire equity investments, except for units in investment associations, special-purpose associations, hedge associations and foreign investment undertakings covered by the Investment Associations, etc. Act with a view to selling such units less than six months from the date of acquisition, or

4) acquire positions in foreign currency, except for euro (EUR), if taking the position takes place with a view to anything other than payment for the purchase of securities, goods or services, purchase or management of real property, or for use when travelling.

**(2)** The group of persons mentioned in subsection (1) may not acquire holdings in companies that carry out activities as mentioned in subsection (1) nos. 1-4. This shall not apply, however, for purchases of shares in banks and investment firms, as well as investment associations, special-purpose associations, hedge associations and foreign investment undertakings covered by the Investment Associations, etc. Act.

**(3)** The board of directors shall decide which employees have a significant risk of conflicts between their own interests and the interests of the company, and who shall therefore be covered by the prohibition.

**(4)** The board of directors shall, for the persons covered by subsection (1), draw up guidelines regarding compliance with the bans in subsections (1) and (2), 1st clause, including guidelines on reporting of investments.

**(5)** The external auditors in a company covered by section 7(1) shall once a year review the financial undertaking's guidelines under subsection (4) and in the long-form audit report comments on the annual report state whether the guidelines are adequate and have functioned appropriately, as well as whether the undertaking's control procedures have given rise to observations.

**(6)** An account-holding institution shall, upon request from the board of directors of a company covered by section 7(1), provide the external auditors of said company with access to information on accounts and custody accounts and provide printed statements herefrom with regard to persons covered by subsection (1).

**(7)** The prohibition in subsection (1), no. 2 shall not cover financial instruments derived from shares in the company, or an undertaking in the same group as the company, received as part of the relevant person's salary.

**(8)** The prohibition in subsection (1), no. 1 shall not cover loans to buy employee shares or the instruments mentioned in subsection (7).

**(9)** The prohibition in subsection 1 no. 3 shall not cover shares acquired through utilising the instruments mentioned in subsection (7).

**(10)** Chief internal auditors and deputy chief internal auditors may, irrespective of subsections (1)-(9), not have financial interests in the undertaking or group in which they are employed.

**12c.** A member of the board of directors covered by section 7(1) shall not be allowed to hold the position as member of the board of management or chief internal auditor of said company. However, in the event of the absence of a member of the board of management, the board of directors may appoint one of its members as a temporary member of the board of

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

management. In this event, the relevant person may exercise voting rights in the body mentioned.

**12d.-(1)**Persons employed by the board of directors of a company covered by section 7(1) in accordance with legislation or the provisions in the articles of association may not, without the authorisation of the board of directors, own or operate an independent business undertaking, or in the capacity as a member of the board of directors or an employee, or in any other way, participate in the management or operation of another enterprise than said company.

**(2)** Other employees in a company covered by section 7(1) for whom there is a significant risk of conflicts between the interests of the employee and those of the company may not, without the consent of the board of management, own or operate an independent business undertaking, or in the capacity of member of the board of directors or as an employee, or in any other way, participate in the management or operation of another enterprise than the company. The board of directors shall be informed of any authorisation granted by the board of management.

**(3)** The board of directors shall decide for which employees there is a significant risk of conflicts between the interests of the employee and those of the company, and who are consequently to be required to obtain the authorisation of the board of management, cf. subsection (2).

**(4)** The activities mentioned in subsections (1) and (2) shall only be carried out where the company or companies which form part of a group with said company do not have and do not enter into exposures with the enterprises mentioned in subsections (1) and (2). This shall not apply to exposures in the form of holdings and exposures in business undertakings that form part of a group with the company or enterprises where companies covered by section 7(1) jointly own more than 4/5 of the holdings.

**(5)** All authorisations granted by the board of directors in pursuance of subsection (1) shall appear in the minute book of the board of directors.

**(6)** The company shall at least annually publish information on the duties and responsibilities approved by the board of directors under subsection (1). Furthermore, the external auditors shall make a declaration in the long-form audit report on the annual report stating whether the company has exposures with business undertakings covered by subsections (1) and (2).

**(7)** In exceptional cases, the Danish FSA may grant exemptions from subsection (4).

**12e.-(1)** The Danish FSA may order a company covered by section 7(1) to dismiss a member of the board of management of the company covered by section 7(1) within a time limit set by the Danish FSA, if such person, pursuant to section 9(2), can no longer carry out his duties.

**(2)** The Danish FSA may order a member of the board of directors of a company covered by section 7(1) to cease his duties within a time limit set by the Danish FSA, if such person, pursuant to section 9(2), can no longer carry out his duties.

**(3)** The Danish FSA may order a company covered by section 7(1) to dismiss a member of the board of management when charges have been brought against such person in criminal proceedings regarding violation of the Criminal Code, the Securities Trading etc. Act or other financial legislation until the criminal proceedings have been settled, if a conviction will mean that said person does not comply with the requirements of section 9(2), no. 1. The Danish FSA

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

shall lay down a time limit within which the requirements of the order shall be met. The Danish FSA may, under the same conditions as the 1st clause, order a member of the board of directors of a company covered by section 7(1) to cease his duties. The Danish FSA shall lay down a time limit within which the requirements of the order shall be met.

**(4)** The duration of the order notified pursuant to subsection (2) on the basis of section 9(2), no. 2 or 3 shall appear on the order.

**(5)** Orders notified pursuant to subsections (1)-(3) may be brought before the courts at the request of the company covered by section 7(1) and of the person to whom the order relates. Such request shall be submitted to the Danish FSA within four weeks from the date on which the order was issued to the person. The request shall not act as stay of proceedings for the order, but the court may, by warrant, decide that the relevant member of the board of management or the relevant member of the board of directors may retain his position during the legal proceedings. The Danish FSA shall bring the case before the courts within four weeks. The case shall be brought through civil proceedings.

**(6)** The Danish FSA may, at its own initiative or on application, withdraw an order notified pursuant to subsection (2) and subsection (3), 3rd clause. If the Danish FSA refuses an application for withdrawal, the applicant may demand that the refusal be brought before the courts. Such request shall be submitted to the Danish FSA within four weeks from the date on which the refusal was notified to the person. Requests for judicial review may, however, only be submitted provided the order has no time limit, and no less than five years have elapsed from the date of issue of the order, or no less than two years after the refusal of withdrawal by the Danish FSA was affirmed by judgement.

**(7)** If the company covered by section 7(1) does not dismiss the member of the board of management before expiry of the time limit, the Danish FSA may withdraw the licence of the undertaking, cf. section 92(1), no. 4. The Danish FSA may also withdraw the licence of the undertaking, cf. section 92(1), no. 4, if a member of the board of directors fails to comply with an order notified pursuant to subsections (2) and (3).

**12f.** (Repealed).

**12g.** (Repealed).

**12h.** (Repealed).

**13.-(1)** The board of directors, auditors and other employees in a company covered by section 7(1), nos. 1 and 2 may not without authorisation, disclose anything which has come to their knowledge during the performance of their position or charge.

**(2)** Subsection (1) shall not prevent a company covered by section 7(1), nos. 1 and 2, as part of its cooperation with other companies under section 7(1), a regulated market for securities in a Member State of the European Union or a country with which the Union has entered into a cooperation agreement for the financial area, or a foreign regulated market, clearing centre and central securities depository recognised by the Danish FSA from divulging information to these, provided that such information is subject to a similar duty of confidentiality with the recipients of such information.

**(3)** Subsection (1) shall also include information which a company covered by section 7(1), nos. 1 and 2 receives from other companies covered by section 7(1), nos. 1 and 2 or any regulated foreign markets stating that the information is secret or confidential or wherever this follows from the nature of the information.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(4)** The regulations laid down in section 60(2)-(4) shall apply to central securities depositories.

**14.-(1)** The annual report of a company covered by section 7(1), the long-form audit report of an external auditor regarding the annual report, and the long-form audit report of the chief internal auditor on the annual report shall be submitted to the Danish FSA in duplicate. The Danish FSA shall submit one copy of the annual report to the Danish Business Authority, which shall record the receipt in its computer information system. The annual reports received shall be available to the public at the premises of the Danish Business Authority.

**(2)** The Danish FSA may lay down regulations on the presentation of accounts and the performance of the audit, including systems audit, in companies covered by section 7(1).

**(3)** The Danish FSA may lay down regulations on consolidated accounts.

**(4)** The Danish FSA shall lay down more detailed regulations on transactions carried out between companies covered by section 7(1), and

1) undertakings directly or indirectly linked with said company as subsidiary undertakings, associates or parent undertakings, or as the parent undertaking's associates and other subsidiary undertakings,
2) undertakings or persons linked to the company through close links, cf. section 5(1), no. 17 of the Financial Business Act, or
3) undertakings not covered by nos. 1 and 2 where the majority of the members of the management of said undertakings are the same individuals or where the undertakings have joint management under an agreement or provisions in their articles of association.

**(5)** Intra-group transactions carried out contrary to regulations laid down in subsection (4) shall be cancelled so that performance of all transactions is reversed where possible. Payments from the company made in connection with intra-group transactions contrary to regulations laid down in pursuance of subsection (4) shall be returned with annual interest at an amount corresponding to the interest stipulated in section 5(1) and (2) of the Interest on Late Payments etc. Act *("lov om rente ved forsinket betaling m.v.")*.

**15.-(1)** The base capital of a company covered by section 7(1) shall be calculated as the paid-up share capital less the holding of own shares and losses for the current year plus additional share premium and reserves.

**(2)** The Danish FSA may lay down capital adequacy rules and regulations on hedging of the risks of companies covered by section 7(1). The Danish FSA may lay down regulations regarding amortisation of intangible assets.

**(3)** The board of directors and board of management of a company covered by section 7(1), shall ensure that the company has sufficient capital base, cf. subsection (1), and that the company has at its disposal internal procedures for risk measurements and risk management for ongoing assessments and maintenance of a capital base of a size that is sufficient to cover the risks of the company. The board of directors and board of management shall, on the basis of the assessment, in accordance with the 1st clause, calculate the capital need of the company. The capital need may not exceed that of section 8(2) for the relevant type of undertaking. The Danish FSA may lay down a higher individual capital requirement than that in section 8(2).

**15a.-(1)** The Minister for Economic and Business Affairs shall lay down more detailed regulations on outsourcing relating to

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

1) the outsourcing undertaking's liability for and supervision of a service supplier, including chain outsourcing by such supplier,

2) the outsourcing undertaking's internal guidelines for outsourcing, and

3) requirements which the outsourcing undertaking shall, as a minimum, ensure are complied with by the service supplier at all times and which shall be agreed in the outsourcing contract.

**(2)** The Danish FSA may decide that outsourcing carried out by the outsourcing undertaking shall cease within a time limit specified by the Danish FSA, if the outsourcing contract or parties to the contract do not comply with the regulations stipulated pursuant to subsection (1).

## II

### Trade
### Part 4

*Operation of a regulated market*

**16.-(1)** A "regulated market" shall mean the multilateral system where within the system and in accordance with its non-discretionary rules hereof, a plurality of third party interests in the purchase and sale of securities are brought together and carried, in a such manner that agreements on trading in securities admitted to trading in accordance with the regulations or systems of the market, shall be made.

**(2)** Operators of regulated markets shall have an exclusive right to employ the words "reguleret marked" (regulated market) and "autoriseret markedsplads" (authorised market place) in their names and about the regulated market. The operators of regulated markets whereupon listed securities have been admitted to trading, mentioned in the 1st clause, shall have an exclusive right to employ the word "fondsbørs" (stock exchange) in their names and about the regulated market. Other natural or legal persons may not use names or descriptions for their activities that may create the impression that they are operating a regulated market, including a regulated market where listed securities have been admitted for trading.

**(3)** Operators of regulated markets, which have been granted a licence by the Danish FSA to operate regulated markets, shall employ a word for that regulated market, which shows that they are a regulated market. Operators of regulated markets shall not be subject to the obligation of the 1st clause, if it is clear on the regulated market which regulations are linked to the securities admitted to trading on the regulated market in question.

**17.-(1)** Operators of a regulated market may operate other activities which are ancillary to operating the regulated market, including as clearing centre, central securities depository and operation of multilateral trading facilities. The Danish FSA may decide that the ancillary activity shall be exercised in another company. If the operator of a regulated market operates a multilateral trading facility as ancillary activity, the multilateral trading facility may, however, always be operated by the same company as the regulated market.

**(2)** If the operator of a regulated market is operating a clearing centre, a central securities depository or a multilateral trading facility as an ancillary activity, cf. subsection (1), the requirements for a licence and operation of these types of activities in this Act shall apply. An operator of a regulated market which intends to operate a multilateral trading facility as an alternative market, shall notify the Danish FSA before commencing operation of the alternative market place. Multilateral trading facilities which have been in operation before such notification may not subsequently be operated as alternative market places.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**18.-(1)** An operator of a regulated market shall be responsible for the market being conducted in an adequate and appropriate manner.

**(2)** The operator shall

1) be able to identify and deal with any conflicts of interest between the operator and the operator's group of owners, and the sound function of the regulated market,
2) be able to manage the risks to which the operator and the regulated market are exposed, to identify all significant risks for the operation of the market and to introduce measures for the purpose of reducing such risks,
3) to ensure sound management of the technical function of the market's systems, including the establishment of effective emergency systems.
4) to have regulations ensuring fair and orderly trading, and establish objective criteria for the efficient execution of orders,
5) to ensure effective and timely execution of transactions carried out in the systems of the market,
6) to have at its disposal sufficient financial resources to ensure the well-functioning functions of the market, taking into account the transactions carried out on the market and the risks to which the market is exposed,
7) to monitor that issuers of securities and members of the market comply with the regulations for the regulated market,
8) to register the transactions that are carried out by members of the market by use of the market's systems, for identifying violations of the market's regulations, trading conditions in violation of the regulations for the regulated market or behaviour that may involve violation of Part 10,
9) to check that issuers of securities admitted to trading on the regulated market comply with their disclosure obligations,
10) to facilitate the access of the market members to disclosed information, and
11) to check regularly that securities admitted to trading continue to comply with the admission requirements.

**18a.-(1)** An operator of a regulated market shall publish the current prices and the market depth of these prices of shares admitted to trading on the regulated market, and which are offered in the system of the regulated market. This information shall, within the normal opening hours of the regulated market, regularly be made available to the public on reasonable and commercial terms.

**(2)** If an operator of a regulated market gives securities dealers, who are required to disclose publicly prices of shares according to section 33a, access to the arrangements that the operator is applying to disclose information covered by subsection (1), this shall take place on reasonable commercial terms and on a non-discriminatory basis.

**(3)** The Danish FSA may exempt an operator of a regulated market from the obligation in subsection (1) on the basis of market model, type of order or size of order.

**(4)** The Danish FSA shall lay down specified regulations on the obligation to disclose information under subsection (1) and on exemption under subsection (3).

**18b.-(1)** An operator of a regulated market shall publish price, volume and time of transactions carried out with shares admitted to trading on the market. Such information shall be made available to the public on reasonable commercial terms and as close to real time as possible.

**(2)** If an operator of a regulated market gives securities dealers, who are required to disclose publicly information about transactions with shares according to section 33b, access to

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

the arrangements that the operator is applying to disclose information covered by subsection (1), this shall take place on reasonable commercial terms and on a non-discriminatory basis.

**(3)** An operator of a regulated market may lay down regulations regarding postponement of publication on the basis of the size or type of the transactions. These regulations shall be approved by the Danish FSA. The operator shall publish the approved regulations.

**(4)** The Danish FSA shall lay down more detailed regulations on the duty of an operator of a regulated market to publish price, volume and time of transactions carried out in other securities than shares.

**(5)** The Danish FSA may lay down more detailed regulations on the duty to publish under subsection (1). The Danish FSA may furthermore lay down more detailed regulations on the conditions of postponement of publication under subsection (3).

**19.-(1)** An operator of a regulated market shall lay down regulations on membership of the market. The regulations shall be transparent, non-discriminatory and based on objective criteria. The regulations shall indicate any obligations for the members as a consequence of

1) establishment and operation of the market,
2) regulations for transactions on the market,
3) professional standards incurred on employees at securities dealers who are operating on the market,
4) conditions laid down for other members of the market than securities dealers, and
5) regulations and procedures for clearing and settlement of transactions carried out on the market.

**(2)** The regulations for the regulated market on clearing and settlement shall ensure that members of the regulated market are entitled to use another settlement system for transactions in financial instruments than the one chosen by the market operator, if

1) there are the required connections and arrangements between the settlement system selected by the member and any other relevant system or any other relevant facility to ensure an effective and financial settlement of the relevant transaction, and
2) the Danish FSA finds the technical conditions for settlement of transactions on the regulated market through another settlement system than that selected by the operator of the regulated market to be suitable for ensuring the effective and proper function of the financial markets.

### Part 5
*Access to regulated markets*

**20.-(1)** Securities dealers, with the exception of investment management companies and management companies, with a licence to execute client orders or trading on their own account, and who are covered by section 4(1), nos. 1-3, Danmarks Nationalbank (Denmark's central bank) and other central banks from Member States of the European Union or from countries with which the Union has entered into an agreement for the financial area, shall have the right to become members of a regulated market, if they comply with the regulations laid down for the market, cf. section 19. Securities dealers, with the exception of investment management companies and management companies covered by section 4(1), no 3, who in their home country are licensed to execute client orders or trade on their own account, but who do not exercise securities trading through a branch or services in Denmark, cf. sections 30 and 31 of the Financial Business Act, shall have the same right.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** Securities dealers covered by subsection (1) and central banks from Member States of the European Union or from countries with which the Union has entered into an agreement for the financial area, shall have the right to become remote members of a regulated market, unless physical presence under the trading procedures and systems of the regulated market is required in order to carry out transactions on the market.

**(3)** An operator of a regulated market may admit other natural or legal persons than those mentioned in subsection (1) as members of the regulated market, if the persons

1) are fit and proper,
2) have sufficient level of trading capacity and competence,
3) have proper administrative procedures to the extent necessary, and
4) have sufficient resources to manage the functions following from membership of the regulated market which shall ensure appropriate settlement of transactions.

**(4)** Notwithstanding subsection (3), an operator of a regulated market may only admit persons domiciled in a country outside the European Union with which the Union has not entered into an agreement for the financial area if these are credit institutions, investment companies or central banks. If the relevant credit institution or investment company is not covered by section 4(1), no 4, admission shall be subject to authorisation from the Danish FSA.

**(5)** An operator of a regulated market shall regularly give notice to the Danish FSA about the changes in the membership of the regulated market.

**(6)** An operator of a regulated market who intends to allow natural or legal persons in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area to become remote members of the regulated market or a multilateral trading facility, shall notify the Danish FSA hereof. The Danish FSA shall within one month deliver such notification to the supervisory authorities of the country where the remote members are domiciled.

## Part 6
*Admission of securities for trading on a regulated market, official listing and public offers of securities exceeding EUR 5,000,000 etc.*

**21.-(1)** An operator of a regulated market shall lay down clear and transparent regulations governing admission of securities for trading on the regulated market. The regulations shall ensure that securities admitted to trading are traded in an honest, proper and effective manner, and that when these are securities covered by section 2(1), no 1, they are freely negotiable. In relation to derivatives, the regulations shall in particular ensure that the derivative contract is drawn up in a manner ensuring correct price formation and effective settlement conditions.

**(2)** An operator of a regulated market shall, in admission of securities for trading on the regulated market, ensure that the regulations laid down pursuant to subsection (1) are met, and that an approved and published prospectus has been presented, cf. section 23(2) and section 24(1).

**(3)** An operator of a regulated market may, without the consent of the issuer, admit a security for trading on the regulated market, if the security, with the consent of the issuer, has been admitted to trading on another regulated market in Denmark or in another Member State of the European Union or in a country with which the Union has entered into an agreement for

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

the financial area. The operator of the regulated market shall inform the issuer that the issuer's securities has been admitted to trading on the regulated market.

**(4)** In admission of a security for trading under subsection (3) compliance with the regulations of this Act on disclosure obligations for issuers and about prospectuses rests with the person giving rise to admission of the security for trading.

**(5)** An operator of a regulated market may, with prior authorisation of the Danish FSA, admit instruments not covered by section 2(1) for trading on the regulated market.

**22.-(1)** The Danish FSA may, upon request from an issuer of shares, share certificates or bonds, make a decision about official listing of the relevant security, if said security has been admitted or will be admitted to trading on a regulated market.

**(2)** The Danish FSA shall lay down regulations on the conditions for official listing of securities, cf. subsection (1), and on suspending and removing the securities from listing.

**23.-(1)** An issuer or a person requesting admission of securities to trading on a regulated market, may not give rise to admission of the securities to trading until an approved prospectus for the relevant securities has been made available to the public, cf. subsection (2) and section 24(1). Similarly, an offeror may not make an offer of securities to the public until an approved prospectus for the relevant securities has been made available to the public, cf. subsection (2) and section 24(1).

**(2)** The Danish FSA shall make decisions regarding the approval of the prospectus.

**(3)** The prospectus shall include the information deemed necessary for investors and their investment counsellor to form a well-founded estimate of the issuers assets and liabilities, financial position, results and future prospects, and of any guarantor, and of the rights attaching to the securities offered to the public or admitted to trading.

**(4)** The regulations in this Part  regarding the duty to publish a prospectus shall, notwithstanding subsection (1), not apply to the following:

1) Money-market instruments, cf. section 2(1) no. 2 with a lifetime of less than 12 months.
2) Negotiable mortgage deeds, cf. section 2(1) no 11.
3) Units in collective investment schemes covered by the Investment Associations, etc. Act
4) Non-equity securities, issued by
   a) a Member State of the European Union or a country with which the Union has entered into an agreement for the financial area, or by one of the relevant country's regional or municipal authorities,
   b) international public-law institutions of which one or more Member States of the European Union or countries with which the Union has entered into an agreement for the financial area, are members,
   c) the European Central Bank or
   d) central banks domiciled in Member States of the European Union or countries with which the Union has entered into an agreement for the financial area.
5)  Shares in a central bank domiciled in a Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area.
6) Securities unconditionally and irrevocably guaranteed by a Member State of the European Union or a country with which the Union has entered into an agreement for the financial area, or by one of the relevant country's regional or municipal authorities.
7) Securities issued with a view to raising funds for non-profit purposes by state-recognised organisations domiciled in a Member State of the European Union or a country with which

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

the Union has entered into an agreement for the financial area, which work for non-profit purposes.

8) Non-equity securities issued in a continuous or repeated manner by credit institutions provided that these securities

    a) are not subordinated, convertible or exchangeable,

    b) do not give a right to subscribe to or acquire other types of securities and that they are not linked to a derivative instrument,

    c) materialise reception of repayable deposits, and

    d) are covered by a deposit guarantee scheme.

9) Securities included in a public offer of securities, where the entire offer is below EUR 5,000,000, the limit being calculated over a period of 12 months.

10) Non-equity securities issued in a continuous or repeated manner by credit institutions where the total consideration of the offer is less than EUR 75,000,000 which limit shall be calculated over a period of 12 months, provided that these securities

    a) are not subordinated, convertible or exchangeable and

    b) do not give a right to subscribe to or acquire other types of securities and that they are not linked to a derivative instrument.

**(5)** An issuer, an offeror or a person requesting admission to trading of securities mentioned in subsection (4), nos. 4, 6, 9 and 10 may, however, draw up a prospectus in accordance with the regulations stipulated in this Part as well as regulations issued pursuant to subsections (7) and (8) and section 24(2).

**(6)** A prospectus shall be drawn up in conformity with the regulations laid down by the Danish FSA pursuant to subsection (7), and shall be presented in such a manner that it is possible to understand the content and to assess the importance of the information given.

**(7)** The Danish FSA shall lay down regulations governing the contents of prospectuses, format, language, advertising and duration as well as omission of information in the prospectus. Moreover, the Danish FSA shall lay down regulations for the approval of prospectuses in cases where the security is requested for trading on several regulated markets in Denmark or on regulated markets in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area.

**(8)** The Danish FSA shall lay down regulations regarding exemption from duty to publish a prospectus, including regulations on exempting specified securities from the duty, as well as regulations on approval of natural persons and small and medium-sized undertakings as qualified investors. Moreover, the Danish FSA shall lay down regulations on admission to a register for natural persons and small and medium-sized undertakings as qualified investors.

**23a.-(1)** The Danish FSA shall notify the issuer, the offerors or the person asking for admission to trading of its decisions regarding the approval of the prospectus within ten business days after receipt of the application for approval of the prospectus.

**(2)** The time limit mentioned in subsections (1) and (5) shall be extended to 20 business days if the offer to the public involves securities issued by an issuer which does not have securities admitted to trading and which has not previously offered securities to the public.

