# Exhibit 69

# Withholding tax on dividends, cf. the Corporation Tax Act, section 2, subsection 1, letter c, cf. the Withholding Tax Act 65.

skat.dk

| | |
|---|---|
| Date of release | 13 Jan 2012 10:47 |
| Date of judgment / ruling / decision / control signal | 16 Dec 2011 10:02 |
| SKM number | SKM2012.26.LSR |
| Authority | The National Tax Court |
| Case number | 10-02772 |
| Document type | Order |
| Overall topics | treasure |
| Topics Topics | Corporate taxation + Foreign income |
| Keywords | Withholding tax, dividends, rightful owner, withholding |
| Summary | One company was not deemed to be liable to withholding dividend tax relating to dividends paid to the parent company in Cyprus. |
| Reference (s) | The Corporation Tax Act § 2, para. 1, letter c<br>The Withholding Tax Act § 65, para. 5 |
| Reference | - |

The complaint concerns withholding tax on dividends, cf. section 2 (1) of the Corporation Tax Act. 1, letter c, cf. the Withholding Tax Act 65.

**The National Tax Tribunal's decision**
The National Tax Tribunal amends SKAT's decision, as it is not considered to be withholding tax on dividends paid.

**Case information**
Danmark ApS (the Company), which was founded in March 2000, is part of a large multinational group. Until September 2005, the company was owned by Bermuda Ltd. (Bermuda). The group's ultimate owner is USA Inc., which is a listed American company.

Danmark ApS only performs sales and support activity, and the company reports to D Holland BV (Netherlands), which is responsible for global sales outside the USA, Canada and Mexico.

After its establishment in March 2000, Danmark ApS had acquired the shares in D Holland BV (through non-cash contributions from Bermuda Ltd.) in order to minimize tax, cf. the current rules on dividend taxation.

Bermuda Ltd. founded in September 2005 Cyprus Ltd. (Cyprus).

The Cypriot company was then invested between Danmark ApS and the previous parent company in Bermuda. The purchase price was agreed at DKK 90 million. euro, corresponding to approx. 670 million kr.

Danmark ApS then sold the shares in D Holland BV to its sister company H Holland BV (Netherlands). The shares were sold at a price of DKK 14 million. euro, and Danmark ApS booked a receivable for the sales price at H Holland BV

Regarding the background for the reorganization, it is stated that it was not appropriate for the entire European activities to be controlled by the Danish sales and support company, whose employees were only employees involved in sales and support functions in the Danish market, and who therefore had no competencies. or expertise in relation to ownership of the underlying subsidiaries.

In September 2005, the Company decided to distribute dividends of approx. 566 million DKK to Cyprus Ltd.

According to the Company, the dividend received by Cyprus Ltd. was used by this company to pay the debt to the parent company Bermuda Ltd., which arose from the purchase of the shares in Danmark ApS, cf. above.

In October 2006, the Company declared another dividend to Cyprus Ltd. - this time at just over 92 million. kr.

This distribution was also continued from Cyprus Ltd. to Bermuda Ltd.

About Cyprus Ltd. it appears from the company's accounts for the first financial years, which expired on 28 April 2006 (signed on 1 September 2008) and on 28 April 2007 (signed on 20 October 2008), that the most significant function for the company in those years was to own shares in the Company. The company had neither premises nor staff available.

About Bermuda Ltd. is in a letter dated 17 April 2009 to SKAT stating that the company owns all the intangible assets necessary to produce and market the products outside the United States and related markets. The activities outside the United States are thus organized under the company.

**SKAT's decision**
SKAT has deemed the Company liable to withhold dividend tax, cf. the Corporation Tax Act, section 2, subsection. 1, letter c, cf. the withholding tax act § 65.

Pursuant to section 2 (1) of the current Corporation Tax Act. 1, letter c, 1st sentence, companies domiciled abroad are in principle taxable in Denmark on dividends received from sources in this country. The conditions for a limited tax liability of the dividend to be imposed as a starting point are thus present. An exception to taxation is if this is to be waived pursuant to a double taxation agreement or pursuant to the Parent / Subsidiary Directive 90/435 / EEC, cf. section 2 (1) of the current Corporation Tax Act. 1, letter c, 4. pkt.

*The taxation must not be waived pursuant to the Danish-Cypriot double taxation agreement.*

The Danish-Cypriot Double Taxation Agreement of 26 May 1981, cf. Executive Order no. 15 of 11 February 1983, stipulates that dividends may be taxed in the Contracting State in which the company paying the dividend is domiciled, but that the tax is imposed, if the recipient is the rightful owner of the dividend, may not exceed specified limits, cf. art. 10 pcs. 2.

According to the wording of the double taxation agreement, it is thus a condition for the cut-off of Denmark's right to tax dividends as a source state that the Cypriot recipient of the dividend is its "rightful owner".

It is SKAT's opinion that Cyprus Ltd., which - at best - has had very narrow powers in relation to the dividend payments arising from Danmark ApS, cannot be regarded as a "rightful owner" in relation to the dividends arising from Danmark ApS, cf. the double taxation agreement Article 10.

The term "beneficial owner" has been used in the OECD Model Convention and its comments since the revision of the Model Convention in 1977. The comments on the term "beneficial owner" have been gradually clarified, but there is no basis for this. to claim that there have been material changes in relation to what is meant by the term, which is also used by Winther-Sørensen and Bundgaard, SR-SKAT 2007, p. 398.

In the comments on the Model Convention, the question of the understanding of the term "rightful owner" is now dealt with in particular in paragraphs 12, 12.1 and 12.2 of Article 10.

The comments state that a double taxation agreement does not in itself cut / limit source state taxation, unless the rightful owner is domiciled in a state with which the source state has entered into an agreement. Crucial to determining "the rightful owner" is, according to the comments, whether the formal recipient of the dividend merely "acts as a" conduit "for another person who actually receives the income in question".

