# Exhibit 20

 **ELITE PENSION CONSULTANTS**

**58 MARINER WAY**
**MONSEY, N.Y. 10952**

Tel: **(845) 354 - 8373**
Fax: **(845) 354 - 7973**
e-mail: epc613@optonline.net

March 9, 2016

Mr. Ronald Altbach
Roadcraft Technologies LLC
145 W. 67th St.
New York, N.Y. 10023

Re: **Roadcraft Technologies LLC Roth 401(k) Plan**

Dear Mr. Altbach:

We are pleased to enclose the following documents for the purpose of amending and restating the above captioned pension plan to PPA, Pension and Protection Act.

1. One copy of the plan document.
2. One copy of the Summary Plan Description.
3. An extra set of signature pages for you to sign and return to me.
4. One copy of the IRS approval letter.
5. Our statement for services rendered.

***Please sign and date all documents where indicated***. Also, please sign and **return** my set of signature pages. The plan restatement process will be complete ONLY after proper and complete execution of the enclosed documents. Please contact me with any questions you may have regarding the enclosures. *Thank you for allowing us the opportunity to be of continued service.*

Sincerely yours,

**Mel Piasek**
**Elite Pension Consultants**

Encl.

cc: Broad Financial LLC

WH_MDL_00139331

E **P** c                                    **ELITE PENSION CONSULTANTS**

**58 MARINER WAY**                                    **TEL: 845 - 354 - 8373**
**MONSEY, N.Y. 10952**                                    **FAX: 845 - 354 - 7973**
                                    **e-mail: epc613@optonline.net**

March 9, 2016

Roadcraft Technologies LLC
145 W. 67th St.
New York, N.Y. 10023

-------------------------------------------------------------------------------------------------------------------
Statement for Professional Services Rendered

Re:  **Roadcraft Technologies LLC Roth 401(k) Plan**

Preparation of Plan Amendment & Restatement for PPA, Pension & Protection Act

Preparation of Resolution and Minutes Page and Summary Plan Description

**$ 1,150**
=======

*Paid*

CONFIDENTIAL                                    **WH_MDL_00139332**



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

Plan Description: Volume Submitter Profit Sharing Plan With CODA
FFN: 315C083FT04-000 Case: 201200251 EIN: 13-3504158
Letter Serial No: J599209a
Date of Submission: 03/30/2012

CCH INCORPORATED DBA FTWILLIAM COM
700 W. VIRGINIA STREET, SUITE 305
MILWAUKEE, WI 53204

Contact Person:
 Janell Hayes
Telephone Number:
 513-263-3602
In Reference To: TEGE:EP:7521
Date: 03/31/2014

Dear Applicant:

In our opinion, the form of the plan identified above is acceptable under section 401 of the Internal Revenue Code for use by employers for the benefit of their employees. This opinion relates only to the acceptability of the form of the plan under the Internal Revenue Code. It is not an opinion of the effect of other Federal or local statutes.

You must furnish a copy of this letter, a copy of the approved plan, and copies of any subsequent amendments to adopting employers if the practitioner is authorized to amend the plan on their behalf, to each employer who adopts this plan. Effective on or after 10/31/2011, interim amendments adopted by the practitioner on behalf of employers must provide the date of adoption by the practitioner.

This letter considers the changes in qualification requirements contained in the 2010 Cumulative List of Notice 2010-90, 2010-52 I.R.B. 909.

Our opinion on the acceptability of the form of the plan is not a ruling or determination as to whether an employer's plan qualifies under Code section 401(a). However, an employer that adopts this plan may rely on this letter with respect to the qualification of its plan under Code section 401(a), as provided for in Rev. Proc. 2011-49, 2011-44 I.R.B. 608, and outlined below. The terms of the plan must be followed in operation.

Except as provided below, our opinion does not apply with respect to the requirements of Code sections 401(a)(4), 401(l), 410(b), and 414(s). Our opinion does not apply for purposes of Code section 401(a)(10)(B) and section 401(a)(16) if an employer ever maintained another qualified plan for one or more employees who are covered by this plan. For this purpose, the employer will not be considered to have maintained another plan merely because the employer has maintained another defined contribution plan(s), provided such other plan(s) has been terminated prior to the effective date of this plan and no annual additions have been credited to the account of any participant under such other plan(s) as of any date within the limitation year of this plan. Also, for this purpose, an employer is considered as maintaining another plan, to the extent that the employer maintains a welfare benefit fund defined in Code section 419(e), which provides postretirement medical benefits allocated to separate accounts for key employees as defined in Code section 419A(d)(3), or an individual medical account as defined in Code section 415(l)(2), which is part of a pension or annuity plan maintained by the employer, or a simplified employee pension plan.

Our opinion does not apply for purposes of the requirement of section 1.401(a)-1(b)(2) of the regulations applicable to a money purchase plan or target benefit plan where the normal retirement age under the employer's plan is lower than age 62.

Letter 4335

CCH INCORPORATED DBA FTWILLIAM COM
FFN: 315C083FT04-000
Page: 2

This is not a ruling or determination with respect to any language in the plan that reflects Section 3 of the
Defense of Marriage Act, Pub. L. 104-199, 110 Stat. 2419 (DOMA) or U.S. v. Windsor, 133 S. Ct. 2675
(2013), which invalidated that section.

This letter is not a ruling with respect to the tax treatment to be accorded contributions which are picked up by
the governmental employing unit within the meaning of section 414(h)(2) of the Internal Revenue Code.

Our opinion applies with respect to the requirements of Code section 410(b) if 100 percent of all
nonexcludable employees benefit under the plan. Employers that elect a safe harbor allocation formula and a
safe harbor compensation definition can also rely on an advisory letter with respect to the nondiscriminatory
amounts requirement under section 401(a)(4). If this plan includes a CODA or otherwise provides for
contributions subject to sections 401(k) and/or 401(m), the advisory letter can be relied on with respect to the
form of the nondiscrimination tests of 401(k)(3) and 401(m)(2) if the employer uses a safe harbor
compensation definition. In the case of plans described in section 401(k)(12) or (13) and/or 401(m)(11) or
(12), employers may also rely on the advisory letter with respect to whether the form of the plan satisfies the
requirements of those sections unless the plan provides for the safe harbor contribution to be made under
another plan.

The employer may request a determination (1) as to whether the plan, considered with all related qualified
plans and, if appropriate, welfare benefit funds, individual medical benefit accounts, and simplified employee
pension plans, satisfies the requirements of Code section 401(a)(16) as to limitations on benefits and
contributions in Code section 415 and the requirements of Code section 416; (2) with respect to whether a money purchase or target benefit plan's
normal retirement age which is earlier than age 62 satisfies the requirements of section 401(a)-1(b)(2) of the
Income Tax Regulations; (3) that the plan is a multiple employer plan; (4) whether there has been a partial
termination; and (5) to comply with published procedures of the Service (e.g. minimum funding waiver
request). The employer may request a determination letter by filing an application with Employee Plans
Determinations on Form 5307, with regard to item (1) above, and Form 5300, for items (2), (3), (4) and (5),
without restating for the Cumulative List in effect when the application is filed.

If you, the volume submitter practitioner, have any questions concerning the IRS processing of this case,
please call the above telephone number. This number is only for use of the practitioner. Individual
participants and/or adopting employers with questions concerning the plan should contact the volume
submitter practitioner. The plan's adoption agreement, if applicable, must include the practitioner's address
and telephone number for inquiries by adopting employers.

If you write to the IRS regarding this plan, please provide your telephone number and the most convenient
time for us to call in case we need more information. Whether you call or write, please refer to the Letter
Serial Number and File Folder Number shown in the heading of this letter.

You should keep this letter as a permanent record. Please notify us if you modify or discontinue sponsorship
of this plan.

Sincerely Yours,

Andrew E. Zuckerman
Director, Employee Plans Rulings and Agreements

Letter 4335

CONFIDENTIAL

**ROADCRAFT TECHNOLOGIES LLC**

**ROTH 401(K) PLAN**

**SUMMARY PLAN DESCRIPTION**

January 2016

*Prepared by:*
ELITE PENSION CONSULTANTS

ROADCRAFT TECHNOLOGIES LLC
ROTH 401(K) PLAN
SUMMARY PLAN DESCRIPTION

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1
ELIGIBILITY FOR PARTICIPATION ......................................................................... 1
   Eligible Employee ........................................................................................................ 1
   Elective Deferral Contributions .................................................................................. 1
CONTRIBUTIONS TO THE PLAN .............................................................................. 1
   Account ......................................................................................................................... 2
   Elective Deferral Contributions .................................................................................. 2
   Roth Contributions ...................................................................................................... 2
   Qualified Non-Elective Contributions ....................................................................... 3
   Rollovers ...................................................................................................................... 3
   Military Service ........................................................................................................... 3
   Limits on Contributions .............................................................................................. 3
   Compensation .............................................................................................................. 3
VESTING ........................................................................................................................ 3
   Elective Deferral Account, Rollover Contribution Account, In-Plan Roth Rollover Account and
   Qualified Non-Elective Contribution Account ........................................................... 4
DISTRIBUTIONS ........................................................................................................... 4
   Commencement of Distributions ................................................................................ 4
   Normal Retirement Age ............................................................................................... 4
   Timing and Form of Payment ..................................................................................... 4
   Beneficiary ................................................................................................................... 5
IN-SERVICE DISTRIBUTIONS AND LOANS ........................................................... 5
   In-service Distributions upon Normal Retirement Age .............................................. 5
   Withdrawals at Any Time ............................................................................................ 5
   Disability Distributions ............................................................................................... 5
   In-Plan Roth Rollovers of Distributable Amounts ..................................................... 5
   Rules Regarding In-service Distributions ................................................................... 6
   Loans ............................................................................................................................ 6
INVESTMENTS .............................................................................................................. 7
   Pooled Accounts .......................................................................................................... 7
   Qualifying Employer Securities .................................................................................. 7
   Voting Rights ............................................................................................................... 7
   Life Insurance .............................................................................................................. 7
   Valuation Dates ........................................................................................................... 7
SPECIAL TOP-HEAVY RULES ................................................................................... 7
   Minimum Allocations .................................................................................................. 7
   Minimum Vesting ........................................................................................................ 8
CLAIM PROCEDURES .................................................................................................. 8
YOUR RIGHTS UNDER ERISA .................................................................................... 9

MISCELLANEOUS ................................................................................................................ 10
    Domestic Relations Orders ........................................................................................... 10
    Disability ....................................................................................................................... 10
    Assignment and Alienation of Benefits ....................................................................... 10
    Amendment and Termination ....................................................................................... 11
    Fees ............................................................................................................................... 11
    Insurance ....................................................................................................................... 11
    Administrator Discretion .............................................................................................. 11
    Plan Not a Contract of Employment ............................................................................ 11
    Waiver .......................................................................................................................... 12
    Errors ............................................................................................................................ 12
ADMINISTRATIVE INFORMATION ............................................................................. 12

CONFIDENTIAL        WH_MDL_00139337

## INTRODUCTION

Roadcraft Technologies LLC (the "Employer") established the Roadcraft Technologies LLC Roth 401(k) Plan (the "Plan") effective January 1, 2014. This Summary Plan Description describes the Plan as restated effective 1/1/2016.

This revised Summary Plan Description supersedes all previous Summary Plan Descriptions. Although the purpose of this document is to summarize the more significant provisions of the Plan, the Plan document will prevail in the event of any inconsistency. In addition, the terms of the Plan cannot be modified by written or oral statements made to you by the Plan Administrator or other personnel.

## ELIGIBILITY FOR PARTICIPATION

### Eligible Employee

You are an "Eligible Employee" if you are employed by Roadcraft Technologies LLC or any affiliate who has adopted the Plan. However, you are not an "Eligible Employee" if you are a member of any of the following classes of employees:

For purposes of Elective Deferral Contributions, any employee who is included in a unit of employees covered by a collective bargaining agreement, if retirement benefits were the subject of good faith bargaining, and if the collective bargaining agreement does not provide for participation in this Plan.

For purposes of Elective Deferral Contributions, any leased employee.

For purposes of Elective Deferral Contributions, any employee who is a non-resident alien who received no earned income which constitutes income from services performed within the United States.

### Elective Deferral Contributions

You will become eligible to make Elective Deferral Contributions on the date you attain age 21, provided that you are an Eligible Employee on that date.

All eligibility service with the Employer is taken into account except the following:

A "One-Year Break in Service" means an Eligibility Computation Period during which you are credited with 500 or fewer hours of service (special rules exist for absence from work for maternity or paternity reasons).

If you do not have any nonforfeitable right to the Account balance derived from Employer contributions, service before a period of five (5) consecutive One-Year Breaks in Service will not be taken into account in computing eligibility service (this is referred to as the "rule of parity").

If you make or receive eligible contributions you will be a "Participant" in the Plan.

## CONTRIBUTIONS TO THE PLAN

Roadcraft Technologies LLC Roth 401(k) Plan            1            Copyright © 2002-2016

### Account

"Account" means all of the contributions, of whatever type, made to the Plan for a Participant, including the earnings and losses on those contributions.

### Elective Deferral Contributions

You may elect to reduce your Compensation (defined below) and make a contribution to the Plan on a pre-tax basis. These pre-tax contributions are known as Elective Deferral Contributions. You may elect to defer up to 100% of your Compensation on a pre-tax basis. Federal law also limits the amount you may elect to defer under this Plan and any other retirement plan permitting Elective Deferral Contributions during any calendar year ($18,000 in 2016). However, if you are age 50 or over, you may defer an additional amount, called a "Catch-up Contribution", of up to $6,000 (in 2016). The Internal Revenue Code may further restrict Elective Deferral Contribution elections by "highly compensated" Participants.

You may elect to start, increase or reduce your elections to contribute to the Plan effective as of the dates established pursuant to Plan Administrator procedures. You may totally suspend your elections at any time.

The Plan Administrator may establish rules regarding the manner in which your elections are made. The rules may also require that certain advance notice be given of any election. Your election regarding Elective Deferral Contributions is only effective for Compensation you will receive in the future. The Plan Administrator may also reduce or totally suspend your election if the Plan Administrator determines that your election may cause the Plan to fail to satisfy any of the requirements of the Internal Revenue Code.

### Roth Contributions

The Plan allows Elective Deferral Contributions to be made as Roth Contributions. Roth Contributions are Elective Deferral Contributions that are made in the same manner as your pre-tax Elective Deferral Contributions except that Roth Contributions are made to the Plan on an after-tax basis. If certain requirements are met, a "qualified distribution" from your Roth Contribution Account in the Plan will not be taxed.

You must designate how much you would like to contribute on a pre-tax basis (normal Elective Deferral Contribution) and how much you would like to contribute as an after-tax Roth Contribution. You are not required to make any Roth Contributions. You may continue to designate all of your Elective Deferral Contribution elections as normal pre-tax contributions.

The sum of your Roth Contributions and regular Elective Deferral Contributions may not exceed the annual limit on regular Elective Deferral Contributions mentioned above.

As was mentioned above, a "qualified distribution" of your Roth Contributions (and earnings) is not taxable. A "qualified distribution" must be made more than five years after the first Roth Contribution is made and must meet at least one of the following requirements:

(i)     the distribution must be made after you attain age 59-1/2;

(ii)    the distribution must be made to your beneficiary after your death; or

CONFIDENTIAL                                                     WH_MDL_00139339

(iii)    the distribution must be made on account of your disability.

Please note that Roth Contributions are not suitable for everyone. Please consult with your tax advisor before making any Roth Contributions to the Plan.

<u>Qualified Non-Elective Contributions</u>

In addition to the contributions described above, the Employer may make additional Qualified Non-Elective Contributions for the benefit of such Participants determined at the discretion of the Employer.

<u>Rollovers</u>

The Plan may accept a Rollover Contribution made on behalf of any Eligible Employee who has met the age and service requirements of the Plan. In general, any eligible rollover distribution will be accepted by the Plan; however, the Plan Administrator may establish procedures that regulate the method by which Rollover Contributions will be accepted.

<u>Military Service</u>

If you serve in the United States armed forces and must miss work as a result of such service, you may be eligible to receive contributions, benefits and service credit with respect to any qualified military service. In addition, your survivors may be eligible to receive benefits or service credit if you die while performing qualified military service.

<u>Limits on Contributions</u>

The amount that may be contributed to the Plan on your behalf in any year is limited to a fixed dollar amount ($53,000 in 2016). In addition, contributions cannot exceed 100% of your total Compensation.

<u>Compensation</u>

"Compensation" means most taxable income received from the Employer as specified in IRS regulations. For any self-employed individual, Compensation will mean earned income. Compensation will include wages paid during any period in which you are performing service in the uniformed services while on active duty for a period of more than 30 days that represents all or a portion of the wages you would have received if you were performing service for the Employer. For purposes of Elective Deferral Contributions, Compensation will also include any amount you elect to defer on a tax-preferred basis to any Employer benefit plan. For purposes of Qualified Non-Elective Contributions, Compensation will include only that compensation which is actually paid to you by the Employer during that part of the Plan Year that you are eligible to participate in the Plan.

No more than $265,000 (in 2016) of Compensation may be taken into account in determining your benefits under the Plan.

## **VESTING**

CONFIDENTIAL                                        WH_MDL_00139340

Elective Deferral Account, Rollover Contribution Account, In-Plan Roth Rollover Account and Qualified Non-Elective Contribution Account

You are always fully (100%) vested in your Elective Deferral Account, Rollover Contribution Account, In-Plan Roth Rollover Account and Qualified Non-Elective Contribution Account.

## DISTRIBUTIONS

### Commencement of Distributions

**Termination of Employment.** You are entitled to receive a distribution from your Account after you terminate employment. This includes termination due to Disability. The distribution will start at the time specified in the section titled "Timing and Form of Payment" below.

**Late Retirement.** If you continue working for the Employer after your Normal Retirement Age, your participation under the Plan will continue, and your benefits will begin following the date you terminate employment. You may elect to have the Plan Administrator begin the distribution of your benefit at any time after reaching your Normal Retirement Age (even if you are still working) by providing the Plan Administrator with a written election that you want your benefits to begin.

**Death.** If you die, your beneficiary will become entitled to receive your vested Account balance. The distribution will start at the time specified in the section titled "Timing and Form of Payment" below.

### Normal Retirement Age

"Normal Retirement Age" means the later of: (i) the date you reach age 65, and (ii) the fifth anniversary of your participation in the Plan.

### Timing and Form of Payment

**Distribution for Reasons Other Than Death.** If you become entitled to receive your benefit for any reason other than death your Account will be distributed in a lump sum payment. This is your normal form of payment. Payment of your vested Account may start as soon as administratively feasible after the end of the Plan Year and after all contributions have been allocated to all Participant Accounts relating to the Plan Year in which your Account balance becomes distributable. Your Account is payable in cash. If you do not choose a form of payment, the payment will be made in the form of a lump sum distribution.

**Distribution on Account of Death.** If you die before distribution of your Account begins, distribution of your entire Account must be completed by December 31 of the calendar year containing the fifth anniversary of your death unless an election is made by your beneficiary to receive distributions in accordance with (1) and (2) below:

    (1)    Distributions may be made over the life or over a period certain not greater than the life expectancy of the beneficiary commencing on or before December 31 of the calendar year immediately following the calendar year in which you die;

    (2)    If the beneficiary is your surviving spouse, the date distributions are required to begin in accordance with item (1) above will not be earlier than the later of (A) December 31 of the calendar year immediately following the calendar year in which you die, or (B) December 31 of the calendar year in which you would have attained age 70-1/2.

CONFIDENTIAL

If the Qualified Preretirement Survivor Annuity has been waived or is not required, as specified below, your beneficiary will be entitled to a distribution in any form that is available to you prior to your death.

If you die after distribution of your Account has begun, the remaining portion of your Account will continue to be distributed under the method of distribution being used prior to your death. If your Account was not being distributed in the form of an annuity at the time of your death, your beneficiary may elect to receive your remaining vested Account balance in a lump sum distribution.

### Beneficiary

You have the right to designate, in a written form acceptable to the Plan Administrator, one or more primary and one or more secondary beneficiaries to receive any benefit becoming payable upon your death. Your spouse must be your sole beneficiary unless he or she consents to the designation of another beneficiary. You may change your beneficiaries at any time and from time to time by filing written notice of such change with the Plan Administrator.

If you fail to designate a beneficiary, or in the event that all designated primary and secondary beneficiaries die before you, the death benefit will be payable to your spouse, or if there is no spouse, to your children in equal shares, or if there are no children to your estate.

## IN-SERVICE DISTRIBUTIONS AND LOANS

### In-service Distributions upon Normal Retirement Age

In-service distributions may be made upon attainment of Normal Retirement Age. These distributions can be made from the following Accounts: All accounts.

### Withdrawals at Any Time

You may receive a distribution from your Rollover Contribution Account at any time.

### Disability Distributions

If you become Disabled (defined below) while still employed, you may receive a distribution from your Accounts. However, the following Accounts may not be distributed unless a severe disability has occurred: Elective Deferral Contribution Account and Qualified Non-Elective Contribution Account. A severe disability is as follows: the Participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. The permanence and degree of such impairment shall be supported by medical evidence.

### In-Plan Roth Rollovers of Distributable Amounts

If you have money in a fully vested non-Roth Account that is eligible for a distribution from the Plan you may roll over the Account balance to a Roth (after-tax) Account under this Plan. If you roll over the payment to a designated Roth account in this Plan, the amount of the payment rolled over (reduced by any after-tax amounts directly rolled over) will be taxed. However, the 10% additional tax on early distributions will not apply (unless you take the amount rolled over out of the designated Roth account

CONFIDENTIAL

within the 5-year period that begins on January 1 of the year of the rollover). Any amount you rollover can be distributed at any time.

You may complete the transfer of the Account balance to a Roth account under this Plan beginning on January 1, 2014.

### Rules Regarding In-service Distributions

The Plan Administrator may establish uniform procedures that include, but are not limited to, prescribing limitations on the frequency and minimum amount of withdrawals. All distributions will be made in the form of a single sum as soon as practicable following the valuation date as of which such withdrawal is made. Such distributions will be paid in cash or in kind. Only Employees are eligible to receive in-service distributions.

### Loans

If you are an active employee you may apply for a loan from the Plan. Loans will only be made to persons who the Plan Administrator determines have the ability to repay the loan. You may not receive a loan if the sum of your new loan and the outstanding balance of all of your other loans would exceed the lesser of:

(1)     $50,000 minus the difference between the highest outstanding balance of loans in the past 12 months and the outstanding balance of loans from the Plan on the date the loan is made, or

(2)     the greater of one-half the present value of your vested Account balance, or your total balance up to $10,000.

If the loan exceeds one-half the present value of your vested Account balance, you must give additional security for the loan.

Loans must be repaid over a period not extending beyond five years from the date of the loan.

The Plan Administrator will determine whether you may receive a loan from your Roth Contribution Account. If the Plan Administrator allows loans from your Roth Contribution Account, the Plan Administrator may specify an ordering rule for loans. The ordering rule will determine whether loans will be made first or last from your Roth Contribution Account or in any combination of your Roth Contribution Account and any other Account.

You must repay a loan in accordance with the repayment schedule or you may repay the loan in full. Partial early loan payoffs are not permitted. You may not refinance your loan. The loan will become payable in full on your termination of employment. The maximum number of loans outstanding at any one time is 2. The minimum loan amount is 1000. Payments will be made by check or other method prescribed by the Plan Administrator.

Loan fees may be charged against the Account of the Participant to whom the loan is granted and the Plan Administrator may adopt any administrative rules or procedures that it deems necessary or appropriate with respect to the granting and administering of loans. Please contact the Plan Administrator if you would like more information regarding taking a loan from the Plan.

CONFIDENTIAL                                                                    WH_MDL_00139343

## INVESTMENTS

### Pooled Accounts

Except for segregated accounts specifically authorized under other provisions of this Plan, all assets are pooled for investment purposes, and your Account is not segregated from other Participants' Accounts.

### Qualifying Employer Securities

The Trustee may not invest the assets of the trust fund in "qualifying employer securities" or "qualifying employer real property".

### Voting Rights

You may not direct the Trustee as to the exercise of voting rights with respect to any Trust Fund Investment.

### Life Insurance

If the Plan Administrator approves your request, a portion of your Account may be used to purchase a life insurance contract on your life. The insurance contract must provide that proceeds will be paid to the Trustee. However, the Trustee must pay over all proceeds of the contract to your beneficiary in accordance with the distribution provisions of the Plan. The form and type of contract purchased will be determined by the Plan Administrator. The Plan Administrator may also establish rules that prohibit the purchase of life insurance where the annual premium is less than a certain minimum amount.

If the Trustee purchases a life insurance contract on your life and you do not die prior to retirement, the Trustee will either: (i) convert the entire value of any such life insurance contract at or before retirement into cash so that no portion of such value may be used to continue life insurance protection beyond retirement; or (ii) distribute the contract to you. The insurance contract may also be sold, transferred or exchanged as permitted under applicable prohibited transaction class exemptions or Department of Labor Regulations.

### Valuation Dates

Accounts are valued on the last day of the Plan Year. The Plan Administrator may in its sole discretion declare a special Valuation Date for that portion of the Plan that is not daily-valued in extraordinary situations to protect the interests of Participants in the Plan or the Participant receiving the distribution. Such extraordinary circumstances include a significant change in economic conditions or market value of the Trust Fund.

## SPECIAL TOP-HEAVY RULES

### Minimum Allocations

If the Plan is Top-Heavy, the Employer will generally allocate a minimum of 3% of your Compensation to the Plan on your behalf if you are a Participant who is employed by the Employer on the last day of the Plan Year.

CONFIDENTIAL                                                                    **WH_MDL_00139344**

### Minimum Vesting

If you complete an hour of service while this Plan is Top-Heavy, your vested percentage will be determined under the following schedule to the extent that it is more favorable than the vesting schedule provided for the section entitled "Vesting":

| Years of Vesting Service | Vesting Percentage |
|---|---|
| Less than Two Years | 0% |
| Two Years but less than Three Years | 20% |
| Three Years but less than Four Years | 40% |
| Four Years but less than Five Years | 60% |
| Five Years but less than Six Years | 80% |
| Six or More Years | 100% |

## CLAIM PROCEDURES

Application for Benefits.    You or any other person entitled to benefits from the Plan (a "Claimant") may apply for such benefits by completing and filing a claim with the Plan Administrator. Any such claim must be in writing and must include all information and evidence that the Plan Administrator deems necessary to properly evaluate the merit of and to make any necessary determinations on a claim for benefits. The Plan Administrator may request any additional information necessary to evaluate the claim.

Timing of Notice of Denied Claim. The Plan Administrator will notify the Claimant of any adverse benefit determination within a reasonable period of time, but not later than 90 days (45 days if the claim relates to a disability determination) after receipt of the claim. This period may be extended one time by the Plan for up to 90 days (30 additional days if the claim relates to a disability determination), provided that the Plan Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to the expiration of the initial review period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If the claim relates to a disability determination, the period for making the determination may be extended for up to an additional 30 days if the Plan Administrator notifies the Claimant prior to the expiration of the first 30-day extension period.

Content of Notice of Denied Claim.    If a claim is wholly or partially denied, the Plan Administrator will provide the Claimant with a written notice identifying (1) the reason or reasons for such denial, (2) the pertinent Plan provisions on which the denial is based, (3) any material or information needed to grant the claim and an explanation of why the additional information is necessary, and (4) an explanation of the steps that the Claimant must take if he wishes to appeal the denial including a statement that the Claimant may bring a civil action under ERISA.

Appeals of Denied Claim. If a Claimant wishes to appeal the denial of a claim, he must file a written appeal with the Plan Administrator on or before the 60th day (180th day if the claim relates to a disability determination) after he receives the Plan Administrator's written notice that the claim has been wholly or partially denied. The written appeal must identify both the grounds and specific Plan provisions upon which the appeal is based. The Claimant will be provided, upon request and free of charge, documents and other information relevant to his claim. A written appeal may also include any comments, statements or documents that the Claimant may desire to provide. The Plan Administrator will

CONFIDENTIAL                                                                                    WH_MDL_00139345

consider the merits of the Claimant's written presentations, the merits of any facts or evidence in support of the denial of benefits, and such other facts and circumstances as the Plan Administrator may deem relevant. The Claimant will lose the right to appeal if the appeal is not timely made. The Plan Administrator will ordinarily rule on an appeal within 60 days (45 days if the claim relates to a disability determination). However, if special circumstances require an extension and the Plan Administrator furnishes the Claimant with a written extension notice during the initial period, the Plan Administrator may take up to 120 days (90 days if the claim relates to a disability determination) to rule on an appeal.

Denial of Appeal. If an appeal is wholly or partially denied, the Plan Administrator will provide the Claimant with a notice identifying (1) the reason or reasons for such denial, (2) the pertinent Plan provisions on which the denial is based, (3) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits, and (4) a statement describing the Claimant's right to bring an action under section 502(a) of ERISA. The determination rendered by the Plan Administrator will be binding upon all parties.

Determinations of Disability. If the claim relates to a disability determination, determinations of the Plan Administrator will include the information required under applicable United States Department of Labor regulations.

## YOUR RIGHTS UNDER ERISA

As a participant, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). This federal law provides that you have the right to:

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated Summary Plan Description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

Obtain, once a year, a statement from the Plan Administrator regarding your Accrued Benefit under the Plan and the nonforfeitable (vested) portion of your Accrued Benefit, if any. This statement must be requested in writing and is not required to be given more than once every 12 months. The Plan must provide the statement free of charge.

In addition, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining your benefits or exercising your rights under ERISA.

**CONFIDENTIAL**                                                                    **WH_MDL_00139346**

If your claim for a benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order, you may file suit in Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## **MISCELLANEOUS**

### Domestic Relations Orders

Under certain circumstances, a court may issue a domestic relations order assigning a portion of your benefits under the Plan to a spouse, former spouse, child or other dependent. The Plan Administrator will determine whether the order is a qualified domestic relations order ("QDRO"). If the Plan Administrator determines that the order is a QDRO, it will implement the terms of the QDRO and divide your Account accordingly. You may obtain, without charge, a copy of the Plan's QDRO procedures from the Plan Administrator.

### Disability

Under this Plan, you are disabled if you are mentally or physically disabled under uniform rules consistently applied to all Participants in like circumstances as determined by the Plan Administrator.

### Assignment and Alienation of Benefits

Except as provided below, your Account is held in trust and cannot be assigned and, to the extent permitted by law, is not subject to any form of attachment, garnishment, sequestration or other actions of collection. You may not alienate, anticipate, commute, pledge, encumber or assign any of the benefits or

CONFIDENTIAL                                                                        WH_MDL_00139347

payments which you may expect to receive, contingently or otherwise, under the Plan, except that you may designate a beneficiary.

However, you may lose all or part of your balance:

- pursuant to the terms of a QDRO;

- to comply with any federal tax levy; or

- to comply with the provisions and conditions of a judgment, order, decree or settlement agreement between you and the Secretary of Labor or the Pension Benefit Guaranty Corporation relating to your violation (or alleged violation) of ERISA fiduciary responsibilities.

### Amendment and Termination

Although the Employer intends to maintain the Plan indefinitely, the Employer may amend or terminate the Plan at any time in its sole discretion. If any of these actions is taken, you will be notified. However, no such action may permit any part of Plan assets to be used for any purpose other than the exclusive benefit of participants and beneficiaries or cause any reduction in your vested Account balance as of the date of the amendment or termination. If the Plan is terminated, all amounts credited to your Account will become 100% vested.

### Fees

Your Account may be charged for some or all of the costs and expenses of operating the Plan. Such expenses include, but are not limited to, investment expenses and costs to process loans, Plan distributions and QDROs. For specific information regarding the fees that are charged by the Plan, please contact the Plan Administrator.

### Insurance

The Plan is not insured by the Pension Benefit Guaranty Corporation (PBGC) because it is not a defined benefit pension plan.

### Administrator Discretion

The Plan Administrator has the authority to make factual determinations, to construe and interpret the provisions of the Plan, to correct defects and resolve ambiguities in the Plan and to supply omissions to the Plan. Any construction, interpretation or application of the Plan by the Plan Administrator is final, conclusive and binding.

### Plan Not a Contract of Employment

The Plan does not constitute, and is not to be deemed to constitute, an employment contract between the Employer and any employee or an inducement or condition of employment of any employee. Nothing in the Plan is to be deemed to give any employee the right to be retained in the Employer's service or to interfere with the Employer's right to discharge any employee at any time.

CONFIDENTIAL                                                      WH_MDL_00139348

<u>Waiver</u>

Any failure by the Plan or the Plan Administrator to insist upon compliance with any of the Plan's provisions at any time or under any set of circumstances does not operate to waive or modify the provision or in any other manner render it unenforceable as to any other time or as to any other occurrence, whether the circumstances are the same or different. No waiver of any term or condition of the Plan is valid or of any force or effect unless it is expressed in writing and signed by a person authorized by the Plan Administrator to grant a waiver.

<u>Errors</u>

Any clerical or similar error by the Plan Administrator cannot give coverage under the Plan to any individual who otherwise does not qualify for coverage under the Plan. An error cannot give a benefit to an individual who is not actually entitled to the benefit.

## ADMINISTRATIVE INFORMATION

1.  The Plan Sponsor and Plan Administrator is Roadcraft Technologies LLC.

    Address: 145 W. 67th St., New York, NY 10023
    Phone number: 917-498-3723
    Employer Identification Number: 47-1240530

2.  The Plan is a 401(k) profit-sharing plan. The Plan number is 001.

3.  The Plan's designated agent for service of legal process is a member or manager of the entity named in item 1. Any legal papers should be delivered to such person at the address listed in item 1. However, service may also be made upon the Plan Administrator or a Trustee.

4.  The Plan's assets are held in a trust created under the terms of the Plan. The Trustee is Ronald Altbach. Its principal place of business is the address listed in item 1.

5.  The Employer's fiscal year and the Plan Year end on December 31.

6.  If the Plan is established or maintained by two or more employers, you can obtain a complete list of the employers sponsoring the Plan upon written request to the Plan Administrator (this list is also available for examination by participants and beneficiaries); you may also receive from the Plan Administrator, upon written request, information as to whether a particular employer is a sponsor of the Plan and, if the employer is a plan sponsor, the sponsor's address.

CONFIDENTIAL                                                                    WH_MDL_00139349

**ROADCRAFT TECHNOLOGIES LLC
ROTH 401(K) PLAN**

Established as of January 1, 2014
Amended and Restated as of 1/1/2016

*Prepared by:*
ELITE PENSION CONSULTANTS

© 2002-2016
All Rights Reserved.

**CONFIDENTIAL**                                                                  **WH_MDL_00139350**

ROADCRAFT TECHNOLOGIES LLC
ROTH 401(K) PLAN

TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION ........................................................................................... 2
   Section 1.01  Plan ........................................................................................................ 2
   Section 1.02  Application of Amended and Restated Plan ......................................... 2

ARTICLE 2 DEFINITIONS ................................................................................................. 3

ARTICLE 3 PARTICIPATION ........................................................................................... 18
   Section 3.01  Elective Deferrals ................................................................................ 18
   Section 3.02  Transfers ............................................................................................. 18
   Section 3.03  Termination and Rehires ..................................................................... 18
   Section 3.04  Limitations on Exclusions ................................................................... 18
   Section 3.05  Procedures for Admission ................................................................... 19
   Section 3.06  Waiver ................................................................................................. 19
   Section 3.07  Participants Receiving Differential Military Pay ................................. 19

ARTICLE 4 CONTRIBUTIONS ......................................................................................... 20
   Section 4.01  Elective Deferrals ................................................................................ 20
   Section 4.02  Qualified Non-Elective Contributions ................................................ 21
   Section 4.03  Rollover Contributions ....................................................................... 23
   Section 4.04  Transfers ............................................................................................. 24
   Section 4.05  Military Service ................................................................................... 24
   Section 4.06  Timing of Contributions ..................................................................... 24
   Section 4.07  Arrangements Adopted by More Than One Employer ......................... 24

ARTICLE 5 LIMITATIONS ON CONTRIBUTIONS ....................................................... 28
   Section 5.01  Annual Limitation on Elective Deferrals ............................................ 28
   Section 5.02  Nondiscrimination .............................................................................. 29
   Section 5.03  Special Rules ....................................................................................... 30
   Section 5.04  Correction of Discriminatory Elective Deferrals ................................ 33
   Section 5.05  Maximum Amount of Annual Additions ............................................. 34

ARTICLE 6 VESTING ........................................................................................................ 36
   Section 6.01  Participant Contributions ................................................................... 36

ARTICLE 7 DISTRIBUTIONS ........................................................................................... 37
   Section 7.01  Commencement of Distributions ......................................................... 37
   Section 7.02  Timing and Form of Distributions ...................................................... 37
   Section 7.03  Cash-Out of Small Balances ............................................................... 39
   Section 7.04  Beneficiary .......................................................................................... 40
   Section 7.05  Minimum Distribution Requirements .................................................. 41
   Section 7.06  Direct Rollovers ................................................................................. 46
   Section 7.07  Minor or Legally Incompetent Payee .................................................. 48
   Section 7.08  Missing Payee ..................................................................................... 48
   Section 7.09  Distributions on Termination of Plan ................................................. 49

ARTICLE 8 IN-SERVICE DISTRIBUTIONS AND LOANS ............................................ 50
   Section 8.01  Other Withdrawals ............................................................................. 50
   Section 8.02  Transfer Account ................................................................................ 50

CONFIDENTIAL

Section 8.03  Rules Regarding In-Service Distributions ................................................ 50
Section 8.04  Loans ...................................................................................................... 50
ARTICLE 9 INVESTMENT AND VALUATION OF TRUST FUND ............................ 53
Section 9.01  Investment of Assets ............................................................................... 53
Section 9.02  Pooled Accounts ..................................................................................... 53
Section 9.03  Individual Accounts ................................................................................ 53
Section 9.04  Qualifying Employer Investments .......................................................... 53
Section 9.05  Allocation of Earnings and Losses ......................................................... 53
Section 9.06  Voting Rights .......................................................................................... 54
Section 9.07  Life Insurance ......................................................................................... 54
ARTICLE 10 TRUST FUND ......................................................................................... 56
Section 10.01  Trust Fund ............................................................................................. 56
Section 10.02  Duties of the Trustee ............................................................................ 57
Section 10.03  General Investment Powers .................................................................. 58
Section 10.04  Other Investment Powers ..................................................................... 61
Section 10.05  Instructions ........................................................................................... 62
Section 10.06  Investment of the Fund ........................................................................ 63
Section 10.07  Compensation and Indemnification ..................................................... 64
Section 10.08  Resignation and Removal ..................................................................... 64
ARTICLE 11 SPECIAL TOP-HEAVY RULES ............................................................ 66
Section 11.01  Top-Heavy Status .................................................................................. 66
Section 11.02  Minimum Allocations ........................................................................... 66
Section 11.03  Minimum Vesting ................................................................................. 68
ARTICLE 12 PLAN ADMINISTRATION ................................................................... 69
Section 12.01  Plan Administrator ............................................................................... 69
Section 12.02  Investment Fiduciary ............................................................................ 70
Section 12.03  Compensation of Plan Administrator and Investment Fiduciary ......... 71
Section 12.04  Plan Expenses ....................................................................................... 71
Section 12.05  Allocation of Fiduciary Responsibility ................................................ 71
Section 12.06  Indemnification ..................................................................................... 71
Section 12.07  Claims Procedures ................................................................................ 71
Section 12.08  Written Communication ........................................................................ 73
Section 12.09  Advisory Letter ..................................................................................... 73
ARTICLE 13 AMENDMENT, MERGER AND TERMINATION ................................. 74
Section 13.01  Amendment ........................................................................................... 74
Section 13.02  Merger and Transfer ............................................................................. 76
Section 13.03  Termination ........................................................................................... 76
ARTICLE 14 MISCELLANEOUS ................................................................................ 77
Section 14.01  Nonalienation of Benefits ..................................................................... 77
Section 14.02  Rights of Alternate Payees ................................................................... 77
Section 14.03  No Right to Employment ...................................................................... 78
Section 14.04  No Right to Trust Assets ....................................................................... 79
Section 14.05  Governing Law ..................................................................................... 79
Section 14.06  Severability of Provisions .................................................................... 79
Section 14.07  Headings and Captions ......................................................................... 79
Section 14.08  Gender and Number .............................................................................. 79
Section 14.09  Disaster Relief ...................................................................................... 79

CONFIDENTIAL                                                      **WH_MDL_00139352**

EXECUTION PAGE........................................................................................................................ 80

CONFIDENTIAL

## PREAMBLE

WHEREAS, Roadcraft Technologies LLC, a Delaware Limited Liability Company (the "Plan Sponsor"), adopted a qualified retirement plan for the benefit of its Eligible Employees, effective January 1, 2014;

NOW, THEREFORE, the Plan Sponsor hereby amends and restates the Roadcraft Technologies LLC Roth 401(k) Plan, effective as of 1/1/2016 (except as otherwise noted) pursuant to the following provisions:

CONFIDENTIAL                                                                                    **WH_MDL_00139354**

# ARTICLE 1
# INTRODUCTION

Section 1.01    PLAN

The Plan Sponsor hereby amends and restates this Plan, effective 1/1/2016.  This document is intended to qualify as a tax-exempt "Plan" under Code sections 401(a) and 501(a), respectively.

Section 1.02    APPLICATION OF AMENDED AND RESTATED PLAN

Except as otherwise specifically provided herein, the provisions of this amended and restated Plan shall apply to those individuals who are Eligible Employees of the Company on or after 1/1/2016.  Except as otherwise specifically provided for herein, the rights and benefits, if any, of former Eligible Employees of the Company whose employment terminated prior to 1/1/2016, shall be determined under the provisions of the Plan, as in effect from time to time prior to that date.

CONFIDENTIAL                                         **WH_MDL_00139355**

# ARTICLE 2
# DEFINITIONS

"Account" means the balance of a Participant's interest in the Trust Fund as of the applicable date as adjusted pursuant to Article 9. "Account" or "Accounts" shall include, for any Participant, an Elective Deferral Account, Pre-tax Elective Deferral Account, Roth Elective Deferral Account, In-Plan Roth Rollover Account, Rollover Contribution Account, Qualified Non-Elective Contribution Account, Transfer Account and such other Account(s) or subaccount(s) as the Plan Administrator, in its discretion, deems appropriate.

"Actual Deferral Ratio" means the ratio (expressed as a percentage) of Elective Deferrals made on behalf of a Participant for the Plan Year to the Participant's Section 414(s) Compensation for that year.

An Elective Deferral shall be considered "for the Plan Year" only if the Elective Deferral is allocated to the Participant's Account under the Plan as of a date within that year.  For purposes of this rule, an Elective Deferral is considered allocated as of a date within a year only if: (a) the allocation is not contingent on the Participant's participation in the Plan or performance of services on any date subsequent to that date; (b) the Elective Deferral is actually paid to the Trust Fund no later than the end of the 12-month period immediately following the year to which the contribution relates; and (c) the Elective Deferral relates to Compensation that would have been received by the Participant in the year but for the Participant's election to defer under the arrangement. Qualified Non-Elective Contributions and Qualified Matching Contributions shall be counted in the Actual Deferral Ratio only if they meet the requirements of Section 5.03(b).

The Actual Deferral Ratio of a Participant who is eligible but does not make an Elective Deferral and, if applicable, who does not receive an allocation of Qualified Non-Elective Contributions and Qualified Matching Contributions shall be zero. A Participant's Actual Deferral Ratio shall not include: (a) contributions treated as disproportionate within the meaning of Section 5.03(f); (b) a Nonhighly Compensated Employee's Excess Elective Deferrals; (c) Elective Deferrals treated as Catch-up Contributions for the Plan Year for which the contributions were made or for any other Plan Year; (d) additional Elective Deferrals made pursuant to Code section 414(u) by reason of a Participant's Qualified Military Service for the Plan Year for which the contributions are made, or for any other Plan Year; or (e) to the extent necessary to demonstrate satisfaction of the requirement of Treas. Reg. section 1.401(m)-2(a)(6)(ii), Elective Deferrals taken into account for the actual contribution percentage test under Treas. Reg. section 1.401(m)-2(a)(6).

"Alternate Payee" means the person entitled to receive payment of benefits under the Plan pursuant to a Qualified Domestic Relations Order.

"Annual Addition" means the sum of the following amounts credited to a Participant's Account for the Limitation Year:

(a)    Elective Deferrals and Qualified Non-Elective Contributions allocated to a Participant's Account, including Excess Elective Deferrals, unless such amounts are distributed no later than the first April 15 following the close of the Participant's taxable year;

CONFIDENTIAL                                                                    WH_MDL_00139356

(b)    forfeitures;

(c)    amounts allocated, after March 31, 1984, to an individual medical account, as defined in Code section 415(l)(2), which is part of a pension or annuity plan maintained by the Employer;

(d)    amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits, allocated to the separate Account of a Key Employee, as defined in Code section 419A(d)(3), under a welfare benefit fund, as defined in Code section 419(e), maintained by the Employer; and

(e)    allocations under a simplified employee pension plan.

Notwithstanding the foregoing, an Annual Addition shall not include a restorative payment within the meaning of IRS Revenue Ruling 2002-45 and any superseding guidance.

"Annuity Starting Date" means the first day of the first period for which an amount is paid as an annuity or any other form.

"Average Deferral Percentage" means the average (expressed as a percentage) of the Actual Deferral Ratios of the Participants in a specified group.

"Beneficiary" means the person(s) entitled to receive benefits, under Section 7.04 of the Plan, upon the Participant's death.

"Board" means the managing board as designated under the Plan Sponsor's organizing documents.

"Catch-up Contribution" means the contribution described in Section 5.01(d).

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Company" means the Plan Sponsor and any other entity that has adopted the Plan with the approval of the Plan Sponsor. Notwithstanding the foregoing, if the Plan Sponsor is a union, Company shall mean any Employer who is a party to a collective bargaining agreement with the Plan Sponsor which provides for participation in the Plan by Employees of the Employer.

"Compensation" means Section 415 Safe Harbor Option.

Compensation shall include:

Compensation shall include other compensation paid by the later of: (a) 2-1/2 months after an Employee's severance from employment with the Company or (b) the end of the Limitation Year that includes the date of the Employee's severance from employment with the Company if: (1) the payment is regular compensation for services during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (e.g., overtime or shift differential), commissions, bonuses, or other similar payments; and (2) the payment would have been paid to the Participant prior to a severance from employment if the Participant had continued in employment with the Company.

The exclusions from Compensation for payments after severance from employment do not apply to payments to a Participant who does not currently perform services for the Company by reason of Qualified Military Service to the extent those payments do not exceed the amounts the Participant would have received if the individual had continued to perform services for the Company rather than entering Qualified Military Service.

To the extent provided in the Plan, Compensation shall include compensation paid to a Participant who is permanently and totally disabled.

For purposes of Elective Deferrals and Non-Elective Contributions, Compensation shall also include any amount which is contributed by the Company pursuant to a salary reduction agreement and which is not includable in the gross income of the Participant under Code sections 125, 402(e)(3), 402(h), 403(b), 132(f) or 457.

Pursuant to Code section 414(u)(12), IRS Notice 2010-15 and any superseding guidance, differential wage payments shall be treated as Compensation.

Compensation will not be determined using Post Year End Compensation.

Compensation shall exclude:

For purposes of Non-Elective Contributions, Compensation shall include only that Compensation which is actually paid to a Participant by the Company during that part of the Plan Year the Participant is eligible to participate in the Plan. For all other purposes, Compensation shall include Compensation which is paid to the Participant by the Company during the Plan Year or such other period used to determine Compensation for allocation purposes.

Compensation must be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code section 3401(a)(2)). For any Self-Employed Individual covered under the Plan, Compensation shall mean Earned Income.

For any Plan Year, the annual compensation of each Participant taken into account in determining allocations for any Plan Year beginning after December 31, 2001, shall not exceed $200,000, as adjusted for cost-of-living increases in accordance with Code section 401(a)(17)(B). Annual compensation means Compensation during the Plan Year or such other consecutive 12-month period over which Compensation is otherwise determined under the Plan (the determination period). The cost-of-living adjustment in effect for a calendar year applies to annual compensation for the determination period that begins with or within such calendar year.

If a determination period consists of fewer than 12 months, the annual compensation limit is an amount equal to the otherwise applicable annual compensation limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is 12.

"Determination Date" means the last day of the preceding Plan Year.

CONFIDENTIAL                                                                    WH_MDL_00139358

"Disabled" or "Disability" means a finding by the Plan Administrator that the Participant is mentally or physically disabled under a written nondiscriminatory policy. The determination of Disability shall be made by the Plan Administrator.

"Earned Income" means the net earnings from self-employment in the trade or business with respect to which the Plan is established, for which personal services of the individual are a material income-producing factor. Net earnings will be determined without regard to items not included in gross income and the deductions allocable to such items. Net earnings are reduced by contributions by the Employer to a qualified plan to the extent deductible under Code section 404. Net earnings shall be determined with regard to the deduction allowed to the taxpayer by Code section 164(f) for taxable years beginning after December 31, 1989.

"Effective Date" means 1/1/2016; provided, however, that when a provision of the Plan states an effective date other than 1/1/2016, such stated specific effective date shall apply as to that provision. The Plan is an amendment and restatement of a Plan that was originally effective January 1, 2014.

"Elective Deferral" means an Employee contribution made to the Plan as a Pre-tax Elective Deferral or a Roth Elective Deferral pursuant to Article 4 of the Plan.

"Elective Deferral Account" means so much of a Participant's Account as consists of a Participant's Elective Deferrals (and corresponding earnings) made to the Plan. Except as expressly provided elsewhere in the Plan, the Elective Deferral Account shall also include Catch-up Contributions described in Section 5.01 of the Plan.

"Eligible Employee" means any Employee employed by the Company, subject to the following modifications and exclusions:

For purposes of Elective Deferrals, the term "Eligible Employee" shall exclude any Employee who is included in a unit of Employees covered by a collective bargaining agreement, if retirement benefits were the subject of good faith bargaining, and if the collective bargaining agreement does not provide for participation in this Plan.

For purposes of Elective Deferrals, the term "Eligible Employee" shall not include any Leased Employees.

For purposes of Elective Deferrals, the term "Eligible Employee" shall not include any Employee who is a non-resident alien who received no earned income (within the meaning of Code section 911(d)(2)) which constitutes income from services performed within the United States (within the meaning of Code section 861(a)(3)).

If an individual is subsequently reclassified as, or determined to be, an Employee by a court, the Internal Revenue Service or any other governmental agency or authority, or if the Company is required to reclassify such individual as an Employee as a result of such reclassification or determination (including any reclassification by the Company in settlement of any claim or action relating to such individual's employment status), such individual shall not become an Eligible Employee by reason of such reclassification or determination.

Copyright © 2002-2016

CONFIDENTIAL
WH_MDL_00139359

In addition, an individual who becomes employed by the Employer in a transaction between the Employer and another entity that is a stock or asset acquisition, merger, or other similar transaction involving a change in the employer of the employees of the trade or business shall not become eligible to participate in the Plan until such time as the Plan Sponsor specifically authorizes such participation.

"Employee" means any individual who is employed by the Employer, including a Self-Employed Individual. The term "Employee" includes any Leased Employee of the Employer. No Leased Employee may become a Participant hereunder unless he becomes an Eligible Employee. The term "Employee" shall not include a person who is classified by the Employer as an independent contractor or a person (other than a Self-Employed Individual) who is not treated as an employee for purposes of withholding federal employment taxes.

"Employer" means the Company or any other employer required to be aggregated with the Company under Code sections 414(b), (c), (m) or (o) and the regulations thereunder. In identifying "Employer" for purposes of Section 5.05, the definition in Code sections 414(b) and (c) shall be modified as provided in Code section 415(h).

"Employment Commencement Date" means the first date on which the Eligible Employee performs an Hour of Service.

"ERISA" means the Employee Retirement Income Security Act of 1974, all amendments thereto and all federal regulations promulgated pursuant thereto.

"Excess Elective Deferral" means Elective Deferrals made in excess of the limit described in Section 5.01.

"Highly Compensated Employee" means, effective for Plan Years beginning after December 31, 1996, any Employee who during the Plan Year performs services for the Employer and who:

(a)    was a More Than 5% Owner at any time during the Plan Year or the preceding Plan Year; or

(b)    during the calendar year beginning with or within the preceding Plan Year received Statutory Compensation in excess of the Code section 414(q)(1) amount ($80,000 as adjusted) and was a member of the top paid group of Employees within the meaning of Code section 414(q)(3).

The determination of who is a Highly Compensated Employee will be made in accordance with Code section 414(q) and the regulations thereunder to the extent they are not inconsistent with the method established above.

The term Highly Compensated Employee also includes a former Employee who was a Highly Compensated Employee when he separated from service or at any time after attaining age 55.

"Hour of Service" means:

(a)    Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer. These hours will be credited to the Employee for the computation period in which the duties are performed.

CONFIDENTIAL                                                                    **WH_MDL_00139360**

(b)    Each hour for which an Employee is paid, or entitled to payment, by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence.  No more than 501 Hours of Service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period).  Hours under this paragraph will be calculated and credited pursuant to DOL Reg. section 2530.200b-2 and any superseding guidance which is incorporated herein by this reference.

(c)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer.  The same Hours of Service will not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c).  These hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

Solely for purposes of determining whether a One-Year Break in Service has occurred, an individual who is absent from work for maternity or paternity reasons shall receive credit for the Hours of Service which would otherwise have been credited to such individual but for such absence, or in any case in which such hours cannot be determined, eight (8) Hours of Service per day of such absence.  For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (a) by reason of the pregnancy of the individual, (b) by reason of a birth of a child of the individual, (c) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or (d) for purposes of caring for such child for a period beginning immediately following such birth or placement.  The Hours of Service credited under this paragraph shall be credited (a) in the computation period in which the absence begins if the crediting is necessary to prevent a break in service in that period, or (b) in all other cases, in the following computation period.

If the Employer is a member of an affiliated service group (under Code section 414(m)), a controlled group of corporations (under Code section 414(b)), a group of trades or businesses under common control (under Code section 414(c)) or any other entity required to be aggregated with the Employer pursuant to Code section 414(o), service will be credited for any employment with such groups during the time the Employer is a member of the applicable group.  Service will also be credited for any individual considered an Employee for purposes of this Plan under Code sections 414(n) or 414(o).

If the Employer maintains the plan of a predecessor employer, service with such employer will be treated as service for the Employer.

Service with respect to Qualified Military Service shall be credited in accordance with Code section 414(u) and service shall also be determined to the extent required by the Family and Medical Leave Act of 1993.

Notwithstanding the foregoing, for determining service under the elapsed time method, an Hour of Service means each hour for which an Employee is paid or entitled to payment for the performance of duties for the Employer.

"In-Plan Roth Rollover" means an Employee contribution made to the Plan as a rollover from another Account in the Plan pursuant to Section 4.03(b).

CONFIDENTIAL                                                                        **WH_MDL_00139361**

"In-Plan Roth Rollover Account" means so much of a Participant's Account as consists of a Participant's In-Plan Roth Rollover contributions (and corresponding earnings) made to the Plan.

"Investment Fiduciary" means the person(s) designated pursuant to Section 12.02. The fiduciary shall be subject to standards of conduct as prescribed under ERISA.

"Investment Funds" means the funds in which the Trust Fund is invested.

"Investment Manager" means an investment manager as described in section 3(38) of ERISA.

"Key Employee" means for Plan Years beginning after December 31, 2001, any Employee or former Employee (including any deceased Employee) who at any time during the Plan Year that includes the Determination Date is an officer of the Employer having an annual Statutory Compensation greater than $130,000 (as adjusted under Code section 416(i)(1) for Plan Years beginning after December 31, 2002), a More Than 5% Owner of the Employer, or a 1% owner of the Employer having Statutory Compensation of more than $150,000. The determination of who is a Key Employee will be made in accordance with Code section 416(i)(1) and the applicable regulations and other guidance of general applicability issued thereunder.

"Leased Employee" means any person (other than an Employee of the Employer) who, pursuant to an agreement between the Employer and any other person ("leasing organization"), has performed services for the Employer (or for the Employer and related persons determined in accordance with Code section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the Employer. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the Employer shall be treated as provided by the Employer. A person shall not be considered a Leased Employee if: (a) such person is covered by a money purchase pension plan providing: (1) a nonintegrated employer contribution rate of at least 10% of compensation, as defined in Code section 415(c)(3), but including amounts contributed pursuant to a salary reduction agreement which are excludable from the employee's gross income under Code sections 125, 402(e)(3), 402(h), 403(b), 132(f) or 457; (2) immediate participation; and (3) full and immediate vesting; and (b) Leased Employees do not constitute more than 20% of the Employer's nonhighly compensated work force.

"Limitation Year" means the Plan Year for purposes of determining Annual Additions limits pursuant to Article 5. All qualified plans maintained by the Employer must use the same Limitation Year. If the Limitation Year is amended to a different 12-consecutive month period, the new Limitation Year must begin on a date within the Limitation Year in which the amendment is made.

"More Than 5% Owner" means any person who (a) owns (either directly or by attribution, under Code section 318) more than 5% of the outstanding stock of the Employer or stock possessing more than 5% of the total combined voting power of all stock of the Employer or, (b) in the case of an unincorporated business, any person who owns more than 5% of the capital or profits interest in the Employer. For purposes of Section 7.05, a Participant is treated as a More Than 5% Owner if such Participant is a More Than 5% Owner at any time during the Plan Year ending with or within the calendar year in which such owner attains age 70-1/2 and shall continue to be considered a More Than 5% Owner (and distributions must continue under Section 7.05) even if the Participant ceases to be a 5% owner in a subsequent year.

CONFIDENTIAL                                                                                    **WH_MDL_00139362**

"Non-Key Employee" means any Employee or former Employee who is not a Key Employee.

"Non-Elective Contribution" means a Qualified Non-Elective Contribution and a minimum allocation made pursuant to Article 11.

"Nonhighly Compensated Employee" means an Employee who is not a Highly Compensated Employee.

"Normal Retirement Age" means the later of: (i) attainment of age 65, and (ii) the fifth anniversary of Plan participation.

"Normal Retirement Date" means the date the Participant attains Normal Retirement Age.

"One-Year Break in Service" means, for purposes of determining eligibility service, an Eligibility Computation Period or, for purposes of determining a Year of Vesting Service, a Vesting Computation Period during which an Employee is credited with 500 or fewer Hours of Service.

"Participant" means an Eligible Employee who participates in the Plan in accordance with Articles 3 and 4.

"Permissive Aggregation Group" means the Required Aggregation Group of plans, plus any other plan or plans of the Employer which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code sections 401(a)(4) and 410.

"Plan" means the Roadcraft Technologies LLC Roth 401(k) Plan, as set forth in this instrument and any amendments or supplements thereto.

"Plan Administrator" means the person(s) designated pursuant to Section 12.01 of the Plan. The Plan Administrator shall also be the named fiduciary within the meaning of ERISA section 402.

"Plan Sponsor" means Roadcraft Technologies LLC and any successor thereto.

"Plan Year" means the 12-consecutive month period ending on each December 31.

"Post Year End Compensation" means amounts earned during a year but not paid during that year solely because of the timing of pay periods and pay dates if: (a) these amounts are paid during the first few weeks of the next year; (b) the amounts are included on a uniform and consistent basis with respect to all similarly situated Employees; and (c) no compensation is included in more than one year.

"Pre-tax Elective Deferral" means Elective Deferrals that are not includible in the Participant's gross income at the time deferred.

"Pre-tax Elective Deferral Account" means so much of a Participant's Account as consists of a Participant's Pre-tax Elective Deferrals (and corresponding earnings) made to the Plan.

"Present Value" means a benefit in a defined benefit plan of equivalent value.

CONFIDENTIAL                                                    WH_MDL_00139363

"Qualified Domestic Relations Order" means any judgment, decree, or order (including approval of a property settlement agreement) that constitutes a "qualified domestic relations order" within the meaning of Code section 414(p).

"Qualified Military Service" means qualified military service as defined in Code section 414(u).

"Qualified Non-Elective Contribution" means a Non-Elective Contribution made by the Company pursuant to Article 4.

"Qualified Non-Elective Contribution Account" means so much of a Participant's Account as consists of Qualified Non-Elective Contributions (and corresponding earnings) made to the Plan.

"Qualified Optional Survivor Annuity" means an immediate annuity for the life of the Participant with a survivor annuity that is equal to the applicable percentage of the amount of the annuity that is payable during the joint lives of the Participant and the spouse, and that is the actuarial equivalent of a single life annuity for the life of the Participant. The survivor percentage of the Qualified Optional Survivor Annuity shall be determined in accordance with the following:

(a)    If the Plan provides for a specific Qualified Joint and Survivor Annuity survivor annuity percentage and such percentage is less than 75%, then the Plan's Qualified Optional Survivor Annuity shall be 75%.

(b)    If the Plan provides for a specific Qualified Joint and Survivor Annuity survivor annuity percentage and such percentage is greater than or equal to 75%, then the Plan's Qualified Optional Survivor Annuity shall be 50%.

(c)    If the Plan does not provide for a specific Qualified Joint and Survivor Annuity survivor annuity percentage, then the Qualified Joint and Survivor Annuity survivor annuity percentage shall be 50% and the Qualified Optional Survivor Annuity survivor annuity percentage shall be 75%.

"Required Aggregation Group" means (a) each qualified plan of the Employer in which at least one Key Employee participates or participated at any time during the Plan Year containing the Determination Date or any of the four preceding Plan Years (regardless of whether the Plan has terminated), and (b) any other qualified plan of the Employer which enables a plan described in (a) to meet the requirements of Code sections 401(a)(4) or 410.

"Required Beginning Date" means April 1 of the calendar year following the later of the calendar year in which the Participant attains age 70-1/2 or the calendar year in which the Participant retires, except that benefit distributions to a More Than 5% Owner must commence by April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2.

"Rollover Contribution" means an Employee contribution made to the Plan as a rollover from another eligible retirement plan or individual retirement account pursuant to Article 4 of the Plan.

"Rollover Contribution Account" means so much of a Participant's Account as consists of a Participant's Rollover Contributions (and corresponding earnings) made to the Plan.

CONFIDENTIAL    WH_MDL_00139364

"Roth Elective Deferral" means an Elective Deferral that is (a) designated irrevocably by the Participant at the time of the cash or deferred election as a Roth Elective Deferral that is being made in lieu of all or a portion of the Pre-tax Elective Deferrals the Participant is otherwise eligible to make under the Plan; and (b) treated by the Company as includible in the Participant's income at the time the Participant would have received that amount in cash if the Participant had not made a cash or deferred election. Except as otherwise provided, Roth Elective Deferrals shall be subject to the same conditions and limitations as apply to Elective Deferrals.

"Roth Elective Deferral Account" means so much of a Participant's Account as consists of a Participant's Roth Elective Deferrals (and corresponding earnings) made to the Plan. The Plan will maintain a record of the amount of Roth Elective Deferrals in each Participant's Roth Elective Deferral Account.

"Section 414(s) Compensation" means compensation as defined in Code section 414(s) and Treas. Reg. section 1.414(s)-1. The period used to determine an Employee's compensation for a Plan Year must be either the Plan Year or the calendar year ending within the Plan Year. Whichever period is selected by the Plan Administrator must be applied uniformly to determine the compensation of every Eligible Employee under the Plan for that Plan Year. The Plan Administrator may, however, limit the period taken into account under either method to that portion of the Plan Year or calendar year in which the Employee was an Eligible Employee, provided that this limit is applied uniformly to all Eligible Employees under the Plan for the Plan Year. In the case of a Highly Compensated Employee whose Actual Deferral Ratio is determined under Treas. Reg. section 1.401(k)-2(a)(3)(ii), period of participation includes periods under another plan for which Elective Deferrals are aggregated under Treas. Reg. section 1.401(k)-2(a)(3)(ii). Section 414(s) Compensation shall be limited by any dollar limits described in Code section 401(a)(17) applicable under the definition of Compensation. The Plan Administrator may include Post Severance Compensation and/or determine Section 414(s) Compensation using Post Year End Compensation.

"Section 415 Safe Harbor Option" means a definition of Compensation that:

(a)     Includes all of the following:

(1)     The Employee's wages, salaries, fees for professional services, and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer maintaining the Plan, to the extent that the amounts are includible in gross income (or to the extent amounts would have been received and includible in gross income but for an election under Code section 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b)). These amounts include, but are not limited to, commissions paid to salespersons, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements or other expense allowances under a nonaccountable plan as described in Treas. Reg. section 1.62-2(c).

(2)     Amounts described in Code section 104(a)(3), 105(a), or 105(h), but only to the extent that these amounts are includible in the gross income of the Employee.

(3)     Amounts paid or reimbursed by the Employer for moving expenses incurred by an Employee, but only to the extent that at the time of the payment it is reasonable to believe that these amounts are not deductible by the Employee under Code section 217.

(4) The value of a nonstatutory option (which is an option other than a statutory option as defined in Treas. Reg. section 1.421-1(b)) granted to an Employee by the Employer, but only to the extent that the value of the option is includible in the gross income of the Employee for the taxable year in which granted.

(5) The amount includible in the gross income of an Employee upon making the election described in Code section 83(b).

(6) Amounts that are includible in the gross income of an Employee under the rules of Code section 409A or 457(f)(1)(A) or because the amounts are constructively received by the Employee.

(b) Excludes all of the following:

(1) Contributions (other than elective contributions described in Code section 402(e)(3), 408(k)(6), 408(p)(2)(A)(i), or 457(b)) made by the Employer to a plan of deferred compensation (including a simplified employee pension plan described in Code section 408(k) or a simple retirement account described in Code section 408(p), and whether or not qualified) to the extent that the contributions are not includible in the gross income of the Employee for the taxable year in which contributed. In addition, any distributions from a plan of deferred compensation (whether or not qualified) are not considered as compensation for Code section 415 purposes, regardless of whether such amounts are includible in the gross income of the Employee when distributed.

(2) Amounts realized from the exercise of a nonstatutory option (which is an option other than a statutory option as defined in Treas. Reg. section 1.421-1(b)), or when restricted stock or other property held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture (see Code section 83 and regulations promulgated thereunder).

(3) Amounts realized from the sale, exchange, or other disposition of stock acquired under a statutory stock option (as defined in Treas. Reg. section 1.421-1(b)).

(4) Other amounts that receive special tax benefits, such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in the gross income of the Employee and are not salary reduction amounts that are described in Code section 125).

(5) Other items of remuneration that are similar to any of the items listed in paragraphs (c)(1) through (c)(4) of this section.

"Self-Employed Individual" means any individual who has Earned Income for the taxable year from the trade or business for which the Plan is established, including an individual who would have Earned Income but for the fact that the trade or business had no net profits for the taxable year. An individual shall not be a Self-Employed Individual unless he or she is also an owner of the Company.

"Statutory Compensation" means Section 415 Safe Harbor Option. For any Self-Employed Individual covered under the Plan, Compensation shall mean Earned Income.

Statutory Compensation shall include any amount which is contributed by the Company pursuant to a salary reduction agreement and which is not includible in the gross income of the Participant under Code sections 125, 402(e)(3), 402(h), 403(b), 132(f) or 457.

CONFIDENTIAL

WH_MDL_00139366

Statutory Compensation shall include other compensation paid by the later of: (a) 2-1/2 months after an Employee's severance from employment with the Company or (b) the end of the Limitation Year that includes the date of the Employee's severance from employment with the Company if: (1) the payment is regular compensation for services during the Participant's regular working hours, or compensation for services outside the Participant's regular working hours (e.g., overtime or shift differential), commissions, bonuses, or other similar payments; and (2) the payment would have been paid to the Participant prior to a severance from employment if the Participant had continued in employment with the Company.

The exclusions from Compensation for payments after severance from employment do not apply to payments to a Participant who does not currently perform services for the Company by reason of Qualified Military Service to the extent those payments do not exceed the amounts the Participant would have received if the individual had continued to perform services for the Company rather than entering Qualified Military Service.

To the extent provided in the Plan, Statutory Compensation shall include compensation paid to a Participant who is permanently and totally disabled.

Statutory Compensation shall include differential military pay (as defined in Code section 3401(h)(2)).

Statutory Compensation will not be determined using Post Year End Compensation.

Back pay (as defined in Treas. Reg. section 1.415(c)-2(g)(8)) shall be treated as Statutory Compensation for the Limitation Year to which the back pay relates to the extent the back pay represents wages and compensation that would otherwise be included under this definition.

Notwithstanding any other provision hereof to the contrary, the annual Statutory Compensation of each Employee taken into account under the Plan for any Plan Year shall not exceed $200,000, (as adjusted under Code section 401(a)(17) for such year). If a Plan Year consists of fewer than 12 months, the applicable limitation under Code section 401(a)(17) will be multiplied by a fraction, the numerator of which is the number of months in such year, and the denominator of which is 12.

"Termination" and "Termination of Employment" means any absence from service that ends the employment of the Employee with the Employer.

"Top-Heavy" means a Plan that for any Plan Year beginning after 1983 meets the definition in Section 11.01.

"Top-Heavy Ratio" means:

(a)    If the Employer maintains one or more defined contribution plans (including any simplified employee pension plan) and the Employer has not maintained any defined benefit plan which during the 5-year period ending on the Determination Date(s) has or has had accrued benefits, the Top-Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group, as appropriate, is a fraction, the numerator of which is the sum of the Account balances of all Key Employees as of the Determination Date(s), including any part of any Account balance distributed in the one-year period

CONFIDENTIAL                                                                            **WH_MDL_00139367**

ending on the Determination Date(s) (5-year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or Disability), and the denominator of which is the sum of all Account balances including any part of any Account balance distributed in the 1-year period ending on the Determination Date(s) (5-year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or Disability), both computed in accordance with Code section 416 and the regulations thereunder. Both the numerator and denominator of the Top-Heavy Ratio are increased to reflect any contribution not actually made as of the Determination Date, but which is required to be taken into account on that date under Code section 416 and the regulations thereunder.

(b)    If the Employer maintains one or more defined contribution plans (including any simplified employee pension plan) and the Employer maintains or has maintained one or more defined benefit plans which during the 5-year period ending on the Determination Date(s) has or has had any accrued benefits, the Top-Heavy Ratio for any Required or Permissive Aggregation group, as appropriate, is a fraction, the numerator of which is the sum of Account balances under the aggregated defined contribution plan or plans for all Key Employees, determined in accordance with (a) above, and the Present Value of accrued benefits under the aggregated defined benefit plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the Account balances under the aggregated defined contribution plan or plans for all Participants, determined in accordance with (a) above, and the Present Value of accrued benefits under the defined benefit plan or plans for all Participants as of the Determination Date(s), all determined in accordance with Code section 416 and the regulations thereunder. The accrued benefits under a defined benefit plan in both the numerator and denominator of the Top-Heavy Ratio are increased for any distribution of an accrued benefit made in the one-year period ending on the Determination Date.

(c)    For purposes of (a) and (b) above the value of Account balances and the Present Value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the 12-month period ending on the Determination Date, except as provided in Code section 416 and the regulations thereunder for the first and second Plan Years of a defined benefit plan. The Account balances and accrued benefits of a Participant (1) who is a Non-Key Employee but who was a Key Employee in a prior year, or (2) who has not been credited with at least one Hour of Service with any Employer maintaining the Plan at any time during the one-year period ending on the Determination Date will be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, in-service withdrawals, rollovers, and transfers are taken into account will be made in accordance with Code section 416 and the regulations thereunder. Deductible Employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio. When aggregating plans the value of account balances and accrued benefits will be calculated with reference to the determination dates that fall within the same calendar year.

The accrued benefit of a Non-Key Employee shall be determined under: (x) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer; or (y) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Code section 411(b)(1)(C).

"Transfer Account" means so much of a Participant's Account as consists of amounts transferred from another eligible retirement plan (and corresponding earnings) pursuant to Article 4 in a transaction that was not an eligible rollover distribution within the meaning of Code section 402.

"Trust" means the agreement contained in Article 10.

"Trust Fund" means all of the assets of the Plan held by the Trustee or held by an insurance company pursuant to section 403 of ERISA.

"Trustee" means Ronald Altbach. If the Trustee is a corporate Trustee the Trustee will be a directed Trustee unless otherwise indicated in a separate agreement. If the Trustee is an individual Trustee, the Trustee will be a discretionary Trustee unless otherwise indicated in a separate agreement.

"Valuation Date" means the last day of the Plan Year. Notwithstanding anything in the Plan to the contrary and in the event that there is to be a distribution, transfer of assets and/or division of assets from the Plan, the Plan Administrator may in its sole discretion declare a special Valuation Date, but only for that portion of the Plan that is not daily-valued to protect the interests of Participants in the Plan or the Participant receiving the distribution.

"Vesting Computation Period" means, for purposes of determining Years of Vesting Service, the Plan Year.

"Voluntary Contribution" means an Employee contribution made to the Plan on an after-tax basis. Voluntary Contributions are not permitted in this Plan. The term Voluntary Contribution shall not include Roth Elective Deferrals.

"Year of Eligibility Service" except as may be provided below, Year of Eligibility Service means an Eligibility Computation Period during which an Employee completes at least 1,000 Hours of Service.

All eligibility service with the Employer is taken into account.

"Year of Vesting Service" means a Vesting Computation Period during which an Employee completes at least 1,000 Hours of Service.

All Years of Vesting Service with the Employer are taken into account except that for an Employee who has five consecutive One-Year Breaks in Service and except to the extent provided in Article 6, all periods of service after such breaks in service shall be disregarded for the purpose of vesting the Employee's Employer-derived Account balance that accrued before such breaks in service, but except as otherwise expressly provided, both the service before and after such breaks in service shall count for purposes of vesting the Employee's Employer-derived Account balance that accrues after such breaks in service pursuant to Article 6.

Notwithstanding the foregoing, the following service shall not be taken into account in determining Years of Vesting Service:

One-Year Holdout. If an Employee has a One-Year Break in Service, Years of Vesting Service before such period will not be taken into account until the Employee has completed a Year of Vesting Service after returning to employment with the Employer.

Rule of Parity. If an Employee does not have any nonforfeitable right to the Account balance derived from Employer contributions, Years of Vesting Service before a period of five (5) consecutive One-Year Breaks in Service will not be taken into account in computing vesting service. Elective

Deferrals are taken into account for purposes of determining whether a Participant is a nonvested Participant for purposes of Code section 411(a)(6)(D)(iii).

Service Before Age 18. Years of Vesting Service before age 18 will not be taken into account in computing vesting service.

CONFIDENTIAL

WH_MDL_00139370

# ARTICLE 3
# PARTICIPATION

## Section 3.01   ELECTIVE DEFERRALS

Each Eligible Employee as of the Effective Date who was eligible to participate in the Plan with respect to Elective Deferrals on or before the Effective Date shall be a Participant eligible to make Elective Deferrals pursuant to Article 4 on the Effective Date. Each other Eligible Employee who was not a Participant in the Plan with respect to Elective Deferrals on or before the Effective Date, shall become a Participant eligible to make Elective Deferrals on the date he attains age 21; provided that he is an Eligible Employee on such date.

## Section 3.02   TRANSFERS

If a change in job classification or a transfer results in an individual no longer qualifying as an Eligible Employee, such Employee shall cease to be a Participant for purposes of Article 4 (or shall not become eligible to become a Participant) as of the effective date of such change of job classification or transfer. Should such Employee again qualify as an Eligible Employee or if an Employee who was not previously an Eligible Employee becomes an Eligible Employee, he shall become a Participant with respect to the contributions for which the eligibility requirements have been satisfied as of the later of the effective date of such subsequent change of status or the date the Employee meets the eligibility requirements of this Article 3.

## Section 3.03   TERMINATION AND REHIRES

If an Employee has a Termination of Employment, such Employee shall cease to be a Participant for purposes of Article 4 (or shall not become eligible to become a Participant; except as provided in Article 4) as of his Termination of Employment. An individual who has satisfied the applicable eligibility requirements set forth in Article 3, including passing an entry date, before his Termination date, and who is subsequently reemployed by the Company as an Eligible Employee, shall resume or become a Participant immediately upon his rehire date with respect to the contributions for which the eligibility requirements of this Article 3 have been satisfied. An individual who has not so qualified for participation on his Termination date, and who is subsequently reemployed by the Company as an Eligible Employee, shall be eligible to participate as of the later of the effective date of such reemployment or the date the individual meets the eligibility requirements of this Article 3. The determination of whether a rehired Eligible Employee satisfies the requirements of Article 3 shall be made after the application of any applicable break in service rules.

## Section 3.04   LIMITATIONS ON EXCLUSIONS

(a)    Exclusions. Any Employee exclusion in the Plan document shall not be valid to the extent that such exclusion results in only Nonhighly Compensated Employees participating with the lowest amount of Compensation and/or lowest amount of service so that the Plan still meets the coverage requirements of Code section 410(b).

(b)    Coverage. The Plan must provide that an Eligible Employee who has attained age 21 and who has completed one Year of Eligibility Service (two Years of Eligibility Service may be used for contributions other than Elective Deferrals if the Plan provides a nonforfeitable right to 100% of the Participant's applicable Account balance after not more than 2 Years of Eligibility Service) shall commence participation in the Plan no later than the earlier of: (1) the first day of the first Plan Year beginning after the date on which such Eligible Employee satisfied such requirements; or (2) the date that is 6 months after the date on which he satisfied such requirements.

(c)    A Participant shall be treated as benefiting under the Plan for any Plan Year during which the Participant received or is deemed to receive an allocation in accordance with Treas. Reg. section 1.410(b)-3(a). Notwithstanding any provision of the Plan to the contrary, no Participant shall earn an allocation hereunder except as provided under the terms of the Plan as in effect on the last day of the Plan Year after giving effect to all retroactive amendments that may be permitted under applicable Internal Revenue Service procedures and other applicable law; including, without limitation, any amendment permitted under Treas. Reg. section 1.401(a)(4)-11.

## Section 3.05    PROCEDURES FOR ADMISSION

The Plan Administrator shall prescribe such forms and may require such data from Participants as are reasonably required to enroll a Participant in the Plan or to effectuate any Participant elections made pursuant to this Article 3.

## Section 3.06    WAIVER

An Employee may irrevocably elect not to participate in the Plan pursuant to Treas. Reg. section 1.401(k)-1(a)(3)(v).

## Section 3.07    PARTICIPANTS RECEIVING DIFFERENTIAL MILITARY PAY

Pursuant to Code section 414(u)(12), IRS Notice 2010-15 and any superseding guidance, a Participant receiving differential wage payments (as defined in Code section 3401(h)(2)) shall be treated as an Employee of the Employer making the payment and the differential wage payments (as defined in Code section 3401(h)(2)) shall be treated as Compensation under the Plan.

Copyright © 2002-2016

CONFIDENTIAL            **WH_MDL_00139372**

# ARTICLE 4
# CONTRIBUTIONS

## Section 4.01    ELECTIVE DEFERRALS

(a)    Elections. Each Participant may execute elections pursuant to this Section 4.01 in the form and manner prescribed by the Plan Administrator. The Plan Administrator shall provide each Participant with the forms necessary to elect the amount of Elective Deferrals. An Elective Deferral election shall provide that a Participant may elect to reduce his Compensation by an amount up to 100% of his Compensation.

(b)    Modifications. As of the date a Participant first meets the eligibility requirements of Section 3.01, he may elect to contribute to the Plan. Subsequent to that date, a Participant may elect to start, increase, reduce or totally suspend his elections pursuant to this Section 4.01, effective as of the dates established pursuant to Plan Administrator procedures. Notwithstanding the foregoing, a Participant may totally suspend his elections at any time.

(c)    Procedures. A Participant shall make an election described in Subsection (b) in such form and manner as may be prescribed by procedures established by the Plan Administrator. Such procedures may include, but not be limited to: specifying that elections be made at such time in advance as the Plan Administrator may require, allowing, on a nondiscriminatory basis, a Participant to make a separate election as to any bonuses or other special pay and/or requiring elections be made in a dollar amount or percentage of pay. A Participant's election regarding Elective Deferrals may be made only with respect to an amount which the Participant could otherwise elect to receive in cash and which is not currently available to the Participant. The Plan Administrator may allow Participants, on a nondiscriminatory basis, to defer on Compensation actually received after Termination of Employment.

(d)    Reduction in Elections. The Plan Administrator may reduce or totally suspend a Participant's election if the Plan Administrator determines that such election may cause the Plan to fail to satisfy any of the requirements of Article 5.

(e)    Catch-up Contributions. All Participants who are eligible to make Elective Deferrals under this Plan shall be eligible to make Catch-up Contributions pursuant to Section 5.01(d).

(f)    Roth Elective Deferrals. Participants shall be eligible to irrevocably designate some or all of their Elective Deferrals as either Pre-tax Elective Deferrals or Roth Elective Deferrals. However, the Plan Administrator may, on a nondiscriminatory basis, require a Participant to elect all of their Elective Deferrals as either Pre-tax Elective Deferrals or Roth Elective Deferrals. All elections shall be subject to the same election procedures, limits on modifications and other terms and conditions on elections as specified in the Plan.

(g)    Contribution and Allocation of Elective Deferrals. The Company shall contribute to the Plan with respect to each pay period an amount equal to the Elective Deferrals of Participants for such pay period, as determined pursuant to the Elective Deferral elections in force pursuant to this Section. There shall be directly and promptly allocated to the Elective Deferral Account of each Participant the Elective

**CONFIDENTIAL**                                                                                    **WH_MDL_00139373**

Deferrals contributed by the Company to the Plan by reason of any Elective Deferral election in force with respect to that Participant.

(h)    Participant.  For purposes of this Section, "Participant" shall mean an Eligible Employee who has met the eligibility requirements of Article 3 with respect to Elective Deferrals.

Section 4.02    QUALIFIED NON-ELECTIVE CONTRIBUTIONS

(a)    Amount of Qualified Non-Elective Contributions. The Company in its discretion may make additional Qualified Non-Elective Contributions for the benefit of such Participants as determined by the Company. A Qualified Non-Elective Contribution of a Nonhighly Compensated Employee will not be taken into account in satisfying the requirements of Section 5.02 to the extent it: (1) does not qualify for inclusion in the Actual Deferral Ratio; or (2) is a disproportionate contribution within the meaning of Treas. Reg. sections 1.401(k)-2(a)(6)(iv) and/or 1.401(m)-2(a)(6)(v) and any superseding guidance. Notwithstanding the foregoing, Qualified Non-Elective Contributions that are made in connection with an Employer's obligation to pay prevailing wages under the Davis-Bacon Act (46 Stat. 1494), Public Law 71-798, Service Contract Act of 1965 (79 Stat. 1965), Public Law 89-286, or similar legislation can be taken into account for a plan year for a Nonhighly Compensated Employee to the extent such contributions do not exceed 10% of that Nonhighly Compensated Employee's Compensation.

(1)    Participants Eligible to Receive Qualified Non-Elective Contributions. The Company may determine, in its discretion whether allocations of Qualified Non-Elective Contributions shall be limited to Participants who are credited with at least a certain number of Hours of Service during the Plan Year and/or who remain in the Company's employ on the last day of the Plan Year. The Company may limit Qualified Non-Elective Contributions contributed under this Subsection to Nonhighly Compensated Employees eligible to make Elective Deferrals during the Plan Year that meet any additional requirements determined by the Company.  The Company may also provide Qualified Non-Elective Contributions to those in any or all portions of a disaggregated plan as provided in Section 5.03.

(2)    Permissible Methods of Allocation. The Plan Administrator may elect to make the allocation from one of the following allocation methods: (A) pro-rata based on the Compensation of Participants receiving a Qualified Non-Elective Contribution; (B) per capita to each Participant receiving a Qualified Non-Elective Contribution; or (C) by a 'Bottom Up' method. If the Company decides to make Bottom Up Qualified Non-Elective Contributions, the Qualified Non-Elective Contributions may be allocated as follows:

(A)    First to the Qualified Non-Elective Contribution Account of the Participant who is a Nonhighly Compensated Employee with the lowest Compensation and is eligible to share in such allocations in an amount determined by the Company not to exceed 5% of such Participant's Compensation (the "Base QNEC Rate"). If any Qualified Non-Elective Contributions remain after the foregoing, the Company may then allocate Qualified Non-Elective Contributions to other Participants who are Nonhighly Compensated Employees eligible to share in such allocations with the next lowest Compensation in the amount of the Base QNEC Rate of Compensation until such contributions are fully allocated to one half of eligible Nonhighly Compensated Employees within the meaning of Treas. Reg. section 1.401(k)-2(a)(6)(iv)(B) (the "Base NHCEs"). Notwithstanding the foregoing, the Base QNEC Rate may exceed 5%; provided that the Company contribution is sufficient to provide the Base QNEC Rate to all Base NHCEs.

CONFIDENTIAL                                                                      **WH_MDL_00139374**

(B)    If any Qualified Non-Elective Contributions remain after the foregoing, the Company may then allocate Qualified Non-Elective Contributions to the Participant who is a Nonhighly Compensated Employee with the lowest Compensation and is eligible to share in such allocations in an additional amount not to exceed the Base QNEC Rate contributed pursuant to Paragraph (1) above (the "Additional QNEC Rate") of such Participant's Compensation. The total of the Base QNEC Rate and the Additional QNEC Rate may not exceed twice the Plan's representative contribution rate as defined in Treas. Reg. section 1.401(m)-2(a)(6)(v)(B). If any Qualified Non-Elective Contributions remain after the foregoing, the Company may then allocate Qualified Non-Elective Contributions to other Participants who are Nonhighly Compensated Employees eligible to share in such allocations with the next lowest Compensation in the amount of the Additional QNEC Rate of such Participant's Compensation until such contributions are fully allocated to the Base NHCEs.

(C)    If any Qualified Non-Elective Contributions remain after the foregoing, the Company may then allocate Qualified Non-Elective Contributions to the Participant who is a Nonhighly Compensated Employee eligible to share in such allocations with the lowest Compensation and who is not a Base NHCE in the amount equal to the sum of the Base QNEC Rate and the Additional QNEC Rate of such Participant's Compensation. If any Qualified Non-Elective Contributions remain after the foregoing, the Company may then allocate Qualified Non-Elective Contributions to other Participants who are Nonhighly Compensated Employees eligible to share in such allocations with the next lowest Compensation and who are not Base NHCEs in the amount equal to the sum of the Base QNEC Rate and the Additional QNEC Rate of such Participant's Compensation until such contributions are fully allocated to all eligible Nonhighly Compensated Employees who are not Base NHCEs.

(D)    If any Qualified Non-Elective Contributions remain after the foregoing, the Company may then allocate Qualified Non-Elective Contributions to Participants eligible to share in such allocations in the ratio that each Participant's Compensation bears to the Compensation of all eligible Participants.

(E)    Notwithstanding the foregoing, the Company may instead allocate the Qualified Non-Elective Contributions as a flat dollar amount pursuant to this Subsection (E). The Company may first allocate a flat dollar amount determined by the Company (the "Base QNEC Dollar Amount") to the Qualified Non-Elective Contribution Account of the Participant who is a Nonhighly Compensated Employee with the lowest Compensation and is eligible to share in such allocations. If any Qualified Non-Elective Contributions remain after the foregoing, the Company may then allocate Qualified Non-Elective Contributions to other Participants who are Nonhighly Compensated Employees eligible to share in such allocations with the next lowest Compensation in the amount of the Base QNEC Dollar Amount until such contributions are fully allocated to the eligible Nonhighly Compensated Employees. Such Qualified Non-Elective Contributions may be used to satisfy the provisions of Section 5.02 to the extent not considered disproportionate under Subsection 5.03(f) below.

(b)    Qualified Non-Elective Contributions: (1) shall be allocated to the Participant's Account as of a date within that year within the meaning of Treas. Reg. section 1.401(k)-2(a)(4)(i)(A); (2) shall be nonforfeitable when made unless attributable to withdrawal rights under an Eligible Automatic Contribution Arrangement or Qualified Automatic Contribution Arrangement; and (3) shall be distributed only under the rules applicable for Elective Deferrals in accordance with Treas. Reg. section 1.401(k)-1(d) (attainment of age 59-1/2, severance from employment, death, or Disability, but not hardship).

**CONFIDENTIAL**                                                         **WH_MDL_00139375**

(c)    In addition, the Company may, in its discretion, make Qualified Non-Elective Contributions or Qualified Matching Contributions for a Plan Year that shall be allocated in the manner prescribed by the Company to correct any operational or demographic failure pursuant to any correction program or policy established by the Internal Revenue Service or the Department of Labor.

Section 4.03    ROLLOVER CONTRIBUTIONS

(a)    The Plan Administrator may direct the Trustee to accept Rollover Contributions made in cash or other form acceptable to the Trustee. Rollover Contributions shall be allocated to the active Participant's Rollover Contribution Account. Rollover Contributions are only permitted for active Participants. The Plan may accept the following Rollover Contributions to the extent allowed by the Plan Administrator in its sole discretion:

(1)    A rollover from a plan qualified under Code section 401(a) or 403(a) if the contribution qualifies as a tax-free rollover as defined in Code section 402(c). If it is later determined that the amount received does not qualify as a tax-free rollover, the amount shall be refunded to the Eligible Employee.

(2)    A rollover from a "Conduit Individual Retirement Account", as determined in accordance with procedures established by the Plan Administrator and only if the contribution qualifies as a tax-free rollover as defined in Code section 402(c). If it is later determined that the amount received does not qualify as a tax-free rollover, the amount shall be refunded to the Eligible Employee.

(3)    A direct rollover of an eligible rollover distribution of after-tax employee contributions from a qualified plan described in Code section 401(a) or 403(a). The Plan shall separately account for amounts so transferred, including separately accounting for the portion of such contribution which is includible in gross income and the portion of such contribution which is not so includible.

(4)    Any rollover of an eligible rollover distribution from an annuity contract described in Code section 403(b). The Plan shall separately account for after-tax amounts so transferred, including separately accounting for the portion of such contribution which is includible in gross income and the portion of such contribution which is not so includible.

(5)    Any rollover of an eligible rollover distribution from an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state.

(6)    Any rollover contribution of the portion of a distribution from an individual retirement account or annuity described in Code sections 408(a) or 408(b) that is eligible to be rolled over and would otherwise be includible in gross income.

(7)    The Plan may accept a Rollover Contribution to a Roth Elective Deferral Account only if it is a direct rollover from another Roth elective deferral account under an applicable retirement plan described in Code section 402A(e)(1) and only to the extent the rollover is permitted under the rules of Code section 402(c).

(8)    Any additional rollover contribution as may be permitted by applicable law.

(b)    In-Plan Roth Rollovers. Effective January 1, 2014 and to the extent permitted by Code section 402A(c), Notice 2010-84 and any superseding guidance, a distribution from the Plan other than from a designated Roth Account that is an eligible rollover distribution (as defined in Code section 408A(e)) may be rolled over to a designated Roth Account maintained under this Plan for the benefit of the individual to whom the distribution is made. The Plan will maintain such records as are necessary for the proper reporting of In-Plan Roth Rollovers. Such rollovers are allowed only if the Plan otherwise allows for the distribution.

In-Plan Roth Rollovers are not permitted from partially vested Accounts.

Distributions from the In-Plan Roth Rollover Account are permitted at any time.

(c)    Plan Administrator Procedures. The Plan Administrator may establish uniform procedures that include, but are not limited to, prescribing limitations on the frequency and minimum amount of rollovers; provided, that no procedures involving minimum amounts shall prescribe a minimum withdrawal greater than $1,000.

## Section 4.04    TRANSFERS

The Trustee may be directed to accept a direct transfer of assets, made without the consent of the affected Employees, from the trustee of any other qualified plan described in Code section 401(a) to the extent permitted by the Code and the regulations and rulings thereunder.   In the event assets are transferred to the Plan pursuant to the foregoing sentence, the transferred assets shall be accounted for separately in the Transfer Account of the affected Employees to the extent necessary to preserve a more favorable vesting schedule or any other legally-protected benefits available to such Employees under the transferor plan.   The Plan Administrator shall establish a vesting schedule for the Transfer Account; provided that such schedule is not less favorable than the vesting schedule under the transferor plan.

## Section 4.05    MILITARY SERVICE

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to Qualified Military Service shall be provided in accordance with Code section 414(u).

## Section 4.06    TIMING OF CONTRIBUTIONS

Amounts contributed to the Plan with funds provided by Participants will be remitted to the Trustee as soon as practicable, but no later than the fifteenth (15th) business day of the month following the month in which such contributions were received or withheld from the Participant's Compensation unless a longer period is permitted under applicable law or regulation.

## Section 4.07    ARRANGEMENTS ADOPTED BY MORE THAN ONE EMPLOYER

In General. This Section applies to arrangements adopted by more than one unrelated entity. Unrelated entities may participate in the Plan as described under Section 4.07(a) as a multiple employer plan within the meaning of ERISA section 3(2) and Code section 413(c) ("Multiple Employer Plan") or 4.07(b) as an aggregated plan arrangement for multiple plans sharing a Master Plan Document and who

Copyright © 2002-2016

CONFIDENTIAL

are not a Multiple Employer Plan ("Aggregated Plan Arrangement"). The provisions of Section 4.07(c) shall apply to plans described under 4.07(a) or 4.07(b).

    (a)      **Multiple Employer Plans.** This Section shall apply if the Plan is a Multiple Employer Plan.

        (1)      **Method of Adoption.** The Plan Sponsor shall execute a master Plan Document and each Adopting Entity shall execute a joinder/participation agreement which contains only those Plan Document provisions, if any, which may be overridden by an entity other than the Plan Sponsor. The execution of the joinder/participation agreement by an Adopting Entity shall constitute the adoption of the same plan as the Plan Sponsor and not the adoption of a separate plan for the Adopting Entity. An Adopting Entity may amend its joinder/participation agreement at any time with the approval of the Plan Sponsor. However, an Adopting Entity may not modify the definition of Plan Administrator, Limitation Year or Plan Sponsor. The Plan Sponsor and all Adopting Entities acknowledge that the Plan is a Multiple Employer Plan subject to the rules of Code section 413(c) and the regulations thereunder which are herein incorporated by reference. Plan Sponsor and all Adopting Entities also acknowledge the specific annual reporting requirements, and different procedures for obtaining determination letters from the Internal Revenue Service regarding the qualified status of the Plan.

        (2)      **Definitions.** The following terms are modified as used in the Plan:

           (A)      "Adopting Entity" means an entity who executes a joinder/participation agreement.

           (B)      "Plan Document" means the Plan Document for the Plan Sponsor. For any Adopting Entity, Plan Document means the Plan Document as amended in that entity's joinder/participation agreement (as provided in Section 4.07(a)(1)).

           (C)      "Plan Sponsor" means the executor of the master Plan Document described in Section 4.07(a)(1).

        (3)      **Application of Code section 413(c).** The provisions of Code section 413(c) shall apply to the Plan and this Section shall be interpreted consistent with Code section 413(c) and any applicable guidance.

           (A)      **Eligibility Service.** Code section 410(a) shall be applied as if all Employees of each Employer who maintains the Plan were employed by a single Employer. An Employee who transfers employment between Adopting Entities and/or the Plan Sponsor shall not be considered to have a Termination of Employment.

           (B)      **Exclusive Benefit.** For purposes of Code section 401(a), in determining whether the Plan of an Employer is for the exclusive benefit of its Employees and their Beneficiaries all Participants shall be considered to be its Employees.

           (C)      **Vesting.** Code section 411 shall be applied as if all Employers who maintain the Plan constituted a single Employer, except that the application of any rules with respect to breaks in service shall be made under regulations prescribed by the Secretary of Labor.

**CONFIDENTIAL**        **WH_MDL_00139378**

(D)     Funding. To the extent the Plan is subject to Code section 412, the provisions of Code section 413(c)(4) and 413(c)(5) shall apply.

(4)     Other Rules.

(A)     Contributions and forfeitures arising hereunder must be restricted to Participants who are employed by the entity under which the forfeitures arose.

(B)     Each Employer will separately determine Actual Contribution and Actual Deferral Ratios, the minimum coverage requirements of Code section 410(b) and Code section 401(a)(4) testing as provided in Treas. Reg. section 1.413-2(a)(3)(ii).

(C)     Top-Heavy. Article 11 applies separately to each Employer as provided in Treas. Reg. section 1.416-1, Q&A G-2.

(D)     Maximum Annual Additions. Except as provided in Treas. Reg. section 1.415(f)-1(g)(2)(i) (regarding aggregation of multiemployer plans with plans other than multiemployer plans), for purposes of applying Section 5.05, Annual Additions attributable to a Participant from all of the Employers maintaining the Plan must be taken into account. Furthermore, in applying the limitations of Section 5.05 with respect to a Participant, the total Statutory Compensation received by the Participant from all of the Employers maintaining the Plan is taken into account under the Plan, unless Treas. Reg. section 1.415-1(e) and any superseding guidance specifies otherwise.

(E)     For purposes of determining a Participant's Required Beginning Date under Section 7.05, a Participant may be considered a More Than 5% Owner with one Employer and not a More Than 5% Owner with another Employer.

(b)     Aggregated Plan Arrangements. This Section shall apply if the Plan is an Aggregated Plan Arrangement.

(1)     Method of Adoption. Each Adopting Entity shall execute a joinder/participation agreement in which the Adopting Entity adopts the Master Plan Document. The joinder/participation agreement may also contain Plan Document provisions, if any, which may be overridden by an Adopting Entity. However, an Adopting Entity may not modify the definition of Plan Administrator. The execution of the joinder/participation agreement by an Adopting Entity shall constitute the adoption of a separate plan for the Adopting Entity and not the adoption of the same plan as any other Adopting Entity. An Adopting Entity may amend its joinder/participation agreement at any time with the approval of the Plan Administrator. The Adopting Entity may choose to allow the Plan Administrator to amend the Master Plan Document on its behalf.

(2)     Definitions for purposes of this Subsection 4.07(b):

(A)     "Adopting Entity" means an entity who adopts a joinder/participation agreement as its separate plan.

(B)     "Master Plan Document" means a Plan Document that contains a complete set of responses to all possible Plan provisions.

CONFIDENTIAL                                                                          **WH_MDL_00139379**

(3)    Application of Code section 413(c). The provisions of Code section 413(c) shall not apply to the Plan. Each Adopting Entity's plan shall constitute a separate plan.

(c)    Provisions that apply to Multiple Employer Plans and Aggregated Plan Arrangements.

(1)    No Modification to Pre-Approved Language. The execution of a joinder/participation agreement shall not be considered a modification to the IRS pre-approved language of the Plan.

(2)    Termination of Participation. If an Adopting Entity terminates its participation in the Plan (or is terminated by the Plan Administrator) the Plan Administrator may require the terminating entity to do any of the following:

(A)    Successor Plan. Set up a successor plan unless the entity sponsors another eligible plan to receive a transfer of assets.

(B)    Proof of Dissolution. In the event the Adopting Entity terminates its participation in the Plan by reason of ceasing business operations, the managing officials of such entity shall present the Plan Administrator articles of dissolution or other documentation as required by the Plan Administrator. Once acceptable documentation has been provided to the Plan Administrator, the Account balance of each affected Participant will be nonforfeitable and the affected Participant Accounts shall be distributed in a single lump sum payment unless otherwise required pursuant to Article 7.

(C)    Hold Assets for Twelve Months. The Plan Administrator may hold the assets of Participants that are not otherwise eligible for distribution for a period of twelve months. Thereafter, provided the Adopting Entity has not set-up a plan eligible to receive the assets, the Account balance of each affected Participant will be nonforfeitable and the affected Participant Accounts shall be distributed in a single lump sum payment unless otherwise required pursuant to Article 7.

(D)    The determination of whether or not there is a termination, within the meaning of Code section 411(d)(3), is made solely by reference to the rules of Code sections 411(d)(3) and 413(c)(3).

(3)    Fiduciary Act to Join the Plan. By executing a joinder/participation agreement, each Adopting Entity, acting as a fiduciary with respect to its current and future Employees, thereby ratifies and confirms the appointment of all parties to the Plan and all action taken to establish and maintain the Plan. The term parties to the Plan in the preceding sentence shall include, but not be limited to, the Plan Administrator, Trustee and Investment Fiduciary.

(4)    Each Adopting Entity shall be jointly and severally liable for Plan expenses.

(5)    Each Adopting Entity shall indemnify and hold harmless the Plan Administrator (and their delegates), any other Adopting Entities, any person serving as the Trustee and/or Investment Fiduciary from all claims, liabilities, losses, damages and expenses, including reasonable attorneys' fees and expenses for its failure to operate in accordance with the Plan or any intentional or negligent act or omission with respect to the Plan including but not limited to failure of oversight and or appointment. The Plan Administrator may in its discretion utilize any IRS or DOL correction program and any fees or costs associated with such program are the responsibility of the offending Adopting Entity.

**CONFIDENTIAL**                                                                **WH_MDL_00139380**

# ARTICLE 5
# LIMITATIONS ON CONTRIBUTIONS

## Section 5.01    ANNUAL LIMITATION ON ELECTIVE DEFERRALS

(a)    Amount.  Notwithstanding anything herein to the contrary, elective deferrals made under this Plan, or any other qualified plan maintained by the Employer may not exceed, during any taxable year, the dollar limitation contained in Code section 402(g) in effect at the beginning of such taxable year. For purposes of this Section 5.01, elective deferrals shall mean qualified cash or deferred arrangements described in Code section 401(k), any salary reduction simplified employee pension plan described in Code section 408(k)(6), any SIMPLE IRA plan described in Code section 408(p) and any plan described under Code section 501(c)(18), and any Employer contributions made on the behalf of a Participant for the purchase of an annuity contract under Code section 403(b) pursuant to a salary reduction agreement.

(b)    Refund of Excess Elective Deferrals.  In the event that Elective Deferrals under this Plan when added to a Participant's other elective deferrals under any other plan or arrangement (whether or not maintained by the Employer) exceed the limit described in the preceding Subsection, the Plan Administrator shall distribute, by April 15 of the following calendar year, the excess amount of Elective Deferrals plus income thereon.

(1)    The income/loss allocable to excess deferrals is equal to the sum of the allocable gain or loss for (i) the Plan Year and, (ii) effective as of such date as specified in a prior document, the "gap period" (i.e., the period after the close of the Plan Year and prior to the distribution). Income for the gap period shall be the allocable gain or loss during that period to the extent that the excess deferrals would otherwise be credited with gain or loss if the total Account were to be distributed. The Plan Administrator may use any reasonable method for computing the income allocable to excess deferrals, provided that the method does not violate Code section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's Accounts. The Plan will not fail to use a reasonable method for computing the income allocable to excess deferrals merely because the income allocable to excess deferrals is determined on a date that is no more than 7 days before the actual distribution. In addition, the Plan Administrator may allocate income in any manner permitted under Treas. Reg. section 1.401(k)-2(b)(2)(iv).

(2)    Effective for taxable years beginning after December 31, 2006 (excesses distributed after December 31, 2007), any refunds of Elective Deferrals that exceed the dollar limitation contained in Code section 402(g) shall be adjusted for income or loss up to the date of distribution. Effective for taxable years beginning after December 31, 2007, gap period income described in this Subsection 5.01(b)(2) shall not be distributed. The income/loss allocable to excess deferrals is equal to the sum of the allocable gain or loss for the Plan Year and, to the extent that such excess deferrals would otherwise be credited with gain or loss for the gap period (i.e., the period after the close of the Plan Year and prior to the distribution) if the total Account were to be distributed, the allocable gain or loss during that period. The Plan Administrator may use any reasonable method for computing the income allocable to excess deferrals, provided that the method does not violate Code section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's Accounts. The Plan will not fail to use a reasonable method for computing the income allocable to excess contributions merely because the income allocable to excess

contributions is determined on a date that is no more than 7 days before the actual distribution. In addition, the Plan Administrator may allocate income in any manner permitted under applicable Treasury Regulations.

A Participant's claim that the excess was caused by elective deferrals made under a plan or arrangement not maintained by the Employer shall be made in writing and shall be submitted to the Plan Administrator no later than the date specified by the Plan Administrator following the calendar year in which such deferrals occurred. For purposes of determining the necessary reduction, Elective Deferrals previously distributed or recharacterized pursuant to Section 5.04 or returned to the Participant pursuant to Section 5.04 shall be treated as distributed under this Section 5.01. The Plan Administrator shall determine the ordering rule for refunds of Excess Elective Deferrals. Such ordering rule may provide that the Participant may elect to have refunds made either from his Pre-tax Elective Deferrals or Roth Elective Deferrals or any combination thereof.

(c)  Forfeiture of Matching Contributions Related to Excess Elective Deferrals.  In the event a Participant receives a distribution of Excess Elective Deferrals pursuant to Subsection (b), the Participant shall forfeit any Matching Contributions allocated to the Participant by reason of the distributed Elective Deferrals to the extent that additional Matching Contributions are not made pursuant to Treas. Reg. section 1.401(a)(4)-11(g)(3)(vii)(B). Elective Deferrals not taken into account in determining Matching Contributions under Section 4.02 shall be treated as being reduced first. Amounts forfeited shall be used pursuant to Section 6.03(d).

(d)  Catch-up Contributions. All Participants who are eligible to make Elective Deferrals under this Plan shall be eligible to make Catch-up Contributions in accordance with, and subject to the limitations of, Code section 414(v). "Catch-up Contributions" are Elective Deferrals made to the Plan that are in excess of an otherwise applicable Plan limit and that are made by Participants who are aged 50 or over by the end of their taxable years. An otherwise applicable Plan limit is a limit in the Plan that applies to Elective Deferrals without regard to Catch-up Contributions, such as the limits on Annual Additions, the dollar limitation on Elective Deferrals under Code section 402(g) (not counting Catch-up Contributions) and the limit imposed by the actual deferral percentage test under Code section 401(k)(3). Catch-up Contributions for a Participant for a taxable year may not exceed the dollar limit on Catch-up Contributions under Code section 414(v)(2)(B)(i) for the taxable year as adjusted for cost-of-living increases. Catch-up Contributions are not subject to the limits on Annual Additions, are not counted in the actual deferral percentage test and are not counted in determining the minimum allocation under Code section 416 (but Catch-up Contributions made in prior years are counted in determining whether the Plan is Top-Heavy).

## Section 5.02    NONDISCRIMINATION

(a)  Elective Deferrals.  The Plan shall meet one of the following two tests with respect to Elective Deferrals for any Plan Year:

(1)  The Average Deferral Percentage for Participants who are Highly Compensated Employees for the current Plan Year shall not exceed the Average Deferral Percentage for such year for Participants who are Nonhighly Compensated Employees multiplied by 1.25; or

(2)  The Average Deferral Percentage for Participants who are Highly Compensated Employees for the current Plan Year shall not exceed the Average Deferral Percentage for such year for

Participants who are Nonhighly Compensated Employees multiplied by 2.0; provided that the Average Deferral Percentage for Participants who are Highly Compensated Employees does not exceed the Average Deferral Percentage for Participants who are Nonhighly Compensated Employees by more than two percentage points or such lesser amount as the Secretary of the Treasury shall prescribe.

For a Plan Year that the Plan is a safe harbor 401(k) plan (and actual deferral percentage testing is required pursuant to Section 5.03(g)), the Average Deferral Percentage test specified in Subsections (1) and (2), above, will be applied by comparing the current Plan Year's Average Deferral Percentage for Participants who are Highly Compensated Employees with the current Plan Year's Average Deferral Percentage for Participants who are Nonhighly Compensated Employees. The Employer must issue a supplemental notice if the Plan suspends safe harbor contributions and changes to a current year actual deferral percentage testing method in accordance with Treas. Reg. section 1.401(k)-3(d), (f) and (g).

The Company may elect prior year testing for purposes of this Subsection 5.02(a) for a Plan Year only if the Plan has used current year testing for purposes of this Subsection 5.02(a) for each of the preceding 5 Plan Years (or if lesser, the number of Plan Years the Plan has been in existence) or if, as a result of a merger or acquisition described in Code section 410(b)(6)(C)(i), the Employer maintains both a plan using prior year testing and a plan using current year testing and the change is made within the transition period described in Code section 410(b)(6)(C)(ii).

If testing will be performed using the prior year data, for the first Plan Year the Plan permits any Participant to make Elective Deferrals and this Plan is not a successor Plan, the prior Plan Year's Average Deferral Percentage for Participants who are Nonhighly Compensated Employees shall be 3%.

If, for the applicable year for determining the ratios of the Nonhighly Compensated Employees for a Plan Year, there are no eligible Nonhighly Compensated Employees (i.e., all of the Eligible Employees under the cash or deferred arrangement for the applicable year are Highly Compensated Employees), the tests described in this Subsection (a) are deemed to be satisfied for the Plan Year.

Section 5.03    SPECIAL RULES

(a)    Highly Compensated Employee in More Than One Plan. The Actual Deferral Ratio and Actual Contribution Ratio for any Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have Elective Deferrals, Matching Contributions and Voluntary Contributions (and Qualified Non-Elective Contributions if used to satisfy the tests described in Subsections 5.02(a) and (b)) allocated to his Accounts under two or more arrangements described in Code sections 401(k) and 401(m) that are maintained by the Employer, shall be determined as if such Elective Deferrals and contributions were made under a single arrangement. If a Highly Compensated Employee participates in two or more arrangements, whether or not they have different Plan Years, all such elective deferrals and contributions made during the Plan Year under all such arrangements shall be aggregated. Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Code section 401(k) and/or 401(m).

(b)    Contributions Used in Determining Ratios. All or part of the Qualified Non-Elective Contributions and Qualified Matching Contributions that are made with respect to any or all Participants

CONFIDENTIAL                                                                    **WH_MDL_00139383**

may be treated as Elective Deferrals and/or Matching Contributions for purposes of meeting the requirements of Subsections 5.02(a) and (b). In addition, the Plan Administrator may use any Employer and/or Employee contribution to meet the requirements of the actual deferral percentage and actual contribution percentage tests of Section 5.02 to the extent permitted by applicable Treasury Regulations. The Company may make additional contributions that are taken into account for the actual contribution percentage test under Subsection 5.02(b) that, in combination with the other contributions taken into account under this Subsection 5.03(b), will allow the Plan to satisfy the requirements of such Subsection. However, to the extent the Plan uses the prior year testing method, in order to be included in Actual Deferral Ratios and the Actual Contribution Ratios of Nonhighly Compensated Employees, Qualified Non-Elective Contributions and Qualified Matching Contributions must be made no later than the last day of the Plan Year being tested.

(c)     Contributions Only Used Once. Qualified Non-Elective Contributions and Qualified Matching Contributions shall not be taken into account under the actual deferral percentage test to the extent such contributions are taken into account for purposes of satisfying any other actual deferral percentage test, any other actual contribution percentage test, or the requirements of Treas. Reg. sections 1.401(k)-3, 1.401(m)-3 or 1.401(k)-4. In order to be taken into account for purposes of satisfying the actual deferral percentage test, Matching Contributions must be (1) allocated to the Employee's Account under the terms of the Plan as of a date within that year; (2) made on account of (or on the basis of) the Participant's Matched Employee Contributions for that year; and (3) actually paid to the Plan no later than the end of the 12-month period immediately following the year that contains that date. If the Plan switches from the current year testing method to the prior year testing method, Qualified Non-Elective Contributions and Qualified Matching Contributions that are taken into account under the current year testing method for a year may not be taken into account under the prior year testing method for the next year.

(d)     Aggregation of Plans.  In the event that this Plan satisfies the requirements of Code sections 401(k), 401(m), 401(a)(4), or 410(b) only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then Section 5.02 shall be applied as if all such plans were a single plan. The Plan may not be aggregated for testing purposes if the plans to be aggregated use differing testing methods (i.e., current year/prior year). For example, a plan (within the meaning of Treas. Reg. section 1.410(b)-7(b)) that applies the current year testing method may not be aggregated with another plan that applies the prior year testing method. Similarly, an Employer may not aggregate a plan (within the meaning of Treas. Reg. section 1.410(b)-7(b)): (1) using the actual deferral percentage safe harbor provisions of Code section 401(k)(12) or 401(k)(13) and another plan that is using the actual deferral percentage test of Code section 401(k)(3); or (2) using the actual contribution percentage safe harbor provisions of Code section 401(m)(11) or 401(m)(12) and another plan that is using the actual contribution percentage test of Code section 401(m)(2). The Company may also treat two or more separate collective bargaining units as a single collective bargaining unit, provided that the combinations of units are determined on a basis that is reasonable and reasonably consistent from year to year.

(e)     Matching Contributions in a Safe Harbor Plan. If the Plan satisfies the actual contribution percentage safe harbor requirements of Code section 401(m)(11) or 401(m)(12) for a Plan Year but nonetheless must satisfy the requirements of Section 5.02(b) because it provides for Voluntary Contributions, the Plan Administrator may elect to perform the tests under Section 5.02(b) with regard to Matching Contributions and Voluntary Contributions. If the Plan satisfies the actual deferral percentage safe harbor requirements of Code section 401(k)(12) or 401(k)(13) using Qualified Matching

Contributions but does not satisfy the actual contribution percentage safe harbor requirements of Code section 401(m)(11) or 401(m)(12), the Plan Administrator is permitted to perform the tests under Section 5.02(b) by excluding Matching Contributions with respect to all Participants that do not exceed 4% of each Employee's Compensation.

(f)    Disproportionate Contributions.

(1)    Qualified Non-Elective Contributions. All or part of a Nonhighly Compensated Employee's Qualified Non-Elective Contributions may be taken into account in meeting the actual deferral percentage test under Section 5.02(a) only to the extent that such contributions are not treated as disproportionate within the meaning of Treas. Reg. section 1.401(k)-2(a)(6). All or part of a Nonhighly Compensated Employee's Qualified Non-Elective Contributions may be taken into account in meeting the actual contribution percentage test under Section 5.02(b) only to the extent that such contributions are not treated as disproportionate within the meaning of Treas. Reg. section 1.401(m)-2(a)(6).

(2)    Matching Contributions. Qualified Matching Contributions may be taken into account in meeting the actual deferral percentage test under Section 5.02(a) only to the extent that such Qualified Matching Contributions are Matching Contributions that are not precluded from being taken into account under the actual contribution percentage test for the Plan Year under the rules of Treas. Reg. section 1.401(m)-2(a)(5)(ii). All or part of a Nonhighly Compensated Employee's Matching Contributions may be taken into account in meeting the actual contribution percentage test only to the extent that such contributions are not treated as disproportionate within the meaning of Treas. Reg. section 1.401(m)-2(a)(5)(ii).

(g)    Code Section 410(a) Excludable Employees. The Company may treat, pursuant to applicable Treasury Regulations, Participants who have not met the minimum age and service requirements of Code section 410(a)(1)(A) as comprising a separate plan for purposes of Section 5.02 pursuant to Subsection (1) or (2), provided the disaggregated Plan separately satisfies the requirements of Code section 410(b) and the Plan does not utilize Section 5.03(h).

(1)    Annual Entry Date. The Plan Administrator may treat Participants who have not met the minimum age and service requirements of Code section 410(a)(1)(A) before the first day of the seventh month of the Plan Year as comprising a separate plan. If the Plan provides safe harbor contributions, Participants not considered in the separate plan must be eligible for safe harbor contributions for the entire Plan Year.

(2)    Semi-Annual or More Frequent Entry Date. The Plan Administrator may treat Participants who have not met the minimum age and service requirements of Code section 410(a)(1)(A) using one of the entry dates specified in the Plan (not less frequently than semi-annual) before the last day of the Plan Year as comprising a separate plan. Contributions of Participants who have an entry date during the applicable Plan Year shall not be counted in the separate plan.

(h)    Excludable Nonhighly Compensated Employees. The Company may also, pursuant to applicable Treasury Regulations, exclude all Nonhighly Compensated Employees who have not met the minimum age and service requirements of Code section 410(a)(1)(A) (pursuant to Subsection (g)(1) or (2)) from consideration in determining whether the requirements of Section 5.02 are met, provided the disaggregated Plan consisting of such excludable Nonhighly Compensated Employees separately satisfies the requirements of Code section 410(b) and the Plan does not utilize Section 5.03(g).

Roadcraft Technologies LLC Roth 401(k) Plan                    32                    Copyright © 2002-2016

(i)    Correction Methods. The Plan may, pursuant to applicable Treasury Regulations, do any of the following to avoid or correct excess contributions and/or excess aggregate contributions: (1) provide for the use of any of the correction methods described herein; (2) limit contributions in a manner designed to prevent excess contributions from being made; or (3) use a combination of these methods.

(j)    Plans Using Differing Testing Methods. A Plan may use differing testing methods (i.e., current year/prior year) for the actual deferral percentage and actual contribution percentage tests of Section 5.02. For example, the Plan may use the prior year testing method for the actual deferral percentage test of Section 5.02(a) and the current year testing method for its actual contribution percentage test of Section 5.02(b) for a Plan Year. In addition to the prohibition on recharacterization specified in Section 5.04(a), a Plan that uses differing methods may not use Elective Deferrals in the actual contribution percentage test of Section 5.02(b) and may not use Qualified Matching Contributions in the actual deferral percentage test of Section 5.02(a).

(k)    Special Rules Regarding Prior Year Data. If the Plan uses the prior year testing method for either the actual deferral percentage or actual contribution percentage test in Section 5.02 and is involved in a Plan coverage change as defined in Treas. Reg. section 1.401(k)-2(c)(4) and/or 1.401(m)-2(c)(4), then any adjustments to the Nonhighly Compensated Employees' prior year percentages will be made in accordance with such regulations.

(l)    Plan Year Requirements for Safe Harbor Plans. To the extent the Plan is designed to satisfy Code section 401(k)(12) or 401(k)(13), the Plan Year must satisfy the requirements of Treas. Reg. section 1.401(k)-3(e)(1), taking into account the special provisions of 1.401(k)-3(e)(2) for the initial Plan Year. A short Plan Year may exist provided the requirements of Treas. Reg. section 1.401(k)-3(e)(3) are satisfied. The final Plan Year of a terminating plan may be less than twelve months provided the requirements of Treas. Reg. section 1.401(k)-3(e)(4) are satisfied. A safe harbor Plan Year may also be less than twelve months if the Plan is amended out of safe harbor status pursuant to Treas. Reg. section 1.401(k)-3(g).

(m)    Regulations. Sections 5.02 through 5.04 shall be interpreted in accordance with applicable IRS regulations.

## Section 5.04    CORRECTION OF DISCRIMINATORY ELECTIVE DEFERRALS

In the event the nondiscrimination tests of Section 5.02(a) are not satisfied with respect to Elective Deferrals for any Plan Year, excess Elective Deferrals for the Plan Year determined as set forth in Paragraph (1) shall be corrected as set forth in Paragraph (2):

(1)    Determination of Excess Deferrals.    The Elective Deferrals of the Highly Compensated Employee with the highest Actual Deferral Ratio shall be reduced until the nondiscrimination tests imposed by Section 5.02(a) would be satisfied, or until the Actual Deferral Ratio of the Highly Compensated Employee would equal the Actual Deferral Ratio of the Highly Compensated Employee with the next highest Actual Deferral Ratio.    This process shall be repeated until the nondiscrimination tests imposed by Section 5.02(a) are satisfied. The amount of excess deferrals is equal to the sum of these hypothetical reductions multiplied, in each case, by the respective Highly Compensated Employee's Section 414(s) Compensation (including deferrals to the extent that they are taken into account in determining testing ratios).

CONFIDENTIAL    WH_MDL_00139386

(2)      Distribution of Excess Deferrals.  Excess deferrals shall be allocated to the Highly Compensated Employees with the largest dollar amounts of contributions taken into account in calculating the Average Deferral Percentage test for the year in which the excess arose, beginning with the Highly Compensated Employee with the largest dollar amount of such contributions and continuing in descending order until all the excess deferrals have been allocated. To the extent a Highly Compensated Employee has not reached his or her Catch-up Contribution limit as specified in Section 5.01(d), excess deferrals allocated to such Highly Compensated Employee are deemed Catch-up Contributions and will not be treated as excess contributions. The amount of excess deferrals is reduced by any amounts previously distributed from the Plan to correct excess deferrals under Section 5.01 for the Employee's taxable year ending with or within the Plan Year. The distribution of the amount allocated to each Highly Compensated Employee, as adjusted for income allocable to the excess deferrals, shall occur within twelve (12) months of the close of the Plan Year for which the Elective Deferrals were made. The income/loss allocable to excess deferrals is equal to the sum of the allocable gain or loss for the Plan Year. Effective for taxable years beginning after December 31, 2007, the Plan shall not allocate gains and losses on distributions of excess contributions for the period after the end of the Plan Year in which such excess contributions arose. The Plan Administrator may use any reasonable method for computing the income allocable to excess deferrals, provided that the method does not violate Code section 401(a)(4), is used consistently for all Participants and for all corrective distributions under the Plan for the Plan Year, and is used by the Plan for allocating income to Participant's Accounts. The Plan will not fail to use a reasonable method for computing the income allocable to excess deferrals merely because the income allocable to excess deferrals is determined on a date that is no more than 7 days before the actual distribution. In addition, the Plan Administrator may allocate income in any manner permitted under Treas. Reg. section 1.401(k)-2(b)(2)(iv). Elective Deferrals not taken into account in determining Matching Contributions under Section 4.02 shall be distributed first. In the event a Participant receives a distribution of Elective Deferrals that were taken into account in determining Matching Contributions, the Participant shall forfeit such Matching Contributions that were allocated to the Participant by reason of the distributed Elective Deferrals to the extent that additional Matching Contributions are not made pursuant to Treas. Reg. section 1.401(a)(4)-11(g)(3)(vii)(B). Amounts forfeited shall be used pursuant to Section 6.03(d). If the Plan does not correct excess deferrals within 2-1/2 months (6 months in the case of certain eligible automatic contribution arrangements), or such other time frame as may be prescribed by the Secretary of the Treasury, after the close of the Plan Year for which the excess deferrals are made, the Employer will be liable for a 10% excise tax on the amount of the excess deferrals to the extent provided in Code section 4979.

(3)      Refunds. The Plan Administrator shall determine the ordering rule for refunds of Elective Deferrals made as a result of any testing failure; provided that such ordering rule is nondiscriminatory. Such ordering rule may provide that the Participant may elect to have refunds made either from his Pre-tax Elective Deferrals or Roth Elective Deferrals or any combination thereof.

Section 5.05   MAXIMUM AMOUNT OF ANNUAL ADDITIONS

(a)      General Rule.

(1)      One Plan. If the Participant does not participate in, and has never participated in another qualified plan maintained by the Employer or a welfare benefit fund, as defined in Code section 419(e) maintained by the Employer, or an individual medical account, as defined in Code section 415(l)(2), maintained by the Employer, or a simplified employee pension plan, as defined in Code section

CONFIDENTIAL                                                                                    **WH_MDL_00139387**

408(k), maintained by the Employer, which provides an Annual Addition, the amount of Annual Additions which may be credited to the Participant's Account for any Limitation Year will not exceed the lesser of the maximum permissible amount specified in Section 5.05(b) or any other limitation contained in this Plan. If the Employer contribution that would otherwise be contributed or allocated to the Participant's Account would cause the Annual Additions for the Limitation Year to exceed such maximum permissible amount, the amount contributed or allocated will be reduced so that the Annual Additions for the Limitation Year will equal the maximum permissible amount.

(2)    Multiple Plans. This Subsection 5.05(a)(2) applies if, in addition to this Plan, the Participant is covered under another qualified defined contribution plan maintained by the Employer, a welfare benefit fund maintained by the Employer, an individual medical account maintained by the Employer, or a simplified employee pension plan maintained by the Employer, that provides an Annual Addition during any Limitation Year. The Annual Additions which may be credited to a Participant's Account under this Plan for any such Limitation Year will not exceed the maximum permissible amount specified in Section 5.05(b) reduced by the Annual Additions credited to a Participant's account under the other qualified defined contribution plans, welfare benefit funds, individual medical accounts, and simplified employee pension plans for the same Limitation Year.

(b)    Maximum Permissible Amount.  For Limitation Years beginning on or after January 1, 2002, the maximum permissible amount is the lesser of:

(1)    $40,000, as adjusted for increases in the cost-of-living under Code section 415(d); or

(2)    100% of the Participant's Statutory Compensation for the Limitation Year.  The Compensation limit referred to in this Subsection (b)(2) shall not apply to any contribution for medical benefits after separation from service (within the meaning of Code sections 401(h) or 419A(f)(2)) which is otherwise treated as an Annual Addition. Notwithstanding the preceding sentence, Statutory Compensation for purposes of Section 5.05 for a Participant in a defined contribution plan who is permanently and totally disabled (as defined in Code section 22(e)(3)) is the Compensation such Participant would have received for the Limitation Year if the Participant had been paid at the rate of Compensation paid immediately before becoming permanently and totally disabled.

Prior to determining the Participant's actual Statutory Compensation for the Limitation Year, the Employer may determine the maximum permissible amount for a Participant on the basis of a reasonable estimation of the Participant's Statutory Compensation for the Limitation Year, uniformly determined for all Participants similarly situated. As soon as is administratively feasible after the end of the Limitation Year, the maximum permissible amount for the Limitation Year will be determined on the basis of the Participant's actual Statutory Compensation for the Limitation Year.

(c)    Correction of Excess.  If there is an allocation in excess of the Maximum Permissible Amount, the Plan Administrator shall correct such excess pursuant to the procedures outlined under EPCRS as described in Rev. Proc. 2013-12 and any superseding guidance.

CONFIDENTIAL                                                                                **WH_MDL_00139388**

# ARTICLE 6
# VESTING

Section 6.01   PARTICIPANT CONTRIBUTIONS

     A Participant shall have a fully (100%) vested and nonforfeitable interest in his Elective Deferral Account, Rollover Contribution Account and Qualified Non-Elective Contribution Account.

CONFIDENTIAL    WH_MDL_00139389

# ARTICLE 7
# DISTRIBUTIONS

## Section 7.01    COMMENCEMENT OF DISTRIBUTIONS

(a)    Normal Retirement.  A Participant, upon attainment of his Normal Retirement Date, shall be entitled to retire and to receive his Account as his benefit hereunder pursuant to Section 7.02.

(b)    Late Retirement.  If a Participant continues in the employ of the Company beyond his Normal Retirement Date, his participation under the Plan shall continue, and his benefits under the Plan shall commence following his actual Termination of Employment pursuant to Section 7.02. Notwithstanding the preceding sentence, a Participant may, at any time after reaching his Normal Retirement Date but before actual retirement, elect to have the Plan Administrator commence the distribution of his benefit pursuant to Section 7.02 from his All accounts by providing the Plan Administrator with a written election to that effect.  Any such written election shall state the date upon which distribution of benefits is to commence and shall be effective upon delivery to the Plan Administrator. If Normal Retirement Date is less than age 59-1/2, Elective Deferrals, Qualified Non-Elective Contributions, Qualified Matching Contributions and the portion of any Account that has been used to satisfy the safe harbor requirements of Code sections 401(k)(12) or 401(k)(13) and/or 401(m)(11) or 401(m)(12) shall not be eligible for withdrawal until the Participant attains age 59-1/2.

(c)    Disability Retirement.  If a Participant becomes Disabled, he shall become entitled to receive his vested Account pursuant to Section 7.02 following the date he is determined to be Disabled.

(d)    Death.  If a Participant dies, either before or after his Termination of Employment, his Beneficiary designated pursuant to Section 7.04 shall become entitled to receive the Participant's vested Account pursuant to Section 7.02.

(e)    Termination of Employment.  A Participant shall become entitled to receive his vested Account pursuant to Section 7.02 following the date he has a Termination of Employment.  Effective for distributions and severances from employment occurring after December 31, 2001, a Participant shall not be entitled to a distribution from his Elective Deferral Account, Qualified Non-Elective Contribution Account or Qualified Matching Contributions (and earnings attributable to these contributions) unless he has had a "severance from employment" within the meaning of Code section 401(k)(2)(B)(i)(I).

## Section 7.02    TIMING AND FORM OF DISTRIBUTIONS

(a)    Distribution for Reasons Other Than Death.  If a Participant's Account balance becomes distributable pursuant to Section 7.01 for any reason other than death, payment of his vested Account shall commence as soon as administratively feasible after the end of the Plan Year after all contributions have been allocated relating to the Plan Year in which the Participant's Account balance becomes distributable. Such Participant's benefit shall be payable, in cash, in a lump sum payment. No distribution shall be made if the Participant is rehired by the Company before payments commence.

(b)    Distribution on Account of Death.

CONFIDENTIAL                                                                        **WH_MDL_00139390**

(1)    Before Distribution Has Begun.  If the Participant dies before distribution of his Account begins, distribution of the Participant's entire Account shall be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death unless an election is made by his Beneficiary to receive distributions in accordance with (A) and (B) below:

(A)    Distributions may be made over the life or over a period certain not greater than the life expectancy of the Beneficiary commencing on or before December 31 of the calendar year immediately following the calendar year in which the Participant died;

(B)    If the Beneficiary is the Participant's surviving spouse, the date distributions are required to begin in accordance with Subparagraph (A) above shall not be earlier than the later of (i) December 31 of the calendar year immediately following the calendar year in which the Participant died and (ii) December 31 of the calendar year in which the Participant would have attained age 70-1/2.

If the Participant has not made an election as to form of payment by the time of his death, the Participant's Beneficiary must elect the method of distribution no later than the earlier of (1) December 31 of the calendar year in which distributions would be required to begin under this Section, or (2) December 31 of the calendar year which contains the fifth anniversary of the date of death of the Participant.  If the Participant has no designated beneficiary pursuant to applicable Treasury Regulations, or if the designated Beneficiary does not elect a method of distribution, distribution of the Participant's entire interest must be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

If the surviving spouse dies after the Participant, the provisions of this Subsection (b)(1), with the exception of Subparagraph (B) therein, shall be applied as if the surviving spouse were the Participant.

(2)    After Distribution Has Begun.  If the Participant dies after distribution of his Account has begun, the remaining portion of such Account will continue to be distributed at least as rapidly as the method of distribution being used prior to the Participant's death.  If the Participant's Account was not being distributed in the form of an annuity at the time of his death, the Beneficiary may elect to receive the Participant's remaining vested Account balance in a lump sum distribution.

The Beneficiary shall provide the Plan Administrator with the death notice or other sufficient documentation before any payments are made pursuant to this Subsection.

(c)    Valuation Date. The distributable amount of a Participant's Account is the vested portion of his Account as of the Valuation Date coincident with or next preceding the date distribution is made to the Participant or Beneficiary as reduced by any subsequent distributions, withdrawals or loans.

(d)    Ordering Rule. The Plan Administrator shall determine the ordering rule for distributions; provided that such ordering rule is nondiscriminatory. Such ordering rule may provide that the Participant or Beneficiary may elect to have payments made first or last from his Roth Elective Deferral Account or Voluntary Contribution Account (as applicable) or in any combination of such Accounts and any other Account.

CONFIDENTIAL                                                                    WH_MDL_00139391

(e)    Restriction on Deferral of Payment. Unless otherwise elected, benefit payments under the Plan will begin to a Participant not later than the 60th day after the latest of the close of the Plan Year in which:

    (1)    the Participant attains his Normal Retirement Date;

    (2)    occurs the 10th anniversary of the year in which his participation commenced; or

    (3)    the Participant has a Termination of Employment.

Notwithstanding the foregoing, the failure of a Participant and spouse to consent to a distribution while a benefit is immediately distributable shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this section.

(f)    Minimum Distribution Requirements. Distributions shall be made in a method that is in conformance with the requirements set forth in Section 7.05. Section 7.05 shall not be deemed to create a type of benefit (e.g., installment payments, lump sum within five years or immediate lump sum payment) to any class of Participants and Beneficiaries that is not otherwise permitted by the Plan.

Section 7.03    CASH-OUT OF SMALL BALANCES

(a)    No Cash Out.  All distributions shall be subject to Section 7.03(b).

(b)    If the Account balance is immediately distributable, the Participant must consent to any distribution of such Account balance.  Notwithstanding the foregoing, payments shall commence as of the Participant's Required Beginning Date in the form of a lump sum or installment payments. The Participant's consent shall be obtained in writing within the 180-day period ending on the Annuity Starting Date.  The Plan Administrator shall notify the Participant of the right to defer any distribution until the date such payments must begin pursuant to the foregoing.  Such notification shall include a general description of the material features, and an explanation of the relative values of, the optional forms of benefit available under the Plan, and shall be provided no less than 30 and no more than 180 days prior to the Annuity Starting Date. However, distribution may commence less than 30 days after the notice described in the preceding sentence is given, provided the Plan Administrator clearly informs the Participant that he has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and the Participant, after receiving the notice, affirmatively elects a distribution.  In the event a Participant's vested Account balance becomes distributable without consent pursuant to this Subsection (b), and the Participant fails to elect a form of distribution, the vested Account balance of such Participant shall be paid in a single lump sum.

(c)    For purposes of this Section 7.03, the Participant's vested Account balance shall not include amounts attributable to accumulated deductible Employee contributions within the meaning of Code section 72(o)(5)(B).

(d)    Required Distributions and Plan Termination.  Consent of the Participant or his spouse shall not be required to the extent that a distribution is required to satisfy Code sections 401(a)(9), 401(k), 401(m), 402(g) or 415.  In addition, upon termination of this Plan the Participant's Account balance shall be distributed to the Participant in a lump sum distribution.  However, if the Employer maintains another

CONFIDENTIAL                WH_MDL_00139392

defined contribution plan (other than an employee stock ownership plan as defined in Code section 4975(e)(7)), then the Participant's Account balance will be transferred, without the Participant's consent, to the other plan if the Participant does not consent to an immediate distribution.

(e)    Treatment of Rollovers. Rollovers Disregarded in Determining Value of Account Balance for Involuntary Distributions. For purposes of this Section 7.03, the Participant's vested Account balance shall not include that portion of the Account balance that is attributable to Rollover Contributions (and earnings allocable thereto) within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16).

Section 7.04    BENEFICIARY

(a)    Beneficiary Designation Right.  Except as provided in Section 7.04(b), each Participant, and if the Participant has died, the Beneficiary of such Participant, shall have the right to designate one or more primary and one or more secondary Beneficiaries to receive any benefit becoming payable upon such individual's death.  The spouse of a married Participant shall be the sole primary Beneficiary of such Participant unless the requirements of Subsection (b) are met.  All Beneficiary designations shall be in writing in a form satisfactory to the Plan Administrator and shall only be effective when filed with the Plan Administrator during the Participant's lifetime (or if the Participant has died, during the lifetime of the Beneficiary of such Participant who desires to designate a further Beneficiary).  Except as provided in Section 7.04(b), each Participant (or Beneficiary) shall be entitled to change his Beneficiaries at any time and from time to time by filing written notice of such change with the Plan Administrator.

(b)    Form and Content of Spouse's Consent.  The Participant may designate a Beneficiary other than his spouse pursuant to this Subsection if: (1) the spouse has waived the spouse's right to be the Participant's Beneficiary in accordance with this Subsection; (2) the Participant has no spouse; or (3) the Plan Administrator determines that the spouse cannot be located or such other circumstances exist under which spousal consent is not required, as prescribed by Treasury Regulations.  If required, such consent: (1) shall be in writing; (2) shall relate only to the specific alternate Beneficiary or Beneficiaries designated (or permits Beneficiary designations by the Participant without the spouse's further consent); (3) shall acknowledge the effect of the consent; and (iv) shall be witnessed by a Plan representative or notary public.  Any consent by a spouse, or establishment that the consent of a spouse may not be obtained, shall not be effective with respect to any other spouse.  Any spousal consent that permits subsequent changes by the Participant to the Beneficiary designation without the requirement of further spousal consent shall acknowledge that the spouse has the right to limit such consent to a specific Beneficiary, and that the spouse voluntarily elects to relinquish such right.

(c)    No Designated Beneficiary.  In the event that the Participant fails to designate a Beneficiary, or in the event that the Participant is predeceased by all designated primary and secondary Beneficiaries, the death benefit shall be payable to the Participant's spouse or, if there is no spouse, to the Participant's children in equal shares or, if there are no children to the Participant's estate.

(d)    Revocation of Beneficiary Designation.  A beneficiary designation to a spouse shall never be automatically revoked.

CONFIDENTIAL                                                                    WH_MDL_00139393

Section 7.05    <u>MINIMUM DISTRIBUTION REQUIREMENTS</u>

 (a) General Rules.

  (1) Effective Date. The requirements of this Section shall apply to any distribution of a Participant's interest and will take precedence over any inconsistent provisions of this Plan.

  (2) Construction. All distributions required under this Section shall be determined and made in accordance with the regulations under Code section 401(a)(9) and the minimum distribution incidental benefit requirement of Code section 401(a)(9)(G). Nothing contained in this Section shall be deemed to create a type of benefit (e.g., installment payments, lump sum within five years or immediate lump sum payment) to any class of Participants and/or Beneficiaries that is not otherwise permitted by the Plan.

  (3) Limits on Distribution Periods. As of the first distribution calendar year, distributions to a Participant, if not made in a single sum, may only be made over one of the following periods:

   (i) the life of the Participant;

   (ii) the joint lives of the Participant and a designated Beneficiary;

   (iii) a period certain not extending beyond the life expectancy of the Participant; or

   (iv) a period certain not extending beyond the joint life and last survivor expectancy of the Participant and a designated Beneficiary.

 (b) Time and Manner of Distribution.

  (1) Required Beginning Date. Unless an earlier date is specified in Section 7.02(b), the Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

  (2) Death of Participant Before Distributions Begin. If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

   (i) If the Participant's surviving spouse is the Participant's sole designated Beneficiary, then unless an earlier date is specified in Section 7.02(b), distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70-1/2, if later.

   (ii) If the Participant's surviving spouse is not the Participant's sole designated Beneficiary, then, unless otherwise specified in Section 7.02(b), distributions to the designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

CONFIDENTIAL     **WH_MDL_00139394**

(iii)    If there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death unless an earlier date is specified in Section 7.02(b).

(iv)    If the Participant's surviving spouse is the Participant's sole designated Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse are required to begin, this Subsection (b)(2), other than Subsection (b)(2)(i), will apply as if the surviving spouse were the Participant except as otherwise provided in Section 7.02(b).

For purposes of this Subsection (b)(2) and Subsection (d), unless Subsection (b)(2)(iv) applies, distributions are considered to begin on the Participant's Required Beginning Date. If Subsection (b)(2)(iv) applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under Subsection (b)(2)(i). If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under Subsection (b)(2)(i)), the date distributions are considered to begin is the date distributions actually commence.

(3)    Forms of Distribution. Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first distribution calendar year distributions will be made in accordance with Subsections (c) and (d) to the extent otherwise permitted by the Plan. If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code 401(a)(9) and the regulations.

(c)    Required Minimum Distributions During Participant's Lifetime.

(1)    Amount of Required Minimum Distribution For Each Distribution Calendar Year. During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

(i)    the quotient obtained by dividing the Participant's Account balance by the distribution period in the Uniform Lifetime Table set forth in Treas. Reg. section 1.401(a)(9)-9, Q&A-2 using the Participant's age as of the Participant's birthday in the distribution calendar year; or

(ii)    if the Participant's sole designated Beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's Account balance by the number in the Joint and Last Survivor Table set forth in Treas. Reg. section 1.401(a)(9)-9 , Q&A-3 using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

(2)    Lifetime Required Minimum Distributions Continue Through Year of Participant's Death. Required minimum distributions will be determined under this Subsection (c) beginning with the first distribution calendar year and continuing up to, and including, the distribution calendar year that includes the Participant's date of death.

**CONFIDENTIAL**                                                **WH_MDL_00139395**

(d)    Required Minimum Distributions After Participant's Death.

   (1)    Death On or After Date Distributions Begin.

      (i)    Participant Survived by Designated Beneficiary. If the Participant dies on or after the date distributions begin and there is a designated Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated Beneficiary, determined as follows:

         (A)    The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

         (B)    If the Participant's surviving spouse is the Participant's sole designated Beneficiary, the remaining life expectancy of the surviving spouse is calculated for each distribution calendar year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year. For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

         (C)    If the Participant's surviving spouse is not the Participant's sole designated Beneficiary, the designated Beneficiary's remaining life expectancy is calculated using the age of the Beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

      (ii)    No Designated Beneficiary. If the Participant dies on or after the date distributions begin and there is no designated Beneficiary as of the September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account balance by the Participant's remaining life expectancy calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

   (2)    Death Before Date Distributions Begin.

      (i)    Participant Survived by Designated Beneficiary. If the Participant dies before the date distributions begin and there is a designated Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account balance by the remaining life expectancy of the Participant's designated Beneficiary, determined as provided in Subsection (d)(1).

      (ii)    No Designated Beneficiary. If the Participant dies before the date distributions begin and there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

CONFIDENTIAL                                                                **WH_MDL_00139396**

(iii)    Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin. If the Participant dies before the date distributions begin, the Participant's surviving spouse is the Participant's sole designated Beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under Subsection (b)(2)(i), this Subsection (d)(2) will apply as if the surviving spouse were the Participant.

(e)    Definitions.

(1)    Designated Beneficiary. The individual who is designated by the Participant (or the Participant's surviving spouse) as the Beneficiary of the Participant's interest under the Plan and who is the designated Beneficiary under Code section 401(a)(9) and Treas. Reg. section 1.401(a)(9)-4.

(2)    Distribution Calendar Year. A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Subsection (b)(2). The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's Required Beginning Date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that distribution calendar year.

(3)    Life expectancy. Life expectancy is computed by use of the Single Life Table in Treas. Reg. section 1.401(a)(9)-9, Q&A-1.

(4)    Participant's Account Balance. The Account balance as of the last Valuation Date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the Account as of dates in the valuation calendar year after the Valuation Date and decreased by distributions made in the valuation calendar year after the Valuation Date. The Account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

(f)    TEFRA Section 242(b)(2) Elections.

(1)    Notwithstanding any provision in the Plan to the contrary, distribution on behalf of any Employee, including a More Than 5% Owner, who has made a designation under section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (a "section 242(b)(2) election") may be made in accordance with all of the following requirements (regardless of when such distribution commences):

(i)    The distribution by the Plan is one which would not have disqualified such plan under Code section 401(a)(9) as in effect prior to amendment by the Deficit Reduction Act of 1984.

(ii)    The distribution is in accordance with a method of distribution designated by the Employee whose interest in the Plan is being distributed or, if the Employee is deceased, by a Beneficiary of such Employee.

(iii)    Such designation was in writing, was signed by the Employee or the Beneficiary, and was made before January 1, 1984.

(iv)    The Employee had accrued a benefit under the Plan as of December 31, 1983.

(v)    The method of distribution designated by the Employee or the Beneficiary specifies the time at which distribution will commence, the period over which distributions will be made, and in the case of any distribution upon the Employee's death, the Beneficiaries of the Employee listed in order of priority.

(2)    A distribution upon death will not be covered by this transitional rule unless the information in the designation contains the required information described above with respect to the distributions to be made upon the death of the Employee.

(3)    For any distribution which commences before January 1, 1984, but continues after December 31, 1983, the Employee, or the Beneficiary, to whom such distribution is being made, will be presumed to have designated the method of distribution under which the distribution is being made if the method of distribution was specified in writing and the distribution satisfies the requirements in Subsections (f)(1)(i) and (v).

(4)    If a designation is revoked, any subsequent distribution must satisfy the requirements of Code section 401(a)(9) and the regulations thereunder. If a designation is revoked subsequent to the date distributions are required to begin, the Plan must distribute by the end of the calendar year following the calendar year in which the revocation occurs the total amount not yet distributed which would have been required to have been distributed to satisfy Code section 401(a)(9) and the regulations thereunder, but for the section 242(b)(2) election. For calendar years beginning after December 31, 1988, such distributions must meet the minimum distribution incidental benefit requirements. Any changes in the designation will be considered to be a revocation of the designation. However, the mere substitution or addition of another Beneficiary (one not named in the designation) under the designation will not be considered to be a revocation of the designation, so long as such substitution or addition does not alter the period over which distributions are to be made under the designation, directly or indirectly (for example, by altering the relevant measuring life).

(5)    In the case in which an amount is transferred or rolled over from one plan to another plan, the rules in Treas. Reg. section 1.401(a)(9)-8, Q&A-14 and Q&A-15, shall apply.

(g)    Application of Five Year Rule.

(1)    To the extent permitted in Section 7.02(b), if the Participant dies before distributions are required to begin and there is a designated Beneficiary, distributions to the designated Beneficiary are not required to begin by the date specified in Subsection (b)(2), but the Participant's entire interest may be distributed to the designated Beneficiary by December 31 of the calendar year containing the fifth anniversary of the Participant's death. If the Participant's surviving spouse is the Participant's sole designated Beneficiary and the surviving spouse dies after the Participant but before distributions to either the Participant or the surviving spouse begin, this election will apply as if the surviving spouse were the Participant.

(2)    To the extent permitted in Section 7.02(b), Participants or Beneficiaries may elect on an individual basis whether the 5-year rule or the life expectancy rule in Subsections (b)(2), (d)(2) and (g)(1) applies to distributions after the death of a Participant who has a designated Beneficiary. The election must be made no later than the earlier of September 30 of the calendar year in which distributions would be required to begin under Subsections (b)(2), or by September 30 of the calendar year which contains the fifth anniversary of the Participant's (or, if applicable, surviving spouse's) death. If neither the Participant nor Beneficiary makes an election under this paragraph, distributions will be made in accordance with Subsections (b)(2), (d)(2) and (g)(1).

## Section 7.06    DIRECT ROLLOVERS

(a)    In General.    This Section applies to distributions made after December 31, 2001. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this part, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution that is equal to at least $500 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner) paid directly to an eligible retirement plan specified by the distributee in a direct rollover. If an eligible rollover distribution is less than $500 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner), a distributee may not make the election described in the preceding sentence to roll over a portion of the eligible rollover distribution. This Paragraph shall be subject to Code sections 401(a)(31) and 402(f); Treas. Reg. sections 1.401(a)(31)-1, 1.402(c)-2 and 1.401(k)-1(f); and IRS Notices 2005-5, 2008-30, 2009-69, and 2009-75.

Effective January 1, 2007, a non-spouse Beneficiary who is a designated Beneficiary within the meaning of Code section 401(a)(9)(E) may, after the death of the Participant, make a direct rollover of a distribution to an IRA established on behalf of the designated Beneficiary; provided the distributed amount satisfies all the requirements to be an eligible rollover distribution other than the requirement that the distribution be made to the Participant or the Participant's spouse. Such direct rollovers shall be subject to the terms and conditions of IRS Notice 2007-7 and superseding guidance, including but not limited to the provision in Q&A-17 regarding required minimum distributions. Effective January 1, 2010, the distributions described in this Paragraph shall be subject to Code sections 401(a)(31), 402(f) and 3405(c).

(b)    Definitions.

(1)    Eligible Rollover Distribution. An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated Beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Code section 401(a)(9); any hardship distribution; the portion of any other distribution(s) that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and any other distribution(s) that is reasonably expected to total less than $200 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner) during a year. For purposes of the $200 rule in the preceding sentence, a distribution from a Roth Elective Deferral Account and a distribution from other Accounts under the Plan are treated as made under separate plans.

A portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax Employee contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code section 408(a) or (b), an annuity contract described in Code section 403(b), or to a qualified defined contribution plan described in Code section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(2)     Eligible Retirement Plan. An eligible retirement plan is an eligible plan under Code section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan, an individual retirement account described in Code section 408(a), individual retirement annuity described in Code section 408(b), an annuity plan described in Code section 403(a), an annuity contract described in Code section 403(b), or a qualified plan described in Code section 401(a), that accepts the distributee's eligible rollover distribution. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the Alternate Payee under a Qualified Domestic Relations Order, as defined in Code section 414(p).

If any portion of an eligible rollover distribution is attributable to payments or distributions from a Roth Elective Deferral Account, an eligible retirement plan shall only include another Roth elective deferral account under an applicable retirement plan described in Code section 402A(e)(1) or to a Roth IRA described in Code section 408A and only to the extent the rollover is permitted under the rules of Code section 402(c). The Plan will not provide for a direct rollover (including an automatic rollover) for distributions from a Participant's Roth Elective Deferral Account if the amount of the distributions that are eligible rollover distributions are reasonably expected to total less than $200 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner) during a year. In addition, if elected by the Plan Administrator in a nondiscriminatory manner, any distribution from a Participant's Roth Elective Deferral Account is not taken into account in determining whether distributions from a Participant's other Accounts are reasonably expected to total less than $200 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner) during a year. The provisions of this Section that allow a Participant to elect a direct rollover of only a portion of an eligible rollover distribution but only if the amount rolled over is at least $500 are applied by treating any amount distributed from the Participant's Roth Elective Deferral Account as a separate distribution from any amount distributed from the Participant's other Accounts in the Plan, even if the amounts are distributed at the same time.

(3)     Distributee. A distributee includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the Alternate Payee under a Qualified Domestic Relations Order, as defined in Code section 414(p), are distributees with regard to the interest of the spouse or former spouse.

(4)     Direct Rollover.  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

(c)     Automatic Rollovers. In the event of a mandatory distribution greater than $1,000 (or such lesser amount as determined by the Plan Administrator in a nondiscriminatory manner) in accordance

CONFIDENTIAL                                                    WH_MDL_00139400

with the provisions of Section 7.03(a), if the Participant does not elect to have such distribution paid directly to an eligible retirement plan specified by the Participant in a direct rollover or to receive the distribution directly in accordance with Section 7.02, then the Plan Administrator will pay the distribution in a direct rollover to an individual retirement plan designated by the Plan Administrator. For purposes of determining whether a mandatory distribution is greater than $1,000, the portion of the Participant's distribution attributable to any Rollover Contribution is included. Eligible rollover distributions from a Participant's Roth Elective Deferral Account are separately taken into account in determining whether the total amount of the Participant's Account balances under the Plan exceeds $1,000 for purposes of mandatory distributions from the Plan.

## Section 7.07    MINOR OR LEGALLY INCOMPETENT PAYEE

If a distribution is to be made to an individual who is either a minor or legally incompetent, the Plan Administrator may direct that such distribution be paid to the legal guardian. If a distribution is to be made to such person and there is no legal guardian, the Plan Administrator may direct that payment be made to: (a) a parent, (b) a person holding a power of attorney; (c) a person authorized to act on behalf of such person under state law, or (d) the custodian for such person under the Uniform Transfer to Minors Act, if such is permitted by the laws of the state in which such minor resides. Such payment shall fully discharge the Trustee, Plan Administrator, Trust Fund, and the Employer from further liability on account thereof.

## Section 7.08    MISSING PAYEE

If all or any portion of the distribution payable to a Participant or Beneficiary remains unpaid because the Plan Administrator has been unable to ascertain the whereabouts of the Participant or Beneficiary after making reasonable efforts to contact the Participant or Beneficiary (which may include, but not be limited to, sending a registered letter, return receipt requested, to the last known address of such Participant or Beneficiary; using the Social Security Administration letter forwarding service; and/or a commercial locating service) the Plan Administrator may use a reasonable method to remove the assets from the Plan that is consistent with ERISA and the Code. Such methods may include, but not be limited to, (a) creating an individual retirement plan designated by the Plan Administrator; or (b) if, for a period of more than five years after such distribution becomes payable or six months after all attempts to locate the Participant or Beneficiary, the Plan Administrator is still unable to ascertain the whereabouts of the Participant or Beneficiary, the amount so distributable may be treated as a forfeiture under Article 6 hereof. Notwithstanding the foregoing, if a claim is subsequently made by the Participant or Beneficiary for the forfeited benefit pursuant to clause (b) of the preceding sentence, such benefit shall be reinstated without any credit or deduction for earnings and losses. Amounts forfeited from a Participant's Account under this Section shall be used pursuant to Section 6.03(d).

CONFIDENTIAL

*ARTICLE 7 DISTRIBUTIONS*

Section 7.09   DISTRIBUTIONS UPON TERMINATION OF PLAN

Except as provided in Section 13.03, a Participant shall receive the balance of his Account in a lump sum payment upon termination of the Plan without the establishment of an alternative defined contribution plan (as described in Treas. Reg. section 1.401(k)-1(d)(4)) other than an employee stock ownership plan (as defined in Code section 4975(e) or Code section 409), a simplified employee pension plan (as defined in Code section 408(k)), a SIMPLE IRA Plan (defined in Code section 408(p)), a plan or contract that satisfies the requirements of Code section 403(b), or a plan that is described in Code section 457(b) or (f).

For purposes of determining a Participant's spouse, the Plan Administrator shall not apply the one-year rule in Code section 417(d), Treas. Reg. section 1.401(a)-20 and any superseding guidance.

CONFIDENTIAL

WH_MDL_00139402

# ARTICLE 8
## IN-SERVICE DISTRIBUTIONS AND LOANS

### Section 8.01    OTHER WITHDRAWALS

A Participant may receive a distribution from his Rollover Contribution Account at any time.

### Section 8.02    TRANSFER ACCOUNT

In addition to the foregoing, a Participant may receive a distribution from his Transfer Account as permitted under the terms of any plan from which funds in such Account were transferred to the extent that such optional forms of benefit must be preserved pursuant to Code section 411(d)(6).

### Section 8.03    RULES REGARDING IN-SERVICE DISTRIBUTIONS

(a)    In General.  This Section shall apply only to the extent that in-service withdrawals are otherwise permitted pursuant to this Article 8.

(b)    Frequency and Amount of Withdrawals.  The Plan Administrator may establish uniform procedures that include, but are not limited to, prescribing limitations on the frequency and minimum amount of withdrawals; provided, that no procedures involving minimum amounts shall prescribe a minimum withdrawal greater than $1,000.

(c)    Form of Withdrawals.  All distributions of amounts withdrawn pursuant to this Article 8 shall be made in the form of a single sum as soon as practicable following the Valuation Date as of which such withdrawal is made.  Such distributions may be paid in cash or in-kind.

(d)    Active Employment.  Only Employees shall be eligible to receive in-service distributions pursuant to this Article 8.

(e)    Ordering Rule. The Plan Administrator shall determine the ordering rule for in-service distributions. Such ordering rule may provide that the Participant may elect to have payments made first or last from his Roth Elective Deferral Account or Voluntary Contribution Account or in any combination of such Accounts and any other Account.

(f)    Transfer Account.  A Participant may receive a distribution from the vested portion of his Transfer Account only to the extent such Account was not transferred from a qualified plan subject to Code section 412, to the extent Section 8.04 applies or to the extent the Plan permits distributions to be made to a Participant who has attained age 62 and who has not separated from employment.

### Section 8.04    LOANS

(a)    Eligible Participants.  A Participant may apply for a loan from the Plan and the provisions of Code section 72(p) and Treas. Reg. section 1.72(p)-1 shall apply to the Plan and are hereby incorporated by reference.  The Plan Administrator may provide that a loan may only be granted for the purpose of enabling the Participant to meet a financial hardship or an unusual or special situation in his

CONFIDENTIAL

WH_MDL_00139403

financial affairs. Loans shall only be granted pursuant to the terms of this Section to persons who the Plan Administrator determines have the ability to repay the loan. Loans shall not be made available to Participants who are or were Highly Compensated Employees in an amount greater than the amount available to other Participants and loans shall be made available to all Participants on a nondiscriminatory and reasonably equivalent basis.

(b)    Maximum Loan Amount. No loan to any Participant can be made to the extent that such loan when added to the outstanding balance of all other loans to the Participant would exceed the lesser of:

(1)    $50,000 reduced by the excess (if any) of the highest outstanding balance of loans during the one year period ending on the day before the loan is made, over the outstanding balance of loans from the Plan on the date the loan is made; or

(2)    one-half the present value of the vested Account balance of the Participant or, if greater and so provided by the Plan Administrator, the total vested Account balance up to $10,000; provided that additional security is given to the extent such loan exceeds 50% of the vested Account balance.

For the purpose of the above limitation, all loans from all qualified plans of the Employer are aggregated.

(c)    Loan Term and Amortization. Any loan shall by its terms require that repayment (principal and interest) be amortized in level payments, not less frequently than quarterly, over a period not extending beyond five years from the date of the loan. If so provided by the Plan Administrator, a loan term may extend beyond five years if the loan is used to acquire a dwelling unit which within a reasonable time (determined at the time the loan is made) will be used as the principal residence of the Participant.

(d)    Minimum Loan Amount - Maximum Number of Loans. The Plan Administrator shall specify a minimum loan amount and the maximum number of loans outstanding at any one time.

(e)    Interest Rate. Interest shall be charged at a rate to be fixed by the Plan Administrator and, in determining the interest rate, the Plan Administrator shall take into consideration interest rates currently being charged on similar commercial loans by persons in the business of lending money.

(f)    Security. All loans shall be secured by no more than one-half of the vested portion of the Participant's Accounts (determined immediately after the origination of the loan) and such additional security as the Plan Administrator may deem necessary. All loans made to Participants under this Section are to be considered Trust Fund investments and shall be segregated as provided in Article 9 hereof unless the Plan Administrator provides otherwise.

(g)    Repayment. Loans shall be repaid in accordance with the foregoing and the Plan Administrator may require as a condition to granting such loan that it be repaid through payroll deductions. Unless the loan note provides otherwise, the principal amount of the loan and accrued interest shall become immediately due and payable upon a Termination of Employment. Repayment may be suspended pursuant to Code section 414(u).

CONFIDENTIAL                                                                                    WH_MDL_00139404

(h)     Loan Fees.   Fees properly chargeable in connection with a loan may be charged, in accordance with a uniform and nondiscriminatory policy established by the Plan Administrator, against the Account of the Participant to whom the loan is granted.

(i)     Default.  In the event of default, foreclosure on the note and attachment of security shall not occur until a distributable event occurs in the Plan.

(j)     Loans to Self-Employed Persons.  For Plan loans made before January 1, 2002, no loans will be made to any shareholder-employee or owner-employee.  For purposes of this requirement, a shareholder-employee means an employee or officer of an electing small business (Subchapter S) corporation who owns (or is considered as owning within the meaning of Code section 318(a)(1), on any day during the taxable year of such corporation, more than 5% of the outstanding stock of the corporation. An owner-employee means, if the Employer is a sole proprietorship, an individual who is the sole proprietor, or, if the Employer is a partnership, a partner owning more than 10% of either the capital or profits interest of the partnership.

(k)     Loan Procedures.  The Plan Administrator is authorized to adopt any administrative rules or procedures that it deems necessary or appropriate with respect to the granting and administering of loans under this Article 8.

(l)     Ordering Rule. The Plan Administrator shall determine from which Accounts a Participant may receive a loan and the ordering rule for loans. Such ordering rule may provide that the Participant may elect to have loans made first or last from his Roth Elective Deferral Account or Voluntary Contribution Account (if applicable) or in any combination of such Accounts and any other Account.

(m)     Spousal Consent.  If so provided by the Plan Administrator, the Participant must obtain the consent of his or her spouse, if any, to use the Account balance as security for a loan.  Spousal consent shall be obtained no earlier than the beginning of the 180-day period that ends on the date on which the loan is to be so secured.  The consent must be in writing, must acknowledge the effect of the loan, and must be witnessed by a Plan representative or notary public.  Such consent shall thereafter be binding with respect to the consenting spouse or any subsequent spouse with respect to that loan.  A new consent shall be required if the Account balance is used for renegotiation, extension, renewal, or other revision of the loan.

Notwithstanding any other provision of this Plan, the portion of the Participant's vested Account balance used as a security interest held by the Plan by reason of a loan outstanding to the Participant shall be taken into account for purposes of determining the amount of the Account balance payable at the time of death or distribution, but only if the reduction is used as repayment of the loan. If less than 100% of the Participant's vested Account balance (determined without regard to the preceding sentence) is payable to the surviving spouse, then the Account balance shall be adjusted by first reducing the vested Account balance by the amount of the security used as repayment of the loan, and then determining the benefit payable to the surviving spouse.

**CONFIDENTIAL**            **WH_MDL_00139405**

# ARTICLE 9
## INVESTMENT AND VALUATION OF TRUST FUND

Section 9.01    INVESTMENT OF ASSETS

All existing assets of the Trust Fund and all future contributions shall be invested in accordance with the terms of this Article 9. All assets of the Trust Fund may be commingled for investment purposes with the assets of any retirement plan which is maintained by the Company and which qualifies under Code section 401(a) and may be held as a single fund under one or more trust instruments; provided that the value of each plan's assets can be determined at any time. The assets allocable to each such plan shall in no event be used for the benefit of Participants in the other plans.

Section 9.02    POOLED ACCOUNTS

Except for segregated Accounts specifically authorized under other provisions of this Plan, all assets shall be pooled for investment purposes, and there shall be no segregation for any Participant's Account.

Section 9.03    INDIVIDUAL ACCOUNTS

There shall be maintained on the books of the Plan with respect to each Participant, as applicable, an Elective Deferral Account, Pre-tax Elective Deferral Account, Roth Elective Deferral Account, In-Plan Roth Rollover Account, Rollover Contribution Account, Qualified Non-Elective Contribution Account, Transfer Account and any other Account established by the Plan Administrator. Each such Account shall separately reflect the Participant's interest in the Trust Fund relating to such Account. Each Participant shall receive, at least annually, or as otherwise required, a statement of his Account. A Participant's interest in the Trust Fund shall be determined and accounted for based on his beneficial interest in such fund.

Section 9.04    QUALIFYING EMPLOYER INVESTMENTS

The Trustee may not invest the assets of the Trust Fund in "qualifying employer securities" or "qualifying employer real property" as those terms are defined in ERISA.

Section 9.05    ALLOCATION OF EARNINGS AND LOSSES

(a)    Reinvestment. The dividends, capital gains distributions, and other earnings received on the Trust Fund shall be allocated to such fund and reinvested.

(b)    Valuation. The assets of each Investment Fund shall be valued at their current fair market value as of each Valuation Date, and Accounts of each Participant with interests in that Investment Fund shall be credited with such Participant's allocable share of the earnings and losses of each Investment Fund since the immediately preceding Valuation Date. Such allocation shall be done on the basis of such Participant's interest in the applicable Investment Fund. For purposes of the allocation of investment earnings and losses, the Plan Administrator may adjust the value of interests of Investment Funds in

                                                      **WH_MDL_00139406**

Accounts as of the preceding Valuation Date to account for any contributions, distributions or withdrawals that occur after such preceding Valuation Date.

(c)    Allocation to Individual Accounts.  The Accounts of each Participant shall be adjusted as of each Valuation Date by: (1) reducing such Accounts by any distributions and withdrawals made therefrom since the preceding Valuation Date; (2) increasing or reducing such Accounts by the Participant's share of earnings and losses and reasonable fees charged against such Accounts at the direction of the Plan Administrator; and (3) crediting such Accounts with any contributions made thereto since the preceding Valuation Date.

(d)    Allocation of Expenses.  The Plan Administrator may allocate all, none or any portion of the Plan's expenses to Participant Accounts.  When allocating expenses among Participant Accounts, the Plan Administrator may allocate such expenses using any reasonable method that does not violate Title I of ERISA and does not discriminate in favor of Highly Compensated Employees within the meaning of applicable provisions of Code section 401(a)(4). Such methods may include, but not be limited to: (1) allocating expenses only to current or former Employees (or among any other classification(s) of Employees); (2) allocating expenses directly to individual Employees; (3) allocating expenses using the per capita or pro rata method; and (4) any combination of the foregoing.

(e)    Valuation for Distribution.  For the purposes of paying the amounts to be distributed to a Participant or Beneficiary pursuant to Articles 7 and 8, the value of the Participant's interest shall be determined in accordance with the provisions of this Article as of the Valuation Date related to the date benefits are paid.

(f)    No Rights Created by Allocation.  An allocation of contributions or earnings to the separate Account of a Participant under this Article 9 shall not cause the Participant to have any right, title or interest in any assets of the Plan except at the time and under the terms and conditions expressly provided for in the Plan.

(g)    Dividends and Credits.  Any dividends or credits earned on insurance contracts will be allocated to the Participant's Account for whose benefit the contract is held.  No contract will be purchased under the Plan unless such contract or a separate definite written agreement between the Company and the insurer provides that no value under contracts providing benefits under the Plan or credits determined by the insurer (on account of dividends, earnings, or other experience rating credits, or surrender or cancellation credits) with respect to such contracts may be paid or returned to the Company or diverted to or used for other than the exclusive benefit of the Participants or their Beneficiaries. However, any contribution made by the Company may be returned to the Company pursuant to Article 10.

## Section 9.06    VOTING RIGHTS

A Participant shall not have the right to direct the Trustee as to the exercise of voting rights with respect to any Trust Fund investment.

## Section 9.07    LIFE INSURANCE

(a)    Purchase of Life Insurance.  A Participant may request that a portion of his Account be invested in insurance on his life, and if the Plan Administrator, in its discretion, approves such request, it

shall direct the Trustee to apply for and be the owner of any insurance contract purchased under the terms of this Section. The insurance contract(s) must provide that proceeds will be payable to the Trust; however, the Plan Administrator shall direct the Trustee to pay over all proceeds of the contract(s) to the Participant's Beneficiary in accordance with the distribution provisions of this Plan. The form and type of contract purchased shall be determined by the Plan Administrator. The Plan Administrator may also establish rules that prohibit the purchase of life insurance where the annual premium is estimated to be less than a certain minimum amount. If the Plan Administrator directs the Trustee to borrow against such contracts, such borrowings shall be on a uniform and nondiscriminatory basis. Any discretion shall be exercised in a nondiscriminatory manner.

(b)　　Maximum Insurance Amounts. The total premiums paid for a Participant's ordinary life insurance shall be less than 50% of the aggregate Company contributions allocated to such Participant's Account. If term insurance or universal life insurance is purchased, the aggregate premiums shall not exceed 25% of aggregate Company contributions allocated to the insured Participant's Account. If both ordinary life insurance and either term insurance or universal life insurance is purchased for a Participant, the aggregate premiums for such term insurance and/or universal life insurance plus one-half of the total premiums for such ordinary life insurance shall not in the aggregate exceed 25% of the aggregate Company contributions allocated to the insured Participant's Account. However, the foregoing restrictions shall not apply to funds that may be withdrawn or distributed from the Plan in accordance with applicable law even if such withdrawals/distributions are not permitted under the terms of the Plan.

(c)　　Beneficiary. The Trust Fund shall be designated as the beneficiary to receive death benefits payable pursuant to the provisions of any life insurance policy purchased pursuant to this Section. Any death proceeds received by the Trust Fund shall be added to the deceased Participant's Account and distributed pursuant to Article 7 hereof. Under no circumstances shall the Trust Fund retain any part of the proceeds. In the event of any conflict between the terms of this Plan and the terms of any insurance contract purchased hereunder, the Plan provisions shall control.

(d)　　Conversion of Policies. If an insured Participant does not die prior to retirement, the Plan Administrator may direct the Trustee to: (1) convert the entire value of any such life insurance contract at or before retirement into cash to provide the retirement benefits set forth in Article 7 so that no portion of such value may be used to continue life insurance protection beyond retirement; or (2) distribute any such contract to the Participant. Nothing provided herein shall be construed to prohibit the purchase, sale, transfer or exchange of any individual life insurance contract which would otherwise be permitted under applicable prohibited transaction class exemptions or Department of Labor Regulations.

(e)　　Distributions. Any distribution of an insurance policy or the proceeds of an insurance policy purchased pursuant to this Section shall be subject to the requirements of Article 7.

# ARTICLE 10
# TRUST FUND

## Section 10.01  TRUST FUND

(a)      Continuation of Trust Fund.  A Trust is hereby established or continued under the Plan and the Trustee will maintain a trust account for the Plan and, as part thereof, Participants' Accounts for such individuals as the Company shall from time to time give written notice to the Trustee are Participants in the Plan.  The Trustee will accept and hold in the Trust Fund such contributions on behalf of Participants as it may receive from time to time from the Company, including amounts transferred by any prior trustee of the Plan, and such earnings, income and appreciation as may accrue thereon; less losses, depreciation and payments made by the Trustee to carry out the purposes of the Plan.  The Trust Fund shall be fully invested and reinvested in accordance with the applicable provisions of the Plan.

(b)      Exclusive Benefit.  All contributions made to the Plan are made for the exclusive benefit of the Participants and their Beneficiaries, and such contributions shall not be used for, nor diverted to, purposes other than for the exclusive benefit of the Participants and their Beneficiaries (including the costs of maintaining and administering the Plan and corresponding Trust).

(c)      Return of Contributions.  Notwithstanding any other provision of the Plan: (1) as contributions made prior to the receipt of an initial determination letter are conditional upon a favorable determination as to the qualified status of the Plan under Code section 401(a), if the Plan receives an adverse determination with respect to its initial qualification, then any such contribution may be returned to the Company within one year after such determination, provided the application for determination is made by the time prescribed by law; (2) contributions made by the Company based upon mistake of fact may be returned to the Company within one year of such contribution; (3) as all contributions to the Plan are conditioned upon their deductibility under the Code, if a deduction for such a contribution is disallowed, such contribution may be returned to the Company within one year of the disallowance of such deduction; and (4) after all liabilities under the Plan have been satisfied, the remaining assets of the Trust shall be distributed to the Company if such distribution does not contravene any provision of applicable law.

In the case of the return of a contribution due to mistake of fact or the disallowance of a deduction, the amount that may be returned is the excess of the amount contributed over the amount that would have been contributed had there not been a mistake or disallowance.  Earnings attributable to the excess contributions may not be returned to the Company but losses attributable thereto must reduce the amount to be so returned.  Any return of contribution or distribution of assets made by the Trustee pursuant to this Section shall be made only upon the direction of the Company, which shall have exclusive responsibility for determining whether the conditions of such return or distribution have been satisfied and for the amount to be returned.

(d)      Assets Not Held by Trustee.  The Trustee shall not be responsible for any assets of the Plan that are held outside of the Trust Fund.  The Trustee is expressly hereby relieved of any responsibility or liability for any losses resulting to the Plan arising from any acts or omissions on the part of any insurance company holding assets outside of the Trust Fund. The Trustee may require the Company to serve as

CONFIDENTIAL

custodian for all promissory notes and related documents issued in connection with the Plan's Participant loan program and require the Company to be responsible for the safekeeping of same.

(e)    Group Trust. In the event that the Trust is a part of any group trust (within the meaning of Internal Revenue Service Revenue Rulings 81-100 and 2011-1): (1) participation in the Trust is limited to (i) individual retirement accounts which are exempt under Code section 408(e), (ii) pension and profit-sharing trusts which are exempt under Code section 501(a) by qualifying under Code section 401(a) and (iii) accounts under Code sections 403(b)(7), 403(b)(9) and governmental retiree benefit plans under Code section 401(a)(24) to the extent the requirements of Revenue Ruling 2011-1 are met; (2) no part of the corpus or income which equitably belongs to any individual retirement account or Employer's trust may be used for or diverted to any purposes other than for the exclusive benefit of the individual or the Employees, respectively, or their Beneficiaries who are entitled to benefits under such participating individual retirement account or Employer's trust; (3) no part of the equity or interest in the Trust Fund shall be subject to assignment by a participating individual retirement account or Employer's trust; and (4) the Trustee shall maintain separate accounts for each participating trust or individual retirement account.

Section 10.02  DUTIES OF THE TRUSTEE

(a)    In General.  The Trustee is not a party to, and has no duties or responsibilities under the Plan, other than those that may be expressly contained in this Article.  The Trustee shall have no duties, responsibilities or liability with respect to the acts or omissions of any prior trustee.  The Trustee shall discharge its assigned duties and responsibilities under this Article and the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

(b)    Contributions.  The Trustee agrees to accept contributions that are paid to it by the Company (as well as Rollover Contributions and direct transfers from other eligible retirement plans) in accordance with the terms of this Article.  Such contributions shall be in cash or in such other form that may be acceptable to the Trustee. In-kind contributions of other than qualifying employer securities are permitted only in non-pension plans provided that the contribution is discretionary and unencumbered. Qualifying employer securities may be contributed to both pension and non-pension plans subject to the requirements of ERISA section 408(e). The Trustee shall have no responsibility for any property until it is received by the Trustee. The Trustee has the duty to determine and collect contributions under the Plan. The Company shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions to be made under the Plan, the transmittal of the same to the Trustee and compliance with any statute, regulation or rule applicable to contributions.

(c)    Distributions.  The Trustee shall make distributions out of the Trust Fund pursuant to instructions described in Section 10.05.  The Trustee shall not have any responsibility or duty under this Article for determining that such are in accordance with the terms of the Plan and applicable law, including without limitation, the amount, timing or method of payment and the identity of each person to whom such payments shall be made. The Trustee shall have no responsibility or duty to determine the tax effect of any payment or to see to the application of any payment.  In making payments, the Company acknowledges that the Trustee is acting as a paying agent and not as the payor, for tax information reporting and withholding purposes.  In the event that any dispute shall arise as to the persons to whom payment or delivery of any assets shall be made by the Trustee, the Trustee may withhold such payment

**CONFIDENTIAL**    **WH_MDL_00139410**

or delivery until such dispute shall have been settled by the parties concerned or shall have been determined by a court of competent jurisdiction.

(d)     Records.  The Trustee shall keep full and accurate accounts of all receipts, investments, disbursements and other transactions hereunder, including such specific records as may be agreed upon in writing between the Company and the Trustee.  All such accounts, books and records shall be open to inspection and audit at all reasonable times by any authorized representative of the Company or the Plan Administrator.  A Participant may examine only those individual account records pertaining directly to him.

(e)     Accounting.  The Trustee shall file with the Plan Administrator a written account of the administration of the Trust Fund showing all transactions effected by the Trustee subsequent to the period covered by the last preceding account and all property held at the end of the accounting period.  The Trustee shall use its best effort to file such written account within ninety (90) days, but not later than one hundred twenty (120) days after the end of each Plan Year.  Upon approval of such accounting by the Plan Administrator, neither the Company nor the Plan Administrator shall be entitled to any further accounting by the Trustee.  The Plan Administrator may approve such accounting by written notice of approval delivered to the Trustee or by failure to express objection to such accounting in writing delivered to the Trustee within six (6) months from the date on which the accounting is delivered to the Plan Administrator.

(f)     Participant Eligibility.  The Trustee shall not be required to determine the facts concerning the eligibility of any Participant to participate in the Plan, the amount of benefits payable to any Participant or Beneficiary under the Plan, or the date or method of payment or disbursement.  The Trustee shall be fully entitled to rely in good faith solely upon the written advice and directions of the Plan Administrator as to any such question of fact.

(g)     Indicia of Ownership.  The Trustee shall not hold the indicia of ownership of any assets of the Trust Fund outside of the jurisdiction of the District Courts of the United States, unless in compliance with section 404(b) of ERISA and regulations thereunder.

(h)     Notice.  The Trustee shall provide the Company with advance notice of any legal actions the Trustee may take with respect to the Plan and Trust and shall promptly notify the Company of any claim against the Plan and Trust.

(i)     Other Fiduciaries.  The Trustee shall not be responsible for the acts or omissions of any other persons except as may be required by ERISA section 405.

## Section 10.03  GENERAL INVESTMENT POWERS

In addition to all powers and authority under common law, statutory authority and other provisions of this Article, the Trustee shall have the following powers and authorities to be exercised in accordance with and subject to the provisions of Section 10.04 hereof:

(a)     Invest and reinvest the Trust Fund in any property, real, personal or mixed, wherever situated, and whether situated, and whether or not productive of income or consisting of wasting assets, including, without limitation, common and preferred stock, bonds, notes, debentures, options, mutual funds, leaseholds, mortgages (including without limitation, any collective or part interest in any bond and

CONFIDENTIAL                                                    WH_MDL_00139411

mortgage or note and mortgage), certificates of deposit, and oil, mineral or gas properties, royalties, interests or rights (including equipment pertaining thereto), without being limited to the classes of property in which trustees are authorized by law or any rule of court to invest trust funds and without regard to the proportion any such property may bear to the entire amount of the Trust Fund;

(b)    Hold property in nominee name, in bearer form, or in book entry form, in a clearinghouse corporation or in a depository, provided that such property is held in conformance with DOL Reg. section 2550-403a-1(b) and that such property is held by (i) a bank or trust company that is subject to supervision by the United States or a state, or a nominee of such bank or trust company, (ii) a broker or dealer registered under the Securities Exchange Act of 1934, or a nominee of such broker or dealer; (iii) a "clearing agency," as defined in section 3(a)(23) of the Securities Exchange Act of 1934, or its nominee; or (iv) any other entity as provided in DOL Reg. section 2550-403a-1(b);

(c)    Collect income payable to and distributions due to the Trust Fund and sign on behalf of the Trust any declarations, affidavits, certificates of ownership and other documents required to collect income and principal payments, including but not limited to, tax reclamations, rebates and other withheld amounts;

(d)    To sell, exchange, convey, transfer, grant options to purchase, or otherwise dispose of any securities or other property held by the Trustee.  No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition;

(e)    Pursuant to the terms of Section 10.06, to vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other property;

(f)    Take all action necessary to pay for authorized transactions or make authorized distributions, including exercising the power to borrow or raise monies from any lender, upon such terms and conditions as are necessary to settle such transactions or distributions;

(g)    To keep such portion of the Trust Fund uninvested in cash or cash balances as the Trustee may, from time to time, deem to be in the best interests of the Plan, without liability for interest thereon;

(h)    To accept and retain for such time as the Trustee may deem advisable any securities or other property received or acquired as Trustee hereunder, whether or not such securities or other property would normally be purchased as investments hereunder;

(i)    To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(j)    To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Trust Fund, to commence or defend suits or legal or administrative proceedings, and to

represent the Plan and/or Trust Fund in all suits and legal and administrative proceedings (arbitration shall not be permitted to the extent the claim involves a Participant);

(k)     To invest in Treasury Bills and other forms of United States government obligations;

(l)     To deposit cash in accounts in the banking department of the Trustee or an affiliated banking organization;

(m)     To deposit monies in federally insured savings accounts or certificates of deposit in banks or savings and loan associations;

(n)     To invest and reinvest all or any portion of the Trust Fund collectively with funds of other retirement plan trusts exempt from tax under Code section 501(a), including, without limitation, the power to invest collectively with such other funds through the medium of one or more common, collective or commingled trust funds which have been or may hereafter be operated by the Trustee, the instrument or instruments establishing such trust fund or funds, as amended from time to time, being made part of this Trust so long as any portion of the Trust Fund shall be invested through the medium thereof;

(o)     To sell, either at public or private sale, option to sell, mortgage, lease for a term of years less than or continuing beyond the possible date of the termination of the Trust created hereunder, partition or exchange any real property which may from time to time constitute a portion of the Trust Fund, for such prices and upon such terms as it may deem best, and to make, execute and deliver to the purchasers thereof good and sufficient deeds of conveyance therefor and all assignments, transfers and other legal instruments, either necessary or convenient for the passing of the title and ownership thereof to the purchaser, free and discharged of all trusts and without liability on the part of such purchasers to see to the proper application of the purchase price;

(p)     To repair, alter, improve or demolish any buildings which may be on any real estate forming part of the Trust Fund or to erect entirely new structures thereon;

(q)     To renew, extend or participate in the renewal or extension of any mortgage, upon such terms as may be deemed advisable, and to agree to a reduction in the rate of interest on any mortgage or to any other modification or change in the terms of any mortgage or of any guarantee pertaining thereto, in any manner and to any extent that may be deemed advisable for the protection of the Trust Fund or the preservation of the value of the investment; to waive any default, whether in the performance of any covenant or condition of any mortgage or in the performance of any guarantee, or to enforce any such default in such manner and to such extent as may be deemed advisable; to exercise and enforce any and all rights of foreclosure, to bid on property in foreclosure, to take a deed in lieu of foreclosure with or without paying a consideration therefor, and in connection therewith to release the obligation on the bond or note secured by the mortgage; and to exercise and enforce in any action, suit or proceeding at law or in equity any rights or remedies in respect to any mortgage or guarantee;

(r)     To purchase any authorized investment at a premium or at a discount;

(s)     To purchase any annuity contract; and

(t)     To do all such acts and exercise all such rights and privileges, although not specifically mentioned herein, as the Trustee may deem necessary to carry out the purposes of the Plan.

Section 10.04  OTHER INVESTMENT POWERS

(a)     Requirement for Preapproval.  The powers granted the Trustee under Section 10.03 shall be exercised by the Trustee upon the written direction from the Investment Fiduciary pursuant to Sections 10.05 and 10.06.  Any written direction of the Investment Fiduciary may be of a continuing nature, but may be revoked in writing by the Investment Fiduciary at any time.  The Trustee shall comply with any direction as promptly as possible, provided it does not contravene the terms of the Plan or the provision of any applicable law.  The Investment Fiduciary, by written direction, may require the Trustee to obtain written approval of the Investment Fiduciary before exercising such of its powers as may be specified in such direction.  Any such direction may be of a continuing nature or otherwise and may be revoked in writing by the Investment Fiduciary at any time.  The Trustee shall not be responsible for any loss that may result from the failure or refusal of the Investment Fiduciary to give any such required direction or approval.

(b)     Prohibited Transactions.  The Trustee shall not engage in any prohibited transaction within the meaning of the Code and ERISA.

(c)     Legal Actions.  The Trustee is authorized to execute all necessary receipts and releases and shall be under the duty to make efforts to collect such sums as may appear to be due (except contributions hereunder); provided, however, that the Trustee shall not be required to institute suit or maintain any litigation to collect the proceeds of any asset unless it has been indemnified to its satisfaction for counsel fees, costs, disbursements and all other expenses and liabilities to which it may in its judgment be subjected by such action.  Notwithstanding anything to the contrary herein contained, the Trustee is authorized to compromise and adjust claims arising out of any asset held in the Trust Fund upon such terms and conditions as the Trustee may deem just, and the action so taken by the Trustee shall be binding and conclusive upon all persons interested in the Trust Fund.

(d)     Retention of Advisors.  The Trustee, with the consent of the Investment Fiduciary, may retain the services of investment advisors to invest and reinvest the assets of the Trust Fund, as well as employ such legal, actuarial, medical, accounting, clerical and other assistance as may be required in carrying out the provisions of the Plan.  The Trustee may also appoint custodians, subcustodians or subtrustees as to part or all of the Trust Fund.

CONFIDENTIAL                                                                                                    WH_MDL_00139414

Section 10.05 <u>INSTRUCTIONS</u>

(a)    Reliance on Instructions.  Whenever the Trustee is permitted or required to act upon the directions or instructions of the Investment Fiduciary, Plan Administrator or Company, the Trustee shall be entitled to act in good faith upon any written communication signed by any person or agent designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company.  Such person or agent shall be so designated either under the provisions of the Plan or in writing by the Company and their authority shall continue until revoked in writing.  The Trustee shall incur no liability for failure to act in good faith on such person's or agent's instructions or orders without written communication, and the Trustee shall be fully protected in all actions taken in good faith in reliance upon any instructions, directions, certifications and communications believed to be genuine and to have been signed or communicated by the proper person.

(b)    Designation of Agent.

(1)    Plan Sponsor. The Plan Sponsor shall notify the Trustee in writing as to the appointment, removal or resignation of any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Plan Sponsor.  After such notification, the Trustee shall be fully protected in acting in good faith upon the directions of, or dealing with, any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Plan Sponsor until it receives notice to the contrary.  The Trustee shall have no duty to inquire into the qualifications of any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Plan Sponsor.

(2)    Trustee. If there is more than one Trustee, the Trustees may designate one or more of the Trustees to act on behalf of the Trustees. Such designated Trustee shall be authorized to take any and all actions and execute and deliver such documents as may be necessary or appropriate.

(c)    Procedures.  The Trustee may adopt such rules and procedures as it deems necessary, desirable, or appropriate including, but not limited to: (1) taking action with or without formal meetings; and (2) in the event that there is more than one Trustee, a procedure specifying whether action may be taken by a less than unanimous vote.

(d)    Payment of Benefits.  The Trustee shall pay benefits and expenses from the Trust Fund only upon the written direction of the Plan Administrator.  The Trustee shall be fully entitled to rely in good faith on such directions furnished by the Plan Administrator, and shall be under no duty to ascertain whether the directions are in accordance with the provisions of the Plan.

## Section 10.06  INVESTMENT OF THE FUND

(a)    Investment Funds.  The Investment Fiduciary shall have the exclusive authority and discretion to select the Investment Funds available for investment under the Plan.  In making such selection, the Investment Fiduciary shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  The available investments under the Plan shall be sufficiently diversified so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so.  The Investment Fiduciary shall notify the Trustee in writing of the selection of the Investment Funds currently available for investment under the Plan, and any changes thereto.

(b)    Participant Self-Direction.  Participants shall not have the right to direct the investment of their Accounts.

(c)    Investment Managers.

(1)    Appointment of Investment Managers.  The Investment Fiduciary may appoint one or more Investment Managers with respect to some or all of the assets of the Trust Fund as contemplated by section 402(c)(3) of ERISA.  Any such Investment Manager shall acknowledge to the Investment Fiduciary in writing that it accepts such appointment and that it is an ERISA fiduciary with respect to the Plan and the Trust Fund.  The Investment Fiduciary shall provide the Trustee with a copy of the written agreement (and any amendments thereto) between the Investment Fiduciary and the Investment Manager. By notifying the Trustee of the appointment of an Investment Manager, the Investment Fiduciary shall be deemed to certify that such Investment Manager meets the requirements of section 3(38) of ERISA.  The authority of the Investment Manager shall continue until the Investment Fiduciary rescinds the appointment or the Investment Manager has resigned.

(2)    Separation of Duties.  The assets with respect to which a particular Investment Manager has been appointed shall be specified by the Investment Fiduciary and shall be segregated in a separate account for the Investment Manager (the "Separate Account") and the Investment Manager shall have the power to direct the Trustee in every aspect of the investment of the assets of the Separate Account.  The Trustee shall not be liable for the acts or omissions of an Investment Manager and shall have no liability or responsibility for acting pursuant to the direction of, or failing to act in the absence of, any direction from an Investment Manager, unless the Trustee knows that by such action or failure to act it would be itself committing a breach of fiduciary duty or participating in a breach of fiduciary duty by such Investment Manager, it being the intention of the parties that each party shall have the full protection of section 405(d) of ERISA.

(d)    Proxies.

(1)    Delivery of Information.  The Trustee shall deliver, or cause to be delivered, to the Company or Plan Administrator all notices, prospectuses, financial statements, proxies and proxy soliciting materials received by the Trustee relating to securities held by the Trust or, if applicable, deliver these materials to the appropriate Participant or the Beneficiary of a deceased Participant.

(2)    Voting.  The Trustee shall not vote any securities held by the Trust except in accordance with the written instructions of the Company, the Investment Fiduciary, or if otherwise

permitted in the Plan, the Participant or the Beneficiary of the Participant, if the Participant is deceased. However, the Trustee may, in the absence of instructions, vote "present" for the sole purpose of allowing such shares to be counted for establishment of a quorum at a shareholders' meeting. The Trustee shall have no duty to solicit instructions from Participants, Beneficiaries, the Investment Fiduciary or the Company.

(3)    Investment Manager.  To the extent not delegated to Participants pursuant to Subsection (b), the Investment Manager shall be responsible for making any proxy voting or tender offer decisions with respect to securities held in the Separate Account and the Investment Manager shall maintain a record of the reasons for the manner in which it voted proxies or responded to tender offers.

(e)    Life Insurance. Any life insurance investment allowed under Article 9 shall be a permitted Investment Fund.

## Section 10.07  COMPENSATION AND INDEMNIFICATION

(a)    Compensation. The Trustee shall be entitled to reasonable compensation for its services as is mutually agreed upon with the Plan Sponsor; provided that such compensation does not result in a prohibited transaction within the meaning of the Code and ERISA. If the Trustee and the Company mutually agree that the Trustee may retain as additional compensation for its services any earnings resulting from the anticipated short-term investment of funds ("float") on Plan assets deposited in or transferred to a Trustee general or omnibus account, then the Trustee shall be authorized to retain such float; provided, that such agreement: (i) discloses the specific circumstances under which float will be earned and retained, (ii) in the case of float on distributions, discloses when the float period commences and ends, and (iii) discloses the rate of the float or the specific manner in which such rate will be determined. If approved by the Plan Administrator, the Trustee shall also be entitled to reimbursement for all direct expenses properly and actually incurred on behalf of the Plan.  Such compensation or reimbursement shall be paid to the Trustee out of the Trust Fund unless paid directly by the Company.

(b)    Indemnification. The Company shall indemnify and hold harmless the Trustee (and its delegates) from all claims, liabilities, losses, damages and expenses, including reasonable attorneys' fees and expenses, incurred by the Trustee in connection with its duties hereunder to the extent not covered by insurance, except when the same is due to the Trustee's own gross negligence, willful misconduct, lack of good faith, or breach of its fiduciary duties under the Plan or ERISA.

## Section 10.08  RESIGNATION AND REMOVAL

(a)    Resignation.  The Trustee may resign at any time by written notice to the Plan Sponsor which shall be effective 60 days after delivery unless prior thereto a successor Trustee assumes the responsibilities of Trustee hereunder.

(b)    Removal. The Trustee may be removed by the Plan Sponsor at any time.

(c)    Successor Trustee.   The appointment of a successor Trustee hereunder shall be accomplished by and shall take effect upon the delivery to the resigning or removed Trustee, as the case may be, of written notice of the Plan Sponsor appointing such successor Trustee, and an acceptance in writing of the office of successor Trustee hereunder executed by the successor so appointed.  Any successor Trustee may be either a corporation authorized and empowered to exercise trust powers or one

or more individuals. All of the provisions set forth herein with respect to the Trustee shall relate to each successor Trustee so appointed with the same force and effect as if such successor Trustee had been originally named herein as the Trustee hereunder. If within 45 days after notice of resignation shall have been given under the provisions of this Article a successor Trustee shall not have been appointed, the resigning Trustee or the Plan Sponsor may apply to any court of competent jurisdiction for the appointment of a successor Trustee.

(d)     Transfer of Trust Fund.  Upon the appointment of a successor Trustee, the resigning or removed Trustee shall transfer and deliver the Trust Fund to such successor Trustee, after reserving such reasonable amount as it shall deem necessary to provide for its expenses in the settlement of its account, the amount of any compensation due to it and any sums chargeable against the Trust Fund for which it may be liable. If the sums so reserved are not sufficient for such purposes, the resigning or removed Trustee shall be entitled to reimbursement for any deficiency from the Plan Sponsor.

CONFIDENTIAL

# ARTICLE 11
# SPECIAL TOP-HEAVY RULES

## Section 11.01  TOP-HEAVY STATUS

The special provisions set forth in this Article 11 shall apply during any Plan Year in which this Plan, together with any other retirement plans required to be aggregated under Code section 416(g) and the Treasury Regulations promulgated thereunder, is "Top-Heavy." This Plan is Top-Heavy for any Plan Year beginning after 1983:

(a)    If the Top-Heavy Ratio for this Plan exceeds 60% and this Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans;

(b)    If this Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top-Heavy Ratio for the Required Aggregation Group of plans exceeds 60%; or

(c)    If this Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group of plans and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

## Section 11.02  MINIMUM ALLOCATIONS

(a)    In General. Notwithstanding other provisions of this Plan, for any Plan Year during which this Plan is Top-Heavy and the Top-Heavy minimum allocation is not met solely or partially in another plan, the following shall apply:

(1)    A Participant specified in Subsection (a)(2) below shall receive the minimum allocation or benefit requirement applicable to Top-Heavy plans specified in (a)(3) below.

(2)    Participants Receiving Minimum Allocation/Benefit. If the Participant is not eligible to participate in a defined benefit plan in a group specified in Section 11.01 other than a frozen plan in which no additional accruals are being made, he or she shall receive the minimum allocation or benefit in this Plan or any other defined contribution plan that is sponsored by the Employer provided, he or she is a Participant who is employed by the Employer on the last day of the Plan Year. If the Participant is eligible to participate in a defined benefit plan in a group specified in Section 11.01, and the Top-Heavy minimum is to be made in this Plan for such Participant, he or she shall receive the minimum allocation or benefit in this Plan or any other defined contribution plan that is sponsored by the Employer provided, he or she is (i) an Eligible Employee as described in the applicable plan document; and (ii) has completed 1,000 Hours of Service (in accordance with such defined benefit plan) during such Plan Year. In the event a Participant is entitled to a Top-Heavy minimum benefit accrual under a defined benefit plan and is not otherwise eligible for a Top-Heavy minimum allocation under this Plan because of severance of employment prior to the last day of the Plan Year, such requirement shall be waived in this Plan solely to the extent the Top-Heavy minimum is required to be given in this Plan. Participants covered by a collective bargaining agreement shall share in Top-Heavy minimum allocations provided retirement benefits were the subject of good faith bargaining.

CONFIDENTIAL

(3)    Amount of Minimum Allocation/Benefit. If the Participant is not eligible to participate in a defined benefit plan in a group specified in Section 11.01, the Top-Heavy minimum allocation ("defined contribution minimum") shall not be less than the lesser of 3% of such Participant's Statutory Compensation or the largest percentage of Company contributions (including Elective Deferrals) and forfeitures, as a percentage of Key Employee's Statutory Compensation, as limited by Code section 401(a)(17), allocated on behalf of any Key Employee for that Plan Year. If: (i) the Participant is eligible to participate in a defined benefit plan in a group specified in Section 11.01, (ii) satisfies the requirement in the defined benefit plan to receive the Top-Heavy minimum under the terms of that plan, and (iii) the Top-Heavy minimum is to be given in this Plan, the Top-Heavy minimum benefit ("defined benefit minimum") shall be determined under one of the following methods:

(A)    Defined Benefit Minimum. A defined benefit minimum, which is an accrued benefit at any point in time equal to at least the product of (i) a Participant's average annual compensation for the period of consecutive years (not exceeding five) when the Participant had the highest aggregate compensation from the Employer and (ii) the lesser of 2% per year of service or 1-year period of service (within the meaning of Code section 416), as applicable, with the Employer or 20%, subject to the rules of Code section 416 and the Regulations thereunder;

(B)    Floor Offset. A floor offset approach, pursuant to Revenue Ruling 76-259, 1976-2 C.B. 111, under which the defined benefit minimum of the defined benefit plan that is provided pursuant to Subsection (A) above is offset by the benefits provided under the defined contribution plan (or plans);

(C)    Comparability Analysis. A demonstration, using a comparability analysis of Rev. Rul. 81-202, that the plans are providing benefits at least equal to the defined benefit minimum that is provided pursuant to Subsection (A) above; or

(D)    Defined Contribution Minimum. An allocation of Employer contributions and forfeitures that are made on behalf of such Participant under this Plan (or any defined contribution plan that is sponsored by the Employer) equal to 5% of the Participant's Statutory Compensation unless off-setting a portion of the minimum allocation in another plan or the Participant in this Plan is not a participant in the defined benefit plan. If the Plan allocates its Profit Sharing or Pension Contribution using permitted disparity (integration), it may, therefore, substitute the 3% in the first step of its allocation process with 5% (or such other amount required) in order to satisfy the Top-Heavy minimum allocation.

(4)    The minimum allocation is determined without regard to any Social Security contribution. The Top-Heavy minimum shall be made even though, under other Plan provisions, the Participant would not otherwise be entitled to receive an allocation, or would have received a lesser allocation for the Plan Year because of: (i) the Participant's failure to complete 1,000 Hours of Service (or any equivalent provided in the Plan); (ii) the Participant's failure to make mandatory Employee contributions to the Plan; or (iii) Compensation less than a stated amount. Except as provided in Subsections (b) and (c) below, neither Elective Deferrals nor Matching Contributions may be taken into account for the purpose of satisfying the minimum Top-Heavy contribution requirement.

(5)    Contributions under other Plans. In the event the minimum allocation requirement discussed in Subsection 11.02(a) is met solely or partially in another plan, this Plan may offset the minimum required allocation in Subsection 11.02(a) by the amount allocated in or the benefit accrued in

the other plan. If, after applying the requirements of Code section 416, corresponding regulations and this Article 11, the Top-Heavy minimum allocation is not satisfied, then additional contributions may be made to this Plan and/or to one or more plans that are part of the Required Aggregation Group or Permissive Aggregation Group.

(b)     Matching Contributions. Employer Matching Contributions may be taken into account for purposes of satisfying the minimum contribution requirements of Code section 416(c)(2) and the Plan. The preceding sentence shall apply with respect to Matching Contributions under the Plan or, if the Plan provides that the minimum contribution requirement shall be met in another plan, such other plan. Employer Matching Contributions that are used to satisfy the minimum contribution requirements shall be treated as Matching Contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m).

(c)     The Top-Heavy requirements of Code section 416 and this Section shall not apply in any year beginning after December 31, 2001, in which the Plan consists solely of a cash or deferred arrangement which meets the requirements of Code sections 401(k)(11), 401(k)(12) or 401(k)(13) and Matching Contributions with respect to which the requirements of Code sections 401(m)(10), 401(m)(11) or 401(m)(12) are met; or in which the Plan is part of an "eligible combined plan" in compliance with Code section 414(x), IRS Notice 2009-71, and any superseding/subsequent guidance.

Section 11.03   MINIMUM VESTING

(a)     For any Plan Year in which this Plan is Top-Heavy, the following vesting schedule shall automatically apply to the Plan to the extent that it is more favorable than the vesting schedule provided for in Article 6:

| Years of Vesting Service | Vesting Percentage |
|---|---|
| Less than Two Years | 0% |
| Two Years but less than Three Years | 20% |
| Three Years but less than Four Years | 40% |
| Four Years but less than Five Years | 60% |
| Five Years but less than Six Years | 80% |
| Six or More Years | 100% |

(b)     The minimum vesting schedule applies to all benefits within the meaning of Code section 411(a)(7) except those attributable to Employee contributions or those already subject to a vesting schedule which vests at least as rapidly as the schedule listed above, including benefits accrued before the effective date of Code section 416 and benefits accrued before the Plan became Top-Heavy. Further, no decrease in a Participant's nonforfeitable percentage may occur in the event the Plan's status as Top-Heavy changes for any Plan Year. However, this Section does not apply to the Account balances of any Employee who does not have an Hour of Service after the Plan initially became Top-Heavy and such Employee's Account balance attributable to Company contributions and forfeitures will be determined without regard to this Section. The minimum allocation required (to the extent required to be nonforfeitable under Code section 416(b)) may not be forfeited under Code sections 411(a)(3)(B) or 411(a)(3)(D).

**CONFIDENTIAL**

# ARTICLE 12
# PLAN ADMINISTRATION

Section 12.01  PLAN ADMINISTRATOR

(a)    Designation.  **The Plan Administrator shall be the Plan Sponsor.**  The Plan Sponsor may subsequently designate other persons to serve as Plan Administrator.

(b)    Authority and Responsibility of the Plan Administrator.  The Plan Administrator shall be the Plan "administrator" as such term is defined in section 3(16) of ERISA, and as such shall have total and complete discretionary power and authority:

(1)    to make factual determinations, to construe and interpret the provisions of the Plan, to correct defects and resolve ambiguities and inconsistencies therein and to supply omissions thereto. Any construction, interpretation or application of the Plan by the Plan Administrator shall be final, conclusive and binding;

(2)    to determine the amount, form or timing of benefits payable hereunder and the recipient thereof and to resolve any claim for benefits in accordance with this Article 12;

(3)    to determine the amount and manner of any allocations and/or benefit accruals hereunder, including whether the Plan maintains an ERISA account and the manner in which amounts deposited in such ERISA account shall be allocated;

(4)    to maintain and preserve records relating to Participants, former Participants, and their Beneficiaries and Alternate Payees;

(5)    to prepare and furnish to Participants, Beneficiaries and Alternate Payees all information and notices required under applicable law or the provisions of this Plan;

(6)    to prepare and file or publish with the Secretary of Labor, the Secretary of the Treasury, their delegates and all other appropriate government officials all reports and other information required under law to be so filed or published;

(7)    to approve and enforce any loan hereunder including the repayment thereof;

(8)    to provide directions to the Trustee with respect to the purchase of life insurance, methods of benefit payment, valuations at dates other than regular Valuation Dates and on all other matters where called for in the Plan or requested by the Trustee;

(9)    to hire such professional assistants and consultants as it, in its sole discretion, deems necessary or advisable; and shall be entitled, to the extent permitted by law, to rely conclusively on all tables, valuations, certificates, opinions and reports which are furnished by same;

(10)    to determine all questions of the eligibility of Employees and of the status of rights of Participants, Beneficiaries and Alternate Payees;

CONFIDENTIAL

WH_MDL_00139422

(11)    to arrange for bonding, if required by law;

(12)    to adjust Accounts in order to correct errors or omissions;

(13)    to determine whether any domestic relations order constitutes a Qualified Domestic Relations Order and to take such action as the Plan Administrator deems appropriate in light of such domestic relations order;

(14)    to retain records on elections and waivers by Participants, their spouses and their Beneficiaries and Alternate Payees;

(15)    to supply such information to any person as may be required;

(16)    to establish, revise from time to time, and communicate to the Trustee and/or the Investment Fiduciary and Investment Manager(s), a funding policy and method for the Plan; and

(17)    to perform such other functions and duties as are set forth in the Plan that are not specifically given to the Investment Fiduciary or Trustee.

(c)    In performing its duties, the Plan Administrator shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

(d)    Procedures.  The Plan Administrator may adopt such rules and procedures as it deems necessary, desirable, or appropriate for the administration of the Plan.  When making a determination or calculation, the Plan Administrator shall be entitled to rely upon information furnished to it.  The Plan Administrator's decisions shall be binding and conclusive as to all parties.

(e)    Allocation of Duties and Responsibilities.  The Plan Administrator may designate other persons to carry out any of his duties and responsibilities under the Plan.

Section 12.02  INVESTMENT FIDUCIARY

(a)    Designation.  The Investment Fiduciary shall be the Trustee.

(b)    Authority and Responsibility of the Investment Fiduciary.  The Investment Fiduciary shall have the following discretionary authority and responsibility:

(1)    to manage the investment of the Trust Fund;

(2)    to appoint one or more Investment Managers;

(3)    to hire such professional assistants and consultants as it, in its sole discretion, deems necessary or advisable;

(4)    to establish, revise from time to time, and communicate to the Trustee and/or Investment Manager(s), an investment policy for the Plan; and

CONFIDENTIAL                                                        WH_MDL_00139423

(5)    to supply such information to any person as may be required.

(c)    Procedures.  The Investment Fiduciary may adopt such rules and procedures as it deems necessary, desirable, or appropriate in furtherance of its duties hereunder.  When making a determination or calculation, the Investment Fiduciary shall be entitled to rely upon information furnished to it.  The Investment Fiduciary's decisions shall be binding and conclusive as to all parties.

## Section 12.03  COMPENSATION OF PLAN ADMINISTRATOR AND INVESTMENT FIDUCIARY

The Plan Administrator and Investment Fiduciary shall be entitled to reasonable compensation for their services as is mutually agreed upon to the extent that such compensation would not constitute a prohibited transaction within the meaning of the Code and ERISA.

## Section 12.04  PLAN EXPENSES

All direct expenses of the Plan, Trustee, Plan Administrator and Investment Fiduciary or any other person in furtherance of their duties hereunder shall be paid or reimbursed by the Company, and if not so paid or reimbursed, shall be proper charges to the Trust Fund and shall be paid therefrom.

## Section 12.05  ALLOCATION OF FIDUCIARY RESPONSIBILITY

A Plan fiduciary shall have only those specific powers, duties, responsibilities and obligations as are explicitly given him under the Plan and Trust Agreement.  It is intended that each fiduciary shall not be responsible for any act or failure to act of another fiduciary.  A fiduciary may serve in more than one fiduciary capacity with respect to the Plan.

## Section 12.06  INDEMNIFICATION

The Company shall indemnify and hold harmless any person serving as the Investment Fiduciary and/or Plan Administrator (and their delegates) from all claims, liabilities, losses, damages and expenses, including reasonable attorneys' fees and expenses, incurred by such persons in connection with their duties hereunder to the extent not covered by insurance, except when the same is due to such person's own gross negligence, willful misconduct, lack of good faith, or breach of its fiduciary duties under this Plan or ERISA.

## Section 12.07  CLAIMS PROCEDURES

(a)    Application for Benefits.  A Participant or any other person entitled to benefits from the Plan (a "Claimant") may apply for such benefits by completing and filing a claim with the Plan Administrator.  Any such claim shall be in writing and shall include all information and evidence that the Plan Administrator deems necessary to properly evaluate the merit of and to make any necessary determinations on a claim for benefits.  The Plan Administrator may request any additional information necessary to evaluate the claim.

(b)    Timing of Notice of Denied Claim. The Plan Administrator shall notify the Claimant of any adverse benefit determination within a reasonable period of time, but not later than 90 days (45 days if the claim relates to a disability determination) after receipt of the claim. This period may be extended

CONFIDENTIAL                                                        **WH_MDL_00139424**

one time by the Plan for up to 90 days (30 additional days if the claim relates to a disability determination), provided that the Plan Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to the expiration of the initial review period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If the claim relates to a disability determination, the period for making the determination may be extended for up to an additional 30 days if the Plan Administrator notifies the Claimant prior to the expiration of the first 30-day extension period.

(c)     Content of Notice of Denied Claim.  If a claim is wholly or partially denied, the Plan Administrator shall provide the Claimant with a written notice identifying (1) the reason or reasons for such denial, (2) the pertinent Plan provisions on which the denial is based, (3) any material or information needed to grant the claim and an explanation of why the additional information is necessary, and (4) an explanation of the steps that the Claimant must take if he wishes to appeal the denial including a statement that the Claimant may bring a civil action under ERISA.

(d)     Appeals of Denied Claim.  If a Claimant wishes to appeal the denial of a claim, he shall file a written appeal with the Plan Administrator on or before the 60th day (180th day if the claim relates to a disability determination) after he receives the Plan Administrator's written notice that the claim has been wholly or partially denied.  The written appeal shall identify both the grounds and specific Plan provisions upon which the appeal is based.  The Claimant shall be provided, upon request and free of charge, documents and other information relevant to his claim.  A written appeal may also include any comments, statements or documents that the Claimant may desire to provide.  The Plan Administrator shall consider the merits of the Claimant's written presentations, the merits of any facts or evidence in support of the denial of benefits, and such other facts and circumstances as the Plan Administrator may deem relevant.  The Claimant shall lose the right to appeal if the appeal is not timely made.  The Plan Administrator shall ordinarily rule on an appeal within 60 days (45 days if the claim relates to a disability determination).  However, if special circumstances require an extension and the Plan Administrator furnishes the Claimant with a written extension notice during the initial period, the Plan Administrator may take up to 120 days (90 days if the claim relates to a disability determination) to rule on an appeal.

(e)     Denial of Appeal.  If an appeal is wholly or partially denied, the Plan Administrator shall provide the Claimant with a notice identifying (1) the reason or reasons for such denial, (2) the pertinent Plan provisions on which the denial is based, (3) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits, and (4) a statement describing the Claimant's right to bring an action under section 502(a) of ERISA. The determination rendered by the Plan Administrator shall be binding upon all parties.  If the Plan Administrator provides the claimant with a final notice of denial of appeal, in order to preserve his or her claim, the Claimant must file an action with respect to the denied claim no later than 180 days following the date of the Plan Administrator's final notice of denial of appeal.

(f)     Determinations of Disability.   If the claim relates to a disability determination, determinations of the Plan Administrator shall include the information required under applicable United States Department of Labor regulations.

Section 12.08  <u>WRITTEN COMMUNICATION</u>

To the extent permitted by applicable Treasury and/or Department of Labor Regulations and accepted by the Plan Administrator and, as applicable, the Trustee, all provisions of the Plan and Trust that require written notices and elections shall be interpreted to mean authorized electronic and telephonic notices and elections.  Any notice made under the terms of the Plan may be made in any electronic or telephonic method.

Section 12.09  <u>ADVISORY LETTER</u>

The adopting Employer may rely on an advisory letter issued by the Internal Revenue Service as evidence that the Plan is qualified under Code section 401 only to the extent provided in Revenue Procedure 2011-49 and any superseding guidance.  The Employer may not rely on the advisory letter in certain other circumstances or with respect to certain qualification requirements, which are specified in the advisory letter issued with respect to the Plan and in Revenue Procedure 2011-49 and any superseding guidance.  In order to have reliance in such circumstances or with respect to such qualification requirements, application for a determination letter must be made to Employee Plans Determinations of the Internal Revenue Service. The practitioner will inform the adopting Employer of any amendments made to the Plan or of the discontinuance or abandonment of the Plan. The practitioner, CCH INCORPORATED, DBA ftwilliam.com may be contacted at 700 W. Virginia St., Suite 305, Milwaukee, WI 53204; 414-226-2442.

CONFIDENTIAL                                                          **WH_MDL_00139426**

# ARTICLE 13
# AMENDMENT, MERGER AND TERMINATION

### Section 13.01  AMENDMENT

The provisions of the Plan may be amended at any time and from time to time by the Plan Sponsor, provided, however, that:

(a)    No amendment to the Plan shall be effective to the extent that it has the effect of decreasing a Participant's accrued benefit and no amendment shall increase the duties and liabilities of the Trustee without the Trustee's consent. For purposes of this Subsection, a Plan amendment which has the effect of decreasing a Participant's Account balance, with respect to benefits attributable to service before the amendment, shall be treated as reducing an accrued benefit.

A Plan amendment may not decrease a Participant's accrued benefits, or otherwise place greater restrictions or conditions on a Participant's rights to Code section 411(d)(6) protected benefits, even if the amendment merely adds a restriction or condition that is permitted under the vesting rules in Code section 411(a)(3) through (11).  Notwithstanding the foregoing, an amendment described in the previous sentence does not violate Code section 411(d)(6) to the extent: (1) it applies with respect to benefits that accrue after the applicable amendment date; (2) the Plan amendment changes the Plan's Vesting Computation Period and it satisfies the applicable requirements under 29 CFR 2530.203-2(c); or (3) permitted under Code section 412(d)(2) or Treas. Reg. sections 1.411(d)-3 and 1.411(d)-4 and any superseding guidance.

No amendment to the Plan shall be effective to eliminate or restrict an optional form of benefit. The preceding sentence shall not apply to a Plan amendment that eliminates or restricts the ability of a Participant to receive payment of his or her Account balance under a particular optional form of benefit if the amendment is permitted under applicable Treasury Regulations.

A Plan amendment may also provide exceptions from the general prohibition against the elimination or restriction of optional forms of benefit for in-kind distributions and elective transfers as specified under Treas. Reg. section 1.411(d)-4 Q&A 2 and 3.

(b)    Amendment by Volume Submitter Practitioner. The volume submitter practitioner may amend any part of the Plan on behalf of the adopting Employer for changes in the Code, regulations, revenue rulings, other statements published by the Internal Revenue Service, including model, sample or other required good faith amendments, but only if their adoption will not cause the Plan to be individually designed, and for corrections of prior plans.

The volume submitter practitioner will no longer have the authority to amend the Plan on behalf of any adopting Employer as of either: (1) the date the Internal Revenue Service requires the Employer to file Form 5300 as an individually designed plan as a result of an Employer amendment to the Plan to incorporate a type of plan not allowable in the Master and Prototype/Volume Submitter program, as described in Rev. Proc. 2007-44 and Rev. Proc. 2011-49 and superseding guidance, or (2) as of the date the Plan is otherwise considered an individually designed plan due to the nature and extent of the amendments.

**CONFIDENTIAL**                                                                    **WH_MDL_00139427**

The volume submitter practitioner will maintain a record of the Employers that have adopted the Plan, and such practitioner will make reasonable and diligent efforts to ensure that adopting Employers have actually received and are aware of all Plan amendments and that such Employers adopt new documents when necessary. In the event that volume submitter practitioner licenses this document to a middleman who has not filed for a letter in their own name as an identical adopter, such middleman will be responsible for duties described in the preceding sentence.

(c)      The Plan Sponsor may: (1) change the choice of optional language in the plan document; (2) add overriding language in the plan document when such language is necessary to satisfy Code sections 415 or 416 because of the required aggregation of multiple plans; (3) amend administrative provisions of the Trust or custodial document and the name of any pooled trust in which the Plan's Trust will participate; (4) add certain sample or model amendments published by the Internal Revenue Service or other required good faith amendments which specifically provide that their adoption will not cause the Plan to be treated as individually designed; (5) add or change provisions permitted under the Plan and/or specify or change the effective date of a provision as permitted under the Plan; and (6) adopt other amendments permitted under Revenue Procedure 2011-49 and any superseding guidance that do not cause the Plan to become individually designed (this would include, but not be limited to, situations where a closing agreement under the Audit Closing Agreement Program or a compliance statement under the Voluntary Correction Program has been issued with respect to the Employer's Plan with regard to the amendment).

(d)      If the Plan's vesting schedule is amended, in the case of an Employee who is a Participant as of the later of the date the amendment is adopted or the date it becomes effective, the nonforfeitable percentage (determined as of such date) of such Employee's Employer-derived accrued benefit will not be less than the percentage computed under the Plan without regard to such amendment.

(e)      If the Plan's vesting schedule is amended, or the Plan is amended in any way that directly or indirectly affects the computation of the Participant's nonforfeitable percentage or if the Plan is deemed amended by an automatic change to or from a Top-Heavy vesting schedule, each Participant with at least 3 Years of Vesting Service with the Employer may elect, within a reasonable period after the adoption of the amendment or change, to have the nonforfeitable percentage computed under the Plan without regard to such amendment or change.  For Participants who do not have at least 1 Hour of Service in any Plan Year beginning after December 31, 1988, the preceding sentence shall be applied by substituting "5 Years of Vesting Service" for "3 Years of Vesting Service" where such language appears.  The period during which the election may be made shall commence with the date the amendment is adopted or deemed to be made and shall end on the latest of:

(1)      60 days after the amendment is adopted;

(2)      60 days after the amendment becomes effective; or

(3)      60 days after the Participant is issued written notice of the amendment by the Plan Administrator.

The election provided for in this Section 13.01 shall be made in writing and shall be irrevocable when made.

CONFIDENTIAL                                                      WH_MDL_00139428

(f)      Code section 411(d)(6) protected benefits will be available without regard to Employer discretion in accordance with Treas. Reg. section 1.411(d)(4), Q & A's #8 & 9.

(g)      An amendment or restatement of the Plan may be made by any method including a formal record of action by the Board or other written document and execution of such amendment or restatement may be made by written or electronic means.

## Section 13.02   MERGER AND TRANSFER

(a)      Merger.  In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant shall have a benefit in the surviving or transferee plan (as if such plan were then terminated immediately after such merger, consolidation or transfer) that is equal to or greater than the benefit he would have had immediately before such merger, consolidation or transfer in the plan in which he was then a Participant had such plan been terminated at that time.

(b)      Transfer.  The Plan Administrator may direct the Trustee to accept assets and related liabilities from another qualified plan in a form acceptable to the Trustee; provided that the Trustee receives sufficient evidence that the transferor plan is a tax-qualified plan and further provided that the Trustee shall not be liable for any breach of duty or error in respect of the other qualified plan.  The Plan Administrator may direct the Trustee to transfer assets and related liabilities to another qualified plan provided that it receives sufficient evidence that the transferee plan is a tax-qualified plan.

## Section 13.03   TERMINATION

(a)      It is the intention of the Plan Sponsor that this Plan will be permanent.  However, the Plan Sponsor reserves the right to terminate the Plan at any time for any reason.

(b)      Each entity constituting the Company reserves the right to terminate its participation in this Plan.  Each such entity constituting the Company shall be deemed to terminate its participation in the Plan if: (1) it is a party to a merger in which it is not the surviving entity and the surviving entity is not an affiliate of another entity constituting the Company; or (2) it sells all or substantially all of its assets to an entity that is not an affiliate of another entity constituting the Company.

(c)      Any termination of the Plan shall become effective as of the date designated by the Plan Sponsor.  Except as expressly provided elsewhere in the Plan, prior to the satisfaction of all liabilities with respect to the benefits provided under this Plan, no termination shall cause any part of the funds or assets held to provide benefits under the Plan to be used other than for the benefit of Participants or to meet the administrative expenses of the Plan.  In the event of the termination of the Plan the Account balance of each affected Participant will be nonforfeitable. In the event of a partial termination of the Plan the Account balance of each affected Participant will be nonforfeitable.  In the event of a complete discontinuance of contributions under the Plan, the Account balance of each affected Participant will be nonforfeitable.  Upon termination of the Plan, Participant Accounts shall be distributed in a single lump sum payment unless otherwise required pursuant to Article 7.

CONFIDENTIAL                                                    **WH_MDL_00139429**

# ARTICLE 14
# MISCELLANEOUS

## Section 14.01  NONALIENATION OF BENEFITS

(a)     Except as provided in Section 14.01(b), the Trust Fund shall not be subject to any form of attachment, garnishment, sequestration or other actions of collection afforded creditors of the Company, Participants or Beneficiaries under the Plan and all payments, benefits and rights shall be free from attachment, garnishment, trustee's process, or any other legal or equitable process available to any creditor of such Company, Participant or Beneficiary.  Except as provided in Section 14.01(b), no Participant or Beneficiary shall have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under the Plan, except the right to designate a Beneficiary.  Any reference to a Participant or Beneficiary shall include an Alternate Payee or the Beneficiary of an Alternate Payee.

(b)     Notwithstanding the foregoing, the Trustee and/or Plan Administrator may:

(1)     Subject to Section 14.02 below, comply with the provisions and conditions of any Qualified Domestic Relations Order pursuant to the provisions of Code section 414(p).

(2)     Comply with any federal tax levy made pursuant to Code section 6331.

(3)     Subject to the provisions of Code section 401(a)(13), comply with the provisions and conditions of a judgment, order, decree or settlement agreement issued on or after August 5, 1997 between the Participant and the Secretary of Labor or the Pension Benefit Guaranty Corporation relating to a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA.

(4)     Bring action to recover benefit overpayments.

## Section 14.02  RIGHTS OF ALTERNATE PAYEES

(a)     General. An Alternate Payee shall have no rights to a Participant's benefit and shall have no rights under this Plan other than those rights specifically granted to the Alternate Payee pursuant to a Qualified Domestic Relations Order that are consistent with this Section 14.02.

(b)     Distribution.  Notwithstanding any provision of the Plan to the contrary, the Plan Administrator may direct the Trustee to distribute all or a portion of a Participant's benefits under the Plan to an Alternate Payee in accordance with the terms and conditions of a Qualified Domestic Relations Order.  The Plan hereby specifically permits and authorizes distribution of a Participant's benefits under the Plan to an Alternate Payee in accordance with a Qualified Domestic Relations Order prior to the date the Participant has a Termination of Employment, or prior to the date the Participant attains his earliest retirement age as defined in Code section 414(p).

(c)     Investment Funds.  If the Qualified Domestic Relations Order does not specify the Participant's Accounts, or Investment Funds in which such Accounts are invested, from which amounts that are separately accounted for shall be paid to an Alternate Payee, such amounts shall be distributed, or

CONFIDENTIAL                                                                                    **WH_MDL_00139430**

segregated, from the Participant's Accounts, and the Investment Funds in which such Accounts are invested (excluding any amounts invested as a Participant loan), on a pro rata basis. A Qualified Domestic Relations Order may not provide for the assignment to an Alternate Payee of an amount that exceeds the balance of the Participant's vested Accounts after deduction of any outstanding loan.

(d)    Default Rules. Unless a Qualified Domestic Relations Order provides to the contrary:

(1)    Death Benefits. An Alternate Payee shall have the right to designate a Beneficiary who shall receive benefits payable to an Alternate Payee which have not been distributed at the time of the Alternate Payee's death. If the Alternate Payee does not designate a Beneficiary, or if the Beneficiary predeceases the Alternate Payee, benefits payable to the Alternate Payee which have not been distributed shall be paid pursuant to Section 7.04(c) (substituting "Alternate Payee" for "Participant"). Any death benefit payable to the Beneficiary of an Alternate Payee shall be paid in a single sum as soon as administratively practicable after the Alternate Payee's death.

(2)    Investment Direction. An Alternate Payee shall have the right to direct the investment of any portion of a Participant's Accounts payable to the Alternate Payee under such order in the same manner with respect to a Participant, which amounts shall be separately accounted for by the Trustee in the Alternate Payee's name.

(3)    Voting Rights. An Alternate Payee shall have the right to direct the Trustee as to the exercise of voting rights in the same manner as provided with respect to a Participant.

(e)    Withdrawals/Loans. An Alternate Payee shall not be permitted to make any withdrawals under Article 8 and shall not be permitted to make a loan from the separate Account established for the Alternate Payee pursuant to the Qualified Domestic Relations Order.

(f)    Treatment as Spouse. A former spouse may be treated as the spouse or surviving spouse and a current spouse will not be treated as the spouse or surviving spouse to the extent provided under a Qualified Domestic Relations Order.

(g)    Plan Procedures. The Plan Administrator shall be responsible for establishing reasonable procedures for determining whether any domestic relations order received with respect to the Plan qualifies as a Qualified Domestic Relations Order, and for administering distributions in accordance with the terms and conditions of such procedures and any Qualified Domestic Relations Order. Effective April 6, 2007, pursuant to DOL regulation 2530.206, a domestic relations order will not fail to be a Qualified Domestic Relations Order solely because the domestic relations order: (1) revises or is issued after another domestic relations order or Qualified Domestic Relations Order, or (2) the domestic relations order is issued after the Participant's death, divorce or Annuity Starting Date.

## Section 14.03    NO RIGHT TO EMPLOYMENT

Nothing contained in this Plan shall be construed as a contract of employment between the Employer and the Participant, or as a right of any Employee to continue in the employment of the Employer, or as a limitation of the right of the Employer to discharge any of its Employees, with or without cause.

CONFIDENTIAL                                                                  WH_MDL_00139431

## Section 14.04  NO RIGHT TO TRUST ASSETS

No Employee, Participant, former Participant, Beneficiary or Alternate Payee shall have any rights to, or interest in, any assets of the Trust upon Termination of Employment or otherwise, except as specifically provided under the Plan. All payments of benefits under the Plan shall be made solely out of the assets of the Trust.

## Section 14.05  GOVERNING LAW

This Plan shall be construed in accordance with and governed by the laws of Delaware to the extent not preempted by Federal law.

## Section 14.06  SEVERABILITY OF PROVISIONS

If any provision of the Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and the Plan shall be construed and enforced as if such provisions had not been included.

## Section 14.07  HEADINGS AND CAPTIONS

The headings and captions herein are provided for reference and convenience only, shall not be considered part of the Plan, and shall not be employed in the construction of the Plan.

## Section 14.08  GENDER AND NUMBER

Except where otherwise clearly indicated by context, the masculine and the neuter shall include the feminine and the neuter, the singular shall include the plural, and vice-versa.

## Section 14.09  DISASTER RELIEF

The Plan may grant temporary disaster relief in compliance with Code sections 1400M and 1400Q, and subsequent guidance and/or law, to the extent provided in a resolution by the Plan Sponsor. Such resolution by the Plan Sponsor may include, but is not limited to: (a) increasing the statutory limits on, delaying the repayment of, and/or waiving the adequate security requirement for Participants loans; (b) permitting qualified disaster distributions; and/or (c) permitting the re-contribution of prior disaster distributions by Participants.

Copyright © 2002-2016

CONFIDENTIAL

## EXECUTION PAGE

The undersigned agree to be bound by the terms of this Plan document and acknowledge receipt of same.

The parties have caused this Plan to be executed this _17_ day of _March_, 2016.

ROADCRAFT TECHNOLOGIES LLC,

Signature: X _____

Print Name: _Ronald Altbach_

Title/Position: _manager_

TRUSTEE:

X _____
Ronald Altbach

CONFIDENTIAL

# ROADCRAFT TECHNOLOGIES LLC
# FORMAL RECORD OF ACTION

The following is a formal record of action taken by the governing body of Roadcraft Technologies LLC (the "Company").

With respect to the amendment and restatement of the Roadcraft Technologies LLC Roth 401(k) Plan (the "Plan"), the following resolutions are hereby adopted:

**RESOLVED**:  That the Plan be amended and restated in the form attached hereto, which Plan is hereby adopted and approved;

**RESOLVED FURTHER**:  That the appropriate officers of the Company be, and they hereby are, authorized and directed to execute the Plan on behalf of the Company;

**RESOLVED FURTHER**:  That Ronald Altbach is hereby retained as the Trustee of the Plan; and

**RESOLVED FURTHER**:  That the officers of the Company be, and they hereby are, authorized and directed to take any and all actions and execute and deliver such documents as they may deem necessary, appropriate or convenient to effect the foregoing resolutions including, without limitation, causing to be prepared and filed such reports documents or other information as may be required under applicable law.

Dated this _17_ day of _March_ 2016.

X _____

Ronald Altbach

CONFIDENTIAL                    WH_MDL_00139434