# Exhibit 32



## SKATTEMINISTERIET

Departementschef Jens Brøchner

**Rapport**

**Intern Revision**

Revisionscenter Næstved

internrevision@skm.dk

30. maj 2013

J.nr. 13-0005403

Plannr. 12-014

Finansår 2012

*Læst*

*31. 5. 13*

# Revision af udbytte- og royaltyskat for 2012

## 1. Indledning

Skatteministeriets Interne Revision (SIR) har gennemført en revision af udbytte- og royaltyskat for 2012.

Formålet med revisionen er at vurdere:

- Om SKAT har tilrettelagt regnskabsfunktionen på en tilfredsstillende måde, herunder etableret forretningsgange og interne kontroller, der medvirker til at sikre en korrekt regnskabsaflæggelse.
- Om de initiativer som SKAT har sat i værk som følge af tidligere undersøgelser er dækkende og tilstrækkelige, jfr. SIRs revisionsrapport af området d. 10. maj 2010 jnr. 09-272022, hvori der blev givet en række anbefalinger.

## 2. Forudsætninger

Revisionen har omfattet:

- Udbytteskat (Forretningsområde 1156, 1157 og 1158)
- Royaltyskat (Forretningsområde 1160 og 1161)

I regnskabet for 2012 er nettoindtægterne for udbytteskat på i alt 6.363,5 mio. kr., mens indtægterne for royaltyskat er på i alt 130,0 mio. kr.

SIR har holdt møder med Regnskab 2, Proces og Administration, Afregning Person eKapital, Afregning Erhverv samt Afregning Erhverv og Vejledning.

Revisionen har endvidere omfattet besøg hos Regnskab 2, hvor vi blev orienteret om arbejdstilrettelæggelsen og sammen med relevante medarbejdere gennemgik bogførings- og afstemningsrutiner samt efterprøvede forretningsgange og kontroller som sikrer regnskabets rigtighed.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281103

Ved siden af gennemgang af bogførings- og afstemningsmateriale har SIR foretaget indsamling, gennemgang og vurdering af relevant materiale i form af interne beskrivelser, vejledninger og forretningsgange.

Revisionen har ikke omfattet revision af IT-systemer.

Revisionen er gennemført af Søren Kristensen og Lars Kørvell i perioden januar til maj 2013.

## 3. Observationer

### 3.1 Debitorer

SIR har gennemgået debitorkontiene. Alle angivelser kommer i 3S, via TastSelv eller ved tastning af Regnskab 2. Angivelser, hvor der skal betales udbytteskat, overføres dagligt automatisk fra 3S til SAP38[1]. Det er ved tidspunktet for registrering af angivelsen, at indtægten registres i SAP38 med modpost på et debitornummer under debitorkonto 3000.

Ved indbetaling af udbytteskat, efter indsendelse af papirangivelse, foretages en automatisk registrering på bank med modpost teknisk debitor. Medarbejdere i Regnskab 2 sørger løbende for at flytte poster fra teknisk debitor til de rigtige debitornumre på debitorkonto 3000. SIR har gennemgået Regnskab 2´s forretningsgange omkring behandling af debitorer. Gennemgangen har vist, at langt de fleste fordringer bliver udlignet inden for relativ kort tid. Ved brug af TastSelv får udlodder en OCR linje, som medfører at betalingen går direkte på debitorkonto 3000.

Revisionen har vist, at Regnskab 2 rykker løbende for fordringer. Regnskab 2 rykker 2 gange inden fordringen overdrages til Inddrivelse.

Fordringerne bliver stående på de enkelte firmakoder, selvom de bliver overdraget til Inddrivelse. I SAP 38 foretages en automatisk ændring af status på disse fordringer, så de fremkommer på de rapporter Inddrivelse trækker.

Revisionen har vist, at der henstår få saldi af ældre dato. Ved gennemgang af de væsentligste åbentstående saldi konstaterede SIR, at de alle var retskraftige og under behandling. Heriblandt en fordring inkl. renter på 620 mio. kr. som vedrører en konkurssag som endnu ikke er afsluttet.

Under gennemgang af Regnskab 2´s månedlige kontroller i forbindelse med regnskabsgodkendelsen konstaterede SIR, at Regnskab 2 undersøgte og opløste åbentstående poster på teknisk debitorer, indbetalingskonti mv.

---

[1] Selskaber skal angive udlodningen til SKAT. Samtidig skal den indeholdte udbytteskat af udlodningen indbetales til SKAT.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281104

Det er derudover SIRs opfattelse, at udbyttekontrollen[2] ligeledes bidrager til at få opløst ældre åbenstående poster. En væsentlig del af de fejl Regnskab 2 konstaterer under udbyttekontrollen skyldes, at selskaber har betalt og indberettet oplysning om udbyttemodtagere[3] i TastSelv, men ved en fejl mangler at angive beløbet. Det er SIRs opfattelse, at den type fejl behøvede Regnskab 2 ikke at vente med at finde ved den halvårlige udbyttekontrol. Efter SIRs opfattelse kunne det ske ved løbende at holde debitorkonti med åbentstående kreditposter op imod indberetninger i 3S.

*Regnskab 2 har hertil oplyst, at "I forbindelse med behandlingen af åbne poster rykkes for angivelser, som vedrører perioder, som ikke indgår i forstkommende udbyttekontrol. TastSelv fra juli 2010 har været udformet på en måde, så selskaberne troede de havde angivet, når de havde indberettet udbyttemodtagere, hvilket har øget mængden af åbne poster. Rykning for angivelser har altid altovervejende været i forbindelse med udbyttekontrollen, hvor udsøgningen altovervejende sker maskinelt".*

### Delkonklusion
Det er SIRs vurdering, at de åbentstående fordringer pr. 31.12.2012 var til stede og retskraftige.

Det er SIRs opfattelse, at Regnskab 2 løbende bør opløse de poster, hvor selskaber har betalt og indberettet oplysning om udbyttemodtagere, men mangler at angive.


### 3.2 Regnskabspraksis - Indregningskriteriet
Selve bogføringen af indtægt for udbytteskat sker i forbindelse med registreringen af angivelsen. Udbytteskat bliver således bogført, når den er angivet uanset om den er betalt eller ej. Regnskab 2 foretager ikke nogen periodisering ved tastning af angivelser. Det er tidspunktet for registrering af angivelsen som afgør, hvornår indtægten bliver indtægtsført i regnskabet.[4]

Ved indbetalingen af udbytteskat er det ligeledes tidspunktet for registreringen der afgør, hvornår indbetalingen bliver indregnet i regnskabet. Registreringen af indbetalingen i SKATs regnskab sker samtidig med indbetalingen, idet alle indbetalinger, hver dag bliver registreret på bank med modkonto teknisk debitor.

Selskaber skal senest angive og betale udbytteskat den 10. i måneden efter, at det er vedtaget at udlodde udbytte – hvis selskabets frist for betaling af A-skat er den sidste bankdag i måneden, er fristen udsat til den sidste bankdag i måneden efter den måned, hvor udlodningen er vedtaget.

---

[2] SKAT foretager 2 gange om året en udbyttekontrol, hvor felt 37 på selskabernes selvangivelse holdes op imod angivet udbytte registreret i 3S – se afsnit 3.6.

[3] Udover at angive og betale udbytteskat, skal selskabet indberette oplysning om den enkelte udbyttemodtager.

[4] For selskaber som angiver via TastSelv er registreringstidspunktet lig med angivelsestidspunktet.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281105

Rejser SKAT krav om indeholdelse af udbytteskat af en udlodning bogføres kravet som en indtægt i forbindelse med at kravet bliver rejst. Taber SKAT sagen udgiftsføres kravet på tidspunktet, hvor sagen tabes.

For Royaltyskat er det ligeledes tidspunktet for bogføring af royaltyskat som afgør, hvornår indtægten bliver indregnet i regnskabet. Der foretages ingen periodisering.

Ved renteberegning tages der udgangspunkt i betalingsfristen, som afhænger af vedtagelsesdatoen.

Ved refusion af udbytteskat er det tidspunktet for udbetaling af refusion, der afgør, hvornår refusionsbeløbet bliver udgiftsført. Det er SIRs vurdering, at der foretages løbende udbetaling af refusion, umiddelbart efter at sagsbehandlingen om anmodning er afsluttet.

Af regnskabsgodkendelsen for firmakode 6112 december 2012 fremgår, at Regnskab 2 ultimo 2012 havde knap 1.300 angivelser som manglede at blive tastet. Ultimo 2010 og 2011 manglede henholdsvis ca. 4.000 og 2.000 angivelser at blive tastet. SIR kan således konstatere, at antallet af angivelser der mangler at blive tastet, er faldende.

SIRs har analyseret bogføringen og foretaget et skøn af de samlede indtægter for de 1.300 angivelser, som først bliver tastet og indtægtsført i 2013. Skønnet er ca. 56 mio. kr. og er forbundet med en vis usikkerhed.

**Delkonklusion**

SIR finder, at SKATs nuværende måde at indtægtsføre udbytteskat på (angivelser som bliver tastet af Regnskab 2) ikke ligger indenfor de retningslinjer/regler som Budgetvejledningen og Moderniseringsstyrelsen har fastsat. SIR er bekendt med, at der er nedsat en arbejdsgruppe i SKAT som pt. arbejder med at komme med anbefalinger til regnskabspraksis og indregningskriterier for indtægter i SKAT. SKAT bør sikre sig, at udbytteskat bliver indregnet indenfor de retningslinjer/regler som Budgetvejledningen og Moderniseringsstyrelsen har fastsat.

### 3.3 Afstemning til fødesystemer

SIR har konstateret, at SKAT ikke foretager afstemning mellem 3S og SAP38. Ved gennemgang af de månedlige regnskabsgodkendelser fremgår, at der i maj måned 2012 er tastet angivelser svarende til ca. 1,6 mia. kr. i 3S som ved en fejl ikke tømmes til SAP38. Fejlen bliver opdaget ved at Regnskab 2 har mange indbetalinger fra debitorer som ikke bliver udlignet. Fejlen er efterfølgende blevet rettet.

SIR har fået oplyst, at SKAT ikke foretager afstemning mellem 3S og delsystemerne UDBY og IFPA under eKapital.

Confidential Pursuant to Protective Order

Det er ligeledes oplyst, at der ikke foretages afstemning eller anden form for kontrol af, at relevante oplysninger i UDBY og IFPA overføres korrekt til årsopgørelserne. I 2012 har der været poster i eKapital som SLUT-systemet ikke har hentet og som dermed i første omgang ikke kom med på årsopgørelser. Fejlen skyldes at udbytteskatteprocenten var blevet ændret fra 28% til 27%. Den konkrete fejl blev opdaget og SLUT-systemet er efterfølgende blevet rettet.

### Delkonklusion
Revisionen har således vist, at der i 2012 er sket fejl, hvor ikke alle data i 3S er overført til SAP38, ligesom ikke alle relevante data i eKapital blev overført korrekt til årsopgørelser for personer. Fejlene er i begge tilfælde blevet opdaget af anden vej end egentlige afstemning mellem systemer.

Det er SIRs vurdering, at de konkrete tilfælde, hvor der er sket fejl i 2012 viser, hvor vigtigt det er, at der bliver foretaget afstemning mellem systemerne. SKAT bør etablerer afstemninger eller anden form for kontrol som sikrer, at alle data leveres nøjagtigt og fuldstændigt mellem systemerne.

### 3.4 Refusion af udbytteskat
For udlændige indeholdes der udbytteskat ved udlodningen. Udbyttemodtagere kan søge refusion, hvis de er omfattet af en dobbeltbeskatningsoverenskomst (DBO) eller er fra et EU land. Eneste undtagelse er den såkaldte "VP-ordning", for værdipapirer indskrevet i Værdipapircentralen. VP-ordningen er en aftale mellem depotbankerne, Værdipapircentralen, SKAT og depotkunden (udbyttemodtageren). Der er for 12 lande indgået en aftale som betyder, at Værdipapircentralen for de indskrevne danske aktier/beviser sørger for, at der ved udlodning sker indeholdelse af udbytteskat med den korrekte procent/beløb, således at udbyttemodtager ikke skal søge om refusion.

*Afregning Person har hertil oplyst, at "den nedsatte udbytteskat kun kan ske, hvis både kunden og kundens depotbank har indgået en aftale. For at kontrollere dette, har eKapital med virkning fra 1. januar 2014 i Skattekontrolloven indført en pligt for depotføreren om at indberette en markering for den såkaldte VP-ordning. En efterfølgende kontrol/afstemning bliver herved mulig".*

For at opnå refusion skal udbyttemodtager indsende blanket til Regnskab 2 sammen med dokumentation for skattepligt til hjemlandet samt udbyttemeddelelse om modtaget udbytte og indeholdt udbytteskat.

For at reducere SKATs ressourceforbrug i forbindelse med anmodning om refusion, er der indgået en aftale med 3 pengeinstitutter kaldet "regnearksordningen", hvor disse pengeinstitutter sender refusionsanmodning på deres kunders vegne. Pengeinstitutterne står inde for det refusionsbeløb, som de anmoder om på kundernes vegne.

Confidential Pursuant to Protective Order                SKAT_MDL_001_00281107

SIR har gennemgået og efterprøvet Regnskabs 2´s forretningsgange omkring behandling, bogføring og udbetaling af refusion. Revisionen viste, at der er etableret funktionsadskillelse. Derudover viste revisionen, at de modtagne refusionsanmodninger udenfor regnearksordningen vurderes før refusionsbeløbet bliver udbetalt. I de tilfælde, hvor der ikke var tilstrækkelig dokumentation blev der anmodet om yderligere materiale, ligesom anmodninger blev afslået, hvis betingelserne ikke var opfyldt.

Blanketterne tastes enkeltvis, således at der er et kontrolspor, mens refusion via regnearksordningen tastes som sumposter.

Regnearkene indeholder de samme oplysninger som fremgår af de øvrige anmodninger. Nogle regneark er vedlagt dokumentation for skattepligt og udbyttemeddelelse, mens andre ikke er. Regnskab 2 har oplyst, at de i vid udtrækning har tillid til pengeinstitutterne og bilag indkaldes sjældent. SIR har fået oplyst, at dette kun er sket 2 gange i den tid regnearksordningen har eksisteret[5].

Bliver der via blanket søgt refusion 2 gange for den samme aktie, er systemet sat således op, at der vil komme en advisering 2. gang. Men da refusioner via regnearksordningen tastes som sumposter, vil en udbyttemodtager kunne søge refusion mere end en gang for den samme aktie enten både via blanket og regnearksordningen eller flere gange via regnearksordningen uden at det ville blive opdaget af SKAT.

SIR har konstateret, at refunderet udbytteskat er steget fra ca. 680 mio. kr. i 2010 til ca. 1.452 mio. kr. i 2012. SKAT har overfor SIR oplyst, at stigningen kan skyldes, at danske selskaber udlodder større udbytte til udenlandske aktionærer, men ikke fremlagt dokumentation herfor.

### Delkonklusion
Det er SIRs vurdering, at de tilrettelagte forretningsgange og interne kontroller sikrer en korrekt regnskabsmæssig registrering af refunderet udbytteskat til udlændige.

For refusionsanmodningerne udenfor regnearksordningen bliver grundlaget vurderet før der sker udbetaling af refusion, mens grundlaget under regnearksordningen kun sjældent vurderes. Det er SIRs vurdering, at SKATs kontrol med refusionsanmodninger, der kommer via regnearksordningen ikke er tilstrækkelig.

Det er SIRs opfattelse, at Regnskab 2 bør beskrive, hvad der skal kontrolleres/påses inden anmodning imødekommes og i højere grad påse grundlaget for refusion under regnearksordningen. Det er SKATs ansvar, at anmodning om refusion, under regnearksordningen, er korrekt inden der foretages udbetaling.

Det er SIRs vurdering, at SKAT bør sikre sig bedre imod, at der ikke sker uretmæssig refusion af udbytteskat. Muligheden herfor er blevet forbedret fra 1. ja-

---

[5] SKAT har indgået aftalerne omkring "regnearksordningen" med de 3 pengeinstitutter i henholdsvis 2001, 2005 og 2007.

Confidential Pursuant to Protective Order

nuar 2013, hvor alle udloddende selskaber skal angive udlodningen og indberette oplysning om udbyttemodtager samtidigt.

### 3.5 Regnskabsgodkendelse

SIR har gennemgået de kontroller Regnskab 2 har udført i forbindelse med regnskabsgodkendelsen for regnskabet ultimo 2012. Af *Vejledning regnskabsafslutning – lokale firmakoder* fremgår, hvilke interne kontroller Regnskab 2 skal foretage.

Revisionen har vist, at kontrollerne bliver udført, udskrevet, dateret og underskrevet, hvorefter de bliver afleveret til afdelingslederen, som opbevarer dem på sit kontor. Materialet opbevareres også elektronisk.

Det er SIRs vurdering at der løbende bliver fulgt op på de konti, som kontrollen omfatter. Åbentstående poster bliver løbende undersøgt, således at de kan blive opløst eller placeret de rigtige steder. Ultimo 2012 står der ikke væsentlige poster på tekniske debitorer, interimskonti mv., ligesom bankkontiene løbende bliver afstemt og udlignet med Moderniseringsstyrelsen.

Af de månedlige regnskabsgodkendelser for firmakode 6112 som fremsendes til Regnskab 1 fremgår, at månedens indtægter og udgifter, samt aktiver og passiver er gennemgået. Indbetalinger samt tastede værdi både for perioden samt år til dato er oplyst, ligesom antallet af angivelser, som mangler at blive tastet er oplyst. Af regnskabsgodkendelsen ultimo 2012 fremgår, at der år til dato er indbetalt knap 12 mia. kr. og den tastede værdi er på ca. 10,8 mia. kr. De oplyste tal svarer til henholdsvis kredit og debet bevægelsen på debitorkontoen (artskonto 3000 – Forretningsområde 1156 og 1157).

Det er SIRs opfattelse, at regnskabsgodkendelsen i sin nuværende form ikke giver tilstrækkelige informationer. Eksempelvis kan indbetalinger og tastede værdi ikke aflæses som henholdsvis kredit og debetbevægelserne på debitorkontoen, idet tilbageførte indtægter bliver posteret i modsat side på debitorkontoen. Den oplyst tastede værdi indeholder således ikke de tilbageførte indtægter, ligesom det oplyste beløb for indbetalinger også indeholder de udlignede beløb for tilbageførsler. Af regnskabet *Den endelige månedsrapport 2012* fremgår, at indtægterne for udbytteskat er på i alt 8.712 mio. kr. og for royaltyskat er på i alt 130,0 mio. kr.

Af SKATs *Vejledning regnskabsafslutning – lokale firmakoder* fremgår, hvorledes regnskabsgodkendelsen skal opbygges og hvad den skal indeholde.
Det fremgår heraf, at der i regnskabsgodkendelsen skal oplyses antal og beløb for de angivelser, som manglede at blive tastet. Efter SIRs opfattelse burde poster hvor SKAT risikerer at få en udgift, være nævnt. Eksempelvis har SKAT i 2011 indtægtsført ca. 620 mio. kr. inkl. renter vedrørende en ikke afgjort konkurssag, som muligvis skal tilbageføres, når sagen afsluttes.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281109

**Delkonklusion** Det er SIRs vurdering, at der løbende bliver fulgt op på relevante konti i forbindelse med den månedlige regnskabsgodkendelse. Åbentstående poster bliver løbende undersøgt, således at de kan blive opløst eller placeret de rigtige steder.

Det er SIRs vurdering, at de kontroller og afstemninger SKAT udfører i forbindelse med regnskabsgodkendelsen medvirker til at sikre regnskabets rigtighed for udbytte- og royaltyskat.

Det er dog SIRs opfattelse, at selve regnskabsgodkendelsen ikke giver tilstrækkelige informationer og dermed lever op til SKATs *Vejledning regnskabsafslutning – lokale firmakoder*. Derudover er det SIRs opfattelse, at regnskabsgodkendelsen burde nævne større sager, hvor SKAT med stor sandsynlighed risikerer at skulle tilbageføre tidligere indtægtsførte udbytteskatter.

### 3.6 Afstemninger/sandsynlighedskontrol – angivelse, indberetning og selskabets regnskab

Regnskab 2 foretager 2 gange om året en udbyttekontrol, hvor felt 37 på selskabernes selvangivelse (udloddet udbytte) holdes op imod angivet udbytte tastet i 3S. Et eksternt IT-firma bistår SKAT ved udsøgningen. Ved manglende angivelse udsender Regnskab 2 op til 2 rykkere. Forinden der udsendes rykkere kontrolleres det, at er er grundlag for at rykke. I 2. rykkerskrivelse anføres oplysning om mulige dagbøder. Adskillige selskaber, som ikke har reageret på rykkerne er sendt til Indsats.

SIR har konstateret, at muligheden for at pålægge dagbøder ikke har været taget i brug, ligesom muligheden for skønsmæssigt at fastsætte udbytteskatten heller ikke anvendes af SKAT.

Ved udbyttekontrollen finder SKAT de fejl, hvor selskaber har betalt og indberettet udbytte i TastSelv, men ved en fejl mangler at angive beløbet.

eKapital rykker de indberetningspligtige såfremt de indberetter færre udbyttemodtagere end året før eller hvis indberetningspligtige ikke har foretaget indberetning i indeværende år, men i tidligere år.

SKAT foretager ingen afstemning mellem angivet udbytte og indberetning.

Region København udførte i 2011 et indsatsprojekt for indkomståret 2008, for de selskaber, hvor der er forskel på angivelse og indberetning. Af 68.000 selskaber var der i alt ca. 20.000 selskaber, hvor der var en forskel. Af disse blev 1.500 udvalgt til udvidet kontrol. Projektet medførte, at 160 af de 1.500 selskaber fik en samlet forhøjelse på 58 mio. kr. Projektet førte ligeledes til, at revisorer for nogle af selskaberne blev anmeldt til Revisornævnet, hvor flere af sagerne endte med bøder til revisorerne.

Confidential Pursuant to Protective Order    SKAT_MDL_001_00281110

Der har tidligere været problemer med at kunne foretage afstemninger og kontroller, men det er delvis afhjulpet nu. Fra og med 2012 skulle de ikke VP-administrerede selskaber (ikke optaget til handel på reguleret marked og ikke indskrevet i VP) indberette og angive på samme tidspunkt. Fra og med 1. januar 2013 skal de depotførerne (bankerne) for de VP indskrevne selskaber/ investeringsforeninger/investeringsselskaber (optaget-/ikke optaget til handel på regulerermarked) indberette senest en måned efter at de udloddende selskaber/ investeringsforeninger/investeringsselskaber har indsendt deres angivelse. For 2012 kan der for de ikke indskrevne selskaber fortages afstemning mellem angivelse og indberetning.

*Afregning Person har hertil oplyst, at "at der også vil kunne foretages afstemning mellem angivelse og indberetning for de indskrevne selskaber/investeringsforeninger mv., men først i perioden efter den 20. januar 2013. Fra og med 2013, vil der kunne foretages afstemning ved udgangen af den efterfølgende måned".*

*Regnskab 2 har hertil oplyst, at "afstemning skal foretages manuelt for de ca. 75.000 selskaber, som udlodder udbytte ved sammenkøring af forskellige Business Objects univer ser".*

### Delkonklusion
Det er SIRs vurdering, at SKAT nu har mulighed for en effektiv kontrol mellem det som selskaberne angiver og det der bliver indberettet om den enkelte udbyttemodtager. Et tidligere indsatsprojekt for de ikke indskrevne selskaber har vist, at der er mange fejl og et væsentligt beløb bliver ikke angivet og betalt. Det er SIRs vurdering at SKAT bør foretage løbende afstemning af angivet udbytteskat og indberetning.

Det er SIRs opfattelse, at der ledelsesmæssigt bør tages stilling til, hvorvidt bestemmelserne for at pålægge dagbøder samt skønsmæssig fastsættelse tages i anvendelse som andre steder i organisationen.

### 3.7 Organisering og ansvar på udbytteområdet
Ansvaret for SKATs proces til håndtering af udbytteskat er delt på flere procesejere. Der er ikke defineret et overordnet ansvar for hele processen.

Regnskab 2 varetager bogholderifunktionen omkring udbytteskat. Kontorets arbejdsopgaver er bl.a. at taste blanketter vedrørende indberetning og angivelse, foretage rykkerprocedure vedrørende manglende indberetninger og angivelser, behandling af ansøgninger om refusion, attestation af skattepligt for danskere med udenlandske aktier, bogholderiopgaven vedrørende udbytte samt kontrol og afstemning af betaling og angivelse mv.

Afregning Person er procesejer på eKapital. Center for eKapital drifter eKapital der omfatter de obligatoriske indberetningspligter efter skattekontrolloven, som ikke er omfattet af eIndkomst. Procesejer for eKapital har oplyst, at eKapital i sin

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281111

opbygning er en slags "lagerhotel". Et "lagerhotel" hvor alle oplysninger til brug
for fx dannelsen af årsopgørelsen, til brug for servicebilaget, til SKATs automa-
tiske opgørelses- og beregningssystem, til kontrol, til compliance, til brug for
indsatsprojekter og afstemning af indkomster, udbytte mv. er samlet. eKapital
består af en række delsystemer, der har hver sit afgrænsede oplysningsområde, fx
renter, udbytter, køb og salg af værdipapirer, indskud på pensionsordninger. Det
er op til brugerne, at hente og anvende de indsamlede data.

SLUT-systemet har adgang til at hente oplysninger i de relevante delsystemer i
eKapital i forbindelse med dannelse og udskrivning af årsopgørelse for personer.

Afregning Erhverv, som er procesejer på udbytteangivelsen, varetager opgaven
omkring udvikling af forbedrede muligheder for TastSelv, der køres som et pro-
jekt i Afregning Erhverv. Formålet med forbedringerne er, at etablere et andet
indberetningsflow, således at det bliver lettere at foretage en korrekt indberet-
ning.

### Delkonklusion
Det er SIRs vurdering, at der er mange aktører og procesejer for området. Der
bør efter SIRs opfattelse etableres et overordnet ansvar (ledelsesmæssig fokus)
for hele processen til håndtering af udbytteskat.

### 3.8 Opfølgning på SIRs undersøgelse af Provenuet fra Kildebeskatning af udlæn-dige – udbytteskat (maj 2010)

SIRs undersøgelse fra maj 2010 viste bl.a.:
* At der ikke foretages afstemning mellem de udbytter som selskaberne
  angiver og de udbytter som indberettes for udbyttemodtagerne.
* At der kun med stor usikkerhed kunne opgøres et tilnærmelsesvist kor-
  rekt nettoprovenu fra refusionsordningen ud fra de oplysninger, der var i
  SKATs systemer.
* At SKAT mangler indberetninger/oplysninger til at kunne opgøre et kor-
  rekt nettoprovenu fra refusionsordningen.
* At regnskabs- og IT-systemer ikke i tilstrækkelig grad understøtter en
  korrekt opgørelse af nettoprovenu fra refusionsordningen.
* At der kan refunderes udbytteskat før skatten er indbetalt/indberettet til
  SKAT.

SIR anbefalede bl.a.:
* At der blev etableret et overordnet ansvar for hele processen til håndte-
  ring af udbyttebeskatningen.
* At der blev etableret et kontrolmiljø, som sikrede at der var overens-
  stemmelse mellem angivelse og indberetning af udbyttemodtagere.

På baggrund af revisionsrapporten besluttede Produktionsforum, at nedsætte en
arbejdsgruppe, som skulle komme med forslag til administrative og systemmæs-
sige ændringer, der kunne imødegå de uafklarede forhold i rapporten.

Confidential Pursuant to Protective Order

Arbejdsgruppen udarbejdede en række forslag til bedre håndtering af udbyttebe-skatning. I arbejdsgruppens indstilling til Produktionsforum d. 27. juni 2011 er rapportens konklusioner opsummeret til 2 kerneområder:

1. Der mangler afstemning af den udbytteskat som udbyttemodtagere god-skrives i forhold til udbytteskatten.
2. Refusion af dansk udbytteskat til udenlandske udbyttemodtagere og den tekniske behandling heraf mangler revisionsspor.

### Ad 1) Manglende afstemning af udbytteskat

Produktionsforum behandlede arbejdsgruppens forslag den 27. juni 2011 og be-sluttede, at Borger og Virksomheder samt Jura og Samfundsøkonomi arbejdede videre med forslaget om ændring af Kildeskattelovens § 66[6] samt de heraf føl-gende procesbeskrivelser og eventuelle feltlåsninger. Det blev endvidere indstil-let at arbejde videre med forslaget om tvungen TastSelv.

I bekendtgørelse nr. 1315 af 15. december 2011 om indberetningspligter mv. efter skattekontrolloven er der foretaget ændring, således, at fristen for angivelse, betaling og indberetning af udbyttemodtagere er blevet den samme. For de sel-skaber som ikke er indskrevet i Værdipapircentralen er ændringen foretaget med virkning for 2012, mens ændringen for de selskaber/investeringsforeninger/ in-vesteringsselskaber, som er indskrevet i Værdipapircentralen er foretaget med virkning fra 2013.

Afregning Erhverv har under denne revision oplyst, at håndteringen af forbed-ringerne af TastSelv køres som projekt i Afregning Erhverv. Det er ønsket, at den nye løsning for indberetning af udbytte overordnet set bl.a. skal indeholde følgende nye/forbedrede funktioner:

* Et nyt indberetnings flow som gør, at selskabet ved angivelse af udbytte samtidig skal oplyse om udbyttemodtager. Løsningen kontrollerer, at der er modtager på hele udlodningsbeløbet, således at der sker en beløbs-mæssig afstemning inden indberetning kan foretages. Dvs. ét samlet ind-beretnings flow mod den nuværende løsnings to indberetnings flows[7].
* Der udvikles en kladdefunktion, hvor indtastede data kan gemmes, redi-geres og indberettes senere.
* Tidligere indberettede udbyttemodtagere kan gemmes og hentes frem igen ved nye indberetninger.
* Der registreres årsag for den valgte udbytteprocent, hvis der er valgt en lavere udbytteprocent.

---

[6] Når Kildeskatteloven § 66 nævnes, skyldes det at der i indstillingen fra arbejdsgruppen anbefa-les at angivelsestidspunkt og indberetningstidspunktet skal være det samme.

[7] *Afregning Person har hertil oplyst, at "Denne løsning indeholder alene de ikke indskrevne selskaber i Værdipapircentralen, idet de har fælles pligt (angivelse og indberetning om udbytte-modtagere). De øvrige indskrevne selskaber, investeringsforeninger og investeringsselskaber har ikke samme pligt. De har alene pligten til at angive, hvor depotbanken har pligten til at indberet-te om udbyttemodtageren og pligten til at oplyse, hvilke kunder de har med de forskellige skatte-procentsatser, fx 0, 15, 25, 27 osv".*

Confidential Pursuant to Protective Order

Udviklingen af ny TastSelv-løsning ved angivelse af udbytteskat er i proces.
I projektet bliver der nu arbejdet på at kvalitetssikre og præcisere kravspecifika-
tionen, med henblik på at få et mere præcist bud på prisen af fase 1. Projektet har
på nuværende tidspunkt alene fokus på at færdiggøre kravspecifikation vedrø-
rende den nye TastSelv-løsning (fase 1).[8]

Hensigten har været, at idriftsætte den forbedrede funktionalitet inden Skattekon-
toen går i drift. Den nye indberetningsløsning kan imidlertid ikke nå at blive sat i
drift inden Skattekontoen sættes i gang efter planen i august 2013. Det forventes,
at den nuværende TastSelv-løsning, som er 2 separate spor, for angivelse af ud-
bytte og indberetning af modtagere bliver obligatorisk at anvende med virkning
fra 1. juli 2013. Bekendtgørelser herom er i ekstern høring på nuværende tids-
punkt. SKAT har oplyst, at der arbejdes hen imod at den nye TastSelv-løsning
for angivelse af udbytteskat og indberetning af udbyttemodtagere kan sættes i
drift omkring 1. april 2014. Der er dog ikke på nuværende tidspunkt taget ende-
lig beslutning om gennemførelse af projektet efter den nuværende tidsplan.

**Ad 2) Refusion af dansk udbytteskat til udenlandske udbyttemodtagere**
Af beslutningsprotokollen for Produktionsforum den 27. juni 2011 fremgår, at
Produktionsforum blev orienteret om, at der i OECD-regi er etableret en arbejds-
gruppe, som arbejder på fælles nettoafregning af udbytte til udenlandske aktio-
nærer. SKAT er med i et pilotprojekt med 7 andre lande, herunder flere store
pengeinstitutter.

SKAT har over for SIR redegjort for, at arbejdet i OECD har stået på i flere år.
Der er afleveret diverse rapporter og nedsat flere arbejdsgrupper, dels arbejdes
der sideløbende i andre regi. EU har et projekt FATCA aftalen med USA om
gensidig udveksling af oplysninger vedrørende depoter, konti m.v., som er blevet
prioriteret højest. I OECD ligger en brugbar model klar, men det er uklart hvad
EU's holdning er til denne. Modellen fordrer, at udenlandske pengeinstitutter
skal være med, og det vil kræve IT-udvikling. Tyskland, der har et system som
minder om den danske refusionsmodel, ved ikke helt endnu om de vil tilslutte sig
modellen. Det er SKATs vurdering, at det først vil være attraktivt for de uden-
landske pengeinstitutter at være med, hvis flere lande eller f.eks. et stort land
som Tyskland beslutter at tilslutte sig modellen. Sideløbende arbejder SKAT på
at udvide nettoafregningsmodellen til flere lande.

Delkonklusion
SKAT har oplyst, at den nye TastSelv-løsning for angivelse af udbytteskat og
indberetning af udbyttemodtagere er i proces og der arbejdes hen imod en idrifts-
sættelse omkring 1. april 2014. Når den nye TastSelv-løsning er implementeret
vil angivelsen (registrering af indtægten) i højere grad følge betalingen.

Reglerne er nu blevet ændret således, at fristen for at angive udbytteskat og ind-
berette udbytte er den samme, men at det forsat bliver foretaget i to flows.

---

[8] Der er pt. ikke taget endelig stilling til tidsplan for udviklingen af den nye TastSelv-løsnings
øvrige faser, herunder om der skal være ét samlet indberetningsflow.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281114

Der er i SKAT pt. ikke truffet endelig beslutning om at udvide TastSelv løsningen til ét flow, som arbejdsgruppen lagde op til i indstillingen til Produktionsforum[9]. SIR konstaterer, at SKAT i dag ikke foretager afstemning mellem angivelse og indberetning om udbyttemodtagere. Det er SIRs opfattelse, at nye regler med samme tidsfrist for at angive og indberette, har gjort det væsentligt nemmere at foretage en sådan afstemning. SIR finder det nødvendigt at SKAT foretager afstemning mellem angivet udbytte og indberetning om udbyttemodtagere, fordi angivelse og indberetning fortsat foretages i 2 flows.

SIR konstaterer, at SKAT sammen med andre OECD-lande arbejder på en fælles nettoafregning af udbytte til udenlandske aktionærer og at der indenfor en brugbar model klar. SKAT er imidlertid afhængig af at udenlandske pengeinstitutter vil deltage samt at større lande tilslutter sig modellen. Det er SIRs opfattelse, at SKAT har gjort en tilfredsstillende indsats i forhold til at indføre en fælles nettoafregning af udbytte til udenlandske aktionærer.

I undersøgelsen af Provenuet fra Kildebeskatning af udlændige – udbytteskat (maj 2010) anbefalede SIR, at der blev etableret et overordnet ansvar for hele processen til håndtering af udbyttebeskatning. Det er fortsat SIRs opfattelse, at der bør etableres et overordnet ansvar.

SIR har herudover ingen bemærkninger i forhold til opfølgningen af undersøgelsen (maj 2010), samt de tiltag SKAT har foretaget i forhold til Produktionsforums indstilling.

## 4. Konklusion og bemærkninger

### 4.1 Konklusion

På baggrund af den gennemførte revision er det *samlet* SIRs vurdering, at forvaltningen på udbytte og royaltyområdet har fungeret *ikke helt tilfredsstillende*.

Overordnet set er det SIRs vurdering at der løbende bliver fulgt op på relevante konti i forbindelse med den månedlige regnskabsgodkendelse. Åbentstående poster bliver løbende undersøgt, således at de kan blive opløst eller placeret de rigtige steder. Det er SIRs vurdering, at de kontroller og afstemninger SKAT udfører i forbindelse med regnskabsgodkendelsen medvirker til at sikre regnskabets rigtighed. Derudover er det SIRs vurdering, at de åbentstående fordringer pr. 31.12.2012 var til stede samt var retskraftige.

Om de initiativer som SKAT har sat i værk som følge af tidligere undersøgelse konstaterer SIR, at den nye TastSelv-løsning for angivelse af udbytteskat og indberetning om udbyttemodtagere er i proces og SKAT har oplyst, at der arbejdes

---

[9] I dag foretager de ikke VP-indskrevne selskaber både angivelse af udbytteskat samt indberetning om udbyttemodtagere. For de VP-indskrevne selskaber foretager det depotførende pengeinstitut/VP indberetningen til SKAT, mens selskabet selv angiver udbytteskatten til SKAT. Det depotførende pengeinstitut oplyser selskabet om det beløb der skal angives, da disse selskaber ikke kender sine aktionærerne og dermed det beløb der skal angives.

Confidential Pursuant to Protective Order

hen imod, at løsningen kan sættes i drift omkring 1. april 2014. Når den nye TastSelv-løsning er implementeret vil angivelsen (registrering af indtægten) i højere grad følge betalingen.

Reglerne er blevet ændret således, at fristen for at angive udbytteskat og indberette om udbyttemodtagere er den samme, men det bliver fortsat foretaget i to flows. Der er i SKAT pt. ikke truffet endelig beslutning om at udvide TastSelv løsningen til ét flow.

SIR konstaterer, at SKAT i dag ikke foretager afstemning mellem angivet udbytte og indberetning om udbyttemodtagere. Det er SIRs opfattelse, at nye regler med samme tidsfrist for at angive og indberette, har gjort det væsentligt nemmere at foretage en sådan afstemning. SIR finder det nødvendigt at SKAT foretager afstemning mellem angivet udbytte og indberetning om udbyttemodtagere, fordi angivelse og indberetning fortsat foretages i 2 flows.

Det er SIRs opfattelse, at SKAT har gjort en tilfredsstillende indsats i forhold til at indføre en fælles nettoafregning af udbytte til udenlandske aktionærer.

Ved bedømmelsen har SIR ligeledes lagt vægt på følgende:

- SIR finder, at SKATs nuværende måde at indtægtsføre udbytteskat på (angivelser som bliver tastet af Regnskab 2) ikke ligger indenfor de retningslinjer/regler som Budgetvejledningen og Moderniseringsstyrelsen har fastsat. SKAT bør sikre sig, at udbytteskat bliver indregnet indenfor de retningslinjer/regler som Budgetvejledningen og Moderniseringsstyrelsen har fastsat.
- Revisionen har vist, at der i 2012 er sket fejl, hvor ikke alle data i 3S er overført til SAP38, ligesom ikke alle data i eKapital blev overført korrekt til Årsopgørelserne. Fejlene er i begge tilfælde blevet opdaget af anden vej end egentlige afstemning mellem systemer. Det er SIRs vurdering, at de konkrete tilfælde, hvor der er sket fejl i 2012 viser, hvor vigtigt det er, at der bliver foretaget afstemning mellem systemerne. SKAT bør etablerer afstemninger eller anden form for kontrol, som sikrer, at alle data leveres nøjagtigt og fuldstændigt mellem systemerne.
- Det er SIRs vurdering, at de tilrettelagte forretningsgange og interne kontroller sikrer en korrekt regnskabsmæssig registrering af refunderet udbytteskat til udlændige.
- Det er SIRs opfattelse, at for refusionsanmodningerne udenfor regnearksordningen bliver grundlaget før udbetaling af refusion vurderet, mens grundlaget under regnearksordningen kun sjældent vurderes. Det er SIRs vurdering, at SKATs kontrol med refusionsanmodninger, der kommer via regnearksordningen ikke er tilstrækkelig. Det er SIRs opfattelse, at Regnskab 2 bør beskrive, hvad der skal kontrolleres/påses inden anmodning imødekommes og i højere grad påse grundlaget for refusion under regnearksordningen. Det er SKATs ansvar at anmodning om refusion, under regnearksordningen, er korrekt inden der foretages udbetaling.

Confidential Pursuant to Protective Order

- Det er SIRs vurdering, at selve regnskabsgodkendelsen ikke giver til-strækkelige informationer og dermed lever op til SKATs *Vejledning regnskabsafslutning – lokale firmakoder*. Derudover er det SIRs opfattel-se, at regnskabsgodkendelsen burde nævne større sager, hvor SKAT med stor sandsynlighed risikere at skulle tilbageføre tidligere indtægtsførte udbytteskatter.
- Det er SIRs opfattelse, at der ledelsesmæssigt bør tages stilling til hvor-vidt bestemmelserne for at pålægge dagbøder samt skønsmæssig fastsæt-telse tages i anvendelse som andre steder i organisationen.
- Det er SIRs vurdering, at der er mange aktører og procesejere for udbyt-teområdet. Der bør efter SIRs opfattelse etableres et overordnet ansvar (ledelsesmæssig fokus) for hele processen til håndtering af udbytteskat.

### 4.2 Bemærkninger

SIR har under revisionen identificeret forhold, som SIR anbefaler, at SKAT føl-ger op på.

Bemærkningerne, som er indeholdt i rapportteksten er gengivet nedenfor med angivelse af vigtigheden for opfølgning jf. skala i Bilag A.

| Afsnit | Bemærkninger | Vigtighed |
|---|---|---|
| 3.2. | Der er behov for at få fastlagt klare regler for regn-skabspraksis. Indregning af indtægter for udbytte-skat bør foretages, så de bliver indregnet indenfor de retningslinjer/regler som Budgetvejledningen og Moderniseringsstyrelsen har fastsat. | 1 |
| 3.7 | Der er behov for, at der bliver etableret et overord-net ansvar (ledelsesmæssig fokus) for hele proces-sen til håndtering af udbytteskat. | 1 |
| 3.3 | Der er behov for, at der bliver etableret afstemning eller anden form for kontrol som sikrer, at alle data leveres nøjagtigt og fuldstændigt mellem systemer-ne. | 1 |
| 3.6 3.8 | Der er behov for at for at foretage afstemning mel-lem angivelse og indberetning. | 1 |
| 3.6 | Der er behov for, at der ledelsesmæssigt tages stil-ling til hvorvidt bestemmelserne for at pålægge dagbøder samt skønsmæssig fastsættelse tages i anvendelse som andre steder i organisationen. | 1 |
| 3.4 | Der er behov for, at SKAT sikrer sig bedre imod, at der ikke sker uretmæssig refusion af udbytteskat. | 2 |
| 3.5 | Der er behov for at justere den månedlige regn-skabsgodkendelse, således at informationsværdien øges og den lever op til SKATs V*ejledning Regn-skabsafslutning – lokale firmakoder.* | 2 |
| 3.4 | Der er behov for, at der i forretningsgangene for udbetaling af refusion beskrives, hvad der skal kon-trolleres/påses forinden anmodning imødekommes | 3 |

Confidential Pursuant to Protective Order

## 5. Høring

Rapporten har været i høring i Regnskab 2, Betaling & Regnskab, Afregning Person, Afregning Erhverv samt Proces og Administration.

Der er modtaget høringssvar fra Regnskab 2, Betaling & Regnskab, Afregning Person og Afregning Erhverv. Faktuelle præciseringer og bemærkninger er så vidt mulig indarbejdet eller indsat med kursiv i rapporten.

Derudover har Regnskab 2 og Afregning Person afgivet følgende høringssvar (del af høringssvar som er af mere oplysende karakter):

Regnskab 2 har oplyst, *"at når Tast Selv-løsningen, som forventes at blive ind-ført 1. juli 2013 vil det være med de nuværende 2 flows. Der bør derfor fortsat være fokus på at få indført et nyt Tast Selv, som er i et flow".*

Afregning Person har oplyst, *"at Afregning Person har fokus på, at forbedre muligheder for banker og andre indberetningspligtige til at foretage deres ind-beretninger. Afregning Person er ved at igangsætte et projekt der skal forny de gamle TS-Tele indberetningsordninger og erstatte disse med FTP-gateway og TastSelv løsninger. Det er tanken at se på om der for hele udbytteområdet kan findes en fælles holdbar løsning der kan tilgodese begge typer af indberetnings-pligtige (banker og selskaber) om udbyttemodtagerne.*

*eKapital har løbende fokus på om der kan tages yderligere tiltag til at sikre en korrekt indeholdelse af udbytteskat (den korrekte udbytteprocent). De seneste tiltag har taget fokus på bankernes kunderegistrering af depoterne, og dermed at sikre modtageren at udbytteskatten nu også er den type som indeholdelsespro-centen peger på, fx*

▶ *en aktiv virksomhed/selskab mv.*
▶ *et investeringsselskab, en investeringsforening, et selskab osv.*
▶ *en person*
▶ *en person med et depot tilmeldt under den såkaldte VP-ordning*

*Ligeledes skal den faktiske indeholdte skat indberettes fra og med 1. januar 2011. Det betyder, at SKAT nu har mulighed for over årsopgørelsen at godskrive den faktisk indeholdte skat, og ikke som nu automatisk at godskrive 27 % for en person, eller en personlig erhvervsdrivende mv.*

*Siden sidste revisionsrapport har eKapital fået ændret skattekontrolloven såle-des, at der er obligatorisk indberetningspligt om udbytte/udlodning til skattefrie pensionsdepoter samt at der generelt i den obligatoriske indberetning fra depot-banken om udlodning af udbytte, skal indberettes CVR/SE nr. på det selskab, eller den investeringsforening/afdeling udlodningen stammer fra.*
*Sidstnævnte for at angivelsen fra den udlodningen stammer fra kan kobles op mod depotbankernes indberetninger om udbyttemodtagerne, og på den måde at kunne lave en afstemning af de to forskellige indberetninger.*

Confidential Pursuant to Protective Order

*Sidst men ikke mindst, havde eKapital budt ind med som en del af skattereform
kataloget med yderligere indberetninger, at kunne få indført en hjemmel til de
udstedende selskaber af aktier og beviser, at de meget tidligt i indkomstårets
start havde pligt til at fortælle SKAT og depotbankerne gennem VP-
indskrivningen, hvem de var af type som udloddende for på den måde at binde
administrationen af udbytteopgaven udenfor SKAT sammen med udbytteadmini-
strationen i hele SKAT (Årsopgørelsen og godskrivningen, selskabsselvangivel-
sen og udbytteadministrationen i Regnskab 2 sammen).
Desværre ser det ud til, at dette tiltag ikke lykkedes med virkning fra og med ind-
komståret 2014, men er udskudt til 2015/2016".*

Torben Ersbøll

Lars Kørvell

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281119

Bilag A

## Konklusion

De konklusioner, som er indeholdt i rapportteksten er gengivet med angivelse af nedennævnte karakterskala, jf. Rigsrevisionens Revisions Standard for årsrevision.

---

- **Meget tilfredsstillende**: *Virksomheden har opfyldt alle væsentlige standarder, og der er ikke behov for forbedringer på de undersøgte områder.*
- **Tilfredsstillende**: *Virksomheden har opfyldt hovedparten af de væsentlige standarder, men der er enkelte områder, hvor der er basis for forbedringer.*
- **Ikke helt tilfredsstillende**: *Virksomheden har ikke opfyldt flere af de væsentlige standarder. Der bør foretages forbedringer.*
- **Ikke tilfredsstillende**: *Virksomheden har ikke opfyldt hovedparten af de væsentligste standarder. Der skal snarest foretages forbedringer.*

---

## Bemærkninger

De bemærkninger, som er indeholdt i rapportteksten er gengivet nedenfor med angivelse af vigtigheden for opfølgningen, efter følgende skala:

---

1. **Væsentlig svaghed:** Dette vurderes som et kritisk problem, som omgående bør vurderes af den ansvarlige direktør for regnskab, da det kan medføre;
    a. *betydelige fejloplysninger i regnskab / bogføring som følge af væsentlige fejl eller mangler og / eller*
    b. *overtrædelse af gældende love, regler og retningslinjer.*

---

2. *Betydelig svaghed:* Dette vurderes som et problem, der bør tages hånd om, da det kan føre til;
    a. *unøjagtigheder i regnskab/bogføring og / eller*
    b. *mangel på kontrol i den reviderede organisatoriske enhed eller proces*

---

3. **Mindre svaghed:** Dette er et problem af mere formel karakter, hvis løsning vil føre til;
    a. *forbedring af kvaliteten af det reviderede område og / eller*
    b. *forbedring af effektiviteten af det reviderede område*

---

Side 18 / 18

Confidential Pursuant to Protective Order

## Ministry of Taxation

Jens Brøchner, Head of Department

**Report**

Internal Audit

Audit Centre Næstved

internrevision@skm.dk

30 May 2013

Our ref. 13-0005403

Plan no. 12-014

Financial year: 2012

[*Handwritten*: Read 31.5.13
[*Signed*]]

# Audit of dividend and royalty tax for 2012

## 1. Introduction

The Danish Ministry of Taxation's Internal Audit department (Internal Audit) has performed an audit of dividend and royalty tax for 2012.

The purpose of the audit is to assess:

- If SKAT has planned its accounting function in a satisfactory way, including set up business procedures and internal controls that help ensure correct presentation of financial statements.
- If the initiatives launched by SKAT as a result of previous investigations are sufficient and adequate, cf. the Internal Audit report of the area of 10 May 2010, our ref. 09-272022, which included a number of recommendations.

## 2. Basis

The audit included:

- Dividend tax (business areas 1156, 1157 and 1158)
- Royalty tax (business areas 1160 and 1161)

In financial statements for 2012, net income from dividend tax totals DKK 6,363.5 million whereas income from royalty tax totals DKK 130.0 million.

Internal Audit has held meetings with Accounting 2 (*Regnskab 2*), the Process and Administration department (*Proces og Administration*) and the Individuals eKapital department (*Afregning Person eKapital*), Businesses department (*Afregning Erhverv*) and Business and Guidance department (*Erhverv og Vejledning*).

The audit also included a visit with Accounting 2 at which they informed us about planning procedures and reviewed bookkeeping and reconciliation procedures with relevant employees as well as checked business procedures and controls to ensure the correctness of the financial statements.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281103_T

In addition to the review of bookkeeping and reconciliation material, Internal Audit has collected, reviewed and assessed relevant material in the form of internal descriptions, guidance material and business procedures.

The audit did not include audit of IT systems.

The audit was performed by Søren Kristensen and Lars Kørvell in the period January to May 2013.

## 3. Observations

### 3.1 Debtors

Internal Audit has reviewed the debtor accounts. All declarations are entered in 3S, via the TastSelv e-tax system or via entries made by Accounting 2. Declarations of dividend tax payments are transferred automatically on a daily basis from 3S to SAP38[1]. Income is registered in SAP38 when the declaration is registered with a debtor number counter item under debtor account 3000.

In connection with the payment of dividend tax, upon submission of a printed declaration, an automatic registration is performed on a bank with a technical debtor counter item. Employees in Accounting 2 regularly move items from the technical debtor to the actual debtor numbers on debtor account 3000. Internal Audit has reviewed Accounting 2's business procedures covering the processing of debtors. The review showed that most claims are balanced within a relatively short period of time. When using the TastSelv e-tax system, the distributor is assigned an OCR line which means that the payment goes directly to debtor account 3000.

The audit showed that Accounting 2 regularly sends reminders in respect of claims. Accounting 2 sends two reminders before the claim is submitted to the Collection department (*Inddrivelse*).

The claims remain under the individual business codes even though they are submitted to the Collection department. SAP38 automatically changes the status for these claims so they are visible on the reports drawn by the Collection department.

The audit revealed few older balances. In its review of the most material outstanding balances, Internal Audit found that they were all enforceable and being processed. This included a claim inclusive of interest of DKK 620 million which relates to a pending insolvency case.

During the review of Accounting 2's monthly controls in connection with the clearance of accounts, Internal Audit found that Accounting 2 checked and dissolved outstanding items for technical debtors, deposit accounts etc.

---

[1] Companies must declare distributions to SKAT. At the same time, the withheld dividend tax from the distribution must be paid to SKAT.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281103_T

Internal Audit furthermore finds that the dividend control[2] also contributes to dissolving older outstanding items. A significant part of the errors found by Accounting 2 during the dividend control were caused by companies having paid and reported information about dividend recipients[3] in the TastSelv e-tax system but having failed to declare the amount. Internal Audit finds that Accounting 2 should not have waited until the biannual control to find such errors. Internal Audit finds that this could be done on an ongoing basis by comparing debtor accounts with outstanding credit items to reports in 3S.

*In this respect, Accounting 2 has stated as follows: "In connection with the processing of outstanding items, reminders are submitted for declarations concerning periods that are not covered by the next dividend control. The TastSelv e-tax system has been challenged from July 2010 in such a way that the companies thought they had declared when they reported dividend recipients, and this increased the amount of outstanding items. Reminders for declarations have predominantly been submitted in connection with the dividend control in which searches were primarily performed electronically."*

**Partial conclusion**

Internal Audit finds that the outstanding claims as at 31 December 2012 existed and were enforceable.

Internal Audit finds that Accounting 2 should dissolve items on an ongoing basis when companies have paid and reported information about dividend recipients but have failed to declare.

**3.2 Accounting policies – recognition**

Income from dividend tax is entered in the financial statements in connection with the registration of the declaration. Hence, dividend tax is entered when it has been declared, irrespective of whether it has been paid or not. Accounting 2 does not perform any accrual when entering declarations. The time of registration of the declaration determines when the income is entered in the financial statements[4].

As regards the payment of dividend tax, the time of registration also determines when such payment is recognised in the financial statements. The payment is registered in SKAT's financial statements at the same time as the payment is made, and all payments are registered each day with a technical debtor counter item.

Companies must declare and pay dividend tax no later than on the 10th day of the month after it was decided to distribute dividend – if the company's deadline for paying A tax is the last banking day of the month, this deadline will be postponed until the last banking day of the month after the month in which the distribution was made.

---

[2] Twice a year, SKAT performs a dividend control in which item 37 on the companies' tax returns is compared to declared dividend registered in 3S – see section 3.6.

[3] In addition to declaring and paying dividend tax, the company must report information about the individual dividend recipient.

[4] For companies declaring via the TastSelv e-tax system, the registration time is the declaration time.

Confidential Pursuant to Protective Order

If SKAT raises a claim for withholding of dividend tax on a distribution, such claim is only entered in the financial statements as income when the claim is raised. If SKAT loses the case, the claim is expensed at the time when the case is lost.

For royalty tax, the time of the entry of the royalty tax also determines when such income is recognised in the financial statements. No accrual is made.

Computation of interest is based on the time of payment which depends on the adoption date.

As regards dividend tax refunds, the time of payment of such refund determines when the refund amount is expensed. Internal Audit finds that refunds are paid on an ongoing basis just after the processing of the refund request has been completed.

The clearance of accounts for company code 6112 December 2012 shows that Accounting 2 still had almost 1,300 declarations to enter at the end of 2012. At the end of 2012 and 2011, the department still had approximately 4,000 and 2,000 declarations that had to be entered. Hence, Internal Audit finds that the number of declarations not yet entered has fallen.

Internal Audit has analysed the bookkeeping and estimated the total income for the 1,300 declarations that will not be entered and recognised as income until 2013. The estimate is approximately DKK 56 million and is subject to some uncertainty.

**Partial conclusion**

Internal Audit finds that SKAT's current procedure for recognising dividend tax as income (declarations entered by Accounting 2) is not within the guidelines/rules determined by the budget guide (*Budgetvejledningen*) and the Agency for Modernisation (*Moderniseringsstyrelsen*). Internal Audit is aware that SKAT has set up a task force which is currently preparing recommendations for accounting policies and recognition criteria for income in SKAT. SKAT should ensure that dividend tax is recognised within the guidelines/rules determined by the budget guide and the Agency for Modernisation.

**3.3 Reconciliation with feeding systems**

Internal Audit finds that SKAT does not perform reconciliation between 3S and SAP38. A review of the monthly clearance of accounts show that declarations were entered in May 2012 corresponding to approximately 1.6 billion in 3S which has erroneously not been fed into SAP38. This error is discovered by Accounting 2 having many payments from debtors that are not set off. This error has subsequently been corrected.

Internal Audit has been informed that SKAT does not perform reconciliation between 3S and the sub-systems UDBY and IFPA under eKapital.

Confidential Pursuant to Protective Order                                     SKAT_MDL_001_00281103_T

It has also been disclosed that no reconciliation or any other control has been performed to ensure that the relevant information in UDBY and IFPA is transferred correctly to the tax assessment notices. In 2012, certain eKapital items were not retrieved by the SLUT system and were therefore at first not included in the tax assessment notices. The reason for the error was that the dividend tax rate has been changed from 28% to 27%. The specific error was found, and the SLUT system has subsequently been corrected.

**Partial conclusion**

The audit thus found that errors occurred in 2012 when not all data in 3S were transferred to SAP38, and not all relevant data in eKapital were transferred correctly to the tax assessment notices for persons. In both cases, the errors were discovered by other means than via actual system reconciliation.

Internal Audit finds that the specific cases in which errors have occurred in 2012 show the importance of reconciling systems. SKAT should set up reconciliation or other control procedures to ensure that all data are delivered accurately and completely between the systems.

**3.4 Dividend tax refunds**

For foreigners, dividend tax is withheld upon distribution. Dividend recipients may request a refund if they are covered by a double taxation treaty (DTT) or come from an EU member state. The only exception is the so-called "VP scheme" for securities registered in VP Securities. The VP scheme is an agreement between custodian banks, VP Securities, SKAT and the custody customer (the dividend recipient). An agreement has been concluded for 12 countries, which means that VP Securities for the registered Danish shares/certificates ensures that dividend tax is withheld at the correct rate/amount upon distribution so that the dividend recipient is not required to request any refunds.

*To this, the Individuals department has stated that "the reduced dividend tax can only be effected if both the customer and the customer's custodian bank have concluded an agreement. To check this, eKapital has, effective from 1 January 2014, entered a duty in the Danish Tax Control Act (skattekontrolloven) to report a flag for the so-called VP scheme. A subsequent control/reconciliation is then possible."*

To receive a refund, the dividend recipient must submit a form to Accounting 2 together with documentation for tax liability to the home country and a dividend notice on received dividend and withheld dividend tax.

To reduce SKAT's use of resources in connection with a request for a dividend tax refund, an agreement has been made with three banks called the "spreadsheet scheme" under which these banks submit the refund request on behalf of their customers. The banks guarantee the refund amount requested on behalf of their customers.

Confidential Pursuant to Protective Order

Internal Audit has reviewed and checked Accounting 2's business procedures as regards processing, bookkeeping and payment of refunds. The audit showed that functions have been separated. Furthermore, the audit showed that the refund requests received outside the spreadsheet scheme are assessed before the refund amount is paid. If documentation was insufficient, further material was requested, and the requests were rejected in the event of non-compliance.

The forms are entered separately so that there is a control trail, whereas refunds via the spreadsheet scheme are entered as summary items.

The spreadsheets contain the same information as the other requests. Some spreadsheets include documentation for tax liability and dividend notices, whereas others do not. Accounting 2 has stated that they trust the banks extensively and rarely request documentation. Internal Audit has been informed that this has only happened twice during the spreadsheet scheme period[5].

If a form is used to request a refund twice for the same share, the system is set up to give a notice the second time. However, as refunds via the spreadsheet scheme are entered as summary items, a dividend recipient will be able to request a refund more than once for the same share, either via both the form and the spreadsheet scheme or multiple times via the spreadsheet scheme without SKAT finding out.

Internal Audit has found that refunded dividend tax has increased from approximately DKK 680 million in 2010 to approximately DKK 1,452 million in 2012. SKAT has informed Internal Audit that the reason for this increase may be that Danish companies distribute higher dividends for foreign shareholders but has failed to provide documentation to this effect.

**Partial conclusion**

Internal Audit finds that the planned business procedures and internal controls ensure correct registration for accounting purposes of refunded dividend tax for foreigners.

For the refund requests outside the spreadsheet scheme, the basis is assessed before refunds are paid, whereas the basis under the spreadsheet scheme is rarely assessed. Internal Audit finds that SKAT's control of refund requests submitted via the spreadsheet scheme is not sufficient.

Internal Audit finds that Accounting 2 should describe what is controlled/checked before a request is met and to a higher extent check the basis for refunds under the spreadsheet scheme. SKAT is responsible for ensuring that refund requests under the spreadsheet scheme are correct, before any payment is made.

---

[5] SKAT concluded the "spreadsheet scheme" agreements with the three banks in 2001, 2005 and 2007.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_00281103_T

Internal Audit finds that SKAT should be better at ensuring that unwarranted dividend tax refunds are not made. This possibility was improved from 1 January 2013 when all distributing companies must declare the distribution and report information about the dividend recipient at the same time.

### 3.5 Clearance of accounts

Internal Audit has reviewed the controls performed by Accounting 2 in connection with the clearance of accounts for the financial year at the end of 2012. The guide on closing of accounts and local business codes (*Vejledning regnskabsafslutning – lokale koder*) details the internal controls to be performed by Accounting 2.

The audit showed that the controls are performed, printed, dated and signed and then handed over to the head of department who stores them in their office. The material is also stored electronically.

Internal Audit finds that the accounts covered by the control will be regularly followed up. Outstanding items will be investigated on an ongoing basis to ensure that they are dissolved or placed correctly. At the end of 2012, there are no material items on technical debtors, interim accounts etc., and the bank accounts are regularly reconciled and set off against the Agency for Modernisation.

The monthly clearance of accounts for business code 6112 which is submitted to Accounting 1 shows that income and expenses for the month as well as assets and liabilities have been reviewed. Payments and entered values for the period as well as for the year to date are disclosed as well as the number of declarations not yet entered. The clearance of accounts at the end of 2012 shows that a total of almost DKK 12 billion has been paid year to date, and the entered value is approximately DKK 10.8 billion. The disclosed figures correspond to credit and debit movements on the debtor account (account type 3000 – business areas 1156 and 1157).

Internal Audit finds that the clearance of accounts in its present form does not provide sufficient information. For example, payments and entered values cannot be read as credit and debit movements on the debtor account, as reversed income is entered on the opposite side on the debtor account. The stated entered value thus does not include the reversed income, and the disclosed amount for payments also includes the amounts set off for reversals. The final monthly report for 2012 (*Den endelige månedsrapport 2012*) shows that income from dividend tax totals DKK 8,712 million and for royalty tax DKK 130.0 million.

SKAT's guide on closing of accounts and local business codes states how the clearance of accounts must be structured and what it must include. Accordingly, the clearance of accounts must disclose numbers and amounts for the declarations not yet entered. Internal Audit finds that items for which SKAT risks incurring an expense should be mentioned. For example, SKAT entered income of

Confidential Pursuant to Protective Order                                                          SKAT_MDL_001_00281103_T

approximately DKK 620 million, including interest, for a pending insolvency case that may have to be reversed when the case is closed.

**Partial conclusion**

Internal Audit finds that relevant accounts are regularly followed up in connection with the monthly clearance of accounts. Outstanding items are investigated on an ongoing basis to ensure that they can be dissolved or placed correctly.

Internal Audit finds that the controls and reconciliations performed by SKAT in connection with the clearance of accounts help ensure the correctness of the accounts as regards dividend and royalty taxes.

However, Internal Audit finds that the actual clearance of accounts does not provide sufficient information and thus does not comply with SKAT's guide on closing of accounts and local business codes. Furthermore, Internal Audit finds that the clearance of accounts should mention bigger cases in which SKAT very likely risks having to reverse dividend tax previously entered as income.

### 3.6 Reconciliation/probability checks – declaration, reporting and the company's financial statements

Twice a year, Accounting 2 performs a dividend control in which field 37 on the companies' tax return (distributed dividend) is compared to declared dividend entered in 3S. An external IT undertaking helps SKAT perform the search. If no declaration has been made, Accounting 2 submits up to two reminders. Before the reminders are submitted, it is checked that there is in fact a basis for submitting them. The second reminder includes information about possible day fines. Several companies that have failed to respond to the reminders have been submitted to the Action department (*Indsats*).

Internal Audit finds that the possibility for imposing day fines has not been used, nor has SKAT used the possibility for estimating dividend tax.

During the dividend control, SKAT finds the errors where companies have paid and reported dividend in the TastSelv e-tax system but have erroneously failed to declare the amount.

eKapital sends reminders to the persons responsible for reporting if they report fewer dividend recipients than the previous year or if the persons responsible for reporting have failed to report for this year but not for previous years.

SKAT does not perform reconciliation between declared dividend and reporting.

In 2011, the Copenhagen Region conducted an action project for the 2008 income year for the companies where declaration and reporting differed. Such difference was found in a total of 20,000 out of 68,000 companies. Of these, 1,500 were taken out for additional control. Due to this project, 160 of the 1,500 companies were given a total increase of DKK 58 million. The project also resulted in some of the companies' auditors being reported to the Danish Auditor's Board (*Revisornævnet*), and in several cases , the auditors received fines.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281103_T

Previously, there were problems performing reconciliations and controls but these problems have partly been solved. From 2012, companies not managed by VP Securities (not admitted to trading on a regulated market and not registered with VP) had to report and declare at the same time. From 1 January 2013, the custodians (banks) for the companies/investment funds/investment companies registered with VP (admitted/not admitted to trading on a regulated marked) must report no later than a month after the distributing companies/investment funds/investments companies have submitted their declaration. For 2012, declaration and reporting can be reconciled for non-registered companies.

*In this respect, the Individuals department stated that "reconciliation can also be performed between declaration and reporting for the registered companies/investment funds etc. but not until the period after 20 January 2013. From 2013, reconciliation can be performed at the end of the subsequent month."*

*To this, Accounting 2 stated that "reconciliation must be performed manually for the approximately 75,000 companies that distribute dividend by integrating different Business Objects universes."*

**Partial conclusion**

Internal Audit finds that SKAT can now perform an efficient control between the companies' declarations and what is reported about the individual dividend recipient. A former action project for non-registered companies revealed a multitude of errors and a considerable amount that is not declared and paid. Internal Audit finds that SKAT should perform ongoing reconciliation of declared dividend tax and reporting.

Internal Audit finds that an executive decision should be made as to whether or not the decisions to impose day fines and estimates are used in the same way as elsewhere in the organisation.

**3.7 Organisation and responsibility in the dividend area**

The responsibility for SKAT's dividend tax processing process is distributed on several process owners. An overall responsibility for the entire process has not been defined.

Accounting 2 is responsible for the bookkeeping function as regards dividend tax. The department's tasks include entry of forms relating to reporting and declaration, reminder procedure relating to lack of reporting and declaration, processing of refund requests, certification of tax liability for Danes holding foreign shares, bookkeeping as regards dividend and control and reconciliation of payment and declaration etc.

The Individuals department is the process owner of eKapital. The Centre for eKapital runs eKapital which includes mandatory reporting obligations under the Tax Control Act which are not covered by eIndkomst. The process owner of eKapital has stated that eKapital is structured as a "warehouse".

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_00281103_T

A "warehouse" which holds all information to be used for e.g. the creation of the tax assessment notice, for the service voucher, for SKAT's automatic computation and calculation system, for control, for compliance, for action projects and reconciliation of income, dividend etc. eKapital comprises a number of sub-systems with their own limited area of information, such as interest, dividend, purchase and sale of securities, pension scheme deposits, It is up to the users to obtain and use the collected data.

The SLUT system has access to obtain information in the relevant sub-systems in eKapital in connection with the creation and printing of tax assessment notices for individuals.

The Businesses department which is a process owner of the dividend declaration, is responsible for developing better opportunities for the TastSelv e-tax system, which is run as a project under the Businesses department. The purpose of such improvements is to set up a different reporting flow to facilitate correct reporting.

**Partial conclusion**

Internal Audit finds that the area has many players and process owners. Internal Audit finds that an overall responsibility should be established (executive focus) for the entire dividend tax processing process.

**3.8 Follow-up on Internal Audit's investigation of the proceeds from taxation at source of foreigners and dividend tax (*Provenuet fra Kildebeskatning af udlændinge – udbytteskat*) (May 2010)**

Internal Audit's investigation from May 2010 showed, among other things:

- That reconciliation is not performed between the dividends declared by the companies and the dividends declared for the dividend recipients.
- That roughly correct net proceeds from the refund scheme could only be made with great uncertainty based on the information available in SKAT's systems.
- That SKAT lacks reports/information to be able to compute correct net proceeds from the refund scheme.
- That accounting and IT systems do not sufficiently support a correct computation of net proceeds from the dividend scheme.
- That dividend tax can be refunded before the tax has been paid/reported to SKAT.

Internal Audit recommended, among other things:

- To establish an overall responsibility for the entire dividend tax processing process.
- To establish a control environment that ensured that declarations and reported dividend recipients corresponded.

Based on the audit report, Production Forum (*Produktionsforum*) decided to set up a task force to suggest administrative and system changes to address any unclarified circumstances in the report.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281103_T

The task force prepared a number of suggestions for better dividend tax processing. The task force's recommendation to Production Forum on 27 June 2011 sums up the report's conclusions in two core areas:

1. There is no reconciliation of the dividend tax credited to dividend recipients in relation to dividend tax.

2. There is not audit trail for refunds of Danish dividend tax to foreign dividend recipients and the technical processing of such refunds.

**Re 1) No dividend tax reconciliation**

Production Forum considered the task force's suggestions on 27 June 2011 and decided that Citizens and Businesses (*Borger og Virksomheder*) as well as Legal and Economics (*Jura og Samfundsøkonomi*) would continue working on the suggestion to amend s. 66 of the Danish Withholding Tax Act (*kildeskatteloven*)[6] and the subsequent process descriptions and any locked fields. It was also recommended to continue working on the suggestion of mandatory use of the TastSelv e-tax system.

Executive Order no. 1315 of 15 December 2011 on reporting duties etc. under the Tax Control Act was amended so that the deadline for declaration, payment and reporting of dividend recipients is now the same. For the companies not registered with VP Securities, this amendment is effective for 2012, whereas the amendment for the companies/investment funds/investment companies registered with VP Securities is effective from 2013.

During this audit, the Businesses department has stated that the improvements of the TastSelv e-tax system are handled as a project in the Businesses department. It has been requested that the new solution for the reporting of dividend should generally contain the following improved functions, among others:

- A new reporting flow which means that when the company declares dividend, it must also disclose the dividend recipient. This solution ensures that there is a dividend recipient for the entire dividend amount so that the amount is reconciled before any reporting can be made. I.e. one overall reporting flow against the two reporting flows of the current solution[7].
- A draft function is developed in which the reported data can be stored, edited and later reported.
- Previously reported dividend recipients can be stored and retrieved later for new reporting.
- The reason for the selected dividend rate is registered if a lower dividend rate has been chosen.

---

[6] The reason for mentioning s. 66 of the Withholding Tax Act is that the taskforce recommended that the time of declaration and the time of reporting should be the same.

[7] To this, the Individuals department has stated as follows: *"This solution not only covers the companies not registered with VP Securities as they have a joint duty (declaration and reporting of dividend recipients). The other registered companies, investment funds and investment companies do not have the same obligation. They are only obliged to declare whereas the custodian is obliged to report the dividend recipient and the duty to disclose which customers are subject to which tax rates, e.g. 0, 15, 25, 27 etc."*

Page [PAGE  \* MERGEFORMAT]/18

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281103_T

The development of a new TastSelv e-tax solution in connection with the declaration of dividend tax is in process. The project strives to ensure a high quality for and clarify the requirements specification with a view to getting a more accurate estimate of the price of Phase 1. At present, the project only focuses on completing the requirements specification concerning the new TastSelv e-tax solution (Phase 1)[8].

The intention was to put the improved functionality into operation before the Tax Account system (*Skattekontoen*) is put into use. However, it is not possible to put the new reporting solution into operation before the Tax Account system is planned to be put into operation in August 2013. It is expected that it will be mandatory to use the current TastSelv e-tax solution, which covers two separate tracks for declaration of dividend and reporting of dividend recipients, from 1 July 2013. Executive orders to this effect are currently undergoing external consultation. SKAT has stated that they are striving to put the new TastSelv e-tax solution for the declaration of dividend and reporting of dividend recipients into operation around 1 April 2014. However, it has not yet been decided to carry out the project according to the current schedule.

### Re 2) Refunds of Danish dividend tax for foreign dividend recipients

The resolution records for Production Forum on 27 June 2011 state that Production Forum was informed that a task force has been set up in the framework of the OECD, the purpose of which is to ensure joint net payment of dividend to foreign shareholders. SKAT has jointed a pilot project with seven other countries including several big banks.

SKAT has explained to Internal Audit that this cooperation with the OECD has been going on for several years. Various reports have been delivered, and several task forces have been set up, and parallel work is performed in other frameworks. The EU has a project, the FATCA agreement with the USA, which covers the mutual exchange of information concerning custodies, accounts etc. which has been ranked highest among priorities. The OECD has a useful model ready for use, but it is unclear what the EU thinks of this model. The model requires the participation of foreign banks, and this requires IT development. Germany has a system much like the Danish refund model, but they have not fully decided to join the model. SKAT finds that the foreign banks will not find it attractive to participate until other countries or e.g. a large country such as Germany decides to opt in. At the same time, SKAT strives to expand the net payment model to more countries.

### Partial conclusion
SKAT has stated that the new TastSelv e-tax solution for declaration of dividend tax and reporting of dividend recipients is in process and planned to be put into operation around 1 April 2014. When the new TastSelv e-tax solution has been implemented, declaration (registration of income) will follow payments to a higher extent.

The rules have now been changed, and the deadline for declaring dividend tax and reporting dividend is the same but is still performed in two flows.

---

[8] The schedule for the development of the other phases of the new e-tax solution has not yet been determined, including whether it should involve one complete reporting flow.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281103_T

SKAT has currently not made any final decision to expand the TastSelv e-tax solution to one flow, like the task force suggested in its recommendation to Production Forum[9]. Internal Audit finds that today, SKAT does not perform reconciliation between declaration and reporting of dividend recipients. Internal Audit finds that the new rules with the same deadline for declaring and reporting have significantly facilitated such reconciliation. Internal Audit finds that it is necessary for SKAT to perform reconciliation between declared dividend and reporting of dividend recipients, because declaration and reporting is still performed in two flows.

Internal Audit finds that SKAT in cooperation with other OECD countries is working on a joint net payment process for dividend for foreign shareholders and that a useful model is ready. However, SKAT depends on the participation of foreign custodian banks and of large countries joining the model. Internal Audit finds that SKAT has made a satisfactory effort to introduce net payment of dividend to foreign shareholders.

In the investigation of proceeds from withholding taxation of foreigners and dividend tax (May 2010), Internal Audit recommended to establish overall responsibility for the entire dividend tax processing process. Internal Audit still finds that an overall responsibility should be established.

Internal Audit has no other comments in relation to the follow-up on the investigation (May 2010) or the measures taken by SKAT in relation to Production Forum's recommendation.

# 4. Opinion and comments

## 4.1 Opinion

Overall, based on the audit performed, Internal Audit finds that the administration of dividend and royalties did *not function quite satisfactorily*.

Internal Audit generally finds that the relevant accounts are followed up on a regular basis in connection with the monthly clearance of accounts. Outstanding items are regularly checked and either dissolved or placed correctly. Internal Audit finds that the controls and reconciliations performed by SKAT in connection with the clearance of accounts help ensure the correctness of the financial statements. Internal Audit also finds that the outstanding claims as at 31 December 2012 existed and were enforceable.

As regards the initiatives initiated by SKAT following the former investigation, Internal Audit finds that the new TastSelv e-tax solution for the declaration of dividend tax and reporting of dividend recipients is in process, and SKAT has stated that they are working towards putting the solution into operation

---

[9] Today, companies not registered with VP securities declare dividend tax and report dividend recipients. For the companies registered with VP Securities, the custodian bank/VP Securities report to SKAT, whereas the companies declare the dividend tax to SKAT. The custodian bank informs the company of the amount to be declared, as these companies do not know their shareholders and, hence, the amount to be declared.

Confidential Pursuant to Protective Order

around 1 April 2014. Once the new TastSelv e-tax solution has been implemented, the declaration (registration of income) will to a higher extent follow payments.

The rules have been changed, meaning that the deadline for declaring dividend and reporting dividend recipients is the same, but these two processes will continue to be performed in two flows. At present, SKAT has not finally decided whether or not to extent the TastSelv e-tax solution to one flow.

Internal Audit finds that SKAT does not, today, perform reconciliations between declared dividend and reporting of dividend recipients. Internal Audit finds that new rules with the same deadline for declaring and reporting have significantly facilitated such reconciliation. Internal Audit finds it necessary that SKAT reconciles declared dividend and reporting of dividend recipients because declaration and reporting are still performed in two flows.

It is Internal Audit's opinion that SKAT has made a satisfactory effort to introduce a common net payment of dividend to foreign shareholders.

In its assessment, Internal Audit also emphasised the following, among other factors:

- Internal Audit finds that SKAT's current approach to recognition of dividend tax (declarations entered by Accounting 2) is not within the guidelines/rules stipulated by the budget guide and the Agency for Modernisation. SKAT must ensure that dividend tax is recognised within these guidelines/rules.
- The audit has shown that errors were made in 2012 where all the data in 3S were not transferred to SAP38, and not all data in eKapital were transferred correctly to the tax assessment notices. In both cases, the errors were detected by other means than via an actual reconciliation between systems. Internal Audit finds that the specific cases where errors were detected in 2012 show the importance of performing reconciliations between the systems. SKAT should put in place reconciliation or other control methods to ensure that all data are delivered accurately and fully between the systems.
- Internal Audit finds that the planned business procedures and internal controls ensure a correct registration in the financial statements of dividend tax refunds to foreigners.
- Internal Audit finds that for the refund requests outside the spreadsheet scheme, the basis for refund payment is assessed whereas the basis under the spreadsheet scheme is rarely assessed. Internal Audit finds that SKAT's control of refund requests made via the spreadsheet scheme is not sufficient. Internal Audit finds that Accounting 2 should describe what must be checked/ensured before the request is met and to a higher extent check the refund basis under the spreadsheet scheme. It is SKAT's responsibility that refund requests under the spreadsheet scheme are correct before payment is made.
- Internal Audit finds that the clearance of accounts in itself does not provide sufficient information to comply with SKAT's guide on closing of accounts and local business codes. Furthermore, Internal Audit finds that the clearance of accounts should mention bigger cases in which SKAT most likely risks having to reverse dividend tax previously recognised as income.
- Internal Audit finds that the management should consider whether the provisions on imposing day fines and discretionary determination should be used in the same way as elsewhere in the organisation.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281103_T

- Internal Audit finds that there are many players and process owners for the dividend area. Internal Audit finds that an overall responsibility should be established (executive focus) for the entire dividend tax processing process.

## 4.2 Comments

Internal Audit recommends that SKAT follow up on the issues identified by Internal Audit during the audit.

The comments in the report are rendered below with an indication of the importance of follow-up, cf. the rating system in Exhibit A.

| Section | Comments | Importance |
|---------|----------|------------|
| 3.2. | Clear accounting policies must be determined. Dividend tax income should be recognised within the guidelines/rules determined by the budget guide and the Agency for Modernisation. | 1 |
| 3.7. | An overall responsibility (executive focus) must be established for the entire dividend tax processing process. | 1 |
| 3.3. | Reconciliation or another control method must be established to ensure that all data are delivered accurately and fully between the systems. | 1 |
| 3.6. 3.8. | Declaration and reporting must be reconciled. | 1 |
| 3.6. | Management must decide whether or not the provisions on imposing day fines and discretionary determination should be used in the same way as elsewhere in the organisation. | 1 |
| 3.4. | SKAT must, to a higher degree, ensure that dividend tax is not unlawfully refunded. | 2 |
| 3.5. | The clearance of accounts must be adjusted to ensure that the information value increases and that they comply with SKAT's guide on closing of accounts and local business codes. | 2 |
| 3.4. | The business procedures for payment of refunds must describe what needs to be checked before the request is met. | 3 |

Confidential Pursuant to Protective Order                                                SKAT_MDL_001_00281103_T

**5. Consultation**

The report was submitted for consultation in Accounting 2, Payment and Accounts, Individuals, Businesses and Process and Administration.

Responses have been received from Accounting 2, Payment and Accounts, Individuals and Businesses. Factual clarifications and comments have as far as possible been included in italics in the report.

In addition, Accounting 2 and Individuals have submitted the following response (part of the response of a more informative nature):

Accounting 2 has stated that *"when the TastSelv e-tax solution, which is expected to be introduced on 1 July 2013, is introduced, it will be with the current two flows. Consequently, the focus should still be on introducing a new TastSelv e-tax system with one flow."*

The Individuals department has stated that: *"The Individuals department is focusing on improving the possibility for banks and other persons required to report to perform such reporting. The Individuals department is launching a project to renew the old TS-Tele reporting schemes and replacing them with these FTP gateway and TastSelv e-tax solutions. The idea is to see if a sustainable solution can be found for the entire dividend area which benefits both types required to report (banks and companies) as regards dividend recipients.*

*eKapital constantly focuses on possible additional measures to ensure correct withholding of dividend tax (the correct dividend rate). The recent measures have focused on the banks' customer registration of the custodies and hence on ensuring that the dividend tax recipient is the type indicated by the withholding rate, e.g.:*

- *an active business/company etc.*
- *an investment company, an investment fund, a company, etc.*
- *a person*
- *a person with a custody registered under the so-called VP-scheme.*

*Furthermore, the tax actually withheld must be reported from 1 January 2011. This means that SKAT can now credit the actually withheld tax over the tax assessment notice and not as now credit 27% to a person or a personal trader etc.*

*Since the last audit report, eKapital has changed the Tax Control Act so that it now includes a mandatory reporting duty for dividend/distribution to tax-free pension custody accounts. Furthermore, the mandatory report from the custodian bank on dividend distribution must generally be reported with CVR/SE number of the company or the investment fund/sub-fund making the distribution. The latter to ensure that the declaration from the person where the distribution comes*

Page [PAGE  \* MERGEFORMAT]/18

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281103_T

*from can be linked to the custodian banks' reporting on dividend recipients and in this way allow for reconciliation of the two different reports.*

*Last, but not least, eKapital had suggested as part of the tax reform catalogue with additional reports to introduce an authority for the companies distributing shares and certificates, obliging them to, very early in the beginning of the income year, inform SKAT and the custodian banks via the VP registration of their distribution type to be able to connect the administration of the dividend task outside SKAT with the administration of the dividend task in all of SKAT (tax assessment notice and credits, company tax returns and dividend administration in Accounting 2 together).*

*Unfortunately, it seems that this measure has failed effective from the 2014 income year but has been postponed to 2015/2016."*

[Signed]                                               [Signed]

Torben Ersbøll                                      Lars Kørvell

Confidential Pursuant to Protective Order                                  SKAT_MDL_001_00281103_T

## Exhibit A

### Opinion

The findings in the report text are rendered using the rating system below, cf. the Danish national audit office's (*Rigsrevisionen*) auditing standard for annual audits.

- **Very satisfactory:** *The business has complied with all material standards and there is no need for improvements in the investigated areas.*
- **Satisfactory**: *The business has complied with the majority of the material standards, but in a few areas, there is room for improvement.*
- **Not quite satisfactory**: *The business has not complied with several of the material standards. Improvements should be made.*
- **Not satisfactory**: *The business has not complied with the majority of the material standards. Improvements must be made as soon as possible.*

### Comments

The comments made in the report text are rendered below, indicating the importance of follow-up, using the following rating system:

1. *Material weakness*: This is estimated as a critical problem that must immediately be assessed by the executive in charge of the financial statements, as it may lead to:
   a. *significant errors in the financial statements/bookkeeping records due to material errors or defects and/or*
   b. *violation of applicable laws, regulations and guidelines.*

2. *Significant weakness*: This is estimated as a problem that should be addressed as it may lead to:
   a. *inaccuracies in the financial statements/bookkeeping records and/or*
   b. *lack of control in the audited organisational unit or process*

3. *Minor* weakness: This is a problem of a more formal nature, the solution of which will lead to:
   a. *improved quality of the audited area and/or*
   b. *improved efficiency of the audited area.*

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281103_T