**(3)** If there are reasonable grounds to assume that the documents submitted are incomplete or that supplementary information is needed, the time limits of subsections (1), (2) and (5) shall not apply until the date on which such information is provided by the issuer, the offeror or the person asking for admission to trading. If the documents are incomplete and the time-limit for approval is consequently suspended, the Danish FSA shall notify the relevant person in this respect within ten business days after receipt of the application.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(4)** The Danish FSA may transfer the approval of a prospectus to the competent authority of another Member State of the European Union or a country with which the Union has entered into an agreement for the financial area, provided the competent authority of said country accepts this. The issuer, the offeror or the person asking for admission to trading shall be notified of such transfer within three business days after the date of the Danish FSA's decision regarding the transfer.

**(5)** When the Danish FSA receives an application for approving a prospectus from a competent authority in another Member State of the European Union or a country with which the Union has entered into an agreement for the financial area, the Danish FSA shall notify the issuer, the offeror or the person asking for admission to listing or trading of its decision regarding the approval of the prospectus within ten business days after the competent authority has made its decision regarding the transfer of the approval of the prospectus.

**24.-(1)** Offers to the public of securities and admission of securities to trading on a regulated market may not take place until the prospectus has been published according to the regulations laid down pursuant to subsection (2).

**(2)** The Danish FSA shall lay down regulations governing offers for sale and the publication of prospectuses.

**25.-(1)** An operator of a regulated market may suspend or remove a security from trading on the regulated market, if the security no longer meets the regulations of the regulated market. However, suspension or removal may not take place if it is likely that this will be of significant detriment to the interests of the investors or the proper functioning of the market.

**(2)** An operator who under subsection (1) makes a decision about suspension or removal of a security shall, as soon as possible, make the decision about suspension or removal available to the public and notify the Danish FSA about the relevant information.

**(3)** If an issuer whose securities are admitted to trading on a regulated market, submits a request for removal from trading, the operator of the regulated market shall comply with such request. The removal may, however, not be made if it is likely that this will be to the detriment of the interests of the investors or the proper functioning of the market.

**(4)** An issuer may have a security removed from trading on a regulated market if said security in this connection is or will be admitted to trading or has been admitted to trading on another regulated market.

**26.** (Repealed).

**26a.** The powers that have been assigned to an operator of a regulated market in accordance with the provisions of section 21 shall be exercised by the Danish FSA when an operator of a regulated market in Denmark or in another Member State of the European Union or in a country with which the Union entered into an agreement for the financial area, or a company operating an alternative market place, makes a request for admission of securities to trading on a regulated market. The Danish FSA shall also exercise the powers assigned to an operator of a regulated market, cf. section 25, when securities covered by the 1st clause have been admitted to trading on the regulated market.

## Part 7
*Disclosure obligations*

**27.-(1)** An issuer of securities admitted to trading on a regulated market in Denmark, in another Member State of the European Union or in a country with which the Union has entered

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

into an agreement for the financial area on securities, or for which a request for admission for trading on such market has been made, shall, as soon as possible, disclose publicly inside information, cf. section 34(2), if this information pertains directly to said issuer's activities. The issuer shall be required to disclose publicly such information immediately upon the coming into existence of the relevant circumstances or the occurrence of the relevant event, albeit not yet formalised. Significant changes concerning already publicly disclosed inside information shall be publicly disclosed promptly after these changes occur, and through the same channel as the one used for public disclosure of the original information.

(2) Inside information, which an issuer, as mentioned in subsection (1), or a person acting on his behalf or for his account, discloses to a third party in the normal exercise of his employment, profession or duties, cf. section 36, shall be publicly disclosed in a complete and effective manner simultaneously with the disclosure to said third party. If at the time of the disclosure, the issuer is not aware that disclosure has taken place, public disclosure shall be effected immediately after the issuer learns or ought to have learnt that disclosure of inside information has been effected. If the issuer in other ways than mentioned in the 1st and 2nd clauses learns or ought to have learnt that the inside information is no longer kept confidential, the issuer shall publish this inside information as soon as possible. The 1st and 2nd clauses shall not apply if the third party receiving the inside information is subject to a duty of confidentiality under legislation, administrative provisions, articles of association or a contract, or if the disclosure is effected in such a manner that it is ensured that the receiving third party knows that the information is inside information and that said third party is consequently subject to the ban against disclosure of inside information, cf. section 36.

(3) An issuer shall only be obliged to disclose publicly inside information under subsections (1) and (2) in relation to the regulated markets where the issuer has requested or received approval for admission of securities for trading.

(4) An issuer shall ensure that public disclosure of inside information is effected in such a manner that provides the public with rapid access to said information and that the disclosed information is sufficient for complete, correct and timely assessment of the inside information to be carried out. The issuer may not, in a manner likely to be misleading, combine disclosure of inside information with marketing activities. An issuer shall, as far as possible, ensure that public disclosure be effected simultaneously to all categories of investors in all Member States of the European Union or countries with which Union has entered into an agreement for the financial area, where the issuer has requested or received approval of securities.

(5) A securities issuer as mentioned in subsection (1) shall, without undue delay and for an appropriate period after publication of inside information was effected under subsection (1) or (2), display all this information on its website.

(6) An issuer may under its own responsibility delay the public disclosure of inside information in accordance with subsection (1) such as not to prejudice his legitimate interests provided that such omission would not be likely to mislead the public and provided that the issuer is able to ensure the confidentiality of that information. Legitimate interests under the 1st clause may, in particular, pertain to:

1) Negotiations in course, or related elements, where the outcome or normal pattern of those negotiations would be likely to be affected by public disclosure. If the financial viability of the issuer is in grave and imminent danger, although a petition for bankruptcy or commencement of financial reconstruction has not been submitted, public disclosure of inside information may only be delayed for a limited period, and only if such public disclosure would seriously jeopardise the interests of existing and potential shareholders by undermining the conclusion of specific negotiations designed to ensure the long-term financial recovery of the issuer.

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

**November 2012, GlobalDenmark Translations**

2) Decisions or contracts made or established by the management of an issuer, where approval is required from another company body of the issuer in order for the decision or contract to become effective. The 1st clause shall only apply if publication of the decision made or the establishment of the contract before the approval has been granted would entail a risk that the investors do not carry out a correct assessment of the information disclosed.

**(7)** An issuer of negotiable securities covered by section 2(1), no 1 and admitted to trading on a regulated market in Denmark, in another Member State of the European Union or in another country with which the Union has entered into an agreement for the financial area, shall no later than eight days prior to the annual general meeting, but no later than four months after the end of the financial year, make public the annual report approved by the board of directors. The issuer shall also publish the half-year interim report approved by the board of directors for the first six months of the financial year. The publication of the half-year interim report shall take place as soon as possible after expiry of the half-year period, but no later than two months after said period. The published annual reports and half-year interim reports for issuers in Denmark and from other Member States of the European Union or from countries with which the Union has entered into an agreement for the financial area, shall be prepared in accordance with the accounting legislation of the country in which the issuer is domiciled. The Danish FSA shall lay down regulations on which regulations shall apply with respect of preparing annual reports and half-year interim reports for issuers from other countries. The annual report and the half-year interim report shall be made available to the public for a minimum of five years.

**(8)** An issuer of shares admitted to trading on a regulated market in Denmark, in another Member State of the European Union or a country with which the Union has entered into an agreement for the financial area, shall publish an interim management statement during the first as well as the second half-year period of the financial year. The statement shall be published ten weeks after the beginning of the half-year period in question at the earliest and no later than six weeks before then end hereof. An issuer who publishes quarterly interim reports shall not be obligated to publish the interim management statements mentioned in the 1st clause.

**(9)** The provisions on half-year interim reports laid down in subsection (7) shall only apply to issuers of shares or bonds or other types of negotiable debt instruments, except for securities equivalent to shares in companies, or securities that, if converted or the attached rights are exercised, provide a right to acquire shares or securities equivalent to shares.

**(10)** Subsection (7) shall not apply in relation to units in collective investment schemes covered by the Investment Associations, etc. Act.

**(11)** Subsections (7) and (8) shall not apply to the following issuers:

1) Member States of the European Union or countries with which Union has entered into an agreement for the financial area, or regional or municipal authorities in these countries.
b) International public-law institutions of which one or more Member States of the European Union or countries with which the Union has entered into an agreement for the financial area, are members.
3) The European Central Bank.
d) Central banks domiciled in Member States of the European Union or countries with which the Union has entered into an agreement for the financial area.
5) Issuers who only issue debt instruments admitted to listing or trading on a regulated market in Denmark, or another Member State of the European Union or in a country with which the Union has entered into agreement for the financial area for securities, and whose nominal value per unit is no less than EUR 50,000, or whose nominal value per unit on the

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

date of issue corresponds to no less than EUR 50,000 if the debt instruments are issued in another currency than euro.

**(12)** Subsection (7), 2nd clause shall not apply to issuers who, on 20 January 2004, exclusively issued and continue to exclusively issue debt instruments admitted to trading on a regulated market in Denmark, in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, which is covered by an unconditional and irrevocable guarantee from the issuer's home country in the European Union, or in a country with which the Union has entered into an agreement for the financial area, or regional or municipal authorities in this country.

**27a.-(1)** Issuers of negotiable securities covered by section 2(1), no. 1 shall in connection with publication of information in accordance with this part, ensure that the publication takes place in such a manner that the information quickly becomes available throughout the European Union and countries with which the Union has entered into an agreement for the financial area.

**(2)** An issuer as mentioned in subsection (1) shall, together with the publication, submit the information to the Danish FSA.

**(3)** An issuer as mentioned in subsection (1) shall submit the information published in accordance with to subsection (1) to the Danish FSA, which will store the information. The Danish FSA may identify other authorities or legal persons in and outside Denmark to deal with the task.

**(4)** Subsections (1)-(3) shall not apply to units in collective investment schemes covered by the Investment Associations, etc. Act.

**(5)** Subsections (1)-(3) shall not apply to notifications about holdings of shares in companies admitted to trading on an alternative market place that an issuer is obligated to publish under section 29(1), 3rd clause.

**27b.** (Repealed).

**28.-(1)** A company with shares admitted to trading on a regulated market in Denmark, in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area which acquires or disposes of own shares, shall as soon as possible publish the unit of own shares if the unit reaches, exceeds or falls to less than 5% or 10% of the voting rights.

**(2)** A company as mentioned in subsection (1) which has Denmark has its home country, shall also, as soon as possible publish the unit of own shares if the proportion reaches, exceeds or falls to less than 15, 20, 25, 50 or 90% and limits of one-third or two-thirds of the voting rights.

**(3)** Denmark shall be regarded as home country, if the company

1) has its registered office in Denmark, or
2) is registered in a country outside the European Union with which the Union has not entered into an agreement for the financial area, and Denmark is the place where the company
   a) offered its shares to the public for the first time after 31 December 2003 or
   b) submitted its first application for admission to trading on a regulated market.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**28a.-(1)** Senior employees of companies issuing shares, admitted to trading on a regulated market in Denmark, in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, or for which a request for admission to trading on such a market has been made, shall notify the issuing company of transactions conducted on their own account relating to the company's shares or other securities linked to such shares. Notification shall be given to the issuing company no later than on the next business day after the transaction. If the senior employee has not received the information mentioned in subsection (7) on the next business day after the transaction, said notification shall be given as soon as possible and no later than two business days after the transaction.

**(2)** "Senior employees" shall mean

1) members of the issuing company's board of management or board of directors or supervisory board or a supervisory body linked to the company, or
2) other senior employees of the issuing company who have regular access to inside information relating, directly or indirectly, to the issuer, if the relevant senior employee is authorised to make management decisions of superior importance for the issuer's future business development.

**(3)** Close relations of a senior employee in an issuing company shall notify the relevant senior employee of transactions conducted on their own account relating to shares issued by the relevant company or other securities linked to such shares. Notification shall be given to the senior employee no later than on the next business day after the transaction. If said close relation has not received the information mentioned in subsection (7) on the next business day after the transaction, notification shall be given as soon as possible and no later than two business days after the transaction. The senior employee shall forward notifications received to the issuing company no later than on the next business day after receipt.

**(4)** "Close relations of a senior employee" shall mean the following natural and legal persons with relation to the group of persons mentioned in subsection (2):

1) Spouse or cohabitee.
2) Minors, where the person mentioned in subsection (2) is the parent holding custody.
3) Other relatives who, for a period of no less than one year from the time of the transaction, have belonged to the household of the person mentioned in subsection (2).
4) Legal persons provided
   a) a natural person, covered by subsection (2) or by nos. 1-3 holds the managerial responsibility for the legal person,
   b) natural persons covered by subsection (2) or by nos. 1-3 alone or jointly exercise influence as mentioned in section 31(2) and (3), for the legal person,
   c) the legal person has been established with a view to benefiting financial interests of a natural person covered by subsection (2) or by nos. 1-3, or
   d) the legal person otherwise has financial interests that have significant similarities with the financial interests of a natural person covered by subsection (2) or by nos. 1-3.

**(5)** An issuer shall, no later than on the next business day after receipt of a notification from a senior employee under subsection (1), 1st clause, or subsection (3), 4th clause, report the information received to the Danish FSA. The Danish FSA shall immediately hereafter make such information public.

**(6)** The obligation of a senior employee to give notification under subsection (1), 1st clause, and to forward information received under subsection (3), 4th clause shall only commence if the market prices of the transactions carried out over the course of a calendar year by the senior employee and close relations of the relevant senior employee constitute a total amount

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

of EUR 5,000 or more. If the limit of EUR 5,000 is exceeded the obligation for the senior employee to give notification and to forward information received shall only apply for transactions carried out after the limit was exceeded.

**(7)** Notification under subsections (1) and (3) as well as reporting under subsection (5) shall contain information regarding

1) the name of the natural or legal person obligated to give notification according to subsections (1) or (3),
2) the reason said person has an obligation to give notification,
3) the name of the issuer of the securities in question,
4) the ISIN code and designation of the relevant securities,
5) the nature of the transaction (purchase, sale or other transaction),
6) the trade date and the market on which the transaction was carried out, and
7) the number of securities traded and the market price hereof.

**(8)** The Danish FSA may lay down more detailed regulations on notification, reporting and publication of information covered by subsections (1)-(7).

**28b.-(1)** Any natural or legal person who, as part of performance of profession or business, prepares or disseminates recommendations regarding securities as mentioned in section 27(1) to the public or distribution channels or regarding an issuer of such securities shall ensure that the presentation and dissemination of recommendations is effected in an honest and fair manner and that information is given on any interests or conflicts of interest in relation to the securities or the issuer to whom the recommendation pertains.

**(2)** The Danish FSA shall lay down more detailed regulations on honest and fair presentation and information on interests or conflicts of interest in the preparation and dissemination of recommendations pertaining to securities and issuers hereof.

**28c.** (Repealed).

**29.-(1)** Anyone who holds shares in companies with shares admitted to trading on a regulated market in Denmark, in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area or admitted to trading on an alternative market place shall, in such cases as referred to in subsection (2), notify as soon as possible the company of the share holdings in the company. At the same time as the notification to the company, the relevant person shall submit the information on the holding to the Danish FSA. After receipt of the notification, the company shall publish the contents of the notification.

**(2)** Notification concerning shareholding according to subsection (1) shall be given, if

1) the voting right conferred on the shares represents no less than 5% of the share capital's voting rights or their nominal value accounts for no less than 5% of the share capital, or
2) a change of a holding already notified entails that limits at intervals of 5, 10, 15, 20, 25, 50 or 90% and limits of one-third or two-thirds of the share capital's voting rights or nominal value are reached or are no longer reached or the change entails that the limits stated in no. 1 are no longer reached.

**(3)** The Danish FSA may decide that the duty to notify pursuant to subsection (1) shall cover other securities which grant rights to acquire shares.

**(4)** The Danish FSA shall lay down more detailed regulations on holdings, notification of holdings pursuant to subsections (1) and (2) and the duty to notify rights to exercise voting

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

rights in other circumstances. The Danish FSA may also lay down regulations which derogate from subsection (1).

**29a.** (Repealed).

**30.** The Danish FSA shall lay down regulations governing the obligation of issuers to disclose information, including information on language, content, the method by which publication, registration and storage of information is to take place, as well as the content of the interim management statements. The regulations may derogate from the requirements of this Act on the obligations of the issuer in section 27(7) and (8) and section 27a(1)-(3). The Danish FSA may also lay down regulations on issuers' equal treatment of and communication with shareholders and holders of bonds or other types of tradable debt instruments.

# Part 8
*Takeover bids*

**31.-(1)** If a shareholding is transferred directly or indirectly in a company with one or more share classes admitted to trading on a regulated market or an alternative market place, to an acquirer or to persons who act in concert with him, the acquirer shall give all the shareholders of the company the opportunity to sell their shares on identical terms, if the transfer means that the acquirer obtains a controlling influence over the company, cf. subsections (2) and (3).

**(2)** There shall be controlling influence when the acquirer directly or indirectly holds more than 50% of the voting rights of a company, unless it can be clearly proven in special cases that such ownership does not entail controlling influence.

**(3)** There shall also be controlling influence when an acquirer not owning more than 50% of the voting rights in a company has

1) right of disposal of more than 50% of the voting rights by virtue of an agreement with other investors,
2) authority to manage the financial and operational conditions in a company pursuant to an article of association or an agreement,
3) authority to appoint or dismiss a majority of the members of the supervisory body, and this body has controlling influence of the company, or
4) more than one-third of the voting rights in the company and the actual majority of votes at the general meeting or a similar body, thus having controlling influence over the company.

**(4)** The existence and effect of potential voting rights, including subscription rights and purchase options on shares, which can immediately be utilised or converted, shall be considered when assessing whether an acquirer has controlling influence.

**(5)** When calculating voting rights within a company, voting rights associated with shares owned by the company or its subsidiary undertakings shall be included in the calculation. A company's acquisition of own shares shall, however, be subject to mandatory offers according to subsection (1) if the acquisition expresses circumvention of the limits mentioned in subsections (2) and (3).

**(6)** The obligation referred to in subsection (1) shall not apply if the relevant transfer in subsection (1) is the result of a voluntary bid for all the shareholders to transfer all their shares, and this voluntary offer complies with the obligations of section 32(1).

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

**(7)** The provisions of section 71 of the Companies Act shall apply correspondingly to transfers of voting rights in a company with one or more share classes admitted to trading on an alternative market place.

**(8)** The Danish FSA may grant exemption from the obligation in subsection (1) if special conditions apply.

**32.-(1)** In connection with an offer to acquire shares pursuant to section 31, the acquirer shall draw up and make public an offer document containing information on the financial and other terms of the bid, including the deadline for acceptance of the bid and any other information considered necessary for the shareholders to reach an informed judgement on the bid.

**(2)** Where a bid, which is not subject to mandatory offers pursuant to section 31, is submitted publicly for acquisition of shares in a company with one or several share classes admitted to trading on a regulated market or an alternative market place, an offer document shall also be drawn up in accordance with subsection (1).

**(3)** A decision on making an offer shall be made public immediately.

**(4)** The Danish FSA shall lay down regulations governing mandatory offers under section 31(1), voluntary takeover bids, notifications of decisions about making a bid, the contents of the offer document, including the offeror's duty to disclose intended payment of the target company's resources after completion of a takeover bid, prohibition against entering into agreements about bonuses or similar benefits, the bid price and approval and publication etc. Furthermore, the Danish FSA shall lay down regulations governing the obligation of the offeree company to explain the contents of a bid.

**32a.-(1)** The Danish FSA may refer the supervision of a takeover bid concerning shares in a company with one or more classes of shares, admitted to trading on a regulated market, to the competent authority of another Member State of the European Union or countries with which the Union has entered into an agreement for the financial area.

**(2)** The Danish FSA shall lay down regulations about the legislation applicable and about which authority shall be competent.

## Part 9
*Reporting of transactions and publication of prices and transactions by securities dealers*

**33.-(1)** This part of this Act shall apply to securities dealers except for

1) investment management companies covered by section 4(1), no 2.
2) management companies covered by section 4(1), no 3, and
3) other securities dealers covered by section 4(1), no 3 which exclusively provide services in Denmark, covered by section 31 of the Financial Business Act.

**(2)** A securities dealer, which carries out transactions with securities admitted to trading on a regulated market in Denmark, a regulated market in a Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, or on an alternative market place, shall report information about the transaction as soon as possible and no later than by the closing time on the relevant market the day after completion of the transaction. The information may be reported by the securities dealer, a third party on behalf of the securities dealer or a trade-matching or reporting system approved by the Danish FSA or by the regulated market or the multilateral trading facility through whose systems the transaction is carried out.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** The Danish FSA may decide that the reporting duty shall rest upon other. Furthermore, the Danish FSA may decide that the reporting duty shall cover other securities not admitted to trading on a regulated market or an alternative market place.

**(4)** A securities dealer shall file all relevant information about all transactions with financial instruments carried out by the securities dealer on its own or a client's account, for a minimum of five years after carrying out the transaction.

**(5)** The Danish FSA may lay down more detailed regulations on the reporting duty, including scope and contents, and the venue of reporting.

**33a.-(1)** Securities dealers that systematically internalise, meaning that the securities dealers on an organised, frequent and systematic basis, deal on their own account by carrying out client orders outside a regulated market or a multilateral trading facility, in shares admitted to trading on a regulated market in Denmark, or a regulated market in a Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, shall publish binding prices of the shares that are systematically internalised.

**(2)** Subsection (1) shall apply if there is a liquid market for the relevant share. If no liquid market exists for the relevant share, securities dealers who systematically internalise, cf. subsection (1), shall upon request notify their clients of binding prices.

**(3)** Subsections (1) and (2) shall only apply to deals of up to normal market size.

**(4)** The Danish FSA may lay down more detailed regulations on the duty of securities dealers to publish binding prices, including on contents, publication, the possibility of withdrawing prices, the duty to carry out orders at set prices, the execution of orders from professional clients, access to the set prices of securities dealers, and on the securities dealers' possibility of limiting the number of transactions.

**33b.-(1)** Securities dealers who, on their own or a client's account, carry out transactions in shares admitted to trading on a regulated market in Denmark or in a Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, and where such transactions are carried out outside a regulated market or a multilateral trading facility in Denmark or in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, shall publish information about price, volume and date of the completion of the transaction. The information shall be made available to the public on reasonable commercial terms, as close to real time as possible and in a manner which is easily available to other market participants.

**(2)** A securities dealer may postpone the publication under subsection (1) on the basis of the size and type of the transaction.

**(3)** The Danish FSA shall lay down more detailed regulations on the duty of securities dealers to publish information about price, volume and the date of transactions carried out in other securities than shares.

**(4)** The Danish FSA may lay down more detailed regulations on the duty to publish under subsection (1) and postponement of publication under subsection (2).

**Part 10**

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

*Abuse of inside information, price manipulation and measures for the prevention of market abuse*

**34.-(1)** The regulations in this part of this Act shall include abuse of inside information and price manipulation and measures for the prevention of market abuse regarding

1) securities admitted to trading on a stock exchange in Denmark, in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, or similar foreign markets for securities, and securities for which a request for admission to listing or trading on such markets has been made, and
2) securities which are not covered by no. 1, but which are linked to one or more securities as mentioned in no. 1, and units covered by section 2(1), no. 3.

**(2)** "Inside information" shall mean information of a precise nature which has not been made public, relating to issuers of securities, securities, or market conditions which, if it were made public, would be likely to have a significant effect on the market price of one or more securities. Information shall be regarded as published once, for the market, there has been general and relevant dissemination hereof.

**(3)** In subsection (2):

1) Information of a precise nature shall mean information which
   a) indicates a set of circumstances which exists or may reasonably be expected to come into existence or an event which has occurred or may reasonably be expected to do so and
   b) is specific enough to enable a conclusion to be drawn as to the possible effect of that set of circumstances or event on the market price of the relevant securities.
2) Information which would be likely to have a significant effect on the market price of one or more securities shall mean: Information a reasonable investor would be likely to use as part of the basis of investment decisions.

**(4)** For securities dealers and the employees of such undertakings, inside information shall also mean information conveyed by a customer and related to the client's pending orders, provided the information otherwise meets the requirements of subsections (2) and (3).

**(5)** With regard to trade in commodities instruments, "inside information" shall mean information of a precise nature which has not been made public relating, directly or indirectly, to one or more such instruments and which users of markets on which such instruments are traded would expect to receive in accordance with accepted market practices on those markets. Users of markets for commodities instruments expect to receive information that

1) is routinely made available to the users of those markets, or
2) is required to be disclosed in accordance with legal or regulatory provisions, market rules, contracts or customs on the commodity instruments market or relevant underlying commodity market.

**35.-(1)** Purchase, sale or recommendation to buy or sell a given security may not be performed by any person with inside information, which could be of importance to the transaction in question.

**(2)** The provision in subsection (1) shall not apply to

1) purchase of securities effected in the context of a public takeover bid for the purpose of gaining control of that company or proposing a merger with that company with one or several share classes admitted to trading on a regulated market in Denmark, in another

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

Member State of the European Union, or in a country with which the Union has entered into an agreement for the financial area, or corresponding foreign markets for securities, if the inside information was obtained in connection with an investigation of the company carried out with a view to making the offer to purchase, and

2) buying and selling of securities conducted in the discharge of an obligation, provided that this obligation has become due at the time of the transaction and where that said obligation results from an agreement concluded before the person concerned possessed inside information.

**(3)** Notwithstanding the provision laid down in subsection (1), securities dealers and the employees of such undertakings may, loyally, carry out an order from a clients. Moreover, such persons may pursue normal activities if such activities are carried out as a normal part of the function of said securities dealer as market-maker in the security concerned.

**(4)** The provisions of subsection (1) shall not apply to transactions carried out by a sovereign state, its central bank, the European System of Central Banks or the person acting on behalf of said state or banks, in pursuit of monetary, exchange-rate or public-debt-management policies.

**(5)** The provision of subsection (1) shall not apply to trading in own shares in buy-back programmes or to securities as part of the stabilisation of the price of a security, provided such trading is carried out in accordance with Commission Regulation (EC) no. 2273/2003 of 22 December 2003 implementing Directive 2003/6/EC of the European Parliament and of the Council as regards exemptions for buy-back programmes and stabilisation of financial instruments.

**36.** Any person with inside information may not disclose such information to any other person unless such disclosure is made within the normal course of the exercise of his employment, profession or duties.

**37.-(1)** An issuer with Denmark as its home country, cf. section 28(3) and which has securities as mentioned in section 34(1), no. 1, and its parent company shall draw up internal rules governing the access for members of the board of directors, members of the supervisory board, members of the board of management and other employees to deal for their own or any third party's account in the securities issued by said issuer, cf. the first limb, as well as in any financial instruments attached hereto. Similar regulations shall be prepared by public authorities and undertakings, including securities dealers, lawyers and accountants who, by virtue of the exercise of their profession or business, regularly come into possession of inside information. If the undertakings mentioned in the 1st and 2nd clauses are organised as partnerships, limited partnerships or similar, the internal rules shall also apply to the owners of such undertakings.

**(2)** An issuer with Denmark as its home country, cf. section 28(3) and with securities as mentioned in section 34(1), no. 1 shall lay down internal rules for the purpose of preventing inside information from becoming available to others than those needing such information. Similar regulations shall be prepared by public authorities and undertakings, including securities dealers, lawyers and accountants who - by virtue of the exercise of their profession or business - regularly come into possession of inside information.

**(3)** Internal rules prepared by an issuer pursuant to subsection (2), 1st clause, shall, as a minimum, contain provisions effectively ensuring that

1) persons other than those who require it for the exercise of their functions within the issuer do not gain access to inside information,

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

2) persons who have access to inside information know the legal and regulatory duties entailed and are aware of the sanctions attaching to misuse or unauthorised circulation of such information, and

3) public disclosure of inside information is effected immediately, if the issuer ascertains that disclosure has taken place, cf. however section 27(2), 4th clause.

**(4)** A securities issuer as mentioned in section 34(1), no. 1, shall prepare and update on an ongoing basis a list of those persons working for them and having access to inside information. Similar lists shall be prepared by natural and legal persons who act on behalf of an issuer as mentioned in the 1st clause or at the expense of such issuer. The persons covered by the lists shall be notified hereof immediately. The 1st to 3rd clauses shall not apply to a sovereign state, the central bank of such state, the European System of Central Banks or the person acting on behalf of said state or banks when the issue of securities takes place as part of their monetary, exchange-rate or public-debt-management policies.

**(5)** Internal rules issued pursuant to subsections (1) and (2) and lists prepared pursuant to subsection (4) shall, upon request, be submitted to the regulated market and the Danish FSA.

**(6)** Securities dealers and the employees of these undertakings carrying out transactions with securities as mentioned in section 34(1), shall, without undue delay, inform the Danish FSA if it is reasonable to assume that a transaction constitutes a violation of section 35(1) or section 39(1). However, this shall only apply if the transaction was carried out as part of a loyal execution of a client's order, cf. section 35(3) and section 39(2). Notification as specified in the 1st clause which a securities dealer or its employees carry out for a good reason, shall not be considered a breach of regulations regarding duty of confidentiality, irrespective of whether such regulations are laid down by an act, executive order or a contract.

**(7)** Securities dealers and the employees of these undertakings that have notified the Danish FSA pursuant to subsection (6) shall be obliged to keep secret the fact that such notification has been effected. Fulfilment of the duty to keep the notification secret as mentioned in the 1st clause shall not entail any kind of responsibility on the part of the relevant securities dealer or its employees.

**(8)** In the event that a securities dealer participates in securities transactions, the buyer or seller of said securities shall identify himself to the securities dealer. The identification shall comprise name, address, civil registration number (CPR number) or business registration number (CVR number) or similar identification if the party in question does not have a CPR number or a CVR number. If the transaction takes place on behalf of any third party, this shall also be notified.

**(9)** The securities dealer shall register the information specified in subsection (8) and keep the information for five years.

**(10)** The Danish FSA shall lay down more detailed regulations regarding preparation and maintenance of lists under subsection (4) and regarding the content and extent of the obligation to give notification under subsection (6), 1st clause.

**38.-(1)** "Price manipulation" shall mean acts covered by nos. 1-4 which are likely to influence the price of securities covered by section 34(1) in a direction deviating from their value on the market through

1) dissemination of information through the media or other methods likely to give false or misleading signals as to the supply of, demand for, or price of securities,

2) transactions or orders to trade likely to give false or misleading signals as to the supply of, demand for or price of securities,

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

3) transactions or orders to trade which employ fictitious devices or any other form of deception or contrivance, or

4) transactions or orders to trade through which secure, by a person, or persons acting in collaboration, the price of one or several securities at an abnormal or artificial level.

**(2)** Price manipulation under subsection (1) may, for example, include

1) sending out an expression of opinion through the media regarding a security or an issuer of a security after having previously acquired a certain amount of the relevant security if, at a later time, profit is gained from the impact of the opinions voiced on the price of the security, and if the conflict of interest is not disclosed to the public in a proper and effective manner no later than at the time said expression of opinion is sent out,

2) the buying or selling of securities at the close of the market with the effect of misleading investors acting on the basis of closing prices, or

3) conduct by a person, or persons acting in collaboration, to secure a dominant position over the supply of or demand for a security which has the effect of fixing, directly or indirectly, purchase or sale prices of the security at an abnormal or artificial level or creating other unfair trading conditions for the transaction.

**(3)** In the application of the provision in subsection (1), no. 1 in relation to editors and editing employees who, in their professional capacity, disseminate information, account shall be taken of the regulations applicable for the profession of such persons. The 1st clause shall not apply if the relevant editor or editing employee derives, directly or indirectly, an advantage or profits from the dissemination of the information in question.

**(4)** The provisions in subsection (1), nos. 2 and 4 shall not apply if the person who has entered into the transaction or placed the order for trade proves that the transaction or the order for trade conforms to accepted market practices and that the reason for entering into such transaction or placing such order was legitimate. The Danish FSA shall make a decision regarding acceptance of market practices.

**(5)** The Danish FSA shall lay down more detailed regulations regarding transactions, orders for trade and dissemination of information that may be regarded as price manipulation under the provisions in subsection (1), nos. 1-4. The Danish FSA shall also lay down more detailed regulations for the circumstances under which a transaction or order for trade may be regarded as being in accordance with accepted market practices under the provision in subsection (4).

**39.-(1)** Price manipulation or attempts at such manipulation may not take place.

**(2)** Notwithstanding the provision laid down in subsection (1), securities dealers and the employees of such undertakings may, loyally, carry out an order from a client.

**(3)** The provisions of subsection (1) shall not apply to transactions carried out by a sovereign state, its central bank, the European System of Central Banks or the person acting on behalf of said state or banks, in pursuit of monetary, exchange-rate or public-debt-management policies.

**(4)** The provision of subsection (1) shall not apply to trading in own shares in buy-back programmes or to securities as part of the stabilisation of the price of a security, provided such trading is carried out in accordance with Commission Regulation (EC) no. 2273/2003 of 22 December 2003 implementing Directive 2003/6/EC of the European Parliament and of the Council as regards exemptions for buy-back programmes and stabilisation of financial instruments.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**39a.** Section 34(2)-(5), section 35(1)-(4), section 36, section 37(6)-(10), section 38 and section 39(1)-(3) shall also apply to trading with securities admitted to trading on an alternative market place. In addition, Commission Regulation (EC) of 22 December 2003 implementing Directive 2003/6/EC of the European Parliament and of the Council as regards exemptions for buy-back programmes and stabilisation of financial instruments, cf. section 35(5) and section 39(4), shall also apply to trading with securities admitted to trading on an alternative market place.

**39b.** The Danish FSA may lay down regulations regarding shortselling of securities, including prohibitions, disclosure obligations and other terms for shortselling.

## Part 11
*(Repealed).*

## Part 11a
*(Repealed).*

## Part 11b
*Operation of a multilateral trading facility*

**40.-(1)** A "Multilateral trading facility (MTF)" shall mean a trading system with the exception of regulated markets, where within the system and in accordance with the non-discretionary rules hereof, a plurality of third party's interests in the purchase and sale of financial instruments covered by section 2, nos. 1-10 are brought together in a way that results in an agreement of transfer.

**(2)** A company that operates a multilateral trading facility shall

1) have regulations that ensure fair and correct trading and include objective criteria for effective execution of orders,
2) have regulations that lay down criteria for determining which securities may be traded through the systems of the trading facility,
3) ensure that the users have access to sufficient publicly available information for the clients to make an investment assessment,
4) have regulations establishing objective criteria that comply with the requirements of section 42a on access to the trading facility.
5) inform the users of the trading facility of their respective responsibility for settling transactions carried out in the systems of the trading facility, and ensure an effective settling of these transactions,
6) monitor that users of the trading facility are in compliance with the regulations for the trading facility, and
7) register the transactions that are carried out by members of the market by use of the trading facility, with a view to identifying violations of the trading facility's regulations, trading conditions in violation of the regulations for the trading facility or behaviour that may involve violation of Part 10.

**41.-(1)** A company operating a multilateral trading facility shall publish current prices and the market depth of these prices of shares that are traded in the systems of the trading facility, if the shares are at the same time admitted to trading on a regulated market. This information shall, within the normal opening hours of the trading facility, regularly be made available to the public on fair commercial terms.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** The Danish FSA may exempt a company operating a multilateral trading facility from the obligation of subsection (1) on the basis of market model, order type or order size.

**(3)** The Danish FSA shall lay down specified regulations on the obligation to disclose information under subsection (1) and on exemption under subsection (2).

**42.-(1)** A company that operates a multilateral trading facility shall publish price, volume and date of transactions carried out in systems of the trading facility, if the shares are at the same time admitted to trading on a regulated market. This information shall be made available to the public on fair commercial terms and as close to real time as possible, unless the information about the transactions is published through a regulated market's systems.

**(2)** A company operating a multilateral trading facility may lay down regulations on postponement of publication based on the size or type of the transactions. These regulations shall be approved by the Danish FSA. The company that operates the multilateral trading facility shall publish the approved regulations.

**(3)** The Danish FSA shall lay down more detailed regulations on a duty to publish price, volume and date of transactions carried out through the systems of a multilateral trading facility with other securities than shares.

**(4)** The Danish FSA may lay down more detailed regulations on the duty to disclose information under subsection (1), and on the possibility of postponement of publication under subsection (2), including the conditions herefor.

**42a.** A company operating a multilateral trading facility may only grant access to the trading facility to the following natural or legal persons:

1) Securities dealers, cf. section 4.
2) Securities dealers, as mentioned in section 4(1), nos. 3 and 4, who do not carry out business activities through a branch or provide services in Denmark, cf. sections 30 and 31 of the Financial Business Act.
3) Other natural or legal persons, if the persons
    a) are fit and proper,
    b) have sufficient level of trading facility and competence,
    c) have, where applicable, adequate organisational arrangements, and
    d) have sufficient resources for the role they are to perform, taking into account participation in trading at the multilateral trading facility established in order to guarantee the adequate settlement of transactions.

**42b.-(1)** A company operating a multilateral trading facility may not, without prior approval from the Danish FSA, enter into an agreement with clearing centres or other undertakings that clear or settle transactions involving money or securities.

**(2)** If the agreement as mentioned in subsection (1) is intended to be made with a party domiciled in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, the Danish FSA may dispense with approving such agreement if it can be established that the agreement will prevent appropriate operation of the multilateral trading facility, or if the Danish FSA finds that clearing and settlement in accordance with the agreement cannot be carried out in a technically lawful manner.

*Special regulations on the operation of alternative market places*

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**42c.-(1)** Companies that operate an alternative market place may only admit securities to trading on the alternative market place, if

1) the issuer of the security has made a request herefor, and
2) the security has not been admitted to trading on a regulated market in Denmark or similar markets in other countries.

**(2)** In relation to securities dealers from countries outside the European Union with which the Union has not entered into an agreement for the financial area covered by section 42a, no. 2 and other natural or legal persons from such countries, except for central banks, access to an alternative market place shall be by prior approval from the Danish FSA.

**(3)** A company that operates an alternative market place shall lay down regulations on the issuers' disclosure obligation.

**42d.-(1)** Companies operating an alternative market place shall have exclusive right to using the words "alternative market place" in their name. Other natural or legal persons may not use names or descriptions for their activities that may create the impression that they are operating an alternative market place.

**(2)** Companies which have been granted permission from the Danish FSA to operate an alternative market place shall use a description for the alternative market place indicating that it is in fact an alternative market place. Companies which operate alternative market places shall not be subject to the obligation of the 1st clause, if it is clear on the alternative market place which regulations are linked to the securities which have been admitted to trading on the relevant alternative market place.

**42e.-(1)** A company operating an alternative market place may suspend or remove a security from trading on the alternative market place. Suspension and removal may, however, not be made if it is likely that this will be to the detriment of the interests of the investors or the proper functioning of the market.

**(2)** If an issuer whose securities are admitted to trading on a regulated market, submits a request for removal from trading, the company operating the alternative market place shall comply with such request. However, removal may not take place if it is likely that this will be of significant detriment to the interests of the investors or the proper functioning of the market.

**(3)** An issuer shall be entitled to have a security removed from trading on an alternative market place if the security in that connection is admitted to trading or has been admitted to trading on another alternative market place.

**(4)** Trading with a security shall cease no later than at the same time as the security has been admitted to trading on a regulated market.

**42f.** The powers which in section 42c are ascribed to a company operating an alternative market place, shall be exercised by the Danish FSA if an operator of a regulated market in Denmark or in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, or a company operating an alternative market place, makes a request for admission of securities for trading on the alternative market place. The Danish FSA shall also exercise the powers which in section 42e are ascribed to a company operating an alternative market place if securities covered by the 1st clause are admitted to trading on the alternative market place.

**Part 12**

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

*Prospectuses in connection with public offers of securities between EUR 1000,000 and EUR 5,000,000*

**43.-(1)** This part shall apply to offers to the public of securities when the offer lies between EUR 1000,000 and EUR 5,000,000.

**(2)** This part shall apply to securities as mentioned in section 2(1), no 1, except for bonds with a term of less than one year.

**(3)** The Danish FSA may lay down regulations stipulating that offers of specified securities be exempted from this Act.

**44.-(1)** An offeror may not make an offer of securities to the public until an approved prospectus has been made available to the public for these securities, cf. subsection (2) and section 46(1).

**(2)** The Danish FSA shall make decisions regarding the approval of the prospectus.

**(3)** The prospectus shall include the information deemed necessary for investors and their investment counsellor to form an informed judgement of the assets and liabilities, financial position, results and future prospects, and of any guarantor, and of the rights attaching to the securities offered to the public.

**(4)** A prospectus fulfilling the requirements laid down in sections 23-24 and in regulations issued pursuant to section 23(7) and (8) and section 24(2) may replace the prospectus referred to in subsection (1).

**(5)** A prospectus which meets the requirements for prospectuses under the provisions of Directive 2003/71/EC as amended by Directive 2010/73/EU and which has been approved by the competent authorities in a Member State of the European Union or a country with which the Union has entered into an agreement for the financial area, shall rank equal to the prospectus referred to in subsection (1). Before publication, the prospectus shall be presented to the Danish FSA, and the Danish FSA shall ensure that the conditions under the 1st clause have been met.

**(6)** The Danish FSA shall lay down regulations regarding the contents of the prospectus, language, submission, validity and advertisement.

**45.-(1)** Prospectuses as mentioned in section 44 shall be submitted to the Danish FSA.

**(2)** The Danish FSA shall ensure that the prospectuses referred to in section 44 comply with the regulations of this Part and the provisions laid down in pursuance hereof.

**(3)** Receipt of prospectuses referred to in section 44 shall be registered with and made public by the Danish Business Authority.

**(4)** The Danish FSA shall lay down regulations governing payment of fees for the processing of prospectuses.

**(5)** The Danish Business Authority shall lay down regulations governing publication of receipt of prospectuses covered by this Part and governing the payment of fees for publication.

**46.-(1)** Offers to the public may not take place until the prospectus has been published according to the regulations laid down in pursuance of section 45(5).

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** The Danish FSA may lay down regulations regarding the detailed contents of the material concerning public offers.

**Part 13**
*(Repealed).*

**47.-(1)** (Repealed).

**Part 14**
*(Repealed).*

**48.** (Repealed).

**49.** (Repealed).

**III**
**Clearing, settlement and financial collateral, etc.**
**Part 15**
*Clearing activities*

**50.-(1)** "Clearing" shall mean the calculation of obligations and rights pertaining to an agreed exchange of financial instruments, whether in connection with netting, cf. subsection (3), or for each transaction.

**(2)** "Settlement" shall mean any exchange of services for the purpose of fulfilling the obligations of the parties.

**(3)** "Netting" as specified in section 57 shall mean conversion into one to a net claim or a one net obligation of claims and obligations resulting from transfer orders which a participant or participants either issue to, or receive from, one or more other participants with the result that only a net claim can be demanded or a net obligation be owed.

**(4)** "Interoperable systems" shall mean two or more systems which have entered into an agreement with one another according to which transactions shall be cleared, cleared and settled or settled across the systems. Where relevant, the 1st clause shall also include the systems operator, cf. subsection (5), of an interoperable system.

**(5)** A "systems operator" shall mean the entity or entities which hold the legal responsibility for the operation of a system, including an interoperable system.

**(6)** "Securities clearing activities" shall mean regular activities where clearing, settlement or clearing and settlement of securities transactions are carried out on behalf of a clearing participant, and this shall include being a party to transactions or otherwise securing the completion of the transactions. The Danish FSA shall, in cases of doubt, decide whether securities clearing activities are being carried out.

**(7)** A "clearing participant" shall mean a party which have entered into an agreement with a clearing centre on regularly participating in clearing, settlement or clearing and settlement.

**(8)** An "indirect participant" shall mean an indirect participant as defined in Directive 2009/44/EC of the European Parliament and of the Council.

**51.** Securities clearing activities may only be carried out by clearing centres and Danmarks Nationalbank (Denmark's central bank).

**52.-(1)** The board of directors of a clearing centre shall be responsible for the activities of the centre being conducted in an adequate and proper manner. The individual clearing centre shall lay down regulations governing clearing and settlement and ensure that all parties involved are treated equally. The terms relating to the clearing centre's settlement of

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

payments at Danmarks Nationalbank (Denmark's central bank) shall not be covered by the 2nd clause.

**(2)** A clearing centre may lay down more detailed regulations governing the securities, which can be cleared, settled, or cleared and settled, at the centre.

**53.-(1)** A clearing centre may keep cash accounts for clearing participants and arrange for the lending and borrowing of money and securities in connection with clearing, settlement, or clearing and settlement of securities transactions. More detailed regulations in this respect shall be laid down in a participation agreement, cf. section 54.

**(2)** A clearing centre may carry out other activities that are ancillary to the undertaking as a clearing centre, including operation of a regulated market or a central securities depository. If a clearing centre is operating a regulated market as an ancillary activity, the clearing centre may also operate a multilateral trading facility. The Danish FSA may decide that the ancillary activity shall be exercised in another company. If the clearing centre operates a regulated market as an ancillary activity, a multilateral trading facility may always be operated by the same company as the regulated market.

**(3)** If a clearing centre operates a central securities depository, a regulated market or a multilateral trading facility as an ancillary activity, the requirements for licence and operation of these types of activities of this Act, shall apply. In connection with ancillary operation of a multilateral trading facility, the requirements for licence and operation of this type of activity in the Financial Business Act, shall furthermore apply.

## Part 16
### *Participation agreements with a clearing centre*

**54.-(1)** A clearing participant shall enter into a participation agreement with the clearing centre. Such agreement may be concluded for the purpose of clearing and settling own, a third party's, or own and a third party's securities transactions.

**(2)** Securities dealers, credit institutions and investment companies which have been granted a licence in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, and which do not carry out securities trading through a branch or provide services in Denmark, clearing centres, the Agency for Governmental Management, Danmarks Nationalbank (Denmark's central bank), and central banks in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, may clear and settle transactions on behalf of third parties.

**(3)** Securities dealers, credit institutions and investment companies which have been granted a licence in another country within the European Union or in a country with which the Union has entered into an agreement for the financial area, shall be permitted to enter into an agreement with the clearing centre if they satisfy the conditions laid down in subsection (4). The clearing centre may decide that others are to be permitted to enter into a participation agreement.

**(4)** The clearing centre shall lay down regulations governing participation as a clearing participant, including the conditions to be satisfied by the clearing participants in order to participate in clearing and settlement of own, a third party's, or own and a third party's transactions.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(5)** If a clearing participant grossly or repeatedly ignores the terms of the participation agreement, the clearing centre may terminate the agreement.

## Part 17
*Risk hedging*

**55.-(1)** If a clearing centre or a clearing participant grants loans to a clearing participant in connection with settlement of securities transactions or payments in such clearing centre, it may be agreed with the borrower in advance that the borrower's investment securities, which are held with a central securities depository in one or more custody accounts as specified by the borrower, may serve as collateral for the repayment of such loans.

**(2)** If a designated payment system or a participant in such a system grants loans to a participant or an indirect participant in the system in connection with settlement of securities transactions within the system, it may be agreed with the borrower in advance that the borrower's investment securities, which are held with a central securities depository in one or more accounts as specified by the borrower, may serve as collateral for the repayment of such loans.

**(3)** If securities clearing activities are carried out or if a payment system is operated by Danmarks Nationalbank (Denmark's central bank), and the securities clearing centre, the payment system, or a participant in the securities clearing activities or the payment system, grants loans to a participant or an indirect participant in connection with settlement within the system, it may be agreed with the borrower in advance that the borrower's investment securities, which are held with a central securities depository in one or more custody accounts as specified by the borrower, may serve as collateral for the repayment of such loans.

**(4)** Subsection (3) shall apply correspondingly where a clearing centre or a payment system, which has been notified to the Commission in pursuance of Article 10, first subparagraph of Directive 98/26/EC of the European Parliament and of the Council (the Finality Directive), settles payments in accounts with Danmarks Nationalbank (Denmark's central bank). It shall be a condition that the agreement on collateral is governed by Danish law.

**(5)** In cases where loans are granted in connection with settling of securities and payments in systems, where the loans are not covered by subsections (1)-(4), the Danish FSA shall approve that it may be agreed with the borrower in advance that the borrower's investment securities, which are held with a central securities depository in one or more accounts as specified by the borrower, may serve as collateral for the repayment of such loans. Approval shall be conditional upon the agreement on collateral being governed by Danish law.

**(6)** If an agreement referred to in subsections (1)-(5) has been registered at a central securities depository and if loans are granted for purposes of settlement, a charge on the investment securities concerned may be notified in connection with said settlement, cf. subsections (1)-(5), to the central securities depository with a view to book-entry. Protection against legal proceedings and transferees pursuant to the regulations laid down in part 22 of this Act shall only be obtained through such book-entry.

**(7)** If a clearing centre or a clearing participant has paid for another natural or legal person's acquisition of investment securities settled through a clearing centre, a charge may be registered by book-entry at a central securities depository as collateral for the payer's claim against the acquirer on the acquired securities which at the same time are registered by book-entry on the acquirer's account with said central securities depository and which have not, as agreed with the payer, been transferred by sale settled at the same time as the acquisition. By

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

registration of the charge, protection shall be obtained against legal proceedings and transferees pursuant to the regulations laid down in part 22 of this Act.

**(8)** The Danish FSA shall lay down more detailed regulations governing the time limits within which a lender by notice is to be required to assert the charge notified pursuant to subsections (6) and (7). Registration of the charge shall be cancelled without notice pursuant to section 68 if the charge has not been asserted before expiry of the time limit. In exceptional circumstances, a central securities depository may postpone the time limit referred to in the 2nd clause, including in the event of operational problems or if Danmarks Nationalbank (Denmark's central bank) has given notification that its payment systems are out of order due to technical problems.

**56.-(1)** Investment securities on which a charge has been registered pursuant to section 55(6) or (7), may, if advance agreement has been concluded in this respect or if the transaction has been concluded between a securities dealer and a securities dealer or an institutional investor or similar professional investor, be immediately realised after the expiry of the time limit fixed by the Danish FSA pursuant to section 55(8) provided that the borrower has not already fulfilled his obligations. The time limit mentioned in the 1st clause may be derogated from upon agreement between the parties if the charge has been registered pursuant to section 55(6) or (7).

**(2)** Securities provided as collateral to a clearing centre or a clearing participant for the purpose of fulfilling the regulation laid down by the clearing centre governing provision of collateral may be immediately realised if a previous agreement has been concluded hereon and the clearing centre's regulations governing provision of security have been violated.

## Part 18
*Payment systems, netting, etc.*

**57.-(1)** An agreement between systems participants and a clearing centre, a designated payment system, interoperable systems or Danmarks Nationalbank (Denmark's central bank) on netting pertaining to all transfer orders, may with effect towards the estate and creditors, also include a provision to the effect that such transfer orders shall be netted, cleared and settled or reversed in full if one of the parties, including a systems participant in an interoperable system, is declared bankrupt or a notice of financial reconstruction has been submitted, and provided that the transfer orders were included in the system before the bankruptcy order or the financial reconstruction have commenced.

**(2)** Agreements on netting pursuant to subsection (1) may include transfer orders which are not included in the clearing centre, Danmarks Nationalbank (Denmark's central bank), the designated payment system or an interoperable system until after the bankruptcy order or a financial reconstruction has commenced, but on the business day of the bankruptcy order or commencement of the financial reconstruction, if the systems operator, the interoperable system, the clearing centre, the designated payment system or Danmarks Nationalbank (Denmark's central bank), at the time when the claim became irrevocable, cf. section 57c, neither was nor should have had knowledge of the bankruptcy or the commencement of financial reconstruction. In cases where a transfer order has been entered into the system on the business day of the bankruptcy order or commencement of financial reconstruction but after expiry of the day when the bankruptcy has been published in the Danish Official Gazette, it shall rest on the system to prove that the system neither was nor should have had knowledge about the bankruptcy.

**(3)** Agreements on netting with foreign clearing centres and payment systems notified to the Commission pursuant to Article 10, 1st paragraph of Directive 98/26/EC of the European

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

Parliament and of the Council shall have the same legal effect as the agreements specified in subsection (1) above.

**(4)** The Danish FSA may approve that agreements on netting not covered by subsection (3) and entered into with foreign clearing centres and payment systems or corresponding foreign undertakings which carry out securities clearing activities or clearing of payments outside of the European Union or countries with which the Union has entered into an agreement will have legal effect pursuant to subsection (1).

**(5)** Agreements as specified in subsection (1) shall, in order to have legal effect towards the estate and creditors, be submitted to the Danish FSA prior to the bankruptcy order or commencement of a financial reconstruction. If the agreement concerns a designated payment system covered by section 86(2), in order to have legal effect towards the estate and the creditors prior to the bankruptcy, commencement of a financial reconstruction , the agreement shall be submitted to Danmarks Nationalbank (Denmark's central bank).

**(6)** Agreements under subsections (1) and (4) shall contain objective conditions pertaining to the cases in which transfer orders, which have been entered into but not settled, are either

1) fulfilled in accordance with the netting agreement, or
2) revoked.

**57a.-(1)** The Danish FSA may designate a payment system where this system is subject to Danish law and at least one participant has its head office in Denmark with the effect that netting agreements and agreements on collateral regarding settlement of payment will have legal effect in accordance with the provisions in section 57(1), cf. however section 57(5), and the provisions in section 57b(1) and (2). Participants in the payment system shall be credit institutions as defined in Article 1, 1st indent of Directive 77/780/EEC, investment companies as defined in Article 1, no. 2 of Directive 2004/39/EC, public authorities, or others, who the Danish FSA considers as having significant importance to the settlement of payments. Indirect participants in the payment system shall be credit institutions as defined in Article 1, 1st indent of Directive 77/780/EEC.

**(2)** The Danish FSA shall ensure that the regulations and participation agreements applicable to the system and participants include provisions stipulating

1) the system is to be subject to Danish law,
2) who may be direct participants in the system,
3) who may be indirect participants in the system,
4) the conditions governing representation of indirect participants by direct participants,
5) whether clearing is to be by netting, cf. section 50(3) for each transaction or a combination hereof,
6) which requirements the system makes concerning collateralisation with a view to ensuring settlement within the system,
7) the conditions mentioned in section 57c and
8) terms and conditions in any agreement concluded by the system with a settlement agent or a clearing institution as defined in Article 2(d) and (e) of Directive 98/26/EC of the European Parliament and of the Council.

**(3)** The Danish FSA may order a designated payment system to amend the regulations and participation agreements issued pursuant to subsection (2).

**(4)** The Danish FSA may stipulate requirements regarding the capital base of a designated payment system, requirements regarding management, cf. section 9, requirements regarding

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

audits and preparation of operation plans, administrative procedures, and adequate control measures and security measures, including measures within IT.

**(5)** The system shall submit notification to the Danish FSA specifying the direct and indirect participants in the system and any changes thereto.

**(6)** The Danish FSA may require registration under subsection (1) of payment systems where significant considerations for settlement of payment or society warrant such.

**(7)** Powers under subsections (1) to (6) shall be exercised by Danmarks Nationalbank (Denmark's central bank) in the case of a payment system covered by section 86(2).

**57b.-(1)** Transactions involving collateral provided towards Danmarks Nationalbank (Denmark's central bank), a clearing centre, a designated payment system, interoperable systems or participants in such systems cannot be rendered null and void pursuant to section 70(1) or section 72(2) of the Bankruptcy Act. Reversal may be carried out, if

1) the security has not been provided without undue delay after the lack of such collateral arose, or
2) the security has been provided under such circumstances that it does not appear to be ordinary.

**(2)** Where collateral as mentioned in subsection (1) has been provided in the form of securities or deposits, this collateral may be realised immediately if a previous agreement to this effect has been concluded and the participant has not already fulfilled his obligations towards Danmarks Nationalbank (Denmark's central bank), a clearing centre or a designated payment system or participants in such systems.

**(3)** Subsections (1) and (2) shall apply correspondingly to collateral provided in connection with clearing centres and payment systems which have been registered with the Commission pursuant to Article 10, first paragraph of Directive 98/26/EC of the European Parliament and of the Council where said collateral is provided in accordance with the regulations of the clearing centre or payment system. This shall apply correspondingly to collateral provided for central banks in their capacity as central banks within the European Union or countries with which the Union has entered into an agreement.

**(4)** The Danish FSA may approve that agreements on collateral, which are not covered by subsection (3) and which are entered into with foreign clearing centres or payment systems or similar foreign undertakings carrying out securities clearing activities or clearing of payments outside the European Union or countries with which the Union has entered into an agreement with the effect that collateral according to such agreement are covered by subsection (1) and (2).

**57c.-(1)** Regulations and participation agreements for a clearing centre, a designated payment system or corresponding activities carried out by Danmarks Nationalbank (Denmark's central bank) shall include provisions on,

1) when a transfer order is to be considered entered into the system, and
2) the point/s in time after which a registered transfer order can no longer be revoked by a participant or a third party.

**(2)** Where a clearing centre, a designated payment system or Danmarks Nationalbank (Denmark's central bank) enter into a mutual agreement on interoperability or with interoperable systems or operators of such, the parties shall, as far as possible, ensure that the regulations of the interoperable systems be coordinated with regard to the conditions

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

mentioned in subsection (1). Unless expressly provided for in the regulations for each of the interoperable systems, the regulations for each system concerning the moment mentioned in subsection (1), nos. 1 and 2 shall not be affected by the regulations for other interoperable systems.

(3) Agreements covered by subsection (2) shall be considered of far-reaching importance, cf. section 12(2).

**57d.-(1)** The Danish FSA shall draw up a list of the clearing centres and payment systems with which agreements may be concluded gaining legal effect in accordance with the provisions laid down in section 57(1) and section 57b(1) and (2). Such list shall be published by executive order.

(2) The Danish FSA shall give notice of the clearing centres and payment systems under subsection (1), as well as of payment systems and securities clearing systems operated by Danmarks Nationalbank (Denmark's central bank) to the European Commission, cf. Article 10 of Directive 98/26/EC of the European Parliament and of the Council.

(3) Where the bankruptcy court issues a bankruptcy order or commences financial reconstruction for a participant in a clearing centre or a payment system covered by subsection (2), the bankruptcy court shall immediately notify the Danish FSA in this respect. The Danish FSA shall immediately forward this notification to the other Member States of the European Union and countries with which the Union has entered into an agreement, cf. Article 6(3) of Directive 98/26/EC of the European Parliament and of the Council.

**57e.-(1)** If a participant in a clearing centre, a designated payment system or corresponding activity carried out by Danmarks Nationalbank (Denmark's central bank) is declared bankrupt; commences financial reconstruction or any other type of insolvency proceedings as defined in Article 2j of Directive 98/26/EC of the European Parliament and of the Council are commenced, the rights and obligations arising from or in connection with participation in the system shall be determined by the law governing that system.

(2) If a Danish participant in a foreign clearing centre or a foreign payment system notified to the Commission pursuant to Article 10(1) of Directive 98/26/EC of the European Parliament and of the Council is declared bankrupt or commences financial reconstruction or any other type of insolvency proceedings as defined in Article 2j of Directive 98/26/EC of the European Parliament and of the Council, the rights and obligations arising from or in connection with participation in the system shall be determined by the law governing that system, cf. section 57(3), and section 57b(3).

(3) If a Danish participant in a foreign clearing centre or a foreign payment system which is not covered by subsection (2) and which is domiciled in a country outside the European Union with which the Union has not entered into an agreement, goes bankrupt, become subject to financial reconstruction or any other type of insolvency proceedings, the rights and obligations arising from, or in connection with, the participation of that participant in the system and which are not covered by a licence according to section 57(4) or section 57b(4) shall be determined by the law governing that system, if the Danish FSA has approved the participation agreement between the participant and the system.

## Part 18a
*Financial collateral arrangements and close-out netting agreements, etc.*

**58.-(1)** The provisions of this part of this Act shall apply to financial collateral arrangements and to collateral after such collateral has been provided. Collateral shall be regarded as having been provided when the relevant act of security has been carried out.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** Sections 58h and 58i shall, however, apply irrespective of whether an agreement on close-out netting or ongoing netting has been established as part of a financial collateral arrangement.

**58a.-(1)** A "financial collateral arrangement" shall mean an agreement between parties covered by section 58b on collateral for financial obligations, cf. section 58e, in the form of collateral covered by section 58f. "Collateral" shall mean collateral in the form of title transfer as well as by way of security.

**(2)** In order for a financial collateral arrangement to be covered by this part of this Act, it shall be in writing or in another manner legally equal to this. If collateral is in the form of debt, cf. section 58f(1) and (2), the collateral taker shall receive a list from the collateral provider including all debt covered by the collateral. The list shall be submitted in writing or in a manner which is legally equivalent herewith. Receipt by the collateral taker of the list mentioned in the 2nd clause, shall, notwithstanding section 31 of the Debt Instrument Act *("Gældsbrevsloven")* be the relevant act of security in connection with collateral pursuant to section 58f(1) and (2). In respect of other transferees, the collateral taker shall, at the time of receipt of the list be in good faith.

**(3)** If the collateral provider and the collateral taker are closely connected, cf. section 2, nos. 2-4 of the Bankruptcy Act, subsection 2, 4th clause shall not apply. If the collateral taker becomes closely connected to the collateral provider, subsection 2, 4th clause shall not apply to collateral established after this date.

**(4)** In connection with the use of debt as financial collateral, the debtor may in respect of the mutual claim, in writing or in a manner which is legally equivalent herewith, withdraw his confidentiality requirement pursuant to section 117(1) of the Financial Business Act, to the extent that this is necessary in order to make the collateral effective.

**(5)** If a debtor in respect of a debt used as financial collateral withdraws his access to offsetting the liabilities covered by the financial collateral agreement, or which for other reasons can be used for offsetting, this shall take place in writing or in a manner which is legally equivalent herewith.

**58b.-(1)** Parties to a financial collateral arrangement may only be the following:

1) A public authority (excluding publicly guaranteed undertakings unless they are covered by nos. 2-6), including
    a) public-sector bodies in a European Union Member State and countries with which the Union has entered into an agreement for the financial area which are charged with or are intervening in the management of public debt,
    b) public-sector bodies in a European Union Member State and countries with which the Union has entered into an agreement for the financial area which are authorised to hold accounts for clients.
2) A central bank, the European Central Bank, the Bank for International Settlements, a multilateral development bank as defined in Article 1, no. 19 of Directive 2000/12/EC, the International Monetary Fund and the European Investment Bank.
3) A financial institution subject to supervision, including:
    a) a credit institution as defined in Article 1, no. 1 of Directive 2000/12/EC, including the institutions listed in Article 2(3) of said Directive,
    b) an investment company as defined in Article 1, no. 2 of Directive 2004/39/EC,
    c) a financial institution as defined in Article 1, no. 5 of Directive 2000/12/EC,
    d) an insurance company as defined in Article 1a of Directive 92/49/EEC and an insurance company as defined in Article 1a of Directive 92/96/EEC,

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

e) an undertaking for collective investment in transferable securities as defined in Article 1(2) of Directive 85/611/EEC, or

f) an investment management company as defined in Article 1a, no. 2 of Directive 85/611/EEC.

4) A central counterparty, a settlement agent or a clearing institution as defined in Article 2c, d and e of Directive 98/26/EC, including similar institutions regulated under national law acting in the futures, options and derivative financial instruments to the extent not covered by that Directive.

5) A legal person who acts in a trust or representative capacity on behalf of any one or more persons, including any holders of bonds or other forms of debt instruments or any institution as defined in nos. 1-4.

6) A legal person not covered by nos. 1-5, including unincorporated undertakings and partnerships as well as sole traders.

**58c.** The provisions of this Part shall apply to financial collateral arrangements containing provisions regarding

1) netting through close-out netting and ongoing netting, cf. sections 58h and 58i,
2) realisation of collateral, cf. section 58j,
3) supplementary collateral, cf. section 58l,
4) right of substitution, cf. section 58m, or
5) right of use, cf. section 58g.

**58d.** Realisation according to section 58j(1), or valuation of collateral or mutual claims set off or acquired pursuant to section 58g; 58h; section 58j(2)-(4) and section 58k, shall be conducted in a commercially reasonable manner.

**58e.-(1)** It shall be clear from a financial collateral arrangement which of the present or future, actual or contingent or prospective financial obligations of the parties or any third parties are covered by the arrangement.

**(2)** "Financial obligations" shall mean obligations providing the collateral taker with a right to cash settlement or delivery of securities.

**(3)** If both parties to a financial collateral arrangement are covered by section 58b, no. 6, only claims originating from trade in foreign currencies and securities, trade on commodities exchanges as well as deposits and loans shall be regarded as financial obligations.

**(4)** If only one or none of the parties to an agreement on close-out netting pursuant to section 58h is covered by section 58b, only claims originating from trade in foreign currencies and securities shall be regarded as financial obligations.

**58f.-(1)** Collateral under a financial collateral arrangement may only comprise cash, and "cash" shall, in this context, mean money credited to an account, or securities covered by section 2(1), nos. 1-3. If both parties to a financial collateral arrangement are covered by section 58b, nos. 1-5 financial collateral may also include debt.

**(2)** In this Act "debt" shall mean a pecuniary claim on the basis of an agreement where a credit institution, as defined in Article 4, no. 1 of Directive 2006/48/EC, including institutions on the list in Article 2 of the Directive, provides credit in the form of a loan. Loans to consumers as defined in Article 3a of Directive 2008/48/EC, or a micro or small enterprise as defined in Article 1 and Article 2(2) and (3) of the Annex to Commission Recommendation 2003/361/EC, shall only be covered by the 1st clause if either the collateral provider or the collateral taker is covered by section 58b, no. 2.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** The own shares of a collateral provider, shares in affiliated undertakings within the meaning of Directive 83/349/EEC, and shares in undertakings whose exclusive purpose is to own means of production that are of material significance to the collateral provider's activities, may not be provided as collateral under a financial collateral arrangement. The same shall apply to shares in companies with the purpose of owning real property for the use of their shareholders.

**(4)** Cash deposits which cannot be made subject to legal proceedings may neither be applied as collateral under a financial collateral arrangement nor may they be made subject to close-out netting.

**(5)** "Equivalent collateral" shall mean an amount of the same size and the same currency as the original collateral, if this was provided in the form of cash or securities identical to the original collateral, if this was provided in the form of securities.

**(6)** In a financial collateral arrangement, provision may be made to the effect that equivalent collateral may be composed of another currency or other securities with a value corresponding to the value of the original collateral at the time when the equivalent collateral is provided or delivered.

**58g.-(1)** A financial collateral arrangement by way of security may contain provisions regarding right of use. When right of use has been agreed upon, the collateral taker may - in accordance with the terms of a financial collateral arrangement - transfer the collateral received, or some of this, to a third party for ownership or as collateral.

**(2)** If a collateral taker has exercised a right of use under subsection (1), said collateral taker shall return equivalent collateral no later than on the due date for the performance of the collateralised financial obligation(s). The returned collateral shall be deemed as having been provided under the financial collateral arrangement at the same time as the original collateral was provided.

**(3)** Return under subsection (2) may only be reversed if the conditions of section 74 of the Bankruptcy Act have been met.

**(4)** Return under subsection (2), 1st clause may be omitted to the extent that the value of the collateral is set off against the collateralised financial obligations or is made subject to close-out netting in accordance with the terms of the financial collateral arrangement, and the claim for return shall then be deemed to have arisen at the same time as the original collateral was first provided.

**(5)** Subsections (1)-(4) shall not apply to debt.

**58h.-(1)** An arrangement may, with legal consequences for third parties, cf. however subsections (3)-(6), contain provisions stipulating that the financial obligations covered by the arrangement, cf. section 58e, are to be netted through close-out netting, if one of the parties breaches the arrangement, including that close-out netting is to be effected if a party is in insolvency proceedings or if execution is levied against a claim covered by the provision on close-out netting. "Insolvency proceedings" shall mean bankruptcy, financial reconstruction, administration of the insolvent estate of a deceased person, debt restructuring as well as other Danish and foreign types of liquidation and reorganisation measures caused by the insolvency of the debtor, as defined in Article 2, no. 1, j and k of Directive 2002/47/EC.

**(2)** With legal consequences for the estate and the creditors, agreement may be made to the effect that if a breach arises, cf. subsection (1), close-out netting shall not be effected until the party not in breach gives notification in this respect to the party in breach. In situations

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

where the party in breach is made subject to insolvency proceedings, said party may, however, demand that the close-out netting be carried out in such a manner that the conditions applicable to the parties are the same as they would have been if close-out netting had been effected without undue delay after the time when the party not in breach knew, or should have known, that the party in breach was made subject to insolvency proceedings.

**(3)** Close-out netting covered by subsection (1), which is carried out after the party in breach is subject to financial reconstruction, may include claims that incurred before the time when the party not in breach knew, or should have known, the circumstances occasioning the reference date, cf. section 1 of the Bankruptcy Act.

**(4)** Close-out netting covered by subsection (1), which is carried out after the party in breach has been declared bankrupt, may include claims that incurred before the time when the party not in breach knew, or should have known, the circumstances occasioning the reference date, cf. section 1 of the Bankruptcy Act. Claims incurred after the end of the day when the bankruptcy was published in the Danish Official Gazette may not, however be included in close-out netting.

**(5)** A claim covered by the provisions of section 42(3) and (4) of the Bankruptcy Act may be included in close-out netting under subsection (1) unless the party not in breach knew, or should have known, that the party in breach was insolvent when the claim against said party was acquired or arose respectively.

**(6)** Close-out netting under subsection (1) may only be reversed under section 69 of the Bankruptcy Act if such close-out netting included claims which could not have been included in agreed close-out netting in the event of bankruptcy, cf. subsections (4) and (5).

**(7)** The provisions in section 58a(2), section 58d, section 58e, and section 58f(4) shall apply correspondingly to a close-out netting arrangement which is not part of a financial collateral arrangement.

**58i.** An agreement may, with legal consequences for the third party, contain a provision to the effect that all claims covered by said arrangement which originate from trade in foreign currency and securities are to be netted on an ongoing basis in connection with agreed settlement. The provisions of section 58h(3)-(6) shall apply correspondingly to agreements on ongoing netting.

**58j.-(1)** A financial collateral arrangement may contain a provision to the effect that the collateral taker may, in the event of a breach, immediately realise the collateral. Immediate realisation may, subject to the terms of the arrangement, be effected

1) without advance approval by public authorities or others,
2) without advance notification to the collateral provider, and
3) without application of a special procedure.

**(2)** On financial collateral in the form of title-transfer, realisation shall be effected through setting off the value of the collateral against the collateralised obligations.

**(3)** On collateral in the form of cash, realisation shall be effected through setting off the value of the collateral against the collateralised obligations.

**(4)** On financial collateral in the form of security, realisation shall be effected through a sale of the collateral. If stipulated in the financial collateral arrangement, realisation may be effected through the collateral taker appropriating the collateral, provided the arrangement lays down principles for the valuation of the collateral, cf. however section 58d.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**58k.-(1)** A financial collateral arrangement in the form of title transfer shall, in relation to the act of security and realisation, be effective in accordance with the terms of the arrangement.

**(2)** In the event of breach before the collateral taker has met any obligation to transfer equivalent collateral, the obligation may be made the subject of netting through close-out netting, cf. section 58h, if this is provided for in the arrangement.

**58l.-(1)** A financial collateral arrangement may contain a provision to the effect that the parties are obliged to provide collateral or additional collateral in order to take account of changes in the value of the collateral or the amount of the financial obligations covered by the arrangement if the changes occurred after establishment of the arrangement and were due to market-related conditions.

**(2)** If collateral provided under subsection (1) was provided without undue delay after the claim for collateral could be asserted under the arrangement, said collateral may not be reversed under section 70 or 72 of the Bankruptcy Act. Reversal under the conditions laid down in section 72 of the Bankruptcy Act may, however, be effected if - under the circumstances - the provision of collateral could not be regarded as ordinary.

**58m.-(1)** The collateral provider may, upon agreement with the collateral taker, substitute collateral with other collateral of substantially the same value.

**(2)** If substitution collateral covered by subsection (1) was provided no later than at the same time as the collateral provider regained possession of the substituted collateral, the substitution collateral may only be reversed if the substituted collateral was reversible.

### Part 18b
*Authorisation and applicable law*

**58n.-(1)** If a security is registered by book-entry in an account, the issues mentioned in subsection (2) regarding the security shall be governed by legislation in the country where the account is maintained. "Legislation in the country where the account is maintained" shall mean the legislation of said country except regulations on applicable law.

**(2)** Issues to be governed by the legislation mentioned in subsection (1) shall be

1) the legal nature of securities collateral and the proprietary effects attached hereto,
2) the requirements for perfecting a financial collateral arrangement against a third party and the completion of the steps necessary to render such an arrangement effective against third parties,
3) whether a person's title to or interest in securities collateral is to be overridden by or subordinated to a competing title or interest, including whether good faith acquisition has occurred, and
4) the steps required for the realisation of collateral in the form of securities following the occurrence of an enforcement event.

### IV
### Book-entry
### Part 19
*Issue and book-entry of dematerialised securities*

**59.-(1)** Securities may be issued and transferred electronically (dematerialised).

**(2)** In this Act "investment securities" shall mean negotiable, dematerialised securities registered by book-entry with a central securities depository.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** "Book-entry" shall mean the issue of investment securities through a central securities depository and entry of rights to such securities in a book-entry register with the central securities depository. A single investment security may only be issued through one central securities depository.

**(4)** The board of directors of a central securities depository may decide that securities other than those under subsection (2) may also be registered by book-entry as investment securities with the central securities depository concerned.

**(5)** "Book-entry activities" shall mean regular activities pertaining to book-entry of investment securities. In cases of doubt, the Danish FSA shall decide whether book-entry activities are being carried out.

**(6)** Regulations governing the activities of a central securities depository shall be laid down in the articles of association of the company which are subject to approval by the Danish FSA.

## Part 20
*Book-entry activities*

**60.-(1)** The board of directors of a central securities depository shall be responsible for its activities being conducted in an adequate and proper manner. The individual central securities depository shall lay down regulations governing book-entry of securities as investment securities and governing the securities, which may be admitted for book-entry with the depository as investment securities. Such regulations shall ensure that all parties involved are treated equally and shall be subject to approval by the Danish FSA.

**(2)** A central securities depository may not disclose information concerning the data entered on the records to any others than the Danish FSA and the participating undertakings pursuant to part 21 of this Act.

**(3)** The Minister for Economic and Business Affairs may decide that a central securities depository, to a specified extent, is to be required to disclose information about the data entered on the records to a public authority including Danmarks Nationalbank (Denmark's central bank).

**(4)** The board of directors, auditors as well as members of the board of management and other employees in a central securities depository may not, without authorisation, disclose anything which has come to their knowledge during the performance of their position or charge.

**61.-(1)** A central securities depository may carry out other activities, which are ancillary to the activity as a central securities depository, including operation of a regulated market or as a clearing centre.

**(2)** If a central securities depository operates a regulated market as an ancillary activity, the central securities depository may also operate a multilateral trading facility. The Danish FSA may decide that the ancillary activity shall be exercised in another company. If the central securities depository operates a regulated market as an ancillary activity, a multilateral trading facility may however always be operated in the same company as the regulated market.

**(3)** If a central securities depository operates a clearing centre, a regulated market or a multilateral trading facility as an ancillary activity, the requirements for a licence and operation of these types of activity in this Act shall apply. In ancillary operation of a multilateral trading

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

facility the requirements on licence and operation of this type of activity laid down in the Financial Business Act shall also apply.

## Part 21
*Participation agreements with a central securities depository*

**62.-(1)** Apart from the central securities depository concerned, the following account-holding institutions shall have the right to report transactions for book-entry with a central securities depository on its behalf and with legal effect pursuant to sections 66-75:

1) financial undertakings licensed as banks or investment firms,
2) financial undertakings licensed as mortgage-credit institution or investment management company to the extent that such undertakings are licensed under section 9(1) of the Financial Business Act,
3) undertakings, jointly managed by these financial undertakings for the purpose of managing securities,
4) Danmarks Nationalbank (Denmark's central bank) and central banks in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area,
5) the Agency for Governmental Management,
6) clearing centres,
7) bond-issuing institutions as regards investment securities issued by the institution in question, and
8) investment companies and credit institutions which have been granted a licence in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area.

**(2)** Management companies, which have been granted a licence in another Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, shall be authorised to effect book-entry, cf. subsection (1), if such institution, firm or company legally carries out securities trading either through a branch or by providing services in Denmark, cf. sections 30 and 31 respectively of the Financial Business Act.

**(3)** Credit institutions and investment companies, which have been granted a licence in a country outside the European Union with which the Union has not entered into an agreement for the financial area, shall have the right to report transactions for book-entry, cf. subsection (1), if such company legally carries out securities trading either through a branch or by providing services in Denmark, cf. section 1(3) and section 33, respectively, of the Danish Financial Business Act.

**(4)** Foreign clearing centres or similar institutions which are subject to public supervision, shall, subject to the approval of the Danish FSA, have the right to report transactions for book entry, cf. subsection (1).

**(5)** Major customers may obtain information concerning their own accounts directly from a central securities depository, and they may transfer notifications of sale through a central securities depository to the account-holding institutions or a clearing centre, and notify transactions for book-entry on own accounts directly to a central securities depository.

**63.-(1)** Foreign central securities depositories and custodian institutions which are subject to public supervision (foreign depositories) and Danish central securities depositories may, subject to the approval of the Danish FSA, report transactions for book-entry with a central securities depository on its behalf and with legal effect pursuant to sections 66-75.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** Upon approval by the Danish FSA, a central securities depository may effect book-entries with foreign depositories and with Danish central securities depositories.

**64.-(1)** Account-holding institutions, cf. section 62(1)-(4) shall enter into a participation agreement with a central securities depository in order to be entitled to report transactions for book-entry with the depository in question.

**(2)** The major customers referred to in section 62(5) shall enter into a participation agreement with a central securities depository in order to be entitled to procure information concerning their own accounts, to transfer notifications of sale, and to notify transactions for book-entry on own accounts directly to the depository in question.

**(3)** A central securities depository may, after having been authorised by the Danish FSA, enter into a participation agreement with a credit institution or investment company as mentioned in section 62(3) that does not carry out securities trading either through a branch or by providing services in Denmark, cf. sections 1(3) and 33 respectively of the Financial Business Act.

**(4)** In the event of bankruptcy, financial reconstruction or similar in an undertaking covered by subsections (1) and (3), the participation agreement mentioned in the same subsections shall terminate immediately and consequently also the right to effect book-entry with a central securities depository. Unless otherwise agreed, the central securities depository shall subsequently take over the reporting of transactions for book-entry in the affected accounts for a period of no more than four months following which the book-entries of the account holder shall be transferred to an account with the individual issuer. The Danish FSA may lay down more detailed regulations regarding procedures in connection with the termination of a participation agreement as mentioned in the 1st clause and in connection with transfer of an account holder's book-entries to an account with the issuer as mentioned in the 2nd clause.

**65.-(1)** The Danish FSA shall lay down regulations regarding the basis and procedure for book-entry as well as regarding approval of persons who, as employees in a central securities depository or an account-holding institution, may perform the tasks related to such book-entry.

**(2)** The Danish FSA may lay down more detailed regulations regarding book-entry of limited rights to investment securities as well as regulations regarding the access of central securities depositories or account-holding institutions to charge fees for the management of investment securities and for book-entries pertaining hereto.

## Part 22
### *Legal consequences of book-entry, etc.*

**66.-(1)** Rights to investment securities shall be registered by book-entry in a central securities depository in order to obtain protection against legal proceedings and assignees.

**(2)** Any agreement or legal proceeding capable of defeating a right not registered by book-entry shall be registered by book-entry itself, and a transferee under an agreement shall be in good faith when applying to the account-holding institution.

**(3)** The legal consequences of the book-entries shall count from the time of final control at the central securities depository.

**(4)** An account-holding institution shall be obliged to report, without delay, received applications for book-entry in a central securities depository.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**67.** If the account-holding institution has doubts pertaining to actual or legal matters significant for the book-entry or if any person claims to said account-holding institution that the intended book-entry would violate the relevant person's rights, said institution shall submit an application for preliminary book-entry. The relevant central securities depository shall then decide how final book-entry may be effected.

**68.-(1)** Notification of the book-entry shall be given to the party or parties entitled according to the book-entry register as well as to the applicant. Notification of any impediments for the book-entry shall be given. As far as possible, the person(s) entitled in the book-entry register shall be notified of any drawings, alterations or extinguishments.

**(2)** Notification shall be given by the central securities depository or by the account-holding institution on behalf of the central securities depository subject to agreement with the central securities depository.

**(3)** The persons who are so entitled according to the book-entry register and the applicants may, in conformity with the central securities depository's regulations, which shall be approved by the Danish FSA, decide that notices pertaining to drawings or alterations shall be given periodically and may similarly, in whole or in part, choose not to receive any notices of drawings or alterations. The same shall apply to notifications regarding extinguishment, unless said extinguishment is a consequence of bankruptcy, liquidation, merger, demerger or similar events unforeseen at the time of investment. Such choices shall be registered by book-entry on the individual account.

**(4)** A central securities depository may, upon request by the account-holding institution, decide that no notices are to be sent out with respect to alterations to the data entered if the holder of the right has already received information to that effect.

**(5)** Notice given pursuant to subsections (1)-(4) shall be effected in conformity with the regulations of a central securities depository in this respect. Said regulations shall be subject to approval by the Danish FSA.

**69.** Once an agreement as to rights pertaining to investment securities has been finally registered by book-entry at a central securities depository, an assignee in good faith may not be met with any objections as to the validity of the agreement. However, the objection that the transfer is void because of forgery or duress under threat of violence shall prevail.

**70.** Sections 15-18 of the Debt Instruments Act *("lov om gældsbreve")* shall apply correspondingly to the debtor indicated on investment securities, which correspond to negotiable debt instruments, with the effect that final book-entry with a central securities depository replaces possession of the debt instrument.

**71.-(1)** A central securities depository shall lay down regulations governing disbursement.

**(2)** If a central securities depository on behalf of the issuer effects payment in good faith to the person entitled to receive such payment according to the book-entry register, the central securities depository shall be discharged from liability, even though the payee was not entitled to receive the payment or was legally incompetent. However, this shall not apply if the person entitled to receive the payment according to the book-entry register derives his right from an agreement transfer which is void due to forgery or duress under threat of violence.

**72.-(1)** If the seller is an account-holding institution, said seller may make the transfer of title to an investment security conditional upon payment of the purchase price within a certain time limit as stipulated by the Danish FSA. The reservation concerning payment shall lapse without prior notice in pursuance of section 68 if the transferor does not assert his claim for reservation before expiry of the time limit stated in the 1st clause.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** If the account holder keeps an account on behalf of one or more owners, this shall be registered by book-entry on the account.

**73.** Claims for payment indicated on investment securities shall become statute-barred under the general rules of Danish law.

**74.** If the account-holding institution becomes aware of an error in the data entered, said account-holding institution shall request the relevant central securities depository to alter such entry. Before any alteration is effected, the person(s) who is/are entitled according to the book-entry register shall have the opportunity to comment hereon.

**75.-(1)** A central securities depository may cancel rights which have clearly ceased.

**(2)** If an account with a central securities depository contains rights registered by book-entry which must be assumed to have lost their validity, or are more than 20 years old and have most probably ceased, or to which in all probability there is no holder, the central securities depository in question may summon any possible holders of the rights in question through the Danish Official Gazette at a notice of three months. Moreover, the person(s) registered by book-entry as holder(s) shall be notified separately by registered letter. If no one presents themselves before the expiry of the time limit, the central securities depository shall cancel the right.

**(3)** The Danish FSA may lay down regulations governing the implementation of subsection (2).

## Part 23
*Statements of account*

**76.-(1)** Regular statements of account shall be prepared for owners of investment securities. Said statement of account shall list the investment securities for which the relevant persons are registered by book-entry as owners on the date of the statement. Similarly, statements shall be prepared for holders of limited rights to investment securities registered by book-entry.

**(2)** The account-holding institution shall be registered on each account. The account-holding institution shall have access, on behalf of the relevant central securities depository, to prepare a statement of the account. Statements shall be prepared for an interested party according to the book-entry register if said person so requests.

**(3)** The Danish FSA shall lay down more detailed regulations regarding the preparation of statements of account under subsection (1) and regarding the content of such statements of account.

## Part 24
*Complaints and compensation*

**77.-(1)** A complaint against a decision regarding book-entry, alteration or extinguishment of rights in a central securities depository may be brought before the Complaints Board for Central Securities Depositories. This shall not apply, however, to claims for compensation.

**(2)** The tasks of the Complaints Board shall be carried out by one or more persons appointed by the Minister for Economic and Business Affairs, and said person(s) shall satisfy

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

the requirements for being appointed judge. The Minister for Economic and Business Affairs shall also appoint proxies.

**(3)** Complaints pursuant to subsection (1) shall be submitted to the Complaints Board no later than six weeks after book-entry in the central securities depository concerned has been effected. For the purpose of hearing the claim, the Complaints Board shall have access to all information concerning the case held by the central securities depository and the account-holding institution. The Complaints Board shall reach a decision, which - together with the grounds for such decision - shall be sent to the parties involved.

**(4)** In special cases, the Complaints Board may hear complaints submitted after expiry of the time limit set out in subsection (3).

**(5)** The Complaints Board may refuse to hear complaints deemed obviously groundless.

**(6)** The Complaints Board shall carry out its activities independently of any instructions as to the hearing and ruling of any individual case.

**(7)** The Danish FSA shall lay down more detailed regulations as to the activities of the Complaints Board. Regulations may be laid down governing payment of fees for the hearing of a complaint and the publishing of the decisions of the Complaints Board.

**78.** Pursuant to section 77, the following may lodge complaints:

1) anyone who has a reasonable interest in the decision,
2) an account-holding institution, if such account-holding institution intends to contest a decision made by a central securities depository pursuant to sections 67, 74 and 75, and
3) a central securities depository if it intends to contest the book-entry effected by the account-holding institution.

**79.-(1)** Decisions reached by the Complaints Board may be brought before the High Court of Eastern Denmark no later than two weeks after the person concerned has been informed of the decision. The case shall be brought before the High Court in the form of an interlocutory appeal to the Complaints Board. The rules governing interlocutory appeals in civil cases shall, subject to the necessary adaptations, apply to the lodging with and the hearing by the High Court.

**(2)** Complaints which, pursuant to sections 77 and 78, may be filed with the Complaints Board may only be brought before the courts of law in pursuance of subsection (1).

**(3)** High Court decisions may not be appealed. However, the Board of Appeal may permit interlocutory appeal to the Supreme Court if such interlocutory appeal concerns matters of principle. Section 392(2) of the Administration of Justice Act shall apply correspondingly.

**80.-(1)** A central securities depository shall be liable in damages for any loss resulting from errors in connection with the book-entry, alteration or extinguishment of rights on accounts with the central securities depository concerned or for payments made by the central securities depository, even if such errors are fortuitous. However, if the error can be ascribed to an account-holding institution, the liability in damages shall rest with said account-holding institution, cf. section 81.

**(2)** The holder of rights who, pursuant to section 69, 2nd clause, fails to acquire or loses any rights over investment securities may claim damages from the central securities depository concerned for the losses incurred.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** If the claimant has contributed to the error himself, with intent or through negligence, the damages may be reduced or the right to damages entirely lost.

**(4)** The total damages pursuant to subsection (1) for any loss resulting from the same error shall not exceed DKK 500 million.

**81.-(1)** An account-holding institution shall be liable in damages for any loss resulting from errors committed by such account-holding institution in connection with reporting transactions for book-entry, alteration or extinguishment of rights on accounts with a central securities depository or for payments made through the central securities depository, even if such error is fortuitous.

**(2)** If the claimant has contributed to the error himself, with intent or through negligence, the damages may be reduced or the right to damages entirely lost.

**(3)** The total damages pursuant to subsection (1) for any loss resulting from the same error shall not exceed DKK 500 million.

**(4)** If a Danish account-holding institution is unable to pay damages pursuant to subsection (1), the remaining Danish account-holding institutions which have entered into a participation agreement with the central securities depository concerned shall be liable for the outstanding amount up to DKK 500 million per error.

**(5)** The Danish account-holding institutions shall, between themselves, enter into an agreement on the apportionment and payment of amounts pursuant to subsection (4). The Danish FSA shall approve such agreement.

**(6)** Foreign account-holding institutions may join the scheme referred to in subsections (4) and (5).

**82.-(1)** The total capital resources of a central securities depository shall be at least DKK 1 billion in the form of commitments from participants.

**(2)** In the participation agreement the account-holding institution shall undertake, to a specified extent, to contribute to the total capital resources of the central securities depository.

**(3)** The more detailed regulations governing the commitments for the benefit of a central securities depository shall be stipulated in its articles of association.

**82a.** The Minister for Finance may, when the central government acts as the account-holding institution, guarantee claims for compensation with regard to incorrect book-entries as mentioned in section 81(1), and guarantee the central government's contribution to the total capital resources of a central securities depository, cf. section 82.

**V**
**Securities council and supervision, etc.**
**Part 25**
*Supervision, enforcement, etc.*

**83.-(1)** The Danish FSA shall supervise compliance with the provisions of this Act and regulations laid down pursuant to this Act, except section 12b(1) and (2). The Danish FSA shall also supervise compliance with the regulations issued pursuant to section 31(8) of the Act on approved auditors and audit firms. The Danish FSA shall supervise compliance with Articles 37-42 of Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation).

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

November 2012, GlobalDenmark Translations

**(2)** For issuers of securities with their registered office in Denmark, the Danish Securities Council shall enforce compliance with the regulations regarding financial information in annual reports and interim financial reports in sections 183-193 of the Financial Business Act, sections 63 and 64 of the Investment Associations, etc. Act, and the Danish Financial Statements Act, if such securities have been admitted to trading on a regulated market in Denmark, in a Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area. The Danish Securities Council shall also enforce compliance with the regulations issued pursuant to section 196 of the Financial Business Act and section 76 of the Investment Associations, etc. Act, as well as the Financial Statements Act, and the Danish Securities Council shall also enforce compliance with the provisions of the Regulation of the European Parliament and of the Council on application of international accounting standards. In this connection, the Danish Securities Council shall exercise the powers vested in the Danish FSA under section 197 of the Financial Business Act, section 77 of the Investment Associations, etc. Act, and the powers assigned to the Danish Securities Council under section 159a of the Financial Statements Act. The Danish FSA and the Danish Business Authority shall act as secretariat for the Danish Securities Council and act on its behalf in this connection.

**(3)** Enforcement pursuant to subsection (2) shall also cover enforcement of the regulations regarding financial information in annual and interim financial reports by issuers with Denmark as their home country, pursuant to section 28(3), no. 2 as these regulations are laid down in the accounting legislation to which the relevant issuers are subject, cf. section 27(7). The Danish Securities Council may, in connection with enforcement

1) provide guidance,
2) take action against violations,
3) order that errors be corrected and that violations be remedied, and
4) order a change of conditions, including order publication of changed or additional information.

**(4)** If deemed appropriate, the Danish Securities Council may make public the relevant information, publish the order, or suspend or remove the securities involved from trading on a regulated market.

**(5)** In connection with enforcement by the Danish Securities Council of compliance with the regulations on financial information in annual reports and interim financial reports under subsections (2)-(4), the Danish Securities Council shall have the powers ascribed to the Danish FSA in section 87(1)-(3) and (6), cf. however section 83b(3) and (4).

**(6)** The Danish FSA may, in special cases, utilise external assistance. The Danish Securities Council may in special cases use external assistance in connection with the Council's enforcement under subsections (2)-(4).

**(7)** Section 346(4) and section 356 of the Financial Business Act shall apply correspondingly to supervision by the Danish FSA under this Act.

**(8)** If enforcement pursuant to subsection (3), 1st clause, cf. subsection (2) relates to non-financial activities, section 156(3) of the Financial Statements Act and regulations issued in pursuance hereof on payment of an annual fee for the enforcement activity associated with this shall apply correspondingly.

**(9)** The Danish FSA shall prepare an annual list of regulated markets for compliance with Article 47 of Directive 2004/39/EC on markets in financial instruments (the MIFID Directive).

**(10)** In cooperation with the National Consumer Agency of Denmark, the Danish FSA shall submit an annual report on the status regarding issue of regulations on good securities trading

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

practices and regarding experience with application of such regulations to the Minister for Economic and Business Affairs, cf. section 3(2).

**(11)** Regulations issued pursuant to section 18(2), no. 4, section 19(1), section 21(1), section 40(2), nos. 1, 2 and 4, section 52(1) and (2), section 54(4), and section 71(1) as well as changes hereto shall be notified to the Danish FSA.

**(12)** A clearing centre shall submit notification to the Danish FSA specifying the direct and indirect participants in the clearing centre and any changes thereto.

**(13)** In its organisation of supervisory activities, the Danish FSA shall consider the potential consequences for the financial stability in other Member States of the European Union or a country with which the Union has entered into an agreement for the financial area. This shall apply in particular in connection with crisis situations. For material subsidiary undertakings of foreign undertakings which have been granted a licence to carry out the activities mentioned in section 7(1) in a Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area, the Danish FSA shall participate in any cooperation fora regarding supervision of the overall group.

**83a.-(1)** The Danish FSA may decide that the powers of the Danish FSA under

1) section 23(2), section 23a(1)-(3) and (5), section 31(4), section 44(2) and (5), and section 45(1) and (2), and regulations issued in pursuance of section 23(7) and (8), section 24(2), section 29(4), section 32(4), section 43(3), section 44(6), section 45(4) and section 46(2) may be exercised on behalf of the Danish FSA by an operator of a regulated market, or the company operating an alternative market place on the basis of more detailed conditions,

2) 2) section 22(1) and regulations issued pursuant to section 22(2) may be exercised on behalf of the Danish FSA by an operator of a regulated market on the basis of more detailed conditions,

3) section 27a(1)-(3), section 28a(5) and section 30 and regulations issued pursuant to section 33(5) may be exercised on behalf of the Danish FSA by an operator of a regulated market on the basis of more detailed conditions.

4) section 83(1) to ensure compliance with the provisions of section 29(1) and (2), section 31(1) and section 32(1) and (3) may be exercised on behalf of the Danish FSA by an operator of a regulated market, or a company operating an alternative market place on the basis of more detailed conditions, and

5) section 83(1) to ensure compliance with the provisions of section 27, section 28 and section 33(1) may be exercised on behalf of the Danish FSA by an operator of a regulated market on the basis of more detailed conditions.

**(2)** An operator of a regulated market or a company operating an alternative market place that has authority under subsection (1) may request payment for performance of tasks related to such authority.

**(3)** An operator of a regulated market or a company operating an alternative market place that has authority under subsection (1) shall comply with parts 3-7 of the Public Administration Act as well as the Access to Public Administration Files Act when making decisions within the delegated areas, cf. subsection (1).

**(4)** The provisions of section 84a(1) and (2) shall apply correspondingly to operators of a regulated market or companies operating alternative market places that have authority under subsection (1).

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(5)** The provisions of section 84b(1) and (2), nos. 5, 7 and 8 shall apply correspondingly to the extent that operators of a regulated market or companies operating alternative market places respectively have been granted authority under subsection (1).

**(6)** The Danish FSA shall, through an Executive Order, make decisions regarding delegation under subsection (1).

**83b.-(1)** During enforcement under section 83(2) and (3), investigation shall be made as to compliance with the regulations regarding financial information in selected financial information from the relevant issuers' annual reports and interim financial reports. Enforcement shall, each year, include up to 20% of the issuers covered by section 83(2) and (3). The relevant issuers shall be selected from a risk perspective as well as through random selection.

**(2)** Investigation under subsection (1) shall be initiated through formal enforcement for obvious violations of the regulations regarding financial information in the annual reports and interim financial reports of the selected issuers.

**(3)** If, in the formal enforcement under subsection (2), there is reason to consider that the financial information contains errors and omissions significant to the decision-making of the investors, the Danish Securities Council shall obtain an account from the undertaking, its management or its external auditors. If, after the Danish Securities Council has obtained said account, there is still reason to consider that the financial information contains errors and omissions significant to the decision-making of the investors, the Danish Securities Council shall obtain further information from the undertaking or its management, including long-form audit reports. The Danish Securities Council may demand that an account or further information from the undertaking or its management be certified by the auditor, and the Council may also lay down a time limit for receipt of the account or information by the Danish Securities Council.

**(4)** If, after the Danish Securities Council has carried out formal enforcement under subsection (2) and obtained an account or further information under subsection (3), there is still reason to consider that the financial information contains errors and omissions significant to the decision-making of the investors, the Danish Securities Council may initiate more thorough enforcement of the financial information.

**(5)** Notwithstanding subsections (2)-(4), the Danish Securities Council may, in situations where special, specific circumstances give reason to consider that the financial information contains errors and omissions significant to the decision-making of the investors, initiate more thorough enforcement of the financial information from any issuer covered by section 83(2) and (3).

**(6)** For the issuers mentioned in section 83(2) and (3), which are covered by the Financial Business Act or the Investment Associations, etc. Act, the Danish Securities Council may initiate enforcement not complying with the provisions of subsections (2)-(5). Further, the provisions of subsections (1)-(5) shall not affect the Danish FSA's possibility, as part of its normal supervision, to monitor matters and carry out more thorough investigations, which also cover accounting matters at the issuers mentioned in the 1st clause. The Danish Securities Council shall make decisions in matters pertaining to financial information, which forms part of this supervision and which pertains to the relevant issuers.

## Part 26
*More detailed provisions regarding the Danish Securities Council, duty of confidentiality, etc.*

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**84.-(1)** The Minister for Economic and Business Affairs shall set up the Danish Securities Council, which shall comprise 14 members. This Council shall be composed as follows:

1) a chairman with financial and commercial expertise.
2) a deputy chairman with legal and commercial expertise.
3) a member with theoretical accounting expertise.
4) a member with theoretical expertise on capital markets.
5) a member with economic financial knowledge, nominated by Danmarks Nationalbank (Denmark's central bank).
6) two consumer representatives, jointly nominated by the Danish Consumer Council and the Danish Shareholders Association.
7) two representatives for issuers of other securities than mortgage-credit bonds, jointly nominated by the Confederation of Danish Industries, the Danish Shipowners' Association and the Danish Chamber of Commerce.
8) a representative for the issuers of mortgage-credit bonds, jointly or separately nominated by the Council of the Danish Mortgage Banks and the Danish Mortgage Banks Federation.
9) A representative for the securities traders, jointly nominated by the Danish Bankers' Association and the Federation of Danish Investment Associations.
10) A representative for the securities traders, nominated by the Danish Securities Dealers Association.
11) A representative for the institutional investors, jointly nominated by the Danish Insurance Association, the Company Pension Funds Association, Arbejdsmarkedets Tillægspension and LD Pensions.
12) A representative for the auditors, nominated by the Institute of State Authorised Public Accountants in Denmark.

**(2)** The Danish Securities Council

1) shall apart from for section 3(1), and section 86(2) make decisions in matters of principle nature and in matters with far-reaching, significant consequences for stakeholders in the securities market,
2) advise the Danish FSA in connection with issuing regulations, in connection with matters of principle regarding good securities trading practices and matters regarding good securities trading practices with far-reaching, significant consequences for the securities market pursuant to section 3,
3) assist the Danish FSA in its information activities, and
4) shall make decisions in matters regarding compliance with Articles 37-42 of Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation) of a principle nature and in matters with far-reaching, significant consequences for stakeholders in the auction platform.

**(3)** The Danish Securities Council shall also ensure compliance with the regulations for financial information in annual reports and interim financial reports for issuers of securities admitted to trading on a regulated market, cf. section 83(2) and (3) and section 83b.

**(4)** Council members shall be appointed by the Minister for Economic and Business Affairs for periods of four years at a time. Members may be reappointed.

**(5)** A proxy shall be appointed for each member. In the absence of a member, the relevant proxy shall participate for said member. For the member recommended pursuant to subsection (1), no. 12 a further three substitutes shall be appointed. The chairman of the Danish Securities Council shall decide which of these further substitutes is to attend a specific meeting.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(6)** When the Council addresses matters regarding good securities trading practices, cf. subsection (2), no. 2, the Consumer Ombudsman shall participate in the relevant item on the agenda. In cases on good securities trading practices, the Consumer Ombudsman shall have the same authority as the members of the Council.

**(7)** In cases, where hearing of parties shall be carried out pursuant to the Public Administration Act, access to hearing of parties shall include the entire draft for decision. The time limit for issuing a statement shall be no less than three weeks, unless the case has already been brought before the Danish Securities Council or the decision is especially urgent.

**(8)** Section 84a shall apply to Council members and their proxies. The 1st clause shall, however, not apply to cases regarding issue of regulations on good securities trading practices.

**(9)** The Council shall make its resolutions subject to a simple majority of votes. In the event of parity of votes, the chairperson shall have the casting vote.

**(10)** The Danish Securities Council shall lay down its own rules of procedure, including rules on the possibility to ask for an interview with the Council. The rules of procedure shall be approved by the Minister for Economic and Business Affairs.

**(11)** The Danish Securities Council may delegate its competence pursuant to subsection (2), no. 1 and subsection (3) to the Danish FSA or the Danish Business Authority within their respective fields of responsibility.

**84a.-(1)** By virtue of sections 152 to 152e of the Criminal Code, employees of the Danish FSA shall be obliged to keep secret any confidential information they receive in the course of their supervisory duties. The same shall apply to persons performing services as part of the operations of the Danish FSA, and experts acting on behalf of the Danish FSA or the Danish Securities Council. This shall also apply after the termination of the employment contract or any other contract. The provisions of this subsection shall apply correspondingly to employees of the Danish Business Authority as part of their performance of the secretariat function for the Danish Securities Council, cf. section 83(2).

**(2)** Consent from the individual who the duty of confidentiality aims to protect shall not entitle the persons mentioned in subsection (1) to divulge confidential information.

**(3)** Subsection (1) shall, however, not apply to information in cases on good securities trading practices, cf. section 3 and executive orders issued in pursuance of section 3.

**(4)** The provision in subsection (1) shall not prevent the Danish FSA or the Danish Securities Council from divulging on their own initiative confidential information in summary or abbreviated form, if neither the individual limited company under section 7(1) nor others covered by this Act nor their clients can be identified.

**(5)** Confidential information may be divulged in civil proceedings if a limited company under section 7(1) or others covered by this Act has been declared bankrupt, and if such information does not concern client relationships or third parties involved in or having been involved in attempts to rescue the limited company or others covered by this Act.

**(6)** The provision of subsection (1) shall not prevent confidential information from being divulged to:

1) The Danish Securities Council and the Danish FSA respectively, as well as the Financial Business Council.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

2) Other public authorities, including the prosecution service and the police, in connection with the investigations and legal prosecution of criminal offences covered by the Criminal Code or the supervision legislation.

3) The Minister concerned as part of his overall supervision.

4) Administrative authorities and courts hearing decisions made by the Danish FSA or the Danish Securities Council.

5) The Ombudsman of the Danish Parliament.

6) A parliamentary commission set up by the Danish Parliament.

7) Courts of inquiry set up by law or in accordance with the Courts of Inquiry Act *("lov om undersøgelseskommissioner")*.

8) The Danish Parliament's standing committee concerning general financial affairs in a limited company covered by section 7(1) with regard to crisis management of companies covered by section 7(1), when decisions are to be made as to whether the State shall grant a guarantee or makes funds available. The same shall apply correspondingly in connection with the parliamentary control of cases covered by the 1st clause.

9) Members of the Public Accounts Committee and the Auditor General's Office *("Rigsrevisionen")*.

10) Interested parties, including authorities involved in attempts to save a limited company in distress covered by section 7(1), if the Danish FSA has received mandate from the Minister for Business and Growth, provided that the recipients of information need said information.

11) The liquidator, the bankruptcy court and other authorities participating in liquidation, bankruptcy proceedings or similar procedures, as well as persons responsible for the statutory audit of the financial statements of a company covered by section 7(1) or others covered by this Act, provided that the recipients of information need said information to perform their duties.

12)Institutions managing depositor, investor or insurance guarantee schemes, provided that such information is required by the recipients for the performance of their duties.

13) Danmarks Nationalbank (Denmark's central bank), foreign central banks, the European System of Central Banks and the European Central Bank in their capacity as monetary-policy authorities, provided that the information is necessary for said banks to meet their statutory obligations, including performance of monetary policy, monitoring of payment and securities management systems as well as safeguarding the stability of the financial system.

14) An institution which carries out clearing proceedings for securities or money, provided that such information is required to ensure that said institution reacts duly to non-compliance or potential non-compliance within the market where said institution is responsible for clearing proceedings.

15) Financial supervisory authorities in other Member States of the European Union or countries with which the Union has entered into an agreement for the financial area which are responsible for the supervision of operators of regulated markets, clearing centres, central securities depositories, credit institutions, finance institutions, insurance companies, investment companies, management companies or of the capital markets and bodies involved in liquidation, bankruptcy proceedings or similar procedures, as well as persons responsible for carrying out statutory audits of the financial statements of an operator of a regulated market, a clearing centre, a central securities depository, provided that the recipients of information need it to perform their duties.

16) Bodies in Member States of the European Union or in countries with which the Union has entered into an agreement for the financial area which are responsible for supervising compliance with the regulations for financial information from issuers of securities admitted to trading on a regulated market.

17) Ministers with responsibility for the financial legislation in Member States of the European Union or in countries with which the Union has entered into an agreement for the financial area in connection with crisis management of companies covered by section 7(1).

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

18) The European Securities and Markets Authority, the European Systemic Risk Board as well as bodies established by the European Securities and Markets Authority, provided that the recipients of information need said information to perform their duties.

19) Financial supervisory authorities in countries outside the European Union with which the Union has not entered into an agreement for the financial area, which are responsible for supervision of credit institutions, financial institutions, insurance companies or capital markets and bodies involved in liquidation, bankruptcy proceedings or in other similar procedures, and persons responsible for carrying out statutory audits of the accounts of a company covered by section 7(1) or for others covered by this Act, cf. however subsections (12) and (13).

20) The auction monitor pursuant to Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation) to carry out the auction monitor's functions.

21) The Danish Business Authority with regard to information received as part of enforcement by the Danish Securities Council under sections 83(2) and (3) and 83b, or information in cases on approval by the Danish FSA of prospectuses in pursuance of section 23, and in cases on supervision by the Danish FSA of the duty to disclose information in section 27, when such information is of significance to the accounting checks of the Danish Business Authority on behalf of the Danish Securities Council, cf. section 83(2).

22) The Supervisory Authority on Auditing and the disciplinary board for state-authorised public accountants and registered public accountants(*"Revisornævnet"*) for the performance of their duties.

**(7)** The provision of subsection (1) shall not prevent confidential information from being divulged to an operator of a regulated market licensed under section 8, or a company operating an alternative market place, cf. section 7a(2) provided that

1) this is to take action when, or investigate whether, inside information has been abused or price manipulation has taken place in accordance with the provisions in part 10 of this Act, or

2) this is to take action when, or investigate whether the trading and the listing on the regulated market or the alternative market place are performed in a fair and transparent manner.

**(8)** All those receiving confidential information from the Danish FSA or the Danish Securities Council under subsections (5)-(7) shall fall under the duty of confidentiality specified in subsection (1) with regard to said information.

**(9)** Confidential information received by the Danish FSA or the Danish Securities Council shall only be used in the course of its supervisory duties, to impose sanctions, or where appeals are made against the decision of the Danish FSA or the Danish Securities Council to a higher administrative authority or where such a decision is brought before the courts of law.

**(10)** Access to issue confidential information to the standing committee of the Danish Parliament under subsection (6), no. 8 shall be limited to documents in cases which have been established in the Danish FSA after 16 September 1995.

**(11)** Information may only be divulged pursuant to subsection (6), no. 19

1) on the basis of an international co-operation agreement, and

2) provided that the recipients of said information are, at a minimum, subject to a statutory duty of confidentiality corresponding to the duty of confidentiality pursuant to subsection (1) and that said recipients require said information to perform their duties.

**(12)** Confidential information from Member States of the European Union or countries with which the Union has entered into an agreement for the financial area shall only be divulged

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

pursuant to subsection (6), no. 19 where the authorities submitting said information have granted express permission to do so, and said information shall only be used for the purposes specified by said permission.

**84b.-(1)** Only companies covered by section 7(1), a designated payment system, the securities dealer, an approved foreign clearing centre, the securities dealer, the account-holding institution or the issuer of securities which a decision made by the Danish FSA concerns, cf. however subsections (2) and (3), shall be considered a party in relation to the Danish FSA.

**(2)** In the instances specified below, persons natural and legal other than an undertaking covered by subsection (1) shall also be considered a party to the decision made by the Danish FSA, as regards the parts of the case which concern said person:

1) A company that applies for a licence to operate a regulated market, a securities clearing activities and book-entry activities, cf. section 8(1).
2) A foreign clearing centre which has applied for a licence under section 8a.
3) A member of the board of directors or the board of management of a company that the Danish FSA receives information about in connection with approval in pursuance of section 9(1) and (2).
4) The intended acquirer or holder of a qualifying investment where the Danish FSA deals with cases on authorising acquisitions, cf. sections 10, 10a and 10b as well as where the Danish FSA reacts as a result of omission to notify the Danish FSA about an investment or withdraws the voting rights associated with the relevant owner's investment, cf. section 10d(1)-(3).
5) Any person contravening the prohibitions in this Act against words covered by section 16(2) and section 42d(1).
6) Any person against whom the Danish FSA commences an investigation regarding violation of section 29 on notification of share holdings or on violation of part 10.
7) Anyone who brings before the Danish FSA a decision made by an operator of a regulated market, a company operating an alternative market place, a clearing centre or a central securities depository, cf. section 88(3), and who the Danish FSA considers to be party to the case, and others who the Danish FSA considers to be parties to the case.
8) An acquirer as mentioned in sections 31(1) and 32(1) and (2) as well as others that the Danish FSA, in special cases, regards as parties to the case.
9) Anyone that the Danish FSA, in pursuance of section 33(2), has identified as being covered by said obligation to report.
10) Anyone the Danish FSA orders to draw up internal rules according to section 37(1) and (2), or to amend these.

**(3)** A member of the board of directors, an auditor, a member of the board of management, or other senior employees of a company covered by section 7 or in other undertakings covered by this Act shall be considered as party to the case, if the Danish FSA's reprimand or order pursuant to this Act or provisions issued pursuant to this Act are aimed specifically at said person.

**(4)** Subsections (1) and (3) shall apply correspondingly to decisions made by the Danish Securities Council as part of its enforcement under section 83(2) and (3) and section 83b. Furthermore, anyone who the Danish Securities Council considers to be party to the case shall be considered as party in relation to decisions made by the Danish Securities Council as part of the Council's enforcement under section 83(2) and (3) and section 83b.

**(5)** Status as a party and authorities as party under subsections (2) and (3) shall be limited to matters where the Danish FSA or the Danish Securities Council makes decisions after 17 December 1998.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**84c.-(1)** Decisions made pursuant to section 84(2), nos. 1 and 4 and subsection (3) shall be made public. The 1st clause shall also apply for decisions to turn cases over to police investigation, cf. however, subsection (2). Publication shall include the name of the undertaking. The 1st to 3rd clauses shall also apply for decisions by the Danish FSA or the Danish Business Authority to turn cases over to police investigation, upon delegation by the Danish Securities Council.

**(2)** Publication pursuant to subsection (1) may not, however, take place if it will mean disproportionate damage for the undertaking, or issues relating to investigations make publication inadvisable. Publication may not contain confidential information on client relationships or information subject to section 12(1) of the Access to Public Administration Files Act. Publication may not contain confidential information which originates from financial supervisory authorities in other countries within or outside the European Union unless the authorities which have issued the information have given their express consent.

**(3)** If publication is omitted pursuant to subsection (2), 1st clause, publication pursuant to subsection (1) shall be effected when the considerations necessitating omission no longer apply. This shall only apply, however, for up to two years after the relevant decision was made.

**84d.-(1)** In the matters mentioned in subsection (2), the Danish FSA may make public the name of an undertaking or natural person which, pursuant to section 83(1), is given a reprimand for violation of this Act or provisions laid down pursuant to this Act. The Danish FSA may also make public the name of an undertaking or natural person, if, in the matters mentioned in subsection (2), it is ascertained that the undertaking or natural person has not violated this Act or provisions laid down pursuant to this Act. Publication under the 1st and 2nd clauses may be effected when the Danish FSA deems it to be of interest to the investors to know the name of the undertaking or natural person. The 1st to 3rd clauses shall apply correspondingly to decisions made by the Danish Securities Council in the types of cases mentioned in subsection (2), nos. 6-8 and 13 when such decisions are made with regard to natural persons.

**(2)** Publication may be effected in matters pertaining to violation of

1) the regulations on public disclosure of inside information, cf. section 27(1), (2), (4) and (5),
2) the regulations on public disclosure of annual reports and half-year interim reports, cf. section 27(7),
3) the regulations on public disclosure of interim management statements, cf. section 27(8),
4) the regulations on publication, registration and storage of information, cf. section 27a(1)-(3) and of provisions on this issued in accordance with section 30,
5) the regulations on notification of own shares, cf. section 28,
6) the regulations on notification, reporting and public disclosure of senior employees' transactions, cf. section 28a(1), (3), (5) and (7), and of provisions in this respect issued pursuant to section 28a(8).
7) the regulations on preparation and dissemination of recommendations regarding securities, cf. section 28b(1), as well as of provisions in this respect issued pursuant to section 28b(2),
8) the regulations on notification of major shareholdings, cf. section 29(1), and of the provisions in this respect, issued in pursuance of section 29(4),
9) the regulations on shortselling securities, including prohibition, disclosure obligations and other terms for shortselling issued pursuant to section 39b,

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

10) the regulations on the duty to disclose information of the issuers' equal treatment of and communication with shareholders and owners or other forms of negotiable debt securities, issued in pursuance of section 30,

11) the regulations on takeover bids, cf. section 31(1) and section 32(1)-(3), and of the provisions in this respect, issued pursuant to section 32(4),

12) the regulations on securities dealers' transaction reporting and public disclosure of prices and transactions, cf. section 33(2) and (4), section 33a(1) and (2), and section 33b(1), as well as provisions issued pursuant to section 33(3) and (5), section 33a(4) and section 33b(3) and (4),

13) the regulations against insider trading, disclosure of inside information, and price manipulation, cf. section 35(1), section 36 and section 39(1),

14) the provisions on issuance of internal rules, cf. section 37(1)-(3),

15) the regulations on preparation of insider lists, cf. section 37(4), and of the provisions in this respect in pursuance of section 37(10),

16) the regulations on notification of suspicious transactions, cf. section 37(6), 1st clause, and of provisions in this respect issued pursuant to section 37(10), and

17) the regulations in Articles 37-42 of Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation).

**(3)** The Danish FSA may, in the matters mentioned in subsection (2), also make public the name of an undertaking or natural person who the Danish FSA has ordered to pay a daily or weekly fine under section 95, if the Danish FSA deems it to be in the interest of the investors to know the name of the undertaking or natural person.

**(4)** Public disclosure pursuant to subsection (1) may not be effected if this would lead to disproportionate damage to the undertaking or natural person.

**(5)** The Danish FSA may, if deemed appropriate, make public an order to rectify matters that are in contravention of this Act or provisions laid down pursuant to this Act, which is issued to a natural or legal person or an affiliation of legal persons under section 93(3), 1st and 3rd clauses.

**(6)** If an issuer of securities fails to comply with an order about publication of information notified under section 93(3), the Danish FSA may publish the information. Publication under the 1st clause may take place in cases covered by section 27(1), (7) and (8), section 27a(1)-(3), section 28 and section 29(1), and cases covered by the regulations issued in accordance with section 30.

**84e.** The Danish FSA shall inform the public about cases on good securities trading practices, cf. section 3, and executive orders issued pursuant to section 3, dealt with by the Danish FSA, the prosecution service or the courts, and which are of public interest or of significance for interpretation of the provisions mentioned.

**84f.-(1)** In instances where a limited company covered by section 7(1), or other undertakings subject to supervision covered by this Act are declared bankrupt or the majority of the company's operation has ceased or been transferred, the Danish FSA shall prepare a report on the reasons for this, if the state in connection with or for a short period prior to this has granted a guarantee or made funds available to the company, its creditors or an acquirer of all or part of the company.

**(2)** The Danish FSA shall publish the report pursuant to subsection (1). In connection with publication, section 84a shall not apply, unless the information relates to client relationships or third parties which are or have been involved in attempts to save the relevant company.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** The report pursuant to subsection (1) shall describe the role of the Danish FSA during the course of events up to the bankruptcy, etc.

**85.** Undertakings subject to supervision under this Act shall pay a fee to the Danish FSA. The fee shall be set pursuant to part 22 of the Financial Business Act.

**86.–(1)** The Danish FSA shall supervise that the activities of securities dealers, operators of regulated markets, designated payment systems, clearing centres, central securities depositories and account-holding institutions, including their regulations, organisation plans, procedures and control and security measures, including the area of IT, are adequate and in accordance with this Act and provisions laid down pursuant to this Act. Similarly, the Danish FSA shall supervise that companies operating multilateral trading facilities comply with its obligations under this Act. However, supervision shall not be carried out with designated payment systems subject to monitoring by Danmarks Nationalbank (Denmark's central bank) pursuant to subsection (2). The Danish FSA shall also ensure that approved foreign clearing centres, cf. section 8a, comply with the regulations laid down pursuant to this Act and the terms of the licence under section 8a(3) or (4).

**(2)** Danmarks Nationalbank (Denmark's central bank) shall monitor payment systems which Danmarks Nationalbank (Denmark's central bank) considers as having significant importance to the settlement of payments or the completion of the monetary transactions of Danmarks Nationalbank (Denmark's central bank) in order to promote the flexibility of the systems by contributing to their effectiveness and stability. Danmarks Nationalbank (Denmark's central bank) shall notify the Danish FSA about which payment systems are subject to monitoring by Danmarks Nationalbank (Denmark's central bank).

**(3)** The Danish FSA shall prepare a list of the payment systems covered by subsection (2). Such list shall be published by executive order.

**87.–(1)** The Danish FSA may order the board of directors, board of management and auditors of securities dealers, operators of regulated markets, clearing centres, central securities depositories, account-holding institutions, companies operating multilateral trading facilities, designated payment systems, issuers, suppliers and sub-suppliers to provide the information necessary for the activities of the Danish FSA.

**(2)** The Danish FSA may ask for any information, including accounts, accounting records, printouts of books, other business records, tape recordings and similar in connection with the conclusion of transactions and electronically stored data, deemed necessary for the activities of the Danish FSA or for deciding whether a natural or legal person is covered by the provisions of this Act.

**(3)** The Danish FSA may order the companies mentioned in subsection (1) to report certain information electronically.

**(4)** The Danish FSA may procure information from public bodies, including electronic information.

**(5)** The Danish FSA may at all times, on proof of identity and without a court order, carry out inspection visits at the place of business of a securities dealer, an operator of a regulated market, a company operating a multilateral trading facility, a clearing centre, a central securities depository, an account-holding institution, and a designated payment system.

**(6)** The Danish FSA may procure information under subsections (1)-(5) for use by the authorities mentioned in section 84a(6) nos. 15 and 19.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

**(7)** Authorisation pursuant to subsections (1)-(6) shall be exercised by Danmarks Nationalbank (Denmark's central bank) in matters relating to a designated payment system covered by section 57a(7).

**(8)** The Danish FSA may at any time, on proof of identity and without a court order, have access to service suppliers and sub-suppliers in order to obtain information about the outsourced activity.

**87a.** (Repealed).

**88.–(1)** Decisions made by the Danish FSA under this Act or under regulations issued pursuant to this Act may be brought before the Company Appeals Board no later than four weeks after the person concerned has been notified of such decision. The same shall apply correspondingly for decisions made by the Danish FSA pursuant to Articles 37-42 of Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation). The provision in the 1st clause shall not cover decisions under subsection (3) or section 87. The provisions of this subsection shall also apply to decisions made by the Danish Securities Council as part of its enforcement under section 83(2) and (3) and section 83b(2)-(4), as well as decisions made by Danmarks Nationalbank (Denmark's central bank) pursuant to section 57a(7).

**(2)** Subsection (1) shall also apply to decisions made by undertakings exercising powers on behalf of the Danish FSA.

**(3)** Decisions made by operators of regulated markets, companies operating multilateral trading facilities, clearing centres or central securities depositories pursuant to this Act or regulations issued pursuant to this Act as well as decisions by said undertakings in matters of far-reaching or principle significance made in accordance with their own regulations may be brought before the Danish FSA no later than four weeks after the person concerned has been notified about the decision. This may act as stay of proceedings.

**(4)** Decisions by the Company Appeals Board and decisions which the Danish FSA makes under subsection (3) may be brought before the courts through institution of legal proceedings no later than eight weeks after the person concerned has been notified about the decision.

**(5)** Decisions regarding book-entry, alteration or extinguishment of rights in a central securities depository made by a central securities depository and decisions made by the Complaints Board for Central Securities Depositories shall not be covered by subsections (1)-(4).

**89.–(1)** The Danish FSA may lay down regulations stipulating that securities dealers, operators of regulated markets, clearing centres, central securities depositories, account-holding institutions, companies operating multilateral trading facilities, and designated payment systems are to prepare information for the general public for statistical purposes.

**(2)** Statistics Denmark may also lay down regulations as mentioned in subsection (1).

**(3)** Public authorities and institutions disseminating statistics liable to have a significant effect on the financial markets shall disseminate them in a transparent way which ensures that everyone has equal access to the information.

**90.** (Repealed).

**91.–(1)** The Danish Data Protection Agency shall supervise compliance with the Act on Processing of Personal Data, provisions laid down pursuant to said Act, and with section 60(2)-(4). The Danish Data Protection Agency shall also supervise, at its own initiative or following a

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

**November 2012, GlobalDenmark Translations**

complaint from a registered entity, that a central securities depository is utilised in accordance with the Acts and provisions mentioned.

**(2)** The Danish Data Protection Agency may, from a central securities depository or an account-holding institution, request any information significant to its activities, including to decisions regarding whether a matter is subject to this Act or the Act on Processing of Personal Data.

**(3)** As regards central securities depositories or account-holding institutions, the members and staff of the Danish Data Protection Agency shall at any time, on proof of identity, without a court order have access to all premises from which the book-entry registers of the central securities depositories are managed or may be utilised as well as to the premises where said book-entry register or the technical aids are stored or utilised.

**(4)** If the Danish Data Protection Agency deems that a central securities depository or an account-holding institution does not comply with section 60(2)-(4), the Danish FSA shall issue an order to the relevant depository or institution about the measures to be carried out. Orders issued by the Danish Data Protection Agency may not be brought before other administrative authorities.


## Part 27
*Withdrawal of licenses or approval*

**92.-(1)** The Danish FSA may withdraw the licence pursuant to section 8 of an operator of a regulated market, a clearing centre and a central securities depository where

1) the undertaking does not commence activities within 12 months after the licence was granted,
2) activities are not carried out for a period of more than six months,
3) the company expressly waives its right to make use of the licence,
4) the company grossly or repeatedly neglects its obligations under this Act or orders pursuant to section 93(3), or provisions issued pursuant to this Act,
5) a member of the board of directors or the board of management of the company does not comply with the requirements mentioned in section 9(1) and (2), or
6) the company no longer meets the conditions under which authorisation was granted.

**(2)** If the Danish FSA deems that an account-holding institution covered by section 62(1), nos. 2-8 or subsections (2)-(4), seriously fails to satisfy its obligations or orders issued under this Act, the Danish FSA may withdraw the relevant institution's right to carry out activities under sections 62 and 76(2).

**(3)** If an operator of a regulated market, a clearing centre or a central securities depository does not meet the capital requirement under section 8(2), no. 2, or the individually set capital requirement under section 15(3), 4th clause, the Danish FSA may either set a time limit within which the capital is to be brought up to the set requirement, or withdraw the licence immediately. The 1st clause shall apply correspondingly in situations where the total capital resources of a central securities depository do not meet the requirement of section 82(1).

**92a.** The Danish FSA may withdraw an approval under section 8a(3) or (4), if

1) the activities do not commence within a time limit set for the approval, or if no time limit has been set for the approval within 12 months after granting the licence,
2) the activities are not exercised for a period of more than six consecutive months,

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

3) the approved foreign clearing centre grossly or repeatedly neglects its obligations under this Act, or provisions issued pursuant to this Act or orders pursuant to section 93(3),

4) the approved foreign clearing centre no longer complies with the terms upon which the approval was granted, or which are later added to the approval, or

5) the Danish FSA assesses that it is not possible to carry out the clearing in a safe, efficient and technically responsible manner for the financial markets.

**92b.** The Danish FSA may withdraw a licence under section 8c(1) or (4), if

1) the activities do not commence within a time limit set for the licence, or if no time limit has been set for the licence, within 12 months after the licence was granted,

2) the activities are not exercised for a period of more than six consecutive months,

3) the auction platform or its operator grossly or repeatedly neglects their obligations under Commission Regulation no. 1031/2010 of 12 November 2010 ($CO_2$ Auction Regulation), this Act or provisions issued pursuant to this Act or orders granted under section 93(3),

4) the auction platform or its operator no longer complies with the terms under which the licence was granted, or which were later added to the licence, or

5) The Danish FSA assesses that the auction platform's implementation of auctions is not taking place in a safe, efficient and technically responsible manner for the market.

## VI
## Penalties, etc.
## Part 28
*Penalties, etc.*

**93.-(1)** Violation of section 8(1); section 8a(2); section 9(3); section 10(1); sections 10b and 10c; section 11; section 12a; section 12b(1), subsection (2), 1st clause, subsections (3)-(6) and (10); section 12c, section 12d(1), section 14(1), 1st clause, section 15(3); section 16(2), 3rd clause, and subsection (3); section 18, section 18a(1) and (2), section 18b(1) and (2) and subsection (3), 2nd and 3rd clauses; section 19; section 20(4), 2nd clause, subsection (5) and subsection (6), 1st clause; section 21(1) and (2), and subsection (3), 2nd clause; section 23(1) and (3); section 24(1); section 25(1), 2nd clause, and subsection (2), section 27(1), subsection (2), 1st-3rd clauses, and subsections (7) and (8), section 27a(1)-(3), section 28, section 28a(1), subsection (3), 4th clause, subsection(5), 1st clause, and subsection (7), section 28b(1), section 29(1) and (2), section 31(1), section 32(1)-(3), subsections (2) and (4), section 33a(1) and (2), 2nd clause, section 33b(1) and (2), section 37(1)-(5), subsection (6), 1st clause, subsection (7), 1st clause, and subsections (8) and (9), section 40(2), section 41(1), 2nd clause; section 42(1) and subsection (2), 2nd and 3rd clauses, section 42a, section 42b(1), section 42c, section 42d, subsection (1), 2nd clause, and subsection (2), section 42e(1), 2nd clause, and subsection (1), 2nd clause, and subsection (2), 2nd clause, section 44(1) and (3); section 45(1), section 46(1), section 51, section 52(1), 2nd clause, section 60(1), 2nd clause, section 75(2), 2nd clause, and section 76(2), shall be liable to a fine. Gross or repeated violation of section 23(6), section 52(1), 1st clause, and section 60(1), 1st clause, as well as approved foreign clearing centres grossly or repeatedly violating the terms laid down in licences granted under section 8a(3) or (4) shall be subject to the same penalty.

**(2)** A financial undertaking or a financial holding company that does not comply with an order pursuant to section 3(1) and (2) shall be liable to a fine. Furthermore, a member of the board of directors of an undertaking covered by section 7(1) who does not comply with an order issued in pursuance of section 12e(2) and (3), 3rd clause shall be liable to a fine.

**(3)** If a natural or legal person fails to meet obligations under this Act or the provisions laid down in pursuance hereof, the Danish FSA may order the person concerned to remedy the matter. The Danish FSA may also order a natural or legal person to change this matter if the natural or legal person fails to meet obligations under Commission Regulation no. 1031/2010

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

of 12 November 2010 ($CO_2$ - Auction Regulation). An order may also be issued to combinations of legal persons. Authorities under the 1st and 3rd clauses shall be exercised by Danmarks Nationalbank (Denmark's central bank) in the case of a designated payment system covered by section 57a(7). If deemed appropriate, the Danish FSA may suspend or remove the securities involved from the regulated market or the multilateral trading facility. Similarly, the Danish FSA may suspend or remove the securities involved from trading if the relevant security is removed or suspended from a regulated market in a Member State of the European Union or in a country with which the Union has entered into an agreement for the financial area. Any person not complying with an order from the Danish FSA or Danmarks Nationalbank (Denmark's central bank), respectively or giving incorrect or misleading information to the Danish FSA or Danmarks Nationalbank (Denmark's central bank), respectively shall be liable to a fine, provided that the offence does not carry a more severe penalty under other legislation.

**(4)** Regulations issued by the Minister for Economic and Business Affairs, the Danish FSA or the Danish Business Authority pursuant to this Act may stipulate fines for any violation of the rules of the regulations.

**(5)** The Danish FSA may stipulate fines for any violation of the rules of the regulations included in the Regulations from the European Union in the areas of legislation with which the Danish FSA carries out supervision.

**(6)** Companies, etc. (legal persons) may incur criminal liability according to the regulations in chapter 5 of the Criminal Code.

**(7)** The period of limitation for violations of the provisions in this Act or regulations issued pursuant to this Act shall be 5 years.

**(8)** The sentence under subsection (1) shall take into account the gravity of the violation and the amount of time the violation has taken place.

**93a.-(1)** The Minister for Economic and Business Affairs may lay down regulations stipulating that the Danish FSA in specified cases on violations of this Act and provisions issued pursuant to this Act, not deemed to entail higher penalty than a fine, in notifications of fines may state that the case may be decided without court proceedings, if the offender declares himself guilty of the offence and ready to pay a fine as stated in the notification of fines within a specified time limit.

**(2)** The provisions laid down in the Danish Administration of Justice Act on requirements concerning the content of indictments and on the right of the accused to remain silent, shall apply correspondingly to notifications of fines.

**(3)** Further prosecution shall be discontinued on acceptance of a fine.

**94.-(1)** Any person violating section 35(1), section 36 and section 39(1), shall be liable to a fine or imprisonment for up to one year and six months. If a violation of section 35(1) and section 39(1) is intentional and of a particularly gross nature, or if a large number of intentional violations have been committed, the penalty may be increased to imprisonment for four years.

**(2)** The provisions in section 93(6) shall apply correspondingly.

**95.-(1)** If the board of management, board of directors or auditor of a securities dealer, an operator of a regulated market, a clearing centre, a central securities depository, an account-holding institution, a company operating a multilateral trading facility, a designated payment system or an issuer omits to comply with the duties and obligations imposed on them under

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

this Act or under provisions issued pursuant to this Act by the Danish FSA or the Danish Business Authority, or in matters relating to a designated payment system covered by section 57a(7) Danmarks Nationalbank (Denmark's central bank), the Danish FSA or the Danish Business Authority may, as a coercive measure, impose daily or weekly fines.

**(2)** If a natural or legal person omits to comply with the duties and obligations imposed on it under this Act, the Danish FSA or the Danish Business Authority may, as a coercive measure, impose daily or weekly fines on the natural or legal person or on the persons responsible for said legal person.

**96.-(1)** Members of the board of directors, members of the board of management, auditors and their deputies as well as employees of an operator of a regulated market, a clearing centre, a central securities depository, a designated payment system, an account-holding institution or a company operating a multilateral trading facility who disclose or utilise without authority any confidential information which has come to their knowledge during the performance of their duties, shall be liable to a fine, unless more severe penalty is incurred under other legislation.

**(2)** If persons attached to an operator of a regulated market, a company operating a multilateral trading facility, a clearing centre, a central securities depository, a designated payment system or an account-holding institution give incorrect or misleading information on matters pertaining to the operator of a regulated market, the company operating a multilateral trading facility, the clearing centre, central securities depository, designated payment system, or the account-holding institution to the Danish FSA, Danmarks Nationalbank (Denmark's central bank), the Danish Securities Council or other public authorities, the relevant person shall be liable to a fine or imprisonment up to four months, unless more severe penalty is incurred under other legislation.

**VII**
**Conversion provisions, etc.**
**Part 29**
*Conversion provisions*

**97.** The Copenhagen Stock Exchange, VP Securities Services and the Guarantee Fund for Danish Options and Futures may be converted into limited companies under the regulations in sections 98-104.

**98.-(1)** The board of directors of each of the funds referred to in section 97 may decide that the fund is to be dissolved without a liquidation by transfer of total assets and debt to one or more of the limited companies owned or established by the fund having authorisation to carry out activities pursuant to section 7(1), nos. 1, 5 or 6. At the same time, shares in each of the limited companies corresponding to the value of the transferred assets after deduction of the fund's contributed liabilities shall be transferred to a newly established fund. The boards of directors of the newly established funds may, with the consent of the authority responsible for the funds, decide to amalgamate the funds.

**(2)** Dissolution without liquidation may also be effected through transfer of the fund's total assets and debt to one or more limited companies licensed to carry out activities in accordance with section 7(1), nos. 1, 5 or 6 of this Act. At the same time, shares in each of the limited companies corresponding to the value of the transferred assets after deduction of the fund's contributed debt shall be transferred to a newly established fund. If such transfer takes place to one or more limited companies established under subsection (1), the boards of directors of the newly established funds may, with the consent of the authority responsible for the funds, decide to amalgamate the funds.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** Conversion pursuant to subsections (1) and (2) may also take place by the shares in the limited company or companies mentioned in subsections (1) and (2) being transferred to the existing fund, if this is in conformity with the articles of association of the existing fund.

**(4)** Decisions made under subsections (1)-(3) shall be made subject to the majority otherwise required for important decisions. The shareholders of the limited company or companies mentioned in subsection (2) shall draw up a shareholder's agreement to be approved by the Minister for Economic and Business Affairs.

**(5)** The continuing fund pursuant to subsection (1), 2nd and 3rd clauses, (2), 2nd and 3rd clauses, and (3) shall be regarded as corporate under the Corporate Funds Act *("Lov om erhvervsdrivende fonde")*.

**99.-(1)** In the event of conversion pursuant to section 98(1)-(3) of this Act, sections 6a-6c and section 33(1) of the Public Companies Act as compared with sections 134-134i or sections 136-136i shall apply correspondingly subject to any variations necessary.

**(2)** The joint statement of accounts and opening balance sheet referred to in section 134b of the Public Companies Act shall be prepared pursuant to the accounting regulations applying to limited companies which carry out the type of activities which the newly established limited companies are contemplating.

**(3)** Documents which, pursuant to the Public Companies Act, are to be submitted to the Danish Business Authority shall also be submitted to the Danish FSA.

**(4)** The Danish FSA shall approve the conversion pursuant to section 98(1)-(3).

**100.-(1)** The continuing fund, cf. section 98(1)-(3), shall be managed by a board of directors with no less than five members.

**(2)** A majority of the members shall be appointed by the board of directors of the limited company from among the members of the board of directors.

**(3)** If, in connection with the conversion, the fund acquires shares in more than one limited company converted pursuant to section 98(2) shall not apply.

**101.-(1)** The boards of directors of each of the funds referred to in section 97 may also decide that the fund or funds are to be dissolved without liquidation by transfer of total assets and liabilities to one or more of the limited companies owned or established by the fund or funds having authorisation to carry out activities pursuant to section 7(1), nos. 1, 5 or 6. The value of the assets transferred shall in each limited company be equivalent to or exceed the value of the debt transferred. In each limited company, an undistributable fund reserve equivalent to the value of the assets contributed less the debt of the fund shall be set up, cf. sections 102 and 103.

**(2)** Dissolution without liquidation may also take place by transfer of the assets and liabilities of the fund in full to one or more limited companies authorised to carry out activities pursuant to section 7(1), nos. 1, 5 or 6. The value of the assets transferred shall in each limited company be equivalent to or exceed the value of the debt transferred. In each limited company an undistributable fund reserve equivalent to the value of the assets contributed less the debt of the fund shall be set up, or if such an undistributable fund reserve already exists in the limited company, this shall be increased by the value of the assets contributed less the liabilities of the fund, cf. sections 102 and 103.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** Section 98(4), and section 99 shall apply correspondingly to conversion pursuant to subsections (1) and (2).

**102.-(1)** The undistributable fund reserve may be used to cover a loss that is not covered by amounts available for dividends in the limited company.

**(2)** In the event of the dissolution of the limited company, dividends may only be distributed to shareholders if the obligations under subsection (4) have been met.

**(3)** By transfer of the limited company's assets and liabilities to one or more limited companies which carry out activities pursuant to section 7(1), nos. 1, 5 or 6, the continuing company shall take over the fund reserve on the same terms as applied until such transfer.

**(4)** In the decision as to conversion pursuant to section 101(1) or (2), more detailed regulations shall be laid down governing the distribution of the fund reserve in the event of the dissolution of the company. The fund reserve shall, dependent on whether the limited company has a licence to carry out activities pursuant to section 7(1), nos. 1, 5 or 6 be distributed for purposes pertaining to stock-exchange activities, clearing activities or book-entry activities, respectively.

**103.** 10% of the profit for the year not applied to cover any losses from prior years shall be transferred to the fund reserve. The provision may not, however, exceed interest on the funds reserve corresponding to the interest calculated pursuant to section 213(2) of the Financial Business Act after deduction of a proportionate share of the corporation tax for the year.

**104.-(1)** The board of directors of each of the funds referred to in section 97 may also decide that the conversion is to be effected by a combination of the conversions described in sections 98 and 101. The fund or funds shall transfer total assets and liabilities to one or more limited companies, cf. section 98(1) and (2) and section 101(1) and (2). In each limited company an undistributable fund reserve shall be set up, cf. sections 102 and 103. At the same time, shares in each of the limited companies equivalent to the value of the assets contributed less the liabilities of the fund and less the undistributable fund reserve shall be transferred to a fund, cf. sections 98(1)-(3), which is regarded as corporate under the Corporate Funds Act *("lov om erhvervsdrivende fonde")*.

**(2)** Sections 98-103 shall apply to the conversion pursuant to subsection (1) with the changes necessary.

## VIII
## Amendment of other acts
## Part 30
*Amendment of other acts*

**105.** (Omitted)

**106.** (Omitted)

**107.** (Omitted)

**108.** (Omitted)

**109.** (Omitted)

**110.** (Omitted)

**111.** (Omitted)

**112.** (Omitted)

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**113.** (Omitted)

**114.** (Omitted)

**115.** (Omitted)

**116.** (Omitted)

**117.** (Omitted)

**118.** (Omitted)

**119.** (Omitted)

**120.** (Omitted)

**121.** (Omitted)

**122.** (Omitted)

**123.** (Omitted)

**124.** (Omitted)

**125.** (Omitted)

**IX**
**Entry into force and transitional provisions, etc.**
**Part 31**
*Entry into force and transitional provisions, etc.*

**126.-(1)** The date of entry into force of this Act or parts hereof shall be laid down by the Minister for Economic and Business Affairs, in respect of section 105, nos. 1, 3-9, 12 and 13; and sections 106-115 after consultation with the Minister for Taxation, and in respect of sections 123-125 after consultation with the Minister for Justice. Section 105, nos. 2, 10 and 11 shall enter into force the day after publication in the Danish Law Gazette. For activities pertaining to central securities depositories and clearing, this Act shall enter into force no later than 1 June 1997. However, this Act shall enter into force no later than 1 June 1996 except for section 6(3), which shall enter into force on 1 June 1997.

**(2)** The Minister for Economic and Business Affairs may repeal, in full or in part, the Act on the Copenhagen Stock Exchange *("lov om Københavns Fondsbørs")*, cf. Consolidating Act no. 713 of 8 September 1993, the Act on a Central Securities Depository *("lov om en værdipapircentral")*, cf. Consolidating Act no. 807 of 6 October 1993 and Act no. 213 of 10 April 1991 on prospectuses in connection with first offer to the public of certain securities.

**(3)** Section 105, nos. 1, 3-9, 12 and 13; section 106, no. 1; section 107; section 108, nos. 1, 2 and 4; sections 109 and 110; section 112, no. 2; and section 115 shall take effect as from the income year 1997, cf. however subsections (6) and (7)

**(4)** Section 105, no. 10 shall take effect for companies and associations, etc. which will be covered by section 35K of the Corporation Tax Act as from the entry into force of the provision.

**(5)** Section 112, no. 1 shall take effect as from the income year 1988.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(6)** In connection with the conversion of the Copenhagen Stock Exchange and the VP Securities Services into limited companies before 1 January 1997, section 14h(3) of the Merger Tax Act *("fusionsskatteloven")*, as stated in section 112, no. 2 of this Act, shall apply correspondingly.

**(7)** In connection with the conversion of the Guarantee Fund for Danish Options and Futures into a limited company before 1 January 1997, section 14h of the Merger Tax Act *("Fusionsskatteloven")*, as stated in section 112, no. 2 of this Act, shall apply correspondingly.

**127.-(1)** Notwithstanding the provisions in section 7, no. 1 and section 8(2), nos. 1 and 2, the Copenhagen Stock Exchange may carry out stock-exchange activities until 1 July 1997. In carrying out such activities, the Copenhagen Stock Exchange shall be considered a stock exchange under this Act.

**(2)** Notwithstanding the provisions in section 7, nos. 5 and 6, and section 8(2), nos. 1 and 2, the VP Securities Services and the Guarantee Fund for Danish Options and Futures may continue to carry out securities clearing activities. In carrying out such activities, Guarantee Fund for Danish Options and Futures and the VP Securities Services shall be considered clearing centres under this Act.

**(3)** Notwithstanding the provisions in section 7, no. 6 and section 8(2), nos. 1 and 2, the VP Securities Services may continue to carry out book-entry activities. In carrying out such activities, the VP Securities Services shall be considered a central securities depository under this Act.

**(4)** In connection with the conversion of the Copenhagen Stock Exchange into a limited company, the employees of said limited company may appoint one member of the board of directors. In connection with the conversion of VP Securities Services into a limited company, the employees of said limited company may appoint two members of the board of directors.

**(5)** Subsection (4) shall apply for a period of three years as from the conversion, whereafter the entitlement of the company's employees to be represented on the board of directors shall be governed by the provisions of the Companies Act.

**127a.-(1)** The VP Securities Services shall be a private, independent institution. Detailed regulations concerning VP Securities Services and its activities shall be laid down by the board of directors of VP Securities Services in the articles of association, which shall be approved by the Danish FSA.

**(2)** A board of directors comprising up to 14 members as well as a board of management shall manage VP Securities Services.

**(3)** The matters addressed by the board of directors shall, where special majorities are not due under the articles of association, be decided by a simple majority of votes. The articles of association may stipulate that the chairperson is to have the casting vote in the event of parity of votes.

**(4)** The Minister for Economic and Business Affairs shall, for a period of three years at a time, appoint the chairman of the board of directors and other members of the board of directors, cf. however subsections (5)-(9). Among the members, four shall be appointed on the recommendation of organisations representing the issuers of investment securities, four on the recommendation of organisations representing the account-holding institutions referred to in section 62(1), nos. 2 and 3, and one member on the recommendation of Danmarks Nationalbank (Denmark's central bank). Two of the members shall be appointed with a special

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

view to protecting the interests of the owners of investment securities. Proxies shall be appointed for these members.

**(5)** The employees of VP Securities Services may elect two members of the board of directors and proxies for these from among the employees of VP Securities Services in accordance with subsections (6)-(9).

**(6)** No less than half of the employees shall vote for a decision to utilise the right under subsection (5). The decision shall be notified in writing to the board of directors.

**(7)** The election of members of the board of directors and proxies by the employees shall take place by secret ballot. The members shall join the board of directors one month after it has received written notification of the name and address of the persons concerned.

**(8)** The members of the board of directors elected by the employees shall be appointed for three years at a time from among the employees who have been employed by VP Securities Services one year prior to the election.

**(9)** The Minister for Economic and Business Affairs shall lay down regulations regarding

1) who are to be considered employees,
2) the detailed implementation of elections pursuant to subsections (6) and (7),
3) the possibility of omitting election pursuant to subsection (7) if the number of members and proxies to be elected to the board of directors only corresponds to the number of candidates,
4) judicial protection of the job of members of the board of directors elected by the employees so that any disagreement as to protection as well as violation or interpretation of the regulations shall be subjected to industrial disputes procedures, and
5) the form in which the employees of VP Securities Services shall be informed of VP Securities Services' affairs.

**(10)** The board of directors shall employ the board of management and ensure that the activities of VP Securities Services are carried out properly in accordance with the provisions of this Act and the articles of association of VP Securities Services.

**(11)** The board of management shall be in charge of the day-to-day management of VP Securities Services in accordance with the guidelines and directions of the board of directors.

**128.** With regard to limited companies established pursuant to section 101 or section 104, the Danish FSA may, irrespective of the provisions in section 8(2), no. 2, grant a licence to carry out stock-exchange activities, securities clearing activities and book-entry activities provided that the base capital of the company at the time of the licence is no less than DKK 40 million. No less than DKK 16 million of this amount shall be share capital.

**129.** The provision in section 6(3), 1st clause relating to consent from clients shall apply to new client relationships commenced after the entry into force of said provision. In respect of existing client relationships, consent from each client shall be obtained no later than 18 months after entry into force of section 6(3), 1st clause if a securities dealer keeps the client's securities in an omnibus account or safekeep.

**130.-(1)** This Act shall not apply to the Faeroe Islands and Greenland, but with the exception of sections 105-115, section 123 and section 125, may be brought into force by Royal Decree for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** Section 125 may by Royal Decree be brought into force for the Faeroe Islands subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands.

---

Act no. 475 of 10 June 1997 contains the following entry into force and transitional provisions:

**9.**

**(1)** This Act shall enter into force on 1 January 1998. (2nd and 3rd clauses omitted)

**(2)** The board of directors shall, on 1 March 1998 at the latest, have completed the drafting of internal guidelines pursuant to (omitted) section 12b(1) of the Securities Trading etc. Act as expressed in section 4, no. 1 of this Act.

**(3)** The provisions in (omitted) section 14(2) of the Securities Trading etc. Act as expressed in section 4, nos. 3 and 4, section 11a(3), 2nd clause, (omitted) of this Act shall apply to financial years commencing on 1 January 1998 or later.

**(4)-(6)** (Omitted)

**(7)** Notwithstanding the regulations of this Act, members of the board of management and their deputies and persons of equal status, as well as branch managers in financial institutions covered by this Act may carry out duties as members of boards of directors of Danish Ship Finance, Dansk Eksportfinansiering, the Danish Agricultural Mortgage Bank, Danish Venture Finance A/S, Finansieringsinstituttet for Hoteller m.v., FIH - Finance for Danish Industry, the Nordic Association, LRF Mortgage Bank, Totalkredit Realkreditfond and Bornholm's Investment Fund.

**(8)** Persons covered by section 12c(3) of the Securities Trading etc. Act, as stated in section 4, no. 3 of this Act, who on 1 January 1998 perform functions as chief internal auditors or deputy chief internal auditors in companies outside the group may continue to do so until expiry of the term in operation on 9 April 1997. If the persons mentioned commence, after this date, a term of a function as chief internal auditor or deputy chief internal auditor in a company not covered by section 12c(3), such person shall resign no later than 1 February 1998.

**(9)** Exposures and collateral, entered into legally before 1 January 1998 between the elected external auditors, a chief internal auditor or deputy chief internal auditor (omitted) and the (omitted) companies mentioned (omitted), may continue until the originally agreed expiry date.

**(10)-(12)** (Omitted)

**10.**

**(1)** This Act shall not apply to Greenland and the Faeroe Islands, (omitted) but (omitted) may, by Royal Decree, be brought into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland respectively.

**(2)-(3)** (Omitted)

---

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

Act no. 1327 of 20 December 2000 contains the following entry into force and transitional provisions:

### 9.

**(1)** This Act shall enter into force on 1 April 2001, cf. however, subsections (2)-(5).

**(2)** (Omitted)

**(3)** Section 1, no. 14, section 2, no. 2, section 3, nos. 2 and 3, section 4, no. 2, section 5, section 6, no. 4 and sections 7 and 8 shall enter into force on 1 January 2001. The assessment of contribution will be carried out for the first time on the basis of information in the financial year ending in 2000.

**(4)** Section 1, nos. 20 and 21 shall enter into force on 1 July 2001.

**(5)** Securities dealers and undertakings covered by section 62(1) and section 63 of the Securities Trading etc. Act which, at the time of entry into force of this Act, were members of a stock exchange or had entered into an agreement with a central securities depository, may continue this without obtaining a licence from the Danish FSA.

### 10.

**(1)** Sections 1, 2, 4, 5, 7 and 8 shall not apply to the Faeroe Islands and Greenland, but may, by Royal Decree, be brought into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

**(2)** (Omitted)

Act no. 427 of 6 June 2002 contains the following entry into force and transitional provisions:

### 3.

**(1)** This Act shall enter into force on 1 July 2002, cf. however, subsection (2).

**(2)** Section 1, nos. 13, 14, 16-18, 35 and 39 shall enter into force on 1 October 2002. The Minister for Economic and Business Affairs shall determine the time of entry into force of section 1, nos. 5, 8-12, 19, 26, 30, 31, 33, 34, 37 and 38, as well as section 2.

### 4.

**(1)** Status of the total possessions in companies held by persons covered by section 34(4) and section 37(3), cf. section 1, nos. 16 and 17, shall be notified to the relevant issuer and reported by said issuer to the relevant stock exchange and authorised market place respectively, where the company's shares are admitted to listing or trading no later than 1 January 2003.

**(2)** The Danish Securities Council Executive Order no. 429 of 28 May 2001 on Good Securities Trading Practices for Trading in Certain Securities shall, however, remain in force until the Minister for Economic and Business Affairs issues regulations in the area.

### 5.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

This Act shall not apply to the Faeroe Islands and Greenland, but may, by Royal Decree, be brought into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

---

Act no. 453 of 10 June 2003 contains the following entry into force and transitional provisions:

### 375.

**(1)** This Act shall enter into force on 1 January 2004, cf. however subsections (2) and (3).

**(2)-(3)** (Omitted)

**376-437.** (Omitted)

### 438.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland, but may, by Royal Decree, be brought into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland, cf. however subsections (2)-(4).

**(2)-(4)** (Omitted)

---

Act no. 1171 of 19 December 2003 contains the following entry into force and transitional provisions:

### 6.

**(1)** This Act shall enter into force on 1 January 2004, cf. however subsections (2) and (3).

**(2)** The Minister for Economic and Business Affairs shall determine the time of entry into force of section 2. Section 2 may, however, not enter into force before the time when the Hague Convention stipulating the law applicable to certain rights in respect of securities held with an intermediary enters into force in relation to the European Union.

**(3)** (Omitted)

### 7.

Chief internal auditors or deputy chief internal auditors may notwithstanding the ban in section 12b(9) of the Securities Trading etc. Act, cf. section 1, no. 3 of this Act, maintain and utilise financial interests owned by said chief internal auditors or deputy chief internal auditors at the entry into force of this Act.

### 8.

**(1)** Part 18a of the Securities Trading etc. Act as stated in section 1, no. 12 of this Act shall apply to financial collateral arrangements, close-out netting, etc. established after entry into force of this Act.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** Section 58 of the Securities Trading etc. Act, cf. Consolidating Act no. 587 of 9 July 2002 as amended by section 426 of Act no. 453 of 10 June 2003 shall continue to apply to netting agreements established before entry into force of this Act.

## 9.

(Omitted)

## 10.

**(1)** This Act shall not apply the Faeroe Islands and Greenland, but may, by Royal Decree, be brought fully or partially into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland, cf. however subsection (2).

**(2)** (Omitted)

---

Act no. 491 of 9 June 2004 as amended by section 24 of Act no. 1556 of 21 December 2010 shall contain the following entry into force and transitional provisions:

## 6.

**(1)** This Act shall enter into force on 1 January 2005, cf. however subsections (2) and (3).

**(2)** Section 1, no. 14 shall enter into force on day following publication of this Act in the Danish Law Gazette.

**(3)** Section 1, nos. 4, 7-10, 13, 30, 34, 37 and 41, section 2, nos. 1-3, 12 and 13, section 3, nos. 1 and 2, section 4, no. 5 and section 5 shall enter into force on 1 July 2004.

**(4)** This Act shall not apply to the Faeroe Islands and Greenland, but may, by Royal Decree, be brought into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

**(5)** For the Faeroe Islands amendments of section 1, no. 22 of this Act may be made once by Royal Decree as brought into force for the Faeroe Islands with any variations necessitated by the conditions prevailing in the Faeroe Islands.

---

Act no. 1383 of 20 December 2004 contains the following entry into force and transitional provisions:

## 17.

**(1)** This Act shall enter into force on 1 January 2005, cf. however subsections (2)-(4).

**(2)-(4)** (Omitted)

## 18.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (2) and (3).

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)-(3)** (Omitted)

---

Act no. 1460 of 22 December 2004 contains the following entry into force and transitional provisions:

### 3.

**(1)** This Act shall enter into force on 1 April 2005, cf. however, subsections (2) and (3).

**(2)** Section 1, nos. 2 and 3, 8-12, 14, 18-20, 22-24 and 30, and section 2 shall enter into force on 1 July 2005.

**(3)** Section 1, nos. 7 and 21 shall enter into force on 1 January 2005.

**(4)** Notwithstanding the regulations of section 1 of this Act credit institutions covered by the exemption in Article 5(a) of Directive 89/298/EEC and not covered by section 23(5), no. 8 may, to the general public in Denmark, offer bonds or other transferable securities equivalent to bonds issued in a continuous or repeated manner until 31 December 2008.

### 4.

This Act shall not apply to the Faeroe Islands and Greenland, but may, by Royal Decree, be brought fully or partially into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

---

Act no. 411 of 1 June 2005 contains the following entry into force and transitional provisions:

### 6.

**(1)** This Act shall enter into force on 1 July 2005.

**(2)-(4)** (Omitted)

### 7.

This Act shall not apply to the Faeroe Islands and Greenland, but may be brought into force by Royal Decree for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

---

Act no. 604 of 24 June 2005 contains the following entry into force and transitional provisions:

### 5.

**(1)** This Act shall enter into force on the day following the publication of this Act in the Danish Law Gazette, cf. however, subsection (2).

**(2)** (Omitted)

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

**November 2012, GlobalDenmark Translations**

**(3)** Section 1, no. 11 of this Act shall apply to decisions on presenting takeover bids made in accordance with the entry into force of this Act. Section 1, nos. 14-16 of this Act shall apply to transfers, cf. section 31(1) of the Danish Securities Trading etc. Act, made after the entry into force of this Act.

## 6.

**(1)** Sections 1-3 shall not apply to the Faeroe Islands and Greenland but may, by Royal Decree, be brought into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

**(2)** (Omitted)

Act no. 1428 of 21 December 2005 contains the following entry into force and transitional provisions:

## 6.

This Act shall enter into force on 1 January 2006.

## 10.

This Act shall not apply to the Faeroe Islands and Greenland but sections 1, 3 and 4 may be brought into force by Royal Decree for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

Act no. 116 of 27 February 2006 contains the following entry into force and transitional provisions:

## 5.

This Act shall enter into force on 1 March 2006.

## 6.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland, cf. however, subsection (2).

**(2)** Sections 1 and 2 may, by Royal Decree, be brought into force for the Faeroe Islands and Greenland subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

Act no. 527 of 7 June 2006 contains the following entry into force and transitional provisions:

## 4.

**(1)** This Act shall enter into force on 1 January 2007, cf. however, subsection (2).
**(2)** (Omitted)

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

## 5.

(Omitted)

## 6.

This Act shall not apply to the Faeroe Islands and Greenland, but may, by Royal Decree, be brought into force for these parts of the Realm subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

Act no. 108 of 7 February 2007 contains the following entry into force and transitional provisions:

## 21.

**(1)** (Omitted)

**(2)** (Omitted)

**(3)** Section 1, no. 88, section 3, nos. 1, 3, 11, 24, 27, 30, 40-43, 58, 61, 62, 68, 69, 76, 81, 83, 85 and 86, section 6, nos. 1-9, section 7, section 8, nos. 3, 8 and 9, section 9, nos. 6 and 7, section 10, no. 6 and sections 11-15 shall enter into force on 15 February 2007.

**(4)** Section 1, nos. 2, 3, 54-60, 62, 63, 90, 93, 94, 105-109, 116, 118 and 119, section 3, no. 74, and section 4 shall enter into force on 1 June 2007.

**(5)** (Omitted)

**(6)** Section 1, no. 88, section 3, no. 62, section 11, no. 1, section 12, no. 12, and section 13, no. 2 shall be effective from 1 January 2006.

**(7)** (Omitted)

## 22.

**(1)** Section 16 shall enter into force on the day after notification in the Danish Law Gazette.

**(2)** Notwithstanding the regulations in section 1 of this Act, companies which in accordance with section 8(1) of the Danish Securities Trading etc. Act are authorised to operate as a stock exchange or an authorised market place without a new licence, shall continue to operate this activity in compliance with the regulations applicable to operators of regulated markets.

**(3)** Notwithstanding the regulations in section 1 of this Act, companies which in accordance with section 8(1) of the Danish Securities Trading etc. Act are authorised to operate as an alternative market place without a new licence, shall continue to operate this activity in compliance with the regulations applicable to companies operating multilateral trading facilities, including alternative market places.

**(4)** Notwithstanding the regulations laid down in section 1 of this Act, shares, share certificates and bonds admitted to listing by a stock exchange under section 22 of the Securities Trading etc. Act, shall continue to be considered as listed.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(5)** Financial undertakings, which since 1 November 2007, have been authorised to carry out activities pursuant to section 9(1), cf. section 7(2), section 8(2), section 9(2), section 10(2) or 403 of the Financial Business Act, may continue their activities as before.

**(6)** Companies, which since 1 November 2007 have been authorised to carry out money-market broking activities under section 8(1) of the Securities Trading etc. Act, may continue their activities if they report the activities to the Danish FSA before 1 February 2008. Pursuant to section 9(1) of the Financial Business Act, the Danish FSA shall notify authorisation to the reported activities as well as authorisation to documentation of deposits and loans between money market actors. The companies may, in the period between the report and granting of a licence in pursuance of section 9(1) by Danish FSA, continue the activities reported, including documentation of deposits and loans between money market actors.

**(7)** Any undertaking or person that, on 1 November 2007, carries out activities as investment counsellor, cf. section 343a of the Danish Financial Business Act, cf. section 3, no. 59 of this Act, and which no later than 1 February 2008, apply for a licence pursuant to section 343c of the Danish Financial Business Act, cf. section 3, no. 59 of this Act, may continue to provide investment counselling services, until the Danish FSA has processed the application for a licence. An application shall be considered as received by the Danish FSA when the information about all matters mentioned in section 343c, has been submitted to the Danish FSA.

## 23.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (2) and (3).

**(2)** Sections 1-6, 13 and 14 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands and Greenland subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

**(3)-(4)** (Omitted)

Act no. 181 of 28 February 2007 contains the following entry into force and transitional provisions:

## 8.

**(1)** This Act shall enter into force on 1 January 2008.

**(2)** Part 23a of the Administration of Justice Act, in the wording of section 1, no. 10 of this Act, shall apply to cases filed after the entry into force of this Act.

**(3)** The Danish Minister for Justice shall present proposals for revision of this Act in the Danish parliamentary year of 2010-11.

## 9.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland.

**(2)** Section 3 may by Royal Decree be brought into force for the Faeroe Islands and Greenland.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(3)** Sections 5-7 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands and Greenland subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

---

Act no. 576 of 6 June 2007 contains the following entry into force and transitional provisions:

## 12.

**(1)** This Act shall enter into force on 1 July 2007, cf. however, subsections (2) and (3).

**(2)-(3)** (Omitted)

## 13.

(Omitted)

## 14.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (2) and (3).

**(2)** Sections 1-5 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands and Greenland subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

**(3)** (Omitted)

---

Act no. 515 of 17 June 2008 contains the following entry into force and transitional provisions:

## 10.

**(1)** This Act shall enter into force on 1 July 2008, cf. however, subsection (2).

**(2)** (Omitted)

## 11.

**(1)** Sections 1-5 and 7-9 of this Act shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (2)-(4).

**(2)** (Omitted)

3) Sections 1, 2 and 4 may be brought fully or partially into force for the Faeroe Islands subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands.

4) Sections 1-5 and 9 may be brought fully or partially into force for Greenland subject to any variations necessitated by the specific conditions prevailing in Greenland.

---

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

Act no. 517 of 17 June 2008, as amended by section 14 of Act no. 392 of 25 May 2009, contains the following entry into force and transitional provisions:

### 13.

**(1)** This Act shall enter into force on 1 July 2008, cf. however, subsections (2)-(5).

**(2)-(5)** (Omitted)

### 14.

1) Sections 1, 2 and 4-12 shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (3) and (4).
2) Section 3 shall not apply to the Faeroe Islands.
3) Sections 1, 2, 6 and 10 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands and Greenland subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

**(4)** (Omitted)

Act no. 1003 of 10 October 2008 contains the following entry into force and transitional provisions:

### 17.

**(1)** This Act shall enter into force on 11 October 2008 at the start of the day.

**(2)** The bill may be ratified immediately after adoption.

**(3)** This Act shall be effective from 5 October 2008.

**(4)** (Omitted)

Act no. 67 of 3 February 2009 contains the following entry into force and transitional provisions:

### 14.

**(1)** This Act shall enter into force on 4 February 2009.

**(2)** The bill may be ratified immediately after adoption.

**(3)** (Omitted)

### 15.

**(1)** Sections 16-18 of this Act shall not apply to the Faeroe Islands and Greenland, but section 16, nos. 1-14 and 17-19 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands and Greenland subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** The provisions of this Act for mortgage-credit institutions shall not extend to the Faeroe Islands.

---

Act no. 133 of 24 February 2009 contains the following entry into force and transitional provisions:

### 7.

**(1)** This Act shall enter into force on 1 March 2009, cf. however subsections (2) and (3).

**(2)** Section 1, nos. 1-5, 8, 9, 13 and 14, and section 3, nos. 1, 2, 4 and 7 shall enter into force on 21 March 2009 with effect for applications received by the Danish FSA after this date.

**(3)** (Omitted)

### 8.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (2) and (3).

**(2)** Sections 1, 3 and 4 may be brought fully or partially into force for the Faeroe Islands and Greenland subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands and Greenland.

**(3)** (Omitted)

---

Act no. 392 of 25 May 2009 contains the following entry into force and transitional provisions:

### 15.

**(1)** This Act shall enter into force on 1 July 2009, cf. however, subsections (2)-(7).

**(2)-(7)** (Omitted)

### 16.

**(1)** Sections 1-7 and 9-13 of this Act shall not apply to the Faeroe Islands and Greenland, cf. however subsections (3) and (4).

**(2)** Section 8 shall not apply to the Faeroe Islands.

**(3)** Sections 1-4, 9, 10 and 13 may by Royal Decree be brought fully or partially into force for Greenland subject to any variations necessitated by the specific conditions prevailing in Greenland.

**(4)** Sections 1-4 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands.

---

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

Act no. 516 of 12 June 2009 as amended by section 3 of Act no. 1273 of 16 December 2009, section 15 of Act no. 1278 of 16 December 2009, section 2 of Act no. 159 of 16 February 2010 and section 14 of Act no. 579 of 1 June 2010 contains the following entry into force and transitional provisions:

## 25.

**(1)** The Minister for Economic and Business Affairs shall stipulate the date of entry into force of this Act. In this regard the Minister may lay down regulations on the provisions of this Act which presuppose adaptations of the IT system of the Danish Business Authority with regard to registration and publication until necessary adaptations of the IT system have been concluded.

**(2)** This Act shall not apply to Greenland, cf. however, subsection (4), but may with the exception of sections 6, 7, 13 and 15-19 by Royal Decree be brought fully or partially into force for Greenland subject to any variations necessitated by the specific conditions prevailing in Greenland.

**(3)** This Act shall not apply to the Faeroe Islands, cf. however, subsection (4) but sections 8-10 and 12 may, by Royal Decree, be brought fully or partially into force by Royal Decree for the Faeroe Islands subject to any variations necessitated by the specific conditions prevailing in the Faeroe Islands.

**(4)** Sections 14 and 24 shall apply to the Faeroe Islands and Greenland.

Act no. 1273 of 16 December 2009 contains the following entry into force and transitional provisions:

## 11.

**(1)** This Act shall enter into force on 1 January 2010, cf. however subsections (2) and (3).

**(2)-(3)** (Omitted)

## 12.

**(1)** Foreign undertakings which by virtue of this Act carry out clearing activities in Denmark covered by section 8a of the Securities Trading Act in the wording of section 2, no. 3 of this Act, shall no later than three months after the entry into force of this Act submit an application to the Danish FSA for a licence pursuant to section 8a of the Securities Trading etc. Act in the wording of section 2, no. 3 of this Act.

**(2)** A company covered by section 7(1) of the Securities Trading etc. Act which after approval by the Danish FSA, has entered into an agreement with a foreign clearing centre on securities clearing activities under section 12(3) of the Securities Trading etc. Act, shall no later than three months after entry into force of this Act submit an application on renewed approval of the agreement pursuant to section 12(3) of the Securities Trading etc. Act, otherwise the licence shall lapse.

## 13.

**(1)** Sections 1, 2, 4-6, 8 and 10 shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (2) and (3).

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(2)** Sections 1, 2, 4, 5 and 8 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands with any variations necessitated by the conditions prevailing in the Faeroe Islands.

**(3)** Sections 1, 2, 4-6 and 8 may by Royal Decree be brought fully or partially into force to Greenland with any variations by circumstances peculiar to Greenland.

---

Act no. 579 of 1 June 2010 contains the following entry into force and transitional provisions:

## 21.

**(1)** This Act shall enter into force on 1 July 2010, cf. however, subsections (2)-(6).

**(2)-(7)** (Omitted)

## 22.

**(1)** Sections 1-12 and 14-20 of this Act shall not apply to the Faeroe Islands and Greenland, cf. however subsections (2) and (3).

**(2)** Sections 1-9, 12 and 14-20 may by Royal Decree be brought fully or partially into force for Greenland with any variations necessitated by the conditions prevailing in Greenland.

**(3)** Sections 1, 3-6, 9 and 14-20 may by Royal Decree be brought fully or partially into force for the Faeroe Islands with any variations necessitated by the conditions prevailing in the Faeroe Islands.

---

Act no. 718 of 25 June 2010 contains the following entry into force and transitional provisions:

## 55.

**(1)** The Minister for Justice shall stipulate the date of entry into force of this Act.

**(2)** A notification for financial reconstruction or postponement of the decision on bankruptcy pursuant to section 24 of the Bankruptcy Act before entry into force of this Act shall continue to take effect after the entry into force of this Act. Notwithstanding the 1st clause a financial reconstruction or postponement of the decision on bankruptcy may not be extended after the entry into force of this Act.

**(3)** Applications for commencement of negotiations for a compulsory composition which have been filed with the bankruptcy court before the entry into force of this Act shall be processed pursuant to the regulations hitherto in force.

**(4)** An application for financial reconstruction may not be filed by a creditor if the debtor has filed for financial reconstruction, the decision on bankruptcy has been postponed pursuant to section 24 of the Bankruptcy Act in the wording hitherto in force, or if the debtor has filed for compulsory composition.

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(5)** If a financial reconstruction ceases, the day of the notification shall, however, be considered the reference date if the bankruptcy court within three weeks after cessation receives an application for financial reconstruction, bankruptcy or debt restructuring. If an application for composition negotiations fails to result in confirmation of a compulsory composition, the day of receipt of the application shall however be considered the reference date if the bankruptcy court, within three weeks after the application for composition negotiations has been revoked or rejected or composition negotiations have ceased, receive an application for financial reconstruction, bankruptcy or debt restructuring.

**(6)-(10)** (Omitted)

## 56.

**(1)** This Act shall not apply to the Faeroe Islands and Greenland.

**(2)** Sections 1, 4, 22, 23, 26, 29, 30 and 32 of this Act may by Royal Decree be brought into force fully or partially for the Faeroe Islands and Greenland with to any variations necessitated by the conditions prevailing in the Faeroe Islands and Greenland.

**(3)** (Omitted)

Act no. 724 of 25 June 2010 contains the following entry into force and transitional provisions:

## 19.

**(1)** Sections 16-18 shall not apply to the Faeroe Islands and Greenland but may by Royal Decree be brought fully or partially into force for the Faeroe Islands and Greenland with variations necessitated by the conditions prevailing in the Faeroe Islands and Greenland.

## 20.

**(1)** This Act shall enter into force on the day after notification in the Danish Law Gazette

**(2)-(16)** (Omitted)

Act no. 1556 of 21 December 2010 contains the following entry into force and transitional provisions:

## 28.

**(1)** This Act shall enter into force on 1 January 2011, cf. however subsections (2)-(4).

**(2)-(5)** (Omitted)

**(6)** Section 57(2) of the Securities Trading etc. Act in the wording of section 3, no. 10 of this Act shall affect a transfer order which is considered entered into a system before the entry into force of this Act but which has been processed after the entry into force of this Act.

**(7)-(8)** (Omitted)

While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.

November 2012, GlobalDenmark Translations

**(9)** By applying section 57(1) and (2), and section 57e of the Securities Trading etc. Act in the wording of section 3, nos. 9, 10 and 18 of this Act, initiation of financial reconstruction shall be equivalent to notification of financial reconstruction and commencement of negotiations for a compulsory composition.

## 29.

**(1)** Sections 1-11, 13, 15, 16, 18, section 19, no. 1 and sections 20-27 of this Act shall not apply to the Faeroe Islands and Greenland, cf. however subsections (3) and (4).

**(2)** Section 17 shall not apply to the Faeroe Islands.

**(3)** Sections 1-5, 15, 18, section 19, no. 1 and sections 20-27 may by Royal Decree be brought fully or partially into force for the Faeroe Islands with any variations necessitated by the specific conditions prevailing in the Faeroe Islands.

**(4)** Sections 1-7, 9, 15, 16 and 18, section 19, no. 1 and sections 20 and 25-27 may by Royal Decree be brought fully or partially into force for Greenland subject to any variations necessitated by the conditions prevailing in Greenland.

---

Act no. 456 of 18 May 2011 contains the following entry into force and transitional provisions:

## 225.

**(1)** This Act shall enter into force on 1 July 2011.

**(2)-(4)** (Omitted)

**226-234.** (Omitted)

**235.** This Act shall not apply to the Faeroe Islands and Greenland, but may by Royal Decree be brought fully or partially into force for these parts of the Realm subject to any variations necessitated by the conditions prevailing in the Faeroe Islands and Greenland.

---

Act no. 155 of 28 February 2012 contains the following entry into force and transitional provisions:

## 11.

**(1)** This Act shall enter into force on 1 March 2012, cf. however subsections (2)-(5).

**(2)** Section 2, nos. 9-13, 23-25, 30 and 47 shall enter into force on 1 July 2012.

**(3)** (Omitted)

**(4)** The Minister for Business and Growth shall determine the date of entry into force of section 2, nos. 14-19, 31, 38 and 48.

**(5)** Section 2, no. 52 and section 3, no. 30 shall only apply to conditions committed after the entry into force of this Act.

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

**November 2012, GlobalDenmark Translations**

## 12.

**(1)** Sections 1-4, 6, 9 and 10 shall not apply to the Faeroe Islands and Greenland, cf. however subsections (2)-(5).

**(2)** (Omitted)

**(3)** Sections 1-3, 6, 9 and 10 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands and Greenland subject to any amendments in its operation necessitated by the conditions prevailing in the Faeroe Islands and Greenland.

**(4)** (Omitted)

**(5)** (Omitted)

---

Act no. 273 of 27 March 2012 contains the following entry into force and transitional provisions:

## 6.

**(1)** This Act shall enter into force on 30 March 2012, cf. however, subsection (2).

**(2)** (Omitted)

**(3)** (Omitted)

## 7.

**(1)** Sections 1-3 and 5 shall not apply to the Faeroe Islands and Greenland, cf. however, subsection (2).

**(2)** Sections 1-3 may, by Royal Decree, be brought fully or partially into force for the Faeroe Islands and Greenland subject to any variations necessitated by the conditions prevailing in the Faeroe Islands and Greenland.

---

Act no. 477 of 30 May 2012 contains the following entry into force and transitional provisions:

## 4.

**(1)** This Act shall enter into force on 1 July 2012, cf. however, subsection (2).

**(2)** (Omitted)

## 5.

**(1)** Sections 1-3 shall not apply to the Faeroe Islands and Greenland, cf. however, subsections (2) and (3).

**(2)** (Omitted)

**While this translation was carried out by a professional translation agency, the text is to be regarded as an unofficial translation based on the latest official Act no. 855 of 17 August 2012. Only the Danish document has legal validity.**

**November 2012, GlobalDenmark Translations**

**(3)** Section 3 may, by Royal Decree, be brought into force the parts of the Realm mentioned in subsection (1) subject to any variations necessitated by the conditions prevailing in the Faeroe Islands and Greenland.

*Ministry for Business and Growth, on 17 August 2012*

Ole Sohn

/ Ulrik Nødgaard