Thus, when the actual powers of the formal beneficiary to decide how to dispose of amounts received are very narrow or non-existent, the right to invoke the double taxation agreement can be cut off. This means that dividends which the underlying owner (s) have decided in advance to direct to where it is desired, without the intermediate company being given any real opportunity to influence this decision, do not have the intermediate company as " rightful owner ".

The comments refer to the report "Double Taxation Conventions and the Use of Conduit Companies" prepared by the Committee on Fiscal Affairs, in which a number of examples are given of the issues that the use of "conduit companies" creates. The report mentions a number of possibilities for seeking direct elimination of the unintended possibilities for tax evasion created by the use of "conduit companies" by direct regulation in the double taxation agreements. As regards the possibility of preventing unintentional tax evasion without special rules, point 14.b. of the report states that the Model Convention in Articles 10-12 requires the recipient of dividends, interest and royalties to be a "beneficial owner" (the comments mentioned at the time). not explicitly "conduit companies").

"Thus, the limitation is not available when, economically, it would benefit a person not entitled to it who interposed the conduit company as an intermediary between himself and the payer of the income [...] Thus a conduit company can normally not be regarded as the beneficiat owner if, though the formal owner of certain assets, it has very narrow powers which render it a mere fiduciary or administrator acting on account of the interested parties (most likely the shareholders of the conduft company) "

It is the second part of this conclusion that is reproduced in the comments to the model agreement.

In the present case, immediately after Cyprus Ltd. had been deposited as an intermediary in the group, dividends were distributed through the group. The Cypriot company was invested in the group in an attempt to avoid withholding tax on distributions to the parent company in Bermuda. Thus, the company has not made it probable or documented that there was a commercial purpose to the restructuring.

The Cypriot company has only had to serve the function of being used as part of an attempt to confer tax advantages on the group. The company has not in fact been empowered to make independent management decisions on how to dispose of the dividends arising from the Danish company. This is supported by the fact that the company is without any real substance.

When the share capital of the Danish company was transferred from the Bermuda company to the Cypriot company in September 2005, it was also agreed that the purchase price of 90,000,000 euros should be paid no later than April 2006. The distributions from the Danish company, which were made in October 2005 and in October 2006, totaled approx. DKK 658,000,000. The Cypriot company could only pay the purchase price by transferring the distributions from the Danish company to the Bermuda company, which also happened. In SKAT's opinion, it is a given that the persons / companies that controlled the group had decided in advance that the distributions from the Danish company should be passed on to the Bermuda company. There has thus been a flow of dividends from the Danish company to the Bermuda company.

It must then be incumbent on the Danish company to prove that the Cypriot company was not merely a pure flow-through company in relation to the dividends, which it has not done.

It is noted that the view that the group did not want to maintain an ownership structure in which the Danish company acted as the parent company of the Dutch company does not reasonably explain that it should (suddenly) be necessary to insert an intermediary in Cyprus. to - continue - to allow the Bermuda company to act as the parent company for the European part of the group. The ownership of the Dutch company could thus simply have been transferred to the Bermuda company.

It is SKAT's opinion that no decisive weight can be attached to the fact that no formal legal obligation can be demonstrated for the Cypriot company to pay dividends received from the Danish company on to the Bermuda company. The fact that in the relationship between the Danish company and the Cypriot company there is a distribution of dividends and in the relationship between the Cypriot company and the Bermuda company there is a repayment of debt does not change the fact that there has been a flow.

It is irrelevant to the issue of withholding tax on dividends from which the funds distributed are derived. The limited tax liability thus also occurs where it is a question of a Danish company distributing funds received as dividends, etc. from subsidiaries. This also helps to prevent Denmark from being used as a transit country for "laundering" of withholding tax.

The company's comments on the source of the "dividend capacity are thus irrelevant. Similarly, it is irrelevant whether the group could have chosen a debt financing irrelevant. A debt financing would otherwise have other tax effects, including in relation to any withholding tax on interest, etc. the conditions which actually exist.

With regard to internal case law, reference is made to the National Tax Tribunal's decision published in ( **SKM2011.57.LSR** ), which concerned interest tax on interest paid from a Danish company to a company in Jersey via 2 deposited Swedish companies. The question was whether the Swedish company's Swedish parent company was the rightful owner of the interest. The National Tax Court did not find this, and then ruled that the Danish company was liable to withhold interest tax regarding the interest that had been paid to the Swedish parent company.
In SKAT's view, the two decisions of the National Tax Tribunal ( **SKM2010.268.LSR** and **SKM2010.729.LSR** ) to which the representative has referred are not comparable with the facts in the present case.

With regard to international case law, reference is made to the 2009 Prévost case, which concerned dividend tax on dividends paid by a Canadian company to a Dutch holding company owned by a Swedish and an English company. The question was whether the Dutch company was the "beneficial owner" in relation to the dividend. This found the Canadian Federal Court of Appeal was the case.

The judgment seems to assume that the formal income recipient is the "rightful owner" unless the income recipient is legally required to dispose of in a particular respect. Thus, it was not sufficient that there was no practical probability that the dividend would not be paid further. Such a requirement that the formal income recipient must be legally obliged to dispose of in a particular respect is not seen to have support in the model agreement, the comments thereon or elsewhere.

Furthermore, reference is made to the Indofood case from 2006, which concerned withholding tax on interest paid by an Indonesian company to a Mauritius company. The question was whether the withholding tax could be avoided by depositing a Dutch company between the Indonesian company and the Mauritius company. The question was whether the Dutch company would be considered the "beneficial owner" of the interest payments, so that these payments would be recognized in relation to the Dutch-Indonesian double taxation agreement. The British Court of Appeal ruled that the Dutch company would not be the "beneficial owner" of the interest income under the Indonesian-Dutch agreement.

The Indofoods case and the present case are comparable in the sense that the amounts received had to be further channeled in order to meet the obligations to the parent company. Furthermore, in both cases there is no legal obligation to repay the amounts received, but instead that in practice the income has been disposed of in such a way that it will not in fact be subject to the immediate payee's disposal.

*Taxation should not be waived pursuant to the Parent-Subsidiary Directive 90/435 / EEC.*

It follows from Article 5 of the Parent-Subsidiary Directive that the profits which a subsidiary distributes to its parent company are exempt from withholding tax. The starting point is thus that withholding tax cannot be levied on dividend distributions to companies domiciled in another Member State when the parent company meets the capital requirement and the ownership time requirement in the Directive.

However, this starting point may be deviated from. It is thus stated in Article 1 (1) of the Directive. 2, that the Directive does not preclude the application of national provisions or conventions which are necessary to prevent fraud and abuse.

The use of the term "rightful owner" in the double taxation treaties serves precisely to combat fraud or abuse within the meaning of Art. 1 piece. 2. The directive thus does not preclude the imposition of withholding tax when the rightful owner is not covered by a double taxation agreement with Denmark.

The Corporation Tax Act, section 2, subsection 1, letter c, implies, according to its clear wording, that Denmark must not waive withholding tax, unless there is an actual obligation to do so under the Parent / Subsidiary Directive. To the extent that EU law does not preclude withholding of withholding tax, dividend tax must thus be withheld.

Since the Corporation Tax Act § 2, para. 1, letter c, stipulates that the limited tax liability must only be waived if the directive and / or a DBO leads to SKAT waiving or reducing taxation, this provision in itself contains a clear utilization of the right to maintain the limited tax liability in order to combat abuse. It is in line with the general concept of abuse of EU law that EU rights can not be invoked in respect of purely artificial arrangements, the main purpose of which is to obtain an unintended tax advantage.

In addition, Article 10 of the Danish-Cypriot double taxation agreement is precisely a provision stipulated in the collective agreement which, with the proviso on the rightful owner, combats fraud or abuse. According to the wording of Article 1 (1), the Directive excludes 2, precisely not that Denmark uses the access to withhold tax that Denmark has pursuant to Article 10 of the Danish-Cypriot double taxation agreement.

It follows from EU law that benefits under EU law cannot be obtained in the case of transactions covered by the general concept of abuse of EU law. The case law of the European Court of Justice shows that there is nothing to prevent companies established in another Member State from invoking EU law - including the harmonized rules that follow from e.g. Parent-Subsidiary Directive - where it must be assumed that the establishment of a holding company in another Member State " *is intended to avoid withholding tax on payments to non-European companies if such construction does not serve a commercial purpose* ", according to the Commission's interpretation of " *Purely artificial events*"in the Commission Communication on: The application of measures to combat abuses in direct taxation - in the EU and in relation to third countries (Com (2007) 785).

From the case law of the European Court of Justice on the concept of abuse, reference is made to Cadbury Schweppes (Case C-196/04), Halifax (Case C-255/02) and Part Service (Case C-425/06).

In assessing the main purpose of the establishment, the European Court of Justice has paid special attention to whether there is substance in the company's domicile country, or whether it is a purely artificial arrangement, which involves not only formal establishment but also actual economic activity.

SKAT is therefore of the opinion that EU law can not to a greater extent than the double taxation agreements based on the Model Convention be considered to prevent Denmark from implementing a source state taxation of dividends on the basis that the rightful owners of the amounts in question are resident outside EU.

The company has stated that the background for the introduction of provisions on holding companies (Act no. 525 of 12 June 2009) must be that national Danish tax legislation has not so far authorized a breach of legally valid ownership structures.

The company's comments are misleading. It is thus expressly stated in the preparatory work for the law that the legislature - as a consequence of the provisions on "beneficial owner" / "rightful owner" - failed to allow certain foreign parent companies to be covered by the amendment. In connection with the Folketing's consideration of the bill, the Minister of Taxation proposed, among other things, an amendment to section 1 of the Bill. The amendment, which was passed by the Folketing, aimed at the situation where more than 50% of the share capital in an intermediate holding company was owned by foreign companies. The comments on the amendment state in the Tax Committee's report (to § 1, no. 1):

It is proposed that the proposed protection rule against so-called "inverted Christmas trees" be limited to situations where the parent company's company shareholders are liable to tax in Denmark.

The background for this amendment is that there is already protection under applicable law (rules which are continued with section 14, no. 5 of the Bill) in cases where the dividends are distributed to foreign companies that are not the beneficial owner of the dividend. The proposal in the Capital Gains Taxation Act, section 4 A, subsection 3, to consider the shares to be directly owned by companies that are shareholders in the dividend-receiving foreign company, is therefore not necessary.

According to current law and the bill, there must only be an exemption from withholding tax according to the Corporation Tax Act, section 2, subsection. 1, letter c, when the taxation of the dividend is to be waived or reduced in accordance with the Parent / Subsidiary Directive or in accordance with a double taxation agreement. In other words, withholding tax must be paid when this taxation is not cut off in accordance with the directive or the double taxation agreements. "

*The decision does not infringe "EU freedoms" (Article 43 of the EC Treaty).*

The company has stated in the complaint that withholding tax on dividends in a situation such as this in this case constitutes a restriction on the freedom of establishment, which is not acceptable.

SKAT does not agree with this. There is only a restriction on free movement (including freedom of establishment, cf. Article 43) if there is discrimination consisting in the application of different provisions in comparable situations or the application of the same provision in different situations.

The fact that withholding tax is levied on interest when it is paid to a non-resident company does not constitute a restriction on freedom of movement, simply because there is no tax discrimination in comparable situations.

*SKAT's decision does not constitute a change in practice with retroactive effect.*

In the complaint, the company has argued that SKAT's decision constitutes a practice tightening with retroactive effect.

SKAT does not agree with this. There is no administrative practice which the decision in the present case changes. Not a single decision has been made, according to which, in cases reminiscent of the present case, it has been established that withholding tax may not be withheld pursuant to section 2 (1) of the Corporation Tax Act. 1 (d) and the reality is that the complainant's allegation of the existence of a "fixed administrative practice" is unfounded.

*The company has not proved that Cyprus Ltd. is not the rightful owner of the dividends.*

The company has argued that if the Cypriot company is not considered the rightful owner of the dividends, the US company must be considered the rightful owner thereof.

The burden of proving that in that case no withholding tax must be withheld is the responsibility of the company. It must then be proved that it is not the Bermuda company that is the rightful owner, but that it is the United States company. The company has not lifted this burden of proof.

Thus, on the present basis, it is not possible to determine whether the amounts in question were transferred to the United States company. There is no correspondence between the amounts distributed from the Danish company and the amounts that, according to the company, should have been transferred as dividends from the Bermuda company - and possibly other of the company's many subsidiaries - to the US company.

The dividends transferred to the US company are very variable and have in common that the total amount involved is significantly greater than the dividends distributed from the Danish company. For example, in its "Income Tax Return", the US company has stated "Dividends" for the period 30 April 2005 - 28 April 2006. Even if part of it is financed by loans, as claimed by the representative, these are amounts which significantly exceeds the amounts distributed by the Danish company.

According to the Danish company, the dividends in question, which have been transferred to the Bermuda company, have been used both for the distribution of dividends to the US company and for the payment of the Bermuda company's debt. The company has not explained in detail - and documented - the extent to which the dividend distributions were included in the payment of dividends, debt, payment date, etc., respectively.

Furthermore, it is unknown to what extent dividend payments to the US company originate from the Bermuda company, or from the group's other subsidiaries. In the representative's submission of 7 February 2011, page 4, 5th paragraph, it is stated that the dividend distributions from the Danish company " *ultimately (s) ended up with the American parent company as part of a total dividend distribution from the group's subsidiaries.*"

There is also no further information on the Bermuda company which would make it possible to assess whether the company was not the rightful owner of the dividends.

*Danmark ApS is liable for payment of interest tax.*

To the Company's subsidiary claim that the company is not liable for the withheld interest tax pursuant to section 69 of the Withholding Tax Act, it is noted that it appears from the wording of section 69 of the Withholding Tax Act that it is the withholding tax holder who must prove that no deportation has taken place. negligence on his part. The starting point in section 69 of the Withholding Tax Act is that a company that fails to fulfill its obligation to withhold tax is immediately liable for the payment of missing amounts. This starting point is deviated from if the company proves that no "negligence" has been shown on the part of the company.

The company's view that the company was uncertain about the legal situation must be rejected, already because the person (s) who organized the event must necessarily have had full knowledge of the purpose, etc., and the person (s) who had control of the company, has therefore been in possession of all relevant information.

In addition, the use of the concept of rightful owner in the double taxation agreement, as well as the abuse provision in Article 1 (1) of the Parent-Subsidiary Directive. 2 and the court-created practice of the general concept of abuse of EU law in the nature of things is an expression of protection against abuse of the double taxation agreement and the parent /

subsidiary directive, respectively, and that in relation to the assessment of whether negligent action has been taken, cf. 69, special requirements must be placed on due diligence when it comes to compliance with protection rules.

By trying to secure benefits that neither the Parent / Subsidiary Directive nor the Danish-Cypriot double taxation scheme seeks access to and by deliberately participating in an event without any business justification, the company has embarked on a risk that the company has not clarified or sought clarified.

It should therefore be emphasized that the starting point is that withholding must take place, that no further investigations have been carried out by the company in order to clarify whether the conditions for non-withholding were met, and that as a result of the community of interest stricter requirements must be set for the company's diligence.

Furthermore, the company may not have been in uncertainty as to the facts.

It is therefore SKAT's opinion that the company is liable for the payment of dividend tax.

**The company's claim and arguments**
The company's representative has in principle filed a claim that the company's withholding obligation regarding dividends to the parent company be abolished, cf. section 2 (1) of the Danish Corporation Tax Act. 1, letter c, cf. section 65 of the Withholding Tax Act. In the alternative, a claim has been made that the Company has not shown negligence, cf. section 69 of the Withholding Tax Act.

*Parent / Subsidiary Directive.*

In support of the primary claim, it is stated that dividend distributions to the Cypriot company must be exempt from Danish dividend taxation, cf. the Parent / Subsidiary Directive.

The exemption from withholding tax on dividends follows from Article 5 of the Directive, which is based solely on objective criteria of ownership of the shares which give rise to the distribution of dividends. The directive thus does not contain specific requirements, e.g. requirements for rightful owner, etc.

Art. 1 piece. Article 2 (2) allows Member States to establish national protection rules against fraud and abuse.

No specific rules against abuse in connection with dividend distributions and prevention of abuse of the benefits that follow from the Parent / Subsidiary Directive have been implemented in Danish tax legislation. Abuse can therefore only depend on the application of the principles that can be deduced from the doctrine of the right income recipient as well as concrete reality assumptions.

As far as the rightful recipient of income is concerned, it follows from a long-standing practice that income from capital must be attributed to and taxed by the owner of the asset from which the capital income originates. In the situation in this case, this means that dividend income from the Danish company must be attributed to the owner of the shares, ie. the Cypriot company.

Among other things. on the basis of the judgments of the Supreme Court referred to in **SKM2006.749.HR** and **SKM2003.482.HR** , it must be concluded that legally valid transactions, which, however, entail favorable tax consequences, cannot therefore be overruled for tax purposes and that neither specific nor general rules against abuse in Danish tax legislation in relation to e.g. taxation of dividend distributions

This is also supported by the fact that, with effect from the income year 2010, a specific protection rule against intermediate holding companies has been introduced in section 4A (1) of the Danish Capital Gains Tax Act. 3. The background for this rule must thus be that national Danish tax legislation has so far not authorized a breach of legally valid ownership structures, regardless of the fact that the structures may have been established for the sole purpose of reducing dividend taxation. It thus appears from the comments to L202 2008/09, pkt. 3.1, that the bill introduces "... a safeguard provision to prevent circumvention of the 10 per cent limit by several portfolio shareholders placing their shareholdings in a joint (parent) holding company, which will thus own more than 10 per cent of share capital. " Such a safeguard does not seem necessary,

In the specific case, the Cypriot company was the owner of the shares in the Danish company at the time when the dividend was determined / paid, just as the dividend distributions were actually received by this company.

Dividend distributions in 2005 and 2006 from the Danish company to the Cypriot company hereby represent valid legal transactions / dispositions that cannot be overridden, and it is then only necessary to establish that the Cypriot company meets the objective criteria for the application of the parent / subsidiary directive. . Dividend distributions from the Danish company to the Cypriot company must therefore be exempt from Danish withholding tax in accordance with the rules in the Parent / Subsidiary Directive

*Abuse of EU law.*

The European Court of Justice has argued that the powers of Member States under the application of directives must be exercised in accordance with EU law. Article 1 (1) of the Parent / Subsidiary Directive 2 must therefore be interpreted and applied in accordance with Article 49 on freedom of establishment in the Treaty on the Functioning of the European Union (TFEU - formerly Article 43 TEC).

Danish withholding tax on dividends distributed to parent companies within the EU therefore entails a prima facie restriction on the freedom of establishment, as similar taxation is not imposed on dividend distributions to Danish parent companies.

SKAT's decision states that taxation of dividend distributions to the Cypriot company is justified by the need to prevent circumvention of Danish dividend taxation. Such a justification can in principle be accepted under EU law. However, SKAT must also demonstrate a subjective intention on the part of the taxpayer to obtain the given tax advantage.

It is hereby referred to that the group did not obtain any tax benefits as a result of the dividend distributions, as the group is ultimately owned and controlled by the US listed company. The dividend distributions would thus also have been exempt from Danish dividend taxation if the dividends had been paid directly to the American parent company.

At the same time, Danish withholding tax on dividends could also have been avoided if the group - instead of a Cypriot holding company - had instead chosen to establish a Danish holding company. It has been pointed out that dividends received by the Cypriot company have been widely used to repay debts. If the group had chosen to establish a Danish holding company, the Danish company could thus have made a tax-free distribution of dividends to the Danish holding company, which could subsequently have used the dividends received to repay debt, which would not be subject to Danish withholding tax.

It is thus difficult to see how a completely similar dividend distribution - simply to a Cypriot holding company - can be subject to Danish taxation when the corresponding Danish situation will not have triggered any Danish tax.

The argument about prevention or prevention of abuse can therefore not be used as a justification for the discrimination to which the companies are exposed, as in the specific situation there is no question of any abuse or circumvention of Danish taxation.

Reference is made to the cases of the European Court of Justice in C-168/01 (Bosal Holding BV), paragraphs 26, 79/85 (Segers) and C-212/97 (Centros), paragraph 29, C-196/04 (Cadbury-Schweppes ), paragraphs 47 and 64, C-524/04 (Test Clairmants in the Thin Cap Group Litigation), paragraph 74.

*The double taxation agreement between Denmark and Cyprus and the concept of "rightful owner".*

In support of the primary claim, it is also stated that dividend distributions to the Cypriot company must be exempt from Danish dividend taxation, cf. the double taxation agreement between Denmark and Cyprus.

The Cypriot company must thus be considered to be the "rightful owner" of the dividend distributions and cannot be considered to be exclusively a "flow-through company" which has been established to circumvent Danish dividend taxation.

The company has all the powers etc. in relation to decisions regarding the shareholding in the Danish company, as well as decisions regarding the use of the dividends received from the company.

The dividends received from the Danish company have to a large extent been used to repay debt. The dividend has therefore not simply been "channeled" to other group companies as dividends.

In general, there is considerable uncertainty about the interpretation of the term "rightful owner", including in particular whether the term "rightful owner" can be used as a protective rule against flow-through companies and treaty shopping. It must thus be stated that neither an unambiguous interpretation of the term can be deduced from either Danish or

international case law, just as both Danish and international tax law literature seem to indicate significant difficulties in connection with the term's use as a protective rule.

The term "rightful owner" is thus not known in internal Danish tax law, but appears from most Danish double taxation agreements as a prerequisite for reduction or waiver of taxation of e.g. dividends, interest, royalties, etc. The requirement of "rightful owner" is also stated in the Interest / Royalties Directive (Directive 2003/49 / EC).

The double taxation agreement between Denmark and Cyprus also contains a provision on "beneficial owner" in connection with the taxation of dividend distributions, cf. art. 10. No specific guidelines are given in this connection for the interpretation of "rightful owner" and the claims that may be made in connection with this.

It is therefore obvious to interpret the term "rightful owner" in accordance with the meaning that the term must be expected to be given in national Danish tax law, cf. Article 3 (1) of the Double Taxation Agreement. 2. Reference is made to an article by Jakob Bundgaard and Niels Winther-Sørensen in SR-SKAT 2007.395. After this, it must be considered most probable that the Danish courts will be inclined to consider the company which according to a Danish tax law is considered the rightful recipient of income to also be a "rightful owner".

In the present case, the Cypriot company is considered to be the rightful recipient of the dividends received from the Company.

In the international tax law literature, however, several also seem to argue that the concept of "rightful owner" must be interpreted on the basis of an international tax law meaning, ie. based on an autonomous interpretation.

Reference is made to the Canadian decision in the Prévost case, in which the Canadian court ruled that a Dutch company, which was considered by the tax authorities to be a flow-through company, was the "rightful owner" of dividends paid. Reference is also made to Aage Michelsen, International Tax Law, 2003, and to Philip Baker "Progress Report of Subcommittee on Improper Use of Tax Treaties: Beneficial Ownership" of October 17, 2008.

SKAT's interpretation of "rightful owner" and the consequent limited tax liability for dividend distributions from the company, cf. section 2 (1) of the Danish Corporation Tax Act. 1, letter c, therefore seems to be based on an incomplete analysis and interpretation of the concept of "rightful owner", as it applies in the double taxation agreement between Denmark and Cyprus.

The provisions on withholding tax on dividends in the agreement between Denmark and Cyprus correspond in principle to the provisions on withholding tax on dividends, which appear from the OECD model agreement. In the comments to the model agreement from 1977, it is stated about "rightful owner" in pkt. 12, at:

"under paragraph 2, the limitation of taxation in the source State shall not apply in cases where an intermediary, such as an agent or a specially designated person, is deposited between the payee and the payer, unless the beneficial owner is a resident of the other Contracting State. "Whoever wants to make this clearer is free to do so during bilateral negotiations."

In the context of the 2003 revision of the OECD Model Convention, the comments on the meaning of "rightful owner" are expanded, according to which the term should not be used in a narrow technical sense, but should be seen in connection with and in the light of the agreement's intent and purpose. prevent tax evasion and avoidance.

"... it would also not be in accordance with the intent and purpose of the agreement for the source State to grant relief or exemption from tax in cases where a resident of a Contracting State other than as an agent or intermediary, merely acts as a "conduit" for another person who actually receives the income in question, and for these reasons the report "Double Taxation Conventions and the Use of Conduit Companies" prepared by the Committee on Fiscal Affairs concludes that a "flow-through company" can not normally be considered the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the income in question, make it a "nullity" or administrator,acting on behalf of other parties. "

The Cypriot company can not be considered a flow-through company, which is only set up for the purpose of avoiding Danish withholding tax on dividends. The company has thus in all respects retained the usual company law powers in relation to both the ownership of the shares in the Danish company and in relation to the dividend received.

The Cypriot company has not been used to avoid Danish taxation via an abuse of the double taxation agreement between Denmark and Cyprus ("treaty shopping"). Dividend distributions are ultimately received as taxable dividends by the ultimate U.S. parent company.

Dividend distributions directly from Danmark ApS to the American ultimate parent company would have been exempt from Danish dividend tax in accordance with the double taxation agreement between Denmark and the USA, and the use of the Cypriot company in the specific group structure therefore does not give rise to more lenient Danish taxation. otherwise would have been the case. It is therefore difficult to see how a payment of dividends to the Cypriot company could be regarded as an abuse of the double taxation agreement between Denmark and Cyprus.

An interpretation of "rightful owner" in the context of the intention and purpose of the double taxation agreement between Denmark and Cyprus must therefore lead to the Cypriot company being considered "the rightful owner".

It is then concluded that the dividend distributions from the Danish company to the Cypriot company will be exempt from Danish taxation in accordance with the double taxation agreement between Denmark and Cyprus, cf. i, letter c.

*The double taxation agreement between Denmark and the USA.*

In the event that SKAT's interpretation of the term "rightful owner" may be considered applicable law, it has been argued that the Danish company will be exempt from withholding tax as a result of the double taxation agreement between Denmark and the USA.

The group is ultimately owned and controlled by the listed US company. The dividends from the Danish company have ultimately ended up with the American parent company, which has also been taxed in the USA on the dividends received.

If the Cypriot company can not be considered the "rightful owner" of the dividend distributions, it is up to the tax authorities to determine which taxable person can in that case be considered the "rightful owner" of the dividend distributions.

The only company that meets the conditions set by SKAT for the assessment of "rightful ownership" will be the ultimate US parent company.

As documentation that the dividends have been passed on to the US company, reference is made to a copy of the "Domestic Reinvestment Plan" of March 2006, and to the company's tax return for the income year 2005, which contains dividends from the group's subsidiaries, including dividends from the Danish company. Furthermore, reference is made to the overview of the Group's dividend capacity for the financial year 2005/2006, which shows the total dividend capacity in relation to distribution to the American company, as well as the available funds, including dividend distribution from the Company. The overview also calculates the need for additional debt to finance the dividend distribution to the US company of a total of DKK 550 million. USD. The need for debt financing was DKK 300 million. USD, which was provided through JP Morgan Bank. The debt has subsequently been repaid.

In the supplementary post, the dividend distribution is explained in more detail. It appears from this that of the dividend distribution in 2005 from the Bermuda company to the US company of a total of DKK 550 million. USD, constitutes the dividend distribution from subsidiaries, etc. for 2005/2006 a total of approx. 300 million USD. The amount is not specified, but it is stated that the amount includes the distribution from the Danish company with the approx. 91 million USD for 2005 and with the approx. 15 mio. USD for 2006. When the distribution for 2006 can be included in the amount, it is due to special US rules in this regard.

The dividend distributions from the Danish company to the Cypriot company were thus ultimately part of the dividend distribution to the US company.

The consequence of the American company being considered the "rightful owner" of the dividend is that the dividend distributions from the Danish company are exempt from taxation in Denmark as a result of the double taxation agreement between Denmark and the USA.

SKAT has previously rejected the application of the double taxation agreement between Denmark and the USA in relation to the dividend distributions from the Danish company on the grounds that the concept of "rightful owner" is an auxiliary concept and that the question of who is considered a "rightful owner" does not matter to whom , which is considered to be limited taxable.

In the representative's view, such an interpretation is in direct conflict with both Danish and international case law and tax law literature.

Reference is hereby made to Jakob Bundgaard's and Niels Winther-Sørensen's article in SR-SKAT 2007.195, and to the decision in the Prévost case, where the question of "beneficial ownership" was decisive for whether dividends distributed from a Canadian company to a holding company in The Netherlands, was covered by the double taxation agreement between Canada and the Netherlands, or whether dividends were instead covered by the double taxation agreements between Canada and the home states of the ultimate owners, Sweden and the UK.

Furthermore, reference is made to the English comments on Article 10, p. 12.2, which states:

"the limitation of the tax in the State of source remains available when an intermediary, such as an agent or nominee located in a Contracting State or in a third State, is interposed between the beneficiary and the payer but the beneficial owner is a resident of the other contracting State "

Particular attention is paid to the word: "an intermediary", which refers to those persons (agent, nominee and conduit) who, according to point 12.1, can not be "beneficial owner". Section 12.1 reads as follows:

simply acts as a conduit for another person who in fact receives the benefit of the income concerned. For these reasons, the report from the Committee on Fiscal Affairs entitled Double Taxation Conventions and the Use of Conduit Companies "concludes that a conduit company can not normally be regarded as the beneficial owner if, though the formal owner, it has, as a practical matter , very narrow powers which render it, in relation to the income concerned, a mere fiduciary or administrator acting on account of the interested parties. "

Also the real reasons behind the comments speak for the result. The source country thus has no legitimate interest in taxing the dividend in question if there has not been - at least - treaty shopping that is suitable for giving the rightful owner a tax advantage.

Finally, reference is made to Klaus Vogel's commentary on the model agreement, 5th ed., 2008, p. 861:

f) Recipient of the dividend. Abs. This applies only to dividends paid to a person authorized in the other Contracting State. . in the relationship between the source state of the dividend and the state of residence of the person entitled to use in a case of Art. 10 ... "

It is then the representative's opinion that both the double taxation agreement with Cyprus and the double taxation agreement with the USA entail that the dividend distributions must be exempt from Danish taxation, cf. 1, letter c.

*SKAT's decision is an expression of a change in practice.*

SKAT's decision on the imposition of withholding tax on dividends is an expression of a new and changed practice with the tax authorities, which was not applicable at the time of distribution of dividends in the specific case.

The National Tax Court's decision of 3 March 2010 ( **SKM2010.268.LSR** ) was thus the first case on dividend tax.

In addition to the fact that no cases concerning dividend taxation and rightful owner were published, it also appears from various statements from the Minister of Taxation in connection with L30 2006/07 that the Danish tax authorities have never before disregarded foreign dividend recipients on the basis of legal rights claims. owner. Reference is made to question 10 of 21 November 2006 and to a statement from SKAT in Jyllandsposten on 14 September 2010.

Reference is made to Hans Severin Hansen's article of 6 June 2011, The Great Hypocrisy - On the "beneficial owner" cases.

*Substance considerations and the source of dividend income.*

The dividend distributions from Danmark ApS to Cyprus Ltd. consisted of dividends and sales proceeds relating to the shares in D Holland BV

The dividend distributions from Danmark ApS to Cyprus Ltd. therefore did not relate to income earned in Denmark, and the dividend distributions were only possible as a result of income earned in the European subsidiaries.

If SKAT's interpretation of the term "rightful owner" may be considered applicable law, it is argued that in this case Danmark ApS can also not be considered the rightful owner of dividends and sales proceeds relating to the shares in D Holland BV Danmark ApS can thus not in relation to the shareholding is considered to have more substance, etc., than is the case for Cyprus Ltd. in relation to the shareholding in Danmark ApS.

*Liability for non-withholding taxes - negligence.*

In the alternative, it is alleged that the company did not act negligently by failing to withhold dividend tax and that it can therefore in no case be liable for non-dividend tax - even in the event that the Cypriot company subsequently proves to have been taxable by the dividends received, cf. the withholding tax act, section 69, subsection 1.

In relation to the interpretation of the concept of negligence, negligence must constitute an omission which could have been avoided if the dividend-distributing company had exercised due diligence and diligence. See also SKAT's guide Deduction of A-tax and AM contributions; 2010-2, K.2.2: "Notwithstanding that the provisions have a reverse burden of proof, it has been shown in case law that it is the customs and tax administration that must prove that the person liable for withholding has acted negligently."

In **SKM2002.470.ØLR** (TfS2002, 844), the Eastern High Court has concluded that uncertainty about the legal basis for the obligation to withhold tax in itself meant that negligence was not shown by not withholding tax.

It is therefore up to SKAT to lift the burden of proof that the Danish company has acted negligently by not including dividend tax in connection with the dividend distributions in 2005 and 2006, where the legal basis, as stated above, has been subject to significant uncertainties in relation to an interpretation such as the one on which SKAT bases its decision on the imposition of withholding tax.

In addition, it should also be noted that the National Tax Court in the first case of rightful owner and withholding tax on dividends published in **SKM2010.268.LSR** precisely decided that there was no withholding tax obligation regarding dividend distributions to a parent company in Luxembourg. The case has subsequently been appealed by the tax authorities, but the fact that the highest administrative appeal body for tax cases decides that there has been no obligation to withhold documents at least that the legal basis in the area is not unambiguous - and that in relation to the withholding duty for Dividend distributions in 2005 and 2006 have at least been significant uncertainty about the interpretation of the legal basis that SKAT claims to apply.

The Danish company can thus not be considered to have acted negligently in 2005 and 2006 by not withholding dividend tax in connection with the dividend distributions to the Cypriot company, and the Danish company is therefore not liable for any non-withheld dividend tax, cf. the withholding tax law § 69, para.

**The National Tax Court's remarks and justification**

According to the Corporation Tax Act, section 2, subsection 1, letter c, companies domiciled abroad are, as a rule, subject to limited tax liability on dividends, cf. However, this does not apply to dividends received by a company that owns at least 20% of the share capital (in 2005 and 2006) in the dividend-giving company for a continuous period of at least 1 year, within which period the dividend distribution date must be, cf. 2. and 3rd point. It is a condition that the taxation of the dividend must be waived or reduced in accordance with the provisions of Directive 90/435 / EEC on a common tax system for parent companies and subsidiaries of different Member States or under a double taxation agreement with the State of residence, cf. pkt.

According to the double taxation agreement between Denmark and Cyprus of 11 February 1983, Article 10, para. 1, dividends may be taxed in the source State. However, if the recipient is the legal owner of the dividend and is a company that directly owns at least 25% of the capital of the distributing company, the tax imposed may not exceed 10% of the gross amount of the dividend.

The provision corresponds to Article 10 of the OECD Model Convention. The commentary on Article 10 point 12 of the Model Agreement states, among other things, that the requirement of rightful ownership was inserted in Art. 10 pcs. 2, in order to clarify the meaning of the words "paid ..... to a person resident", as they are used in para. The term "rightful owner" is not used in a narrow technical sense, but must be seen in the context and in the light of the intention and purpose of the agreement, including avoiding double taxation and preventing tax evasion and avoidance. Section 12.1 states that a person acting in his capacity as an agent or intermediary cannot be considered a rightful owner. Furthermore, it appears that a person acting other than as an agent or intermediary merely acts as a "flow-through entity" (conduit) for another person who actually receives the income in question can also not be considered a rightful

owner either. Reference is made to the report of the Committee on Fiscal Affairs, which states that a "flow-through company" cannot normally be considered the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the that income, makes it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . who actually receives the income in question also cannot be considered a rightful owner. Reference is made to the report of the Committee on Fiscal Affairs, which states that a "flow-through company" cannot normally be considered the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the that income, makes it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . who actually receives the income in question also cannot be considered a rightful owner. Reference is made to the report of the Committee on Fiscal Affairs, which states that a "flow-through company" cannot normally be considered the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the that income, makes it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . nor can it be considered a rightful owner. Reference is made to the report of the Committee on Fiscal Affairs, which states that a "flow-through company" cannot normally be considered the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the that income, makes it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . nor can it be considered a rightful owner. Reference is made to the report of the Committee on Fiscal Affairs, which states that a "flow-through company" cannot normally be considered the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the income in question, make it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . from which it appears that a "flow-through company" cannot normally be regarded as the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the income in question, make it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . from which it appears that a "flow-through company" cannot normally be regarded as the rightful owner if, although it is the formal owner, it actually has very narrow powers which, in relation to the income in question, make it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . make it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. . make it a "nullity" or administrator acting on behalf of other parties. Section 12.2 states that the restriction on the taxing right of the source State may not be exercised when an agent or intermediary, resident in a Contracting State or in a third State, is deposited between the beneficiary and the payer, unless the beneficial owner is a resident of the other Contracting State. .

The concept of "rightful owner" can therefore not be assumed to coincide with the principle of "rightful income recipient" in Danish tax law.

The Cypriot company, Cyprus Ltd., which was established in September 2005 and is directly owned by Bermuda Ltd. (Bermuda) and ultimately owned by USA Inc. (USA), after the foundation bought the Danish sister company, Danmark ApS, from the parent company in Bermuda for DKK 90 million. Euro. The acquisition was financed by a loan from the parent company. In October 2005, the Danish company sold its Dutch subsidiary, D Holland BV, to its Dutch sister company, H Holland BV. The Danish company then distributed in September 2005 and in October 2006 approx. 566 million DKK and approx. 92 million DKK to the parent company in Cyprus, which used the amount i.a. to pay the company's debt to the parent company in Bermuda.

In these circumstances, where several interdependent transactions have been made within a shorter period between related parties, including parties domiciled in countries located outside the EU and with which no double taxation agreement has been entered into, the Danish company is required to prove that the benefits of the collective agreement on the abolition of danish withholding tax must apply.

According to the Company's information, the company's first distribution to the Cypriot company was used to pay this company's debt to the parent company in Bermuda. The distribution was also included together with the other distribution in the parent company's distribution to this company's parent company in the United States.

It is thus undisputed that the Company's distributions to the parent company in Cyprus were transferred to the company in Bermuda following transfers thereto. The Cypriot company, which had been established immediately prior to the acquisition of the shares in the Danish company, had no premises or staff in the years in question, and had only very modest operating expenses.

It is therefore not established that the Cypriot company can be considered the "rightful owner" of the dividends received.

The Cypriot company is thus not entitled to the tax exemption of the agreement for dividends, in accordance with Article 10.

It is noted that the Cypriot company, to which the dividends from the Danish subsidiary have been paid, is legally established and registered in Cyprus, to which it is also liable for tax, etc. The company is therefore - regardless of whether the company is not considered the "rightful owner" of the dividend - under Danish law a "correct income recipient" of the dividends. It follows from this - regardless of the possible further transfer of the dividend to the US company - that it is the Danish-Cypriot double taxation agreement that is to be used in the assessment of any withholding tax, cf. the Corporation Tax Act, section 2, subsection 1, letter c. Neither the Danish-Cypriot agreement, the comments thereon nor the comments on the model agreement are seen to open up the possibility of applying another agreement.

According to Directive 90/435 / EEC on a common system of taxation applicable to parent companies and subsidiaries of different Member States, Article 5, dividends which a subsidiary distributes to its parent company are exempt from withholding tax.

The general provisions of the Parent-Subsidiary Directive cannot contain an abuse reservation. In Article 1, para. Paragraph 2, on the other hand, gives Member States the opportunity to derogate from the Directive in the event of tax evasion, etc.

Article 1 (1) of the Directive 2 states that the Directive does not preclude the application of internal provisions or conventions which are necessary to prevent fraud and abuse.

Denmark has not adopted legal provisions for this purpose, but authority to disregard formally lawful and correct dispositions in the event of abuse follows from general legal principles, including case law. However, the Supreme Court has not found grounds to override an otherwise legally established company solely with reference to the fact that the foundation was made for tax savings reasons, cf. hereby the Supreme Court's judgments in **SKM2003.482.HR** ( Compliance case) and **SKM2006.749.HR** Finwill case).

The legally established and functioning Cypriot company in this case, which is the owner of the shares in the Danish company, is thus the rightful recipient of the dividend, which has been distributed from the Danish company. The fact that the Cypriot company's only - or essentially only - activity is to own shares in the Danish company does not mean that the company has no business operations and thus no other result, cf. hereby the Supreme Court's judgment in **SKM2004.297. HR** (TfS2004.542) (Johnson Holding case).

As a result, dividends are exempt from withholding tax under Article 5 of the Directive.

As the taxation of the dividend must thereafter be waived in accordance with Directive 90/435 / EEC, it follows from section 2 (1) of the Danish Corporation Tax Act. 1, letter c, that the dividend is not covered by the limited tax liability.

The company has hereafter not been obliged to withhold dividend tax on the dividend, cf. the withholding tax act, section 65, subsection. 5.