# Exhibit 70

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND THE GOVERNMENT OF THE FRENCH REPUBLIC FOR THE AVOIDANCE OF
DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT
TO TAXES ON INCOME AND CAPITAL

GENERAL EFFECTIVE DATE UNDER ARTICLE 33: 1 JANUARY 1996

## TABLE OF ARTICLES

Article 1---------------------------------Personal Scope
Article 2---------------------------------Taxes Covered
Article 3---------------------------------General Definitions
Article 4---------------------------------Resident
Article 5---------------------------------Permanent Establishment
Article 6---------------------------------Income From Real Property
Article 7---------------------------------Business Profits
Article 8---------------------------------Shipping and Air Transport
Article 9---------------------------------Associated Enterprises
Article 10--------------------------------Dividends
Article 11--------------------------------Interest
Article 12--------------------------------Royalties
Article 13--------------------------------Capital Gains
Article 14--------------------------------Independent Personal Services
Article 15--------------------------------Dependent Personal Services
Article 16--------------------------------Directors' Fees
Article 17--------------------------------Artistes and Sportsmen
Article 18--------------------------------Pensions
Article 19--------------------------------Public Remuneration
Article 20--------------------------------Teachers and Researchers
Article 21--------------------------------Students and Trainees
Article 22--------------------------------Other Income
Article 23--------------------------------Capital
Article 24--------------------------------Relief From Double Taxation
Article 25--------------------------------Non-Discrimination
Article 26--------------------------------Mutual Agreement Procedure
Article 27--------------------------------Exchange of Information
Article 28--------------------------------Assistance in Collection
Article 29--------------------------------Miscellaneous Provisions
Article 30--------------------------------Limitation on Benefits of the Convention
Article 31--------------------------------Diplomatic and Consular Officers
Article 32--------------------------------Provisions for Implementation
Article 33--------------------------------Entry Into Force
Article 34--------------------------------Termination
Letter of Submittal---------------------of 9 September, 1994
Letter of Transmittal-------------------of 19 September, 1994
Notes of Exchange---------------------of 31 August, 1994
The "Saving Clause"-------------------Paragraph 2 of Article 29

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA
AND THE GOVERNMENT OF THE FRENCH REPUBLIC FOR THE AVOIDANCE OF
DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT
TO TAXES ON INCOME AND CAPITAL SIGNED AT PARIS ON AUGUST 31,1994,
TOGETHER WITH TWO RELATED EXCHANGES OF NOTES

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, September 9, 1994.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the
Senate for advice and consent to ratification, the Convention Between the Government of the
United States of America and the Government of the French Republic for the Avoidance of
Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and
Capital, signed at Paris on August 31, 1994, together with two related exchanges of notes signed
on the same date.

The new Convention will replace the existing income tax convention between the United
States and France, which was signed in 1967 and amended by Protocols signed in 1970, 1978,
1984, and 1988, and the side letters relating thereto. The new Convention maintains many
provisions of the existing convention; but it also provides certain additional benefits, and it
updates the text to reflect current tax treaty policies.

Like all U.S. income tax conventions, this Convention provides rules specifying when
income that arises in one of the countries and is derived by residents of the other country may be
taxed by the country in which the income arises (the "source country"). Rules are provided for
each category of income, such as business profits, investment income, and personal service
income. The Convention confirms that the country of residence will avoid international double
taxation by providing relief for the tax imposed by the source country. It also provides for
administrative cooperation between the tax authorities of the two countries in applying the
Convention and the taxes covered by the Convention. The benefits of the Convention are limited
to qualified residents of the two countries.

The new Convention confirms that residents of each country include tax-exempt
organizations created for charitable and other not-for-profit purposes or for purposes of providing
pension benefits, and extends to them part of the dividend tax credit that France provides in the

Convention to other U.S. portfolio investors. It also addresses the treatment of dividends paid by regulated investment companies and real estate investment trusts, bringing those provisions into line with current U.S. treaty policy. The new Convention clarifies the scope of the exemption at source of copyright royalties.

An important improvement in the new Convention is the modernization of the limitation on benefits provisions, designed to ensure that the benefits of the Convention are enjoyed only by those persons intended to derive such benefits. The compliance aspects of the Convention are also strengthened by bringing up to date the provisions concerning associated enterprises and the exchange of tax information.

The new Convention preserves the special French tax benefits for U.S. citizens residing in France and for French residents who are partners of U.S. partnerships.

The exchanges of diplomatic notes accompany the Convention and state the understandings of the two delegations with respect to the application of the Convention in specified cases.

The United States and France will notify each other when their respective constitutional and statutory requirements for the entry into force of the Convention have been satisfied. The Convention will enter into force on the date of receipt of the later of those notifications. The provisions concerning taxes on dividends, interests, and royalties and the U.S. excise tax on insurance premiums paid to foreign insurers will take effect on the first day of the second month following the entry into force. The provisions concerning other taxes generally will take effect for taxable years or taxable events occurring on or after January 1 of the year following the entry into force. However, certain provisions concerning the availability of the French dividend tax credit and the application of the copyright royalty exemption will apply for dividends and royalties paid or credited on or after January 1, 1991. The 1967 convention and the related exchanges of letters will cease to have effect as of the date on which the provisions of this Convention become effective.

A technical memorandum explaining in detail the provisions of the Convention will be prepared by the Department of Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of the Treasury and the Department of State cooperated in the negotiation of the convention. It has the full approval of both Departments.

Respectfully submitted,

WARREN CHRISTOPHER.

LETTER OF TRANSMITTAL

THE WHITE HOUSE, *September 19, 1994.*

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification the Convention Between the Government of the United States of America and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, signed at Paris on August 31, 1994, together with two related exchanges of notes. Also transmitted for the information of the Senate is the report of the Department of State with respect to the Convention.

The Convention replaces the 1967 income tax convention between the United States of America and the French Republic and the related protocols and exchanges of notes. The new Convention more accurately reflects current income tax treaty policies of the two countries.

I recommend that the Senate give early and favorable consideration to the Convention and related exchanges of notes and give its advice and consent to ratification.

WILLIAM J. CLINTON.

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES
OF AMERICA AND THE GOVERNMENT OF THE FRENCH REPUBLIC FOR THE
AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL
EVASION WITH RESPECT TO TAXES ON INCOME AND CAPITAL

The Government of the United States of America and the Government of the French
Republic, desiring to conclude a new convention for the avoidance of double taxation and the
prevention of fiscal evasion with respect to taxes on income and capital, have agreed as follows:

ARTICLE 1
Personal Scope

This Convention shall apply only to persons who are residents of one or both of the
Contracting States, except as otherwise provided in the Convention.

ARTICLE 2
Taxes Covered

1. The taxes which are the subject of this Convention are:
    (a) in the case of the United States:
        (i) the Federal income taxes imposed by the Internal Revenue Code (but
excluding social security taxes); and
        (ii) the excise taxes imposed on insurance premiums paid to foreign
insurers and with respect to private foundations
(hereinafter referred to as "United States tax"). The Convention, however, shall apply to
the excise taxes imposed on insurance premiums paid to foreign insurers only to the
extent that the risks covered by such premiums are not reinsured with a person not
entitled to exemption from such taxes under this or any other income tax convention
which applies to these taxes;
    (b) in the case of France, all taxes imposed on behalf of the State, irrespective of
the manner in which they are levied, on total income, on total capital, or on elements of
income or of capital, including taxes on gains from the alienation of movable or
immovable property, as well as taxes on capital appreciation, in particular:
        (i) the income tax (l'impôt sur le revenu);
        (ii) the company tax (l'impôt sur les sociétés):
        (iii) the tax on salaries (la taxe sur les salaires) governed by the provisions
of the Convention applicable, as the case may be, to business profits or to income
from independent personal services; and
        (iv) the wealth tax (l'impôt de solidarité sur la fortune) (hereinafter
referred to as "French tax").

2. The Convention shall apply also to any identical or substantially similar taxes that are
imposed after the date of signature of the Convention in addition to, or in place of, the existing
taxes. The competent authorities of the Contracting States shall notify each other of any
significant changes which have been made in their respective taxation laws and of any official
published material concerning the application of the Convention, including explanations,
regulations, rulings, or judicial decisions.

ARTICLE 3
General Definitions

1. For the purposes of this Convention:

(a) the term "Contracting State" means the United States or France, as the context requires;

(b) the term "United States" means the United States of America, but does not include Puerto Rico, the Virgin Islands, Guam, or any other United States possession or territory. When used in a geographical sense, the term "United States" means the states thereof and the District of Columbia and includes the territorial sea adjacent to those States and any area outside the territorial sea within which, in accordance with international law, the United States has sovereign rights for the purpose of exploring and exploiting the natural resources of the seabed and its subsoil and the superjacent waters;

(c) the term "France" means the French Republic and, when used in a geographical sense, means the European and Overseas Departments of the French Republic and includes the territorial sea and any area outside the territorial sea within which, in accordance with international law, the French Republic has sovereign rights for the purpose of exploring and exploiting the natural resources of the seabed and its subsoil and the superjacent waters;

(d) the term "person" includes, but is not limited to, an individual and a company;

(e) the term "company" means any body corporate or any entity which is treated as a body corporate for tax purposes;

(f) the terms "enterprise of a Contracting State" and "enterprise of the other Contracting State" mean, respectively, an enterprise carried on by a resident of a Contracting State and an enterprise carried on by a resident of the other Contracting State;

(g) the term "international traffic" means any transport by a ship or aircraft, except when the ship or aircraft is operated solely between places in a Contracting State;

(h) the term "competent authority" means:

(i) in the United States, the Secretary of the Treasury or his delegate; and

(ii) in France, the Minister in charge of the budget or his authorized representative.

2. As regards the application of the Convention by a Contracting State, any term not defined herein shall, unless the competent authorities agree to a common meaning pursuant to the provisions of Article 26 (Mutual Agreement Procedure), have the meaning which it has under the taxation laws of that State.

ARTICLE 4
Resident

1. For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation, or any other criterion of a similar nature. But this term does not include any person who is liable to tax in that State in respect only of income from sources in that State, or of capital situated therein.

2.      (a) France shall consider a U.S. citizen or an alien admitted to the United States for permanent residence (a "green card" holder) to be a resident of the United States for the purposes of paragraph 1 only if such individual has a substantial presence in the United States or would be a resident of the United States and not of a third State under the principles of subparagraphs (a) and (b) of paragraph 3.

(b) The term "resident of a Contracting State" includes:

(i) that State, a political subdivision (in the case of the United States) or local authority thereof, and any agency or instrumentality of such State, subdivision, or authority;

(ii) a pension trust and any other organization established in that State and maintained exclusively to administer or provide retirement or employee benefits that is established or sponsored by a person that is a resident of that State under the provisions of this Article; and any not-for-profit organization established and maintained in that State, provided that the laws of such State or (in the case of the United States) a political subdivision thereof limit the use of the organization's assets, both currently and upon the dissolution or liquidation of such organization, to the accomplishment of the purposes that serve as the basis for such organization's exemption from income tax; notwithstanding that all or part of the income of such trust, other organization, or not-for-profit organization may be exempt from income taxation in that State;

(iii) in the case of the United States, a regulated investment company, a real estate investment trust, and a real estate mortgage investment conduit; in the case of France, a "société d'investissement a capital variable" and a "fonds commun de placement"; and any similar investment entities agreed upon by the competent authorities of both Contracting States;

(iv) a partnership or similar pass-through entity, an estate, an trust (other than one referred to in subparagraph (ii) or (iii) above), but only to the extent that the income derived by such partnership, similar entity state, or trust is subject to tax in the Contracting State as the income of a resident, either in the hands of such partnership, entity, estate, or trust or in the hands of its partners, beneficiaries, or grantors, it being understood that a "société de personnes," a "groupement d'intérêt économique" (economic interest group), or a "groupement européen d'intérêt économique" (European economic interest group) that is constituted in France and has its place of effective management in France and that is not subject to company tax therein shall be treated as a partnership for purposes of United States tax benefits under this Convention.

3. Where, by reason of the provisions of paragraphs 1 and 2, an individual is a resident of both Contracting States, his status shall be determined as follows:

(a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both Contracting States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (center of vital interests);

(b) if the State in which he has his center of vital interests cannot be determined, or if he does not have a permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;

(c) if he has an habitual abode in both States or in neither of them, he shall be

deemed to be a resident of the State of which he is a national;

(d) if he is a national of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

4. Where, by reason of the provisions of paragraphs 1 and 2, a person other than an individual is a resident of both Contracting States, the competent authorities shall endeavor to settle the question by mutual agreement, having regard to the person's place of effective management, the place where it is incorporated or constituted, and any other relevant factors. In the absence of such agreement, such person shall not be considered to be a resident of either Contracting State for purposes of enjoying benefits under this Convention.


ARTICLE 5

Permanent Establishment

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

2. The term "permanent establishment" includes especially:

(a) a place of management;

(b) a branch;

(c) an office;

(d) a factory;

(e) a workshop; and

(f) a mine, an oil or gas well, a quarry, or any other place of extraction of natural resources.

3. The term "permanent establishment" shall also include a building site or construction or installation project, or an installation or drilling rig or ship used for the exploration or to prepare for the extraction of natural resources, but only if such site or project lasts, or such rig or ship is used, for more than twelve months.

4. Notwithstanding the preceding provisions of this Article, the term "permanent establishment" shall be deemed not to include:

(a) the use of facilities solely for the purpose of storage, display, or delivery of goods or merchandise belonging to the enterprise;

(b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display, or delivery;

(c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;

(d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise, or of collecting information, for the enterprise;

(e) the maintenance of a fixed place of business solely for the purpose of carrying on, for the enterprise, any other activity of a preparatory or auxiliary character;

(f) the maintenance of a fixed place of business solely for any combination of the activities mentioned in subparagraphs (a) to (e), provided that the overall activity of the fixed place of business resulting from this combination is of a preparatory or auxiliary character.

5. Notwithstanding the provisions of paragraphs 1 and 2, where a person - other than an agent of an independent status to whom paragraph 6 applies - is acting on behalf of an enterprise and has and habitually exercises in a Contracting State an authority to conclude contracts in the name of the enterprise, that enterprise shall be deemed to have a permanent establishment in that State in respect of any activities which that person undertakes for the enterprise, unless the activities of such person are limited to those mentioned in paragraph 4 which, if exercised through a fixed place of business, would not make this fixed place of business a permanent establishment under the provisions of that paragraph.

6. An enterprise shall not be deemed to have a permanent establishment in a Contracting State merely because it carries on business in that State through a broker, general commission agent, or any other agent of an independent status, provided that such persons are acting in the ordinary course of their business as such.

7. The fact that a company which is a resident of a Contracting State controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.

ARTICLE 6
Income From Real Property

1. Income from real property (including income from agriculture or forestry) situated in a Contracting State may be taxed in that State.

2. The term "real property" shall have the meaning which it has under the law of the Contracting State in which the property in question is situated. The term shall in any case include options, promises to sell, and similar rights relating to real property, property accessory to real property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, usufruct of real property and rights to variable or fixed payments as consideration for the working of or the right to work, mineral deposits, sources and other natural resources. Ships and aircraft shall not be regarded as real property.

3. The provisions of paragraph 1 shall apply to income from the direct use, letting, or use in any other form of real property.

4. The provisions of paragraphs 1 and 3 shall also apply to income from real property of an enterprise and to income from real property used for the performance of independent personal services.

5. Where the ownership of shares or other rights in a company entitles a resident of a Contracting State to the enjoyment of real property situated in the other Contracting State and held by that company, the income derived by the owner from the direct use, letting, or use in any other form of this right of enjoyment may be taxed in that other State to the extent that it would be taxed under the domestic law of that other State if the owner were a resident of that State. The provisions of this paragraph shall apply, notwithstanding the provisions of Articles 7 (Business

Profits) and 14 (Independent Personal Services).

6. A resident of a Contracting State who is liable to tax in the other Contracting State on income from real property situated in the other Contracting State may elect to be taxed on a net basis, if such treatment is not provided under the domestic law of that other State.

ARTICLE 7
Business Profits

1. The profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits of the enterprise may be taxed in the other State but only so much of them as is attributable to that permanent establishment.

2. Subject to the provisions of paragraph 3, where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the profits which it might be expected to make if it were a distinct and independent enterprise engaged in the same or similar activities under the same or similar conditions.

3. In determining the profits of a permanent establishment, there shall be allowed as deductions expenses which are reasonably connected with such profits, including executive and general administrative expenses, whether incurred in the State in which the permanent establishment is situated or elsewhere.

4. A partner shall be considered to have realized income or incurred deductions to the extent of his share of the profits or losses of a partnership, as provided in the partnership agreement (provided that any special allocations of profits or losses have substantial economic effect). For this purpose, the character (including source and attribution to a permanent establishment) of any item of income or deduction accruing to a partner shall be determined as if it were realized or incurred by the partner in the same manner as realized or incurred by the partnership.

5. No profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

6. For the purposes of the preceding paragraphs of this Article, the profits to be attributed to the permanent establishment shall include only the profits or losses derived from the assets or activities of the permanent establishment and shall be determined by the same method year by year unless there is good and sufficient reason to the contrary.

7. Any profit attributable to a permanent establishment, according to the provisions of this Article, during its existence may be taxed in the Contracting State in which such permanent establishment is situated, even if the payments are deferred until such permanent establishment has ceased to exist.

8. Where profits include items of income which are dealt with separately in other Articles of

this Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.


## ARTICLE 8
Shipping and Air Transport

1. Profits of an enterprise of a Contracting State from the operation of ships or aircraft in international traffic shall be taxable only in that State.

2.   For the purposes of this Article, profits from the operation of ships or aircraft in international traffic include:

      (a) profits of the enterprise derived from the rental on a full basis of ships or aircraft operated in international traffic, and profits of the enterprise derived from the rental on a bareboat basis of ships or aircraft if such ships or aircraft are operated in international traffic by the lessee or such rental profits are accessory to other profits described in paragraph 1; and

      (b) profits of the enterprise from the use, maintenance or rental of containers used in international traffic (including trailers, barges, and related equipment for the transport of such containers) if such profits are accessory to other profits described in paragraph 1.

3. The provisions of paragraphs 1 and 2 shall also apply to profits from participation in a pool, a joint business, or an international operating agency.


## ARTICLE 9
Associated Enterprises

1. Where:

      (a) an enterprise of a Contracting State participates directly or indirectly in the management, control, or capital of an enterprise of the other Contracting State; or

      (b) the same persons participate directly or indirectly in the management, control, or capital of an enterprise of a Contracting State and an enterprise of the other Contracting State,

.   and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations which differ from those which would be made between independent enterprises, then any profits which, but for those conditions, would have accrued to one of the enterprises, but by reason of those conditions have not so accrued, may be included in the profits of that enterprise and taxed accordingly

2. Where a Contracting State includes in the profits of an enterprise of that State, and taxes accordingly, profits on which an enterprise of the other Contracting State has been charged to tax in that other State, and the other Contracting State agrees that the profits so included are profits that would have accrued to the enterprise of the first-mentioned State if the conditions made between the two enterprises had been those that would have been made between independent enterprises, then that other State shall, in accordance with the provisions of Article 26 (Mutual Agreement Procedure), make an appropriate adjustment to the amount of the tax charged therein on those profits. In determining such adjustment, due regard shall be paid to the other provisions

of this Convention.

## ARTICLE 10
### Dividends

1. Dividends paid by a company that is a resident of a Contracting State to a resident of the other Contracting State may be taxed in that other State.

2.  Such dividends may also be taxed in the Contracting State of which the company paying the dividends is a resident, and according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other Contracting State, the tax so charged shall not exceed:

    (a) 5 percent of the gross amount of the dividends if the beneficial owner is a company that owns:

        (i) directly, at least 10 percent of the voting power in the company paying the dividends, if such company is a resident of the United States; or

        (ii) directly or indirectly, at least 10 percent of the capital of the company paying the dividends, if such company is a resident of France;

    (b) 15 percent of the gross amount of the dividends in other cases. The provisions of subparagraph (a) shall not apply in the case of dividends paid by a United States regulated investment company or real estate investment trust or by a French "société d'investissement a capital variable." In the case of dividends paid by a United States regulated investment company or a French "société d'investissement capital variable," the provisions of subparagraph (b) shall apply. In the case of dividends paid by a United States real estate investment trust, the provisions of subparagraph (b) shall apply only if the dividend is beneficially owned by an individual owning a less than 10 percent interest in such real estate investment trust; otherwise, the rate of withholding tax applicable under the domestic law of the United States shall apply.

3. The provisions of paragraph 2 shall not affect the taxation of the company in respect of the profits out of which the dividends are paid.

4.       (a) A resident of the United States who derives and is the beneficial owner of dividends paid by a company that is a resident of France that, if received by a resident of France would entitle such a resident to a tax credit ("avoir fiscal") shall be entitled to a payment from the French Treasury equal to such tax credit ("avoir fiscal"), subject to deduction of the tax provided for in subparagraph (b) of paragraph 2.

    (b) The provisions of subparagraph (a) shall apply only to a resident of the United States that is:

        (i) an individual or other person (other than a company) ; or

        (ii) a company that is not a regulated investment company and that does not own, directly or indirectly, 10 percent or more of the capital of the company paying the dividends; or

        (iii) a regulated investment company that does not own, directly or indirectly, 10 percent or more of the capital of the company paying the dividends, but only if less than 20 percent of its shares is beneficially owned by persons who are neither citizens nor residents of the United States.

    (c) The provisions of subparagraph (a) shall apply only if the beneficial owner of

the dividends is subject to United States income tax in respect of such dividends and of the payment from the French Treasury.

(d) Notwithstanding the provisions of subparagraphs (b) and (c), the provisions of subparagraph (a) shall also apply to a partnership or trust described in subparagraph (b) (iv) of paragraph 2 of Article 4 (Resident), but only to the extent that the partners, beneficiaries, or grantors would qualify under subparagraph (b) (i) or (b) (ii) and under subparagraph (c) of this paragraph.

(e)    (i) A resident of the United States described in subparagraph (ii) that does not own, directly or indirectly, 10 percent or more of the capital of a company that is a resident of France, and that derives and beneficially owns dividends paid by such company that, if derived by a resident of France, would entitle such resident to a tax credit ("avoir fiscal"), shall be entitled to a payment from the French Treasury equal to 30/85 of the amount of such tax credit ("avoir fiscal"), subject to the deduction of the tax provided for in subparagraph (b) of paragraph 2;

(ii) The provisions of subparagraph (i) shall apply to:

(aa) a person described in subparagraph (b) (i) of paragraph 2 of Article 4 (Resident), with respect to dividends derived by such person from the investment of retirement assets;

(bb) a pension trust and any other organization described in subparagraph (b) (ii) of paragraph 2 of Article 4 (Resident); and

(cc) an individual, with respect to dividends beneficially owned by such individual and derived from investment in a retirement arrangement under which the contributions or the accumulated earnings receive tax-favored treatment under U.S. law.

(f) The gross amount of a payment made by the French Treasury pursuant to subparagraph (a), (d), or (e) shall be deemed to be a dividend for the purposes of this Convention.

(g) The provisions of subparagraphs (a), (d), and (e) shall apply only if the beneficial owner of the dividends shows, where required by the French tax administration, that he is the beneficial owner of the shareholding in respect of which the dividend are paid and that such shareholding does not have as its principal purpose or one of its principal purposes to allow another person to take advantage of the provisions of this paragraph, regardless of whether that person is a resident of a Contracting State.

(h) Where a resident of the United States that derives and beneficially owns dividends paid by a company that is a resident of France is not entitled to the payment from the French Treasury referred to in subparagraph (a), such resident may obtain a refund of the prepayment (précompte) to the extent that it was actually paid by the company in respect of such dividends. Where such a resident is entitled to the payment from the French Treasury referred to in subparagraph (e), such refund shall be reduced by the amount of the payment from the French Treasury. The gross amount of the prepayment (précompte) refunded shall be deemed to be a dividend for the purposes of the Convention. It shall be taxable in France according to the provisions of paragraph 2.

(i) The competent authorities may prescribe rules to implement the provisions of this paragraph and further define and determine the terms and conditions under which the payments provided for in subparagraphs (a), (d), and (e) shall be made.

5.       (a) The term "dividends" means income from shares, "jouissance" shares or "jouissance" rights, mining shares, founders' shares or other rights, not being debt-claims,

participating in profits, as well as income treated as a distribution by the taxation laws of the State of which the company making the distribution is a resident; and income from arrangements, including debt obligations, that carry the right to participate in, or are determined with reference to, profits of the issuer or one of its associated enterprises, as defined in subparagraph (a) or (b) of paragraph 1 of Article 9 (Associated Enterprises), to the extent that such income is characterized as a dividend under the law of the Contracting State in which the income arises. The term "dividend" shall not include income referred to in Article 16 (Directors' Fees).

(b) The provisions of this Article shall apply where a beneficial owner of dividends holds depository receipts evidencing ownership of the shares in respect of which the dividends are paid, in lieu of the shares themselves.

6. The provisions of paragraphs 1 through 4 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State of which the company paying the dividends is a resident through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the dividends are attributable to such permanent establishment or fixed base. In such a case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

7.      (a) A company that is a resident of a Contracting State and that has a permanent establishment in the other Contracting State or that is subject to tax on a net basis in that other State on items of income that may be taxed in that other State under Article 6 (Income from Real Property) or under paragraph 1 of Article 13 (Capital Gains) may be subject in that other State to a tax in addition to the other taxes allowable under this Convention. Such tax, however, may not exceed 5 percent of that portion of the business profits of the company attributable to the permanent establishment, or of that portion of the income referred to in the preceding sentence that is subject to tax under Article 6 or paragraph 1 of Article 13, that:

(i) in the case of the United States, represents the "dividend equivalent amount" of those profits or income, in accordance with the provisions of the Internal Revenue Code, as it may be amended from time to time without changing the general principle thereof;

(ii) in the case of France, is included in the base of the French withholding tax in accordance with the provisions of Article 115 "quinquies" of the French tax code (code general des impôts) or with any similar provisions which amend or replace the provisions of that Article.

(b) The taxes referred to in subparagraph (a) also shall apply to the portion of business profits, or of the income subject to tax under Article 6 (Real Property) or paragraph 1 of Article 13 (Capital Gains) that is referred to in subparagraph (a), which is attributable to a trade or business conducted in one Contracting State through a partnership or other entity treated as a pass-through entity or transparent entity under the laws of that State by a company that is a member of such partnership or entity and a resident of the other Contracting State.

8. Subject to the provisions of paragraph 7, where a company that is a resident of a Contracting State derives profits or income from the other Contracting State, that other State may not impose any tax on the dividends paid by the company, except insofar as such dividends are

paid to a resident of that other State or insofar as the dividends are attributable to a permanent establishment or fixed base situated in that other State, nor subject to the company's undistributed profits to a tax on the company's undistributed profits, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in such other State.


## ARTICLE 11
Interest

1. Interest arising in a Contracting State and beneficially owned by a resident of the other Contracting State shall be taxable only in that other State.

2. Notwithstanding the provisions of paragraph 1:
      (a) interest arising in a Contracting State that is determined with reference to the profits of the issuer or of one of its associated enterprises, as defined in subparagraph (a) or (b) of paragraph 1 of Article 9 (Associated Enterprises), and paid to a resident of the other Contracting State may be taxed in that other State;
      (b) however, such interest may also be taxed in the Contracting State in which it arises, and according to the laws of that State, but if the beneficial owner is a resident of the other Contracting State, the gross amount of the interest may be taxed at a rate not exceeding the rate prescribed in subparagraph (b) of paragraph 2 of Article 10 (Dividends).

3. The term "interest" means income from indebtedness of every kind, whether or not secured by mortgage, and whether or not carrying a right to participate in the debtor's profits, and in particular, income from government securities and income from bonds or debentures, including premiums or prizes attaching to such securities, bonds, or debentures, as well as other income that is treated as income from money lent by the taxation law of the Contracting State in which the income arises. However, the term "interest" does not include income dealt with in Article 10 (Dividends). Penalty charges for late payment shall not be regarded as interest for the purposes of the Convention.

4. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State, in which the interest arises, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the interest is attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

5. Interest shall be deemed to arise in a Contracting State when the payer is a resident of that State. Where, however, the person paying the interest, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base in connection with which the indebtedness on which the interest is paid was incurred, and such interest is borne by such permanent establishment or fixed base, then such interest shall be deemed to arise in the State in which the permanent establishment or fixed base is situated.

6. Where, by reason of a special relationship between the payer and the beneficial owner or

between both of them and some other person, the amount of the interest, having regard to the debt-claim for which it is paid, exceeds the amount that would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.


# ARTICLE 12
## Royalties

1. Royalties arising in a Contracting State and paid to a resident of the other contracting State may be taxed in that other State.

2. Such royalties may also be taxed in the Contracting State in which they arise and according to the laws of that State, but if the beneficial owner is a resident of the other Contracting State, the tax so charged shall not exceed 5 percent of the gross amount of the royalties.

3. Notwithstanding the provisions of paragraph 2, royalties described in subparagraph (a) of paragraph 4 that arise in a Contracting State and are beneficially owned by a resident of the other Contracting State shall be taxable only in that other State.

4. The term "royalties" means:
(a) payments of any kind received as a consideration for the use of; or the right to use, any copyright of literary, artistic, or scientific work or any neighboring right (including reproduction rights and performing rights), any cinematographic film, any sound or picture recording, or any software;
(b) payments of any kind received as a consideration for the use of; or the right to use, any patent, trademark, design or model, plan, secret formula or process, or other like right or property, or for information concerning industrial, commercial, or scientific experience; and
(c) gains derived from the alienation of any such right or property described in this paragraph that are contingent on the productivity, use, or further alienation thereof.

5. The provisions of paragraphs 1, 2, and 3 shall not apply if the beneficial owner of the royalties, being a resident of a Contracting State, carries on business in the other Contracting State, in which the royalties arise, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the royalties are attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

6. (a) Royalties shall be deemed to arise in a Contracting State when the payer is a resident of that State.
(b) Where, however, the person paying the royalties, whether he is a resident of a Contracting State or not, has in a Contracting State a permanent establishment or a fixed base in Connection with which the liability to pay the royalties was incurred, and such royalties are borne by such permanent establishment or fixed base, then such royalties

shall be deemed to arise in the State in which the permanent establishment or fixed base is situated.

(c) Notwithstanding subparagraphs (a) and (b), royalties paid for the use of,; or the right to use, property in a Contracting State shall be deemed to arise therein.

(d) Royalties shall be deemed to be paid to the beneficial owner at the latest when they are taken into account as expenses for tax purposes in the Contracting State in which they arise.

7. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties, having regard to the use, right, or information for which they are paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

ARTICLE 13
Capital Gains

1. Gains from the alienation of real property situated in a Contracting State may be taxed in that State.

2. For purposes of paragraph 1, the term "real property situated in a Contracting State" means:

(a) where the United States is the Contracting State, real property referred to in Article 6 (Real Property) that is situated in the United States, a United States real property interest (as defined in section 897 of the Internal Revenue Code, as it say be amended from time to time without changing the general principle thereof), and an interest in a partnership, trust, or estate, to the extent attributable to real property situated in the United States; and

(b) where France is the Contracting State,

(i) real property referred to in Article 6 (Real Property) that is situated in France; and

(ii) shares or similar rights in a company the assets of which consist at least 50 percent of real property situated in France or derive at least 50 percent of their value, directly or indirectly, from real property situated in France;

iii) an interest in a partnership, a "société de personnes", a "groupement d'intérêt économique" (economic interest group), or a "groupement européen d'intérêt économique" (European economic interest group) (other than a partnership, a "société de personnes", a "groupement d'intérêt économique" (economic interest group), or a "groupement européen d'intérêt économique" that is taxed as a company under French domestic law), an estate, or a trust, to the extent attributable to real property situated in France.

3.       (a) Gains from the alienation of movable property forming part of the business property of a permanent establishment or fixed base that an enterprise or resident of a Contracting State has in the other contracting State, including such gains from the

alienation of such permanent establishment (alone or with the whole enterprise) or of such fixed base, may be taxed in that other State. Where the removal of such property from the other Contracting State is deemed to constitute an alienation of such property, the gain that has accrued as of the time that such property is removed from that other State may be taxed by that other State in accordance with its law, and the gain accruing subsequent to that time of removal may be taxed in the first-mentioned Contracting State in accordance with its law.

(b) Any gain attributable to a permanent establishment or a fixed base according to the provisions of subparagraph (a) during its existence may be taxed in the Contracting State in which such permanent establishment or fixed base is situated, even if the payments are deferred until such permanent establishment or fixed base has ceased to exist.

4. Gains derived by an enterprise of a Contracting State that operates ships or aircraft in international traffic from the alienation of such ships or aircraft or movable property pertaining to the operation of such ships or aircraft shall be taxable only in that State.

5. Gains described in subparagraph (c) of paragraph 4 of Article 12 (Royalties) shall be taxable only in accordance with the provisions of Article 12.

6. Subject to the provisions of paragraph 5, gains from the alienation of any property other than property referred to in paragraphs 1 through 4 shall be taxable only in the Contracting State of which the alienator is a resident.


ARTICLE 14
Independent Personal Services

1. Income derived by a resident of a Contracting State in respect of professional services or other activities of an independent character shall be taxable only in that State unless that resident performs activities in the other Contracting State and has a fixed base regularly available to him in that other State for the purpose of performing his activities. In such a case, the income may be taxed in the other State, but only so much of it as is attributable to that fixed base, and according to the principles contained in Article 7 (Business Profits).

2. Any income attributable to a fixed base during its existence, according to the provisions of paragraph 1, may be taxed in the Contracting State in which such fixed base is situated, even if the payments are deferred until such fixed base has ceased to exist.

3. The term "professional services" includes especially independent scientific, literary, artistic, educational, or teaching activities as well as the independent activities of physicians, lawyers, engineers, architects, dentists, and accountants.

4. The provisions of paragraph 4 of Article 7 (Business Profits) shall apply by analogy. In no event, however, shall those provisions or the provisions of Article 4 (Resident) result in France exempting under Article 24 (Relief from Double Taxation) more than 50 percent of the earned income from partnership accruing to a resident of France. The amount of such a partner's income which is not exempt under Article 24 (Relief from Double Taxation) solely by reason of the

preceding sentence shall reduce the amount of partnership earned income from sources within France on which France can tax partners who are not residents of France.


# ARTICLE 15
## Dependent Personal Services

1. Subject to the provisions of Articles 16 (Directors' Fees), 18 (Pensions), and 19 (Public Remuneration), salaries, wages, and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if:

(a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in any 12-month period commencing or ending in the taxable period concerned;

(b) the remuneration is paid by, or on behalf of; an employer who is not a resident of the other State; and

(c) the remuneration is not borne by a permanent establishment or a fixed base which the employer has in the other State.

3. Notwithstanding the preceding provisions of this Article, remuneration derived by a resident of a Contracting State in respect of an employment exercised as a member of the regular complement of a ship or aircraft operated in international traffic shall be taxable only in that State.


# ARTICLE 16
## Directors' Fees

Directors' fees and other remuneration derived by a resident of a Contracting State for services rendered in the other Contracting State in his capacity as a member of the board of directors of a company that is a resident of the other Contracting State may be taxed in that other State.


# ARTICLE 17
## Artistes and Sportsmen

1. Notwithstanding the provisions of Articles 14 (Independent Personal Services) and 15 (Dependent Personal Services), income derived by a resident of a Contracting State as an entertainer, such as a theater, motion picture, radio, or television artiste or a musician, or as a sportsman, from his personal activities as such exercised in the other Contracting State, may be taxed in that other State. However, the provisions of this paragraph shall not apply where the amount of the gross receipts derived by such entertainer or sportsman from such activities,

including expenses reimbursed to him or borne on his behalf, does not exceed 10,000 United States dollars or its equivalent in French francs for the taxable period concerned.

2. Where income in respect of personal activities exercised by an entertainer or sportsman in his capacity as such accrues not to the entertainer or sportsman but to another person, whether or not a resident of a Contracting State, that income may, notwithstanding the provisions of Articles 7 (Business Profits), 14 (Independent Personal Services), and 15 (Dependent Personal Services), be taxed in the Contracting State in which the activities of the entertainer or sportsman are exercised. However, the provisions of this paragraph shall not apply where it is established that neither the entertainer or sportsman nor persons related to him derive from that other person any income, directly or indirectly, in respect of such activities that in the aggregate exceeds the amount specified in paragraph 1 for the taxable period concerned.

3. The provisions of paragraphs 1 and 2 shall not apply to income derived by a resident of a Contracting State as an entertainer or a sportsman from his personal activities as such exercised in the other Contracting State if the visit to that other State is principally supported, directly or indirectly, by public funds of the first-mentioned State or a political subdivision (in the case of the United States) or local authority thereof. In such case the income shall be taxable only in the first-mentioned State.

# ARTICLE 18
## Pensions

1. Subject to the provisions of paragraph 2 of Article 19 (Public Remuneration):
    (a) except as provided in subparagraph (b), pensions and other similar remuneration, including distributions from pension and other retirement arrangements, derived and beneficially owned by a resident of a Contracting State in consideration of past employment, whether paid periodically or in a lump sum, shall be taxable only in that State:
    (b) pensions and other payments made under the social security legislation of a Contracting State to a resident of the other Contracting State shall be taxable only in the first-mentioned State. Pensions and other payments made under the social security legislation of France to a resident of the United States who is a citizen of the United States shall be taxable only in France. The term "social security legislation" includes the Railroad Retirement Act in the case of the United States and the French social security regimes which are of a mandatory character.

2.        (a) In determining the taxable income of an individual who renders personal services and who is a resident of a Contracting State but not a national of that State, contributions paid by, or on behalf of, such individual to a pension or other retirement arrangement that is established and maintained and recognized for tax purposes in the other Contracting State shall be treated in the same way for tax purposes in the first-mentioned State as a contribution paid to a pension or other retirement arrangement that is established and maintained and recognized for tax purposes in that first-mentioned State, provided that the competent authority of the first-mentioned State agrees that the pension or other retirement arrangement generally corresponds to a pension or other retirement arrangement recognized for tax purposes by that State.

(b) For the purposes of subparagraph (a):

(i) where the competent authority of France agrees that a United States pension or other retirement arrangement generally corresponds to a mandatory French pension arrangement (without regard to the mandatory nature of such arrangement), it is understood that contributions to the United States pension or other retirement arrangement shall be treated in France in the same way for tax purposes as contributions to the French mandatory pension arrangement; and

(ii) where the competent authority of the United States agrees that a mandatory French pension or other retirement arrangement generally corresponds to a United States pension or other retirement arrangement (without regard to the mandatory nature of such arrangement), it is understood that contributions to the French pension or other retirement arrangement shall be treated in the United States in the same way for tax purposes as contributions to the United States pension or other retirement arrangement; and

(iii) a pension or other retirement arrangement is recognized for tax purposes in a State if the contributions to the arrangement would qualify for tax relief in that State.

(c) Payments received by a beneficiary in respect of an arrangement referred to in subparagraph (a) that satisfies the requirements of this paragraph shall be included in income for tax purposes of the Contracting State of which the beneficiary is a resident, subject to the provisions of Article 24 (Relief from Double Taxation), when and to the extent that such payments are considered gross income by the other Contracting State.


ARTICLE 19
Public Remuneration

1.        (a) Remuneration, other than a pension, paid by a Contracting State, a political subdivision (in the case of the United States) or local authority thereof; or an agency or instrumentality of that State, subdivision, or authority to an individual in respect of services rendered to that State, subdivision, authority, agency, or instrumentality shall be taxable only in that State.

(b) However, such remuneration shall be taxable only in the other Contracting State if the services are rendered in that State and the individual is a resident of and a national of that State and not at the same time a national of the first-mentioned State.

2.        (a) Any pension paid by, or out of funds created by, a Contracting State, a political subdivision (in the case of the United States) or local authority thereof; or an agency or instrumentality of that State, subdivision, or authority to an individual in respect of services rendered to that State, subdivision, authority, agency, or instrumentality shall be taxable only in that State.

(b) However, such pension shall be taxable only in the other Contracting State if the individual is a resident of and national of that State and not at the same time a national of the first-mentioned State.

3. The provisions of Article 4 (Independent Personal Services), 15 (Dependent Personal Services), 16 (Directors' Fees, 17 (Artistes and Sportsmen) , and 18 (Pensions) shall apply to remuneration and pensions paid in respect of services rendered in connection with a business

carried on by a Contracting State, a political subdivision (in the case of the United States) or local authority thereof, or an agency or instrumentality of that State, subdivision, or authority.


ARTICLE 20
Teachers and Researchers

1. An individual who is a resident of a Contracting State immediately before his visit to the other Contracting State and who, at the invitation of the Government of that other State or of a university or other recognized educational or research institution situated in that other State, visits that other State for the primary purpose of teaching or engaging in research, or both, at a university or other recognized educational or research institution shall be taxable only in the first-mentioned State on his income from personal services for such teaching or research for a period not exceeding 2 years from the date of his arrival in the other State. An individual shall be entitled to the benefits of this paragraph only once.

2. The provisions of paragraph 1 shall not apply to income from research if such research is undertaken not in the public interest but primarily for the private benefit of a specific person or persons.


ARTICLE 21
Students and Trainees

1.         (a) An individual who is a resident of a Contracting State immediately before his visit to the other Contracting State and who is temporarily present in the other Contracting State for the primary purpose of:
                (i) studying at a university or other recognized educational institution in that other Contracting State;
                (ii) securing training required to qualify him to practice a profession or professional specialty; or
                (iii) studying or doing research as a recipient of a grant, allowance, or award from a not-for-profit governmental, religious, charitable, scientific, artistic, cultural, or educational organization,
shall be exempt from tax in that other State with respect to amounts referred to in subparagraph (b).
        (b) The amounts referred to in subparagraph (a) are:
                (i) gifts from abroad for the purposes of his maintenance, education, study, research, or training;
                (ii) a grant, allowance, or award described in subparagraph (a) (iii); and
                (iii) income from personal services performed in the other Contracting State in an amount not in excess of 5,000 United States dollars or its equivalent in French francs for any taxable period.
        (c) The benefits of this paragraph shall only extend for such period of time as may be reasonably or customarily required to effectuate the purpose of the visit, but in no event shall any individual have the benefits of this Article and Article 20 (Teachers and Researchers) for more than a total of five taxable periods.
        (d) The provisions of subparagraph (a) shall not apply to income from research if

such research is undertaken not in the public interest but primarily for the private benefit of a specific person or persons.

2. An individual who is a resident of a Contracting State immediately before his visit to the other Contracting State, and who is temporarily present in that other State as an employee of, or under contract with, a resident of the first-mentioned State for the primary purpose of:

      (a) acquiring technical, professional, or business experience from a person other than that resident of the first-mentioned State, or

      (b) studying at a university or other recognized educational institution in the other State,

shall be exempt from tax by that other State for a period of 12 consecutive months with respect to his income from personal services in an aggregate amount not in excess of 8,000 United States dollars or its equivalent in French francs.


ARTICLE 22
Other Income


1. Items of income of a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this convention shall be taxable only in that State.

2. The provisions of paragraph 1 shall not apply to income, other than income from real property as defined in paragraph 2 of Article 6 (Income from Real Property), if the recipient of such income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right or property in respect of which the income is paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.


ARTICLE 23
Capital


1.      (a) Capital represented by real property referred to in Article 6 (Income from Real Property) and situated in a Contracting State may be taxed in that State.

      (b) Capital represented by shares, rights, or an interest in a company the assets of which consist at least 50 percent of real property situated in a Contracting State, or derive at least 50 percent of their value, directly or indirectly, from real property situated in a Contracting State, may be taxed in that State.

      (c) If and to the extent that the assets of a person other than an individual or a company consist of real property situated in a Contracting State, or derive their value, directly or indirectly, from real property situated in a Contracting State, capital represented by an interest in such person may be taxed in that State.

2. Capital of an individual represented by shares, rights, or an interest (other than shares, rights, or an interest referred to in subparagraph (b) or (c) of paragraph 1) forming part of a substantial interest in a company that is a resident of a Contracting State may be taxed in that

State. An individual is considered to have a substantial interest if he or she owns, alone or with related persons, directly or indirectly, shares, rights, or interests the total of which gives right to at least 25 percent of the corporate earnings.

3. Capital represented by movable property forming part of the business property of a permanent establishment that an enterprise of a Contracting State has in the other Contracting State or by movable property pertaining to a fixed base that is available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services may be taxed in that other State.

4. Capital of an enterprise of a Contracting State that operates ships or aircraft in international traffic represented by such ships or aircraft and movable property pertaining to the operation of such ships or aircraft shall be taxable only in that State.

5. All other elements of capital of a resident of a Contracting State are taxable only in that State.

6. Notwithstanding the provisions of the preceding paragraphs of this Article, for the purposes of taxation with respect to the wealth tax referred to in subparagraph (b) (iv) of paragraph 1 of Article 2 (Taxes Covered) of an individual resident of France who is a citizen of the United States and not a French national, the assets situated outside of France that such a person owns on the first of January of each of the five years following the calendar year in which he becomes a resident of France shall be excluded from the base of assessment of the above-mentioned wealth tax relating to each of those five years. If such an individual loses the status of resident of France for a duration of at least three years and again becomes a resident of France, the assets situated outside of France that such a person owns on the first of January of each of the five years following the calender year in which he again becomes a resident of France shall be excluded from the base of assessment of the tax relating to each of those five years.

ARTICLE 24
Relief From Double Taxation

1.         (a) In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or a resident of the United States as a credit against the United States income tax:

                (i) the French income tax paid by or on behalf of such citizen or resident; and

                (ii) in the case of a United States company owning at least 10 percent of the voting power of a company that is a resident of France and from which the United States company receives dividends, the French income tax paid by or on behalf of the distributing corporation with respect to the profits out of which the dividends are paid.

        (b) In the case of an individual who is both a resident of France and a citizen of the United States:

                (i) the United States shall allow as a credit against the United States income tax the French income tax paid after the credit referred to in subparagraph

(a) (iii) of paragraph 2. However, the credit so allowed against United States income tax shall not reduce that portion of the United States income tax that is creditable against French income tax in accordance with subparagraph (a) (iii) of paragraph 2;

(ii) income referred to in paragraph 2 and income that, but for the citizenship of the taxpayer, would be exempt from United States income tax under the Convention, shall be considered income from sources within France to the extent necessary to give effect to the provisions of subparagraph (b) (i). The provisions of this subparagraph (b) (ii) shall apply only to the extent that an item of income is included in gross income for purposes of determining French tax. No provision of this subparagraph (b) relating to source of income shall apply in determining credits against United States income tax for foreign taxes other than French income tax as defined in subparagraph (e) ; and

(c) In the case of an individual who is both a resident and citizen of the United States and a national of France, the provisions of paragraph 2 of Article 29 (Miscellaneous Provisions) shall apply to remuneration and pensions described in paragraph 1 or 2 of Article 19 (Public Remuneration) , but such remuneration and pensions shall be treated by the United States as income from sources within France.

(d) If, for any taxable period, a partnership of which an individual member is a resident of France so elects, for United States tax purposes, any income which solely by reason of paragraph 4 of Article 14 is not exempt from French tax under this Article shall be considered income from sources within France. The amount of such income shall reduce (but not below zero) the amount of partnership earned income from sources outside the United States that would otherwise be allocated to partners who are not residents of France. For this purpose, the reduction shall apply first to income from sources within France and then to other income from sources outside the United States. If the individual member of the partnership is both a resident of France and a citizen of the United States, this provision shall not result in a reduction of United States tax below that which the taxpayer would have incurred without the benefit of deductions or exclusions available solely by reason of his presence or residence outside the United States.

(e) For the purposes of this Article, the term "French income tax" means the taxes referred to in subparagraph (b) (i) or (ii) of paragraph 1 of Article 2 (Taxes Covered), and any identical or substantially similar taxes that are imposed after the date of signature of the Convention in addition to, or in place of, the existing taxes.

2. In the case of France, double taxation shall be avoided in the following manner.

(a) Income arising in the United States that may be taxed or shall be taxable only in the United States in accordance with the provision of this Convention shall be taken into account for the computation of the French tax where the beneficiary of such income is a resident of France and where such income is not exempted from company tax according to French domestic law. In that case, the United States tax shall not be deductible from such income, but the beneficiary shall be entitled to a tax credit against the French tax. Such credit shall be equal:

(i) in the case of income other than that referred to in subparagraphs (ii) and (iii), to the amount of French tax attributable to such income;

(ii) in the case of income referred to in Article 14 (Independent Personal Services), to the amount of French tax attributable to such income; however, in the case referred to in paragraph 4 of Article 14 (Independent Personal Services),

such credit shall not give rise to an exemption that exceeds the limit specified in that paragraph;

(iii) in the case of income referred to in Article 10 (Dividends), Article 11 (Interest), Article 12 (Royalties), paragraph 1 of Article 13 (Capital Gains), Article 16 (Directors' Fees), and Article 17 (Artistes and Sportsmen), to the amount of tax paid in the United States in accordance with the provisions of the Convention; however, such credit shall not exceed the amount of French tax attributable to such income.

(b) In the case where the beneficial owner of the income arising in the United States is an individual who is both a resident of France and a citizen of the United States, the credit provided in paragraph 2 (a) (i) shall also be granted in the case of:

(i) income consisting of dividends paid by a company that is a resident of the United States, interest arising in the United States, as described in paragraph 5 of Article 11 (Interest), or royalties arising in the United States, as described in paragraph 6 of Article 12 (Royalties), that is derived and beneficially owned by such individual and that is paid by:

(aa) the United States or any political subdivision or local authority thereof; or

(bb) a person created or organized under the laws of a state of the United States or the District of Columbia, the principal class of shares of or interests in which is substantially and regularly traded on a recognized stock exchange as defined in subparagraph (e) of paragraph 6 of Article 30 (Limitation on Benefits of the Convention) or

(cc) a company that is a resident of the United States, provided that less than 10 percent of the outstanding shares of the voting power in such company was owned (directly or indirectly) by the resident of France at all times during the part of such company's taxable period preceding the date of payment of the income to the owner of the income and during the prior taxable period (if any) of such company, and provided that less than 50 percent of such voting power was owned (either directly or indirectly) by residents of France during the same period; or

(dd) a resident of the United States, not more than 25 percent of the gross income of which for the prior taxable period (if any) consisted directly or indirectly of income derived from sources outside the United States;

(ii) capital gains derived from the alienation of capital assets generating income described in subparagraph (i); however, such alienation shall be taken into account for the determination of the threshold of taxation applicable in France to capital gains on movable property;

(iii) profits or gains derived from transactions on a public United States options or futures market;

(iv) income dealt with in subparagraph (a) of paragraph 1 of Article 18 (Pensions) to the extent attributable to services performed by the beneficiary of such income while his principal place of employment was in the United States;

(v) income that would be exempt from United States tax under Articles 20 (Teachers and Researchers) or 21 (Students and Trainees) if the individual were not a citizen of the United States; and

(vi) U.S. source alimony and annuities. The provisions of this

subparagraph (b) shall apply only if the citizen of the United States who is a resident of France demonstrates that he has complied with his United States income tax obligations, and subject to receipt by the French tax administration of such certification as may be prescribed by the competent authority of France, or upon request to the French tax administration for refund of tax withheld together with the presentation of any certification required by the competent authority of France.

(c) A resident of France who owns capital that may be taxed in the United States according to the provisions of paragraph 1, 2, or 3 of Article 23 (Capital) may also be taxed in France in respect of such capital. The French tax shall be computed by allowing a tax credit equal to the amount of tax paid in the United States on such capital. That tax credit shall not exceed the amount of the French tax attributable to such capital.

(d)       (i) For purposes of this paragraph, the term "resident of France" includes a "société de personnes," a "groupement d'intérêt économique" (economic interest group), or a "groupement européen d'intérêt économique" (European economic interest group} that is constituted in France and has its place of effective management in France.

(ii) The term "amount of French tax attributable to such income" as used in subparagraph (a) means:

(aa) where the tax on such income is computed by applying a proportional rate, the amount of the net income concerned multiplied by the rate which actually applies to that income;

(bb) where the tax on such income is computed by applying a progressive scale, the amount of the net income concerned multiplied by the rate resulting from the ratio of the French income tax actually payable on the total net income in accordance with French law to the amount of that total net income.

(iii) The term "amount of tax paid in the United States" as used in subparagraph (a) means the amount of the United States income tax effectively and definitively borne in respect of the items of income concerned, in accordance with the provisions of the Convention, by the beneficial owner thereof who is a resident of France. But this term shall not include the amount of tax that the United States may levy under the provisions of paragraph 2 of Article 29 (Miscellaneous Provisions).

(iv) The interpretation of subparagraphs (ii) and (iii) shall apply, by analogy, to the terms "amount of the French tax attributable to such capital" and "amount of tax paid in the United States," as used in subparagraph (c).

(e)       (i) Where French domestic law allows companies that are residents of France to determine their taxable profits on a consolidation basis, including the profits or losses of subsidiaries that are residents of the United States or of permanent establishments situated in the United States, the provisions of the Convention shall not prevent the application of that law.

(ii) Where in accordance with its domestic law, France, in determining the taxable profits of residents, permits the deduction of the losses of subsidiaries that are residents of the United States or of permanent establishments situated in the United States and includes the profits of those subsidiaries or of those permanent establishments up to the amount of the losses so deducted, the provisions of the Convention shall not prevent the application of that law.

(iii) Nothing in the Convention shall prevent France from applying the

provisions of Article 209B of its tax code (code général des impôts) or any substantially similar provisions which may amend or replace the provisions of that Article.


ARTICLE *25*
Non-Discrimination

1. Individuals who are nationals of a Contracting State and residents of the other Contracting State shall not be subjected in that other State to any taxation or any requirement connected therewith that is other or more burdensome than the taxation and connected requirements to which individuals who are nationals and residents of that other State in the same circumstances are or may be subjected.

2. The taxation on a permanent establishment that an enterprise of a Contracting State has in the other Contracting State shall not be less favorably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities. This provision shall not be construed as obliging a Contracting State to grant to residents of the other Contracting State any personal allowances, reliefs, and reductions for taxation purposes on account of civil status or family responsibilities that it grants to its own residents. The provisions of this paragraph shall not prevent the application by either Contracting State of the taxes described in paragraph 7 of Article 10 (Dividends).

3.          (a) Except where the provisions of paragraph 1 of Article 9 (Associated Enterprises), paragraph 6 of Article 11 (Interest), or paragraph 7 of Article 12 (Royalties) apply, interest, royalties, and other disbursements paid by an enterprise of a Contracting State to a resident of the other Contracting State shall, for the purposes of determining the taxable profits of such enterprise, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State. Similarly, any debts of an enterprise of a Contracting State to a resident of the other Contracting State shall, for the purposes of determining the taxable capital of such enterprise, be deductible under the same conditions as if they had been contracted a resident of the first-mentioned State.
          (b) Nothing in this Convention shall prevent the application of Article 212 of the French tax code (code général des impôts) as it may be amended from time to time without changing the general principle thereof or of any substantially similar provisions which may be enacted in addition to or in substitution for that provision (including provisions substantially similar to those applicable in the other Contracting State), to the extent that such application is consistent with the principles of paragraph 1 of Article 9 (Associated Enterprises).

4. Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of the first-mentioned State are or may be subjected.

5. The provisions of this Article shall, notwithstanding the provisions of Article 2 (Taxes Covered), apply to taxes of every kind and description imposed by a Contracting State or a

political subdivision (in the case of the United States) or local authority thereof.

ARTICLE 26
Mutual Agreement Procedure

1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of the Contracting State of which he is a resident or national. The case must be presented within three years of the notification of the action resulting in taxation not in accordance with the provisions of this Convention.

2. The competent authority shall endeavor, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation which is not in accordance with the Convention. Any agreement reached shall be implemented notwithstanding any time limits or other procedural limitations in the domestic law of the Contracting States.

3. The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising to the interpretation or application of the Convention. In particular, they may agree:
        (a) to the same attribution of profits to a resident of a Contracting State and its permanent establishment situated in the other Contracting State;
        (b) to the same allocation of income between a resident of a Contracting State and any associated enterprise described in paragraph 1 of Article 9 (Associated Enterprises);
        (c) to the same determination of the source of particular items of income;
        (d) concerning the matters described in subparagraphs (a), (b), and (c) of this paragraph with respect to past or future years; or
        (e) to increase the money amounts referred to in Articles 17 (Artistes and Sportsmen) and 21 (Students and Trainees) to reflect economic or monetary developments.
They may also agree to eliminate double taxation in cases not provided for in the Convention.

4. The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs. When it seems advisable for the purpose of reaching agreement, the competent authorities or their representatives may meet together for an oral exchange of opinions.

5. If an agreement cannot be reached by the competent authorities pursuant to the previous paragraphs of this Article, the case may, if both competent authorities and the taxpayer agree, be submitted for arbitration, provided that the taxpayer agrees in writing to be bound by the decision of the arbitration board. The competent authorities may release to the arbitration board such information as is necessary for carrying out the arbitration procedure. The decision of the arbitration board shall be binding on the taxpayer and on both States with respect to that case. The procedures, including the composition of the board, shall be established between the Contracting States by notes to be exchanged through diplomatic channels afier consultation between the competent authorities. The provisions of this paragraph shall not have effect until

the date specified in the exchange of diplomatic notes.


ARTICLE 27
Exchange of Information


1. The competent authorities of the Contracting States shall exchange such information as is pertinent for carrying out the provisions of this Convention and of the domestic laws of the Contracting States concerning taxes covered by this Convention insofar as the taxation thereunder is not contrary to this Convention. The exchange of information is not restricted by Article 1 (Personal Scope). Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of or the determination of appeals in relation to, the taxes covered by this Convention. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions.


2. In no case shall the provisions of paragraph 1 be construed so as to impose on a Contracting State the obligation:
        (a) to carry out administrative measures at variance with the laws or the administrative practice of that or of the other Contracting State;
        (b) to supply particulars that are not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;
        (c) to supply information that would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information, the disclosure of which would be contrary to public policy (ordre public).


3. The exchange of information shall be on request with reference to particular cases, or spontaneous, or on a routine basis. The competent authorities of the Contracting States shall agree on the list of information which shall be furnished on a routine basis.


4.        (a) If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall obtain the information to which the request relates in the same manner and to the same extent as if its own taxation were involved, notwithstanding the fact that the other State may not, at that time, need such information for purposes of its own tax.
        (b) If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall, if possible, provide information under this Article in the form of depositions of witnesses and authenticated copies of unedited original documents (including books, papers, statements, records, accounts, and writings), to the same extent such depositions and documents can be obtained under the laws and administrative practices of that other State with respect to its own taxes.
        (c) A Contracting State shall allow representatives of the other Contracting State to enter the first-mentioned State to interview taxpayers and look at and copy their books and records, but only after obtaining the consent of those taxpayers and the competent authority of the first-mentioned State (who may be present or represented, if desired), and only if the two Contracting States agree, in an exchange of diplomatic notes, to allow such inquiries on a reciprocal basis. Such inquiries shall not be considered audits for

purposes of French domestic law.

5. Notwithstanding the provisions of Article 2 (Taxes Covered), all taxes imposed on behalf of a Contracting State shall be considered as taxes covered by the Convention for purposes of this Article.


## ARTICLE 28
### Assistance in Collection

1. The Contracting States undertake to lend assistance and support to each other in the collection of the taxes to which this Convention applies (together with interest, costs, and additions to the taxes and fines not being of a penal character) in cases where the taxes are definitively due according to the laws of the State making the application.

2. Revenue claims of each of the Contracting States which have been finally determined will be accepted for enforcement by the State to which application is made and collected in that State in accordance with the laws applicable to the enforcement and collection of its own taxes.

3. The application will be accompanied by such documents as are required by the laws of the State making the application to establish that the taxes have been finally determined.

4. If the revenue claim has not been finally determined, the State to which application is made will take such measures of conservancy (including measures with respect to transfer of property of nonresident aliens) as are authorized by its laws for the enforcement of its own taxes.

5. The assistance provided for in this Article shall not be accorded with respect to citizens, companies, or other entities of the Contracting State to which application is made except in cases where the exemption from or reduction of tax or the payment of tax credits provided for in paragraph 4 of Article 10 (Dividends) granted under the Convention to such citizens, companies, or other entities has, according to mutual agreement between the competent authorities of the Contracting States, been enjoyed by persons not entitled to such benefits.


## ARTICLE 29
### Miscellaneous Provisions

1. The Convention shall not restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or hereafter accorded by
> (a) the laws of:
>> (i) the United States;
>> (ii) France, in the case of a resident (within the meaning of Article 4 (Resident)) or citizen of the United States. However, notwithstanding the preceding sentence, the provisions of paragraph 5 of Article 6 (Income from Real Property), Article 19 (Public Remuneration), Article 20 (Teachers and Researchers), and Article 24 (Relief from Double Taxation) shall apply, regardless of any exclusion, exemption, deduction, credit, or other allowance accorded by the laws of France; or

(b) by any other agreement between the Contracting States.

2. Notwithstanding any provision of the Convention except the provisions of paragraph 3, the United States may tax its residents, as determined under Article 4 (Resident), and its citizens as if the Convention had not come into effect. For this purpose, the term citizen" shall include a former citizen whose loss of citizenship had as one of its principal purposes the avoidance of income tax, but only for a period of 10 years following such loss.

3. The provisions of paragraph 2 shall not affect:
      (a) the benefits conferred under paragraph 2 of Article 9 (Associated Enterprises), under paragraph 1(b) of Article 18 (Pensions), and under Articles 24 (Relief From Double Taxation), 25 (Non-Discrimination), and 26 (Mutual Agreement Procedure); and
      (b) the benefits conferred under Articles 19 (Public Remuneration), 20 (Teachers and Researchers), 21 (Students and Trainees) and 31 (Diplomatic and Consular Officers), upon individuals who are neither citizens of; nor have immigrant status in, the United States.

4. Notwithstanding the provisions of Article 2 (Taxes Covered), any transaction in which an order for the purchase, sale, or exchange of stocks or securities originates in one Contracting State and is executed through a stock exchange in the other Contracting State shall be exempt in the first-mentioned State from stamp or like tax otherwise arising with respect to such transaction.

5. A resident of a Contracting State that maintains one or several abodes in the other Contracting State shall not be subject in that other State to an income tax according to an "imputed income" based on the rental value of that or those abodes.

6. Nothing in this Convention shall affect the U.S. taxation of an excess inclusion with respect to a residual interest in a real estate mortgage investment conduit under section 860G of the Internal Revenue Code, as it may be amended from time to time without changing the general principle thereof.

7. For purposes of the taxation by France of residents of France who are citizens of the United States:
      (a) benefits other than capital gain received by reason of the exercise of options with respect to shares of companies resident in the United States shall be considered income when and to the extent that the exercise of the option or disposition of the stock gives rise to ordinary income for United States tax purposes;
      (b) United States state and local income taxes on income from personal services and any other business income (except income that is exempt under subparagraph 2(a) (i) or (ii) of Article 24 (Relief from Double Taxation)) shall be allowed as business expenses.

8. Notwithstanding the provisions of subparagraph 1(b):
      (a) Notwithstanding any other agreement to which the Contracting States may be parties, a dispute concerning whether a measure is within the scope of this Convention shall be considered only by the competent authorities of the Contracting States, as defined in subparagraph 1(h) of Article 3 (General Definitions) of this Convention, and the

procedures under this Convention exclusively shall apply to the dispute.

(b) Unless the competent authorities determine that a taxation measure is not within the scope of this Convention, the non-discrimination obligations of this Convention exclusively shall apply with respect to that measure, except for such national treatment or most-favored-nation obligations as may apply to trade in goods under the General Agreement on Tariffs and Trade. No national treatment or most-favored-nation obligation under any other agreement shall apply with respect to that measure.

(c) For the purpose of this paragraph, a "measure" is a law, regulation, rule, procedure, decision, administrative action, or any other form of measure.


ARTICLE 30
Limitation on Benefits of the Convention


1. A resident of a Contracting State that derives income from the other Contracting State shall be entitled in that other State to all of the benefits of this Convention only if such resident is one of the following:

(a) an individual;

(b) a Contracting State, a political subdivision (in the case of the United States) or local authority thereof, or an agency or instrumentality of that State, subdivision, or authority;

(c) a company meeting one of the following conditions:

(i) the principal class of its shares is listed on a recognized securities exchange located in either Contracting State and is substantially and regularly traded on one or more recognized securities exchanges;

(ii) more than 50 percent of the aggregate vote and value of its shares is owned, directly or indirectly, by any combination of companies that are resident in either Contracting State, the principal classes of the shares of which are listed and traded as described in subparagraph (c) (i), persons referred to in subparagraph (b), and companies of which more than 50 percent of the aggregate vote and value of their shares is owned by persons referred to in subparagraph (b);

(iii)    (aa) at least 30 percent of the aggregate vote and value of its shares is owned, directly or indirectly, by any combination of companies that are resident in the first-mentioned Contracting State, the principal classes of the shares of which are listed and traded as described in subparagraph (c) (i), persons referred to in subparagraph (b), and companies of which more than 50 percent of the aggregate vote and value of their shares is owed by persons referred to in subparagraph (b); and

(bb) at least 70 percent of the aggregate vote and value of its shares is owned, directly or indirectly, by any combination of companies that are residents of either Contracting State or of one or more member states of the European Union, the principal classes of shares of which are listed and substantially and regularly traded on one or more recognized stock exchanges, persons referred to in subparagraph (b), companies of which more than 50 percent of the aggregate vote and value of their shares is owned by persons referred to in subparagraph (b), one or more member states of the European Union, political subdivisions or local authorities thereof, or agencies or instrumentalities of those member states,

subdivisions, or authorities, and companies of which more than 50 percent of the aggregate vote and value of their shares is owned by such member states, subdivisions, authorities, or agencies or instrumentalities;

(d) a person, if 50 percent or more of the beneficial interest in such person (or, in the case of a company, 50 percent or more of the vote and value of the company's shares) is not owned, directly or indirectly, by persons that are not qualified persons, and:

(i) less than 50 percent of the gross income of such person is used, directly or indirectly, to make deductible payments to persons that are not qualified persons; or

(ii) less than 70 percent of such gross income is used, directly or indirectly, to make deductible payments to persons that are not qualified persons and less then 30 percent of such gross income is used, directly or indirectly, to make deductible payments to persons that are neither qualified persons nor residents of member states of the European Union;

(e) a pension trust or an organization referred to in subparagraph (b) (ii) of paragraph 2 of Article 4 (Resident), provided that more than half of its beneficiaries, members, or participants, if any, are qualified persons; or

(f) an investment entity referred to in subparagraph (b) (iii) of paragraph 2 of Article 4 (Residence) provided that more than half of the shares, rights, or interests in such entity is owned by qualified parsons.

2.       (a) A resident of a Contracting State shall also be entitled to the benefits of the Convention with respect to income derived from the other Contracting State if:

(i) such resident is engaged in the active conduct of a trade or business in the first-mentioned State (other than the business of making or managing investments, unless the activities are banking or insurance activities carried on by a bank or insurance company);

(ii) the income is connected with or incidental to the trade or business in the first-mentioned State; and

(iii) the trade or business is substantial in relation to the activity in the other State that generated the income.

(b) For purposes of subparagraph (a), whether the trade or business of the resident in the first-mentioned State is substantial in relation to the activity in the other State will be determined based on all of the facts and circumstances. In any case, however, the trade or business will be deemed substantial if, for the first preceding taxable period or for the average of the three preceding taxable periods, each of the following ratios equals at least 7.5 percent and the average of the ratios exceeds 10 percent:

(i) the ratio of the value of assets used or held for use in the conduct of the trade or business of the resident in the first-mentioned State to the value of assets used or held for use in the conduct of the activity in the other State;

(ii) the ratio of the gross income derived from the conduct of the trade or business of the resident in the first-mentioned State to the gross income derived from the conduct of the activity in the other States;

(iii) the ratio of the payroll expense of the trade or business of the resident in the first-mentioned State for services performed in that State to the payroll expense of the activity in the other State for services performed in that other State.

In determining the above ratios, assets, income, and payroll expense shall be taken into account only to the extent of the resident's direct or indirect ownership interest in the activity in the other

State. If neither the resident nor any of its associated enterprises has an ownership interest in the activity in the other State, the resident's trade or business in the first-mentioned State shall be considered substantial in relation to such activity.

3. A resident of a Contracting State shall also be entitled to the benefits of this Convention if that resident functions as a headquarter company for a multinational corporate group.

4. A company resident in a Contracting State shall also be entitled to the benefits of the Convention in respect of income referred to in Articles 10 (Dividends), 11 (Interest), or 12 (Royalties) if:

      (a) more than 30 percent of the aggregate vote and value of all of its shares is owned, directly or indirectly, by qualified persons resident in that State;

      (b) more than 70 percent of all such shares is owned, directly or indirectly, by any combination of one or more qualified persons and persons that are residents of member states of the European Union; and

      (c) such company meets the base reduction test described in subparagraphs (d) (i) and (ii) of paragraph 1.

5. Notwithstanding the provisions of paragraphs 1 through 4, where an enterprise of a Contracting State that is exempt from tax in that State on the profits of its permanent establishments which are not situated in that State derives income from the other Contracting State, and that income is attributable to a permanent establishment which that enterprise has in a third jurisdiction, the tax benefits that would otherwise apply under the other provisions of the Convention will not apply to any item of income on which the combined tax in the first-mentioned State and in the third jurisdiction is less than 60 percent of the tax that would be imposed in the first-mentioned State if the income were earned in that State by the enterprise and were not attributable to the permanent establishment in the third jurisdiction. Any dividends, interest, or royalties to which the provisions of this paragraph apply shall be subject to tax in the other State at a rate not exceeding 15 percent of the gross amount thereof. Any other income to which the provisions of this paragraph apply shall be subject to tax under the provisions of the domestic law of the other Contracting State, notwithstanding any other provision of the Convention. The provisions of this paragraph shall not apply if:

      (a) the income derived from the other Contracting State is in connection with or incidental to the active conduct of a trade or business carried on by the permanent establishment in the third jurisdiction (other than the business of making or managing investments unless these activities are banking or insurance activities carried on by a bank or insurance company); or

      (b) when France is the first-mentioned State, France taxes the profits of such permanent establishment according to the provisions of its domestic law referred to in subparagraph (e) (iii) of paragraph 2 of Article 24 (Relief from Double Taxation) or the United States taxes such profits according to the provisions of subpart F of part II of sub-chapter N of chapter 1 of subtitle A of the Internal Revenue Code, as it may be amended from time to time without changing the general principle thereof.

6. The following definitions shall apply for purposes of this Article:

      (a) The reference in subparagraphs (c) (ii) and (c) (iii) of paragraph 1 to shares that are owned "directly or indirectly" shall mean that all companies in the chain of ownership must be residents of a Contracting State or of a member state of the European

Union, as defined in subparagraph (d) of paragraph 6.

(b) The term "gross income," as used in subparagraph (d) of paragraph 1, means gross income for the first taxable period preceding the current taxable period, provided that the amount of gross income for the first taxable period preceding the current taxable period shall be deemed to be no less than the average of the annual amounts of gross income for the four taxable periods preceding the current taxable period.

(c) The term "deductible payments" as used in subparagraph (d) of paragraph 1 includes payments for interest or royalties, but does not include payments at arm's length for the purchase or use of or the right to use tangible property in the ordinary course of business or remuneration at arm's length for services performed in the Contracting State in which the person making such payments is a resident. Types of payments may be added to, or eliminated from, the exceptions mentioned in the preceding definition of "deductible payments" by mutual agreement of the competent authorities.

(d) The term "resident of a member state of the European Union," as used in paragraph 1, means a person that would be entitled to the benefits of a comprehensive income tax convention in force between any member state of the European Union and the Contracting State from which the benefits of this Convention are claimed, provided that if such convention does not contain a comprehensive Limitation on Benefits article (including provisions similar to those of subparagraphs (c) and (d) of paragraph 1 and paragraph 2 of this Article), the person would be entitled to the benefits of this Convention under the principles of paragraph 1 if such person were a resident of one of the Contracting States under Article 4 (Resident) of this Convention.

(e) The term "recognized securities exchange" as used in paragraph 1 means:

(i) the NASDAQ System owned by the National Association of Securities Dealers, Inc. and any stock exchange registered with the U.S. Securities and Exchange Commission as a national securities exchange for purposes of the U.S. Securities Exchange Act of 1934;

(ii) the French stock exchanges controlled by the "Commission des opération bourse," and the stock exchanges of Amsterdam, Brussels, Frankfurt, Hamburg, London, Madrid, Milan, Sydney, Tokyo, and Toronto;

(iii) any other stock exchanges agreed upon by the competent authorities of both Contracting States.

(f) The term "qualified person" as used in paragraphs 1 and 4 means any person that is entitled to the benefits of the Convention under paragraph 1 or who is a citizen of the United States;

(g) the term "engaged in the active conduct of a trade or business" as used in paragraph 2 applies to a person that is directly so engaged or is a partner in a partnership that is so engaged, or is so engaged through one or more associated enterprises (wherever resident);

(h) the term "headquarter company" as used in paragraph 3 means a person fulfilling the following conditions:

(i) it provides in the Contracting State of which it is a resident a substantial portion of the overall supervision and administration of a multinational corporate group, which may include, but cannot be principally, group financing;

(ii) the corporate group consists of companies that are resident in, and engaged in an active business in, at least five countries, and the business activities carried on in each of the five countries (or five groupings of countries) generate at least 10 percent of the gross income of the group;

(iii) the business activities carried on in any one country other than the Contracting State of which the headquarter company is a resident generate less then 50 percent of the gross income of the group;

(iv) no more than 25 percent of its gross income is derived from the other State;

(v) it has, and exercises, independent discretionary authority to carry out the functions referred to in subparagraph (i);

(vi) it is subject to the same income taxation rules in the Contracting State of which it is a resident as persons described in paragraph 2; and

(vii) the income derived in the other Contracting State either is derived in connection with, or is incidental to, the active business referred to in subparagraph (ii).

If the gross income requirements of subparagraph (ii), (iii), or (iv) of this paragraph are not fulfilled, they will be deemed to be fulfilled if the required ratios are met when calculated on the basis of the average gross income of the headquarters company and the average gross income of the group for the preceding four taxable periods.

7. A resident of a Contracting State that is not entitled to the benefits of the Convention under the provisions of the preceding paragraphs of this Article shall, nevertheless, be granted the benefits of the Convention if the competent authority of the other Contracting State determines, upon such person's request,

(a) that the establishment, acquisition, or maintenance of such person and the conduct of its operations did not have as one of its principal purposes the obtaining of benefits under the Convention, or

(b) that it would not be appropriate, having regard to the purpose of this Article, to deny the benefits of the Convention to such person.

The competent authority of the other Contracting State shall consult with the competent authority of the first-mentioned State before denying the benefits of the Convention under this paragraph.

8. The competent authorities of the Contracting States may consult together with a view to developing a commonly agreed application of the provisions of this Article.


ARTICLE 31
Diplomatic and Consular Officers

1. Nothing in this Convention shall affect the fiscal privileges of diplomatic agents or consular officers under the general rules of international law or under the provisions of special agreements.

2. Notwithstanding the provisions of Article 4 (Resident), an individual who is a member of a diplomatic mission, consular post, or permanent mission of a Contracting State that is situated in the other Contracting State or in a third State shall be deemed for the purposes of the Convention to be a resident of the sending State if he is liable therein to the same obligations in relation to tax on his total income or capital as are residents of that State.

3. The Convention shall not apply to international organizations, to organs or officials thereof, or to persons who are members of a diplomatic mission, consular post, or permanent

mission of a third State, who are present in a Contracting State and are not liable in either Contracting State to the same obligations in respect of taxes on income or on capital as are residents of that State.


ARTICLE 32
Provisions for Implementation

1. Notwithstanding the provisions of subparagraph 4 (i) of Article 10 (Dividends) and of paragraph 8 of Article 30 (Limitation on Benefits of the Convention), the competent authorities of the Contracting States may prescribe rules and procedures, jointly or separately, to determine the mode of application of the provisions of this Convention.

2. The requirements to which a resident of a Contracting State may be subjected in order to obtain in the other Contracting State the tax reductions, exemptions, or other advantages provided for by the Convention shall, unless otherwise settled, jointly or separately, by the competent authorities, include the presentation of a form providing the nature and the amount or value of the income or capital concerned, the residence of the taxpayer, and other relevant information. If so agreed by the competent authorities, the form shall include such certification by the tax administration of the first-mentioned State as may be prescribed by them.


ARTICLE 33
Entry Into Force

1. The Contracting States shall notify each other when their respective constitutional and statutory requirements for the entry into force of this Convention have been satisfied. The Convention shall enter into force on the date of receipt of the later of such notifications.

2. The provisions of the Convention shall have effect:
      (a) in respect of taxes withheld at source on dividends, interest, and royalties and the U.S. excise tax on insurance premiums paid to foreign insurers, for amounts paid or credited on or after the first day of the second month next following the date on which the Convention enters into force;
      (b) in respect of other taxes on income, for taxable periods beginning on or after the first day of January of the year following the year in which the Convention enters into force, and
      (c) in respect of taxes not mentioned in subparagraph (a) or (b), for taxes on taxable events occurring on or after the first day of January of the year following the year in which the Convention enters into force.

3. Notwithstanding the provisions of paragraph 2,
      (a) the provisions of subparagraph (e) of paragraph 4 of Article 10 (Dividends) and of Article 12 (Royalties) shall have effect for dividends and royalties paid or credited after the first day of January 1991;
      (b) The provisions of Article 26 shall apply in respect of cases presented to the competent authorities on or after the date of entry into force of the Convention.

4. The Convention Between the United States of America and the French Republic with Respect to Taxes on Income and Property, Signed on July 28, 1967 and Amended by Protocols of October 12, 1970, November 24, 1978, January 17, 1984 and June 16, 1988 and the exchanges of letters attached thereto shall cease to have effect from the date on which the provisions of this Convention become effective in accordance with the provisions of this Article.


ARTICLE 34
Termination


This Convention shall remain in force indefinitely. However, either Contracting State may terminate the Convention by giving notice of termination through diplomatic channels at least six months before the end of any calender year after the expiration of a period of five years from the date on which the Convention enters into force. In such event, the Convention shall cease to have effect:

(a) in respect of taxes withheld at source on dividends, interest, and royalties and the U.S. excise tax on insurance premiums paid to foreign insurers, for amounts paid or credited on or after the first day of January next following the expiration of the six-month period;

(b) in respect of other taxes on income, for taxable periods beginning on or after the first day of January next following the expiration of the six-month period; and

(c) in respect of taxes not described in subparagraph (a) or (b), for taxes on taxable events occurring on or after the first day of January of the year following the expiration of the six-month period.


DONE at Paris, this    31st    day of *August* , 1994, in duplicate, in the English and French languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE                FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA                 FRENCH REPUBLIC


(s) Pamela Harriman                          (s) Nicolas Sarkozy



NOTES OF EXCHANGE


DEPARTMENT OF STATE
WASHINGTON


Excellency:


I have the honor to refer to the Income Tax Convention between the United States and France, signed today.


During the course of discussions leading to the development of the Convention, the United States and French delegations agreed that nothing in paragraph 5 of Article 11 (Interest) shall be understood to prevent or limit the application by a Contracting State of its internal law, or of its income tax treaty with a third State, with respect to interest paid by a permanent establishment

located in that Contracting State. The provisions of internal law referred to in the preceding sentence are, in the case of the United States, those provisions of the Internal Revenue Code that impose a tax on interest described in section 884(f)(1)(A) of such Code, and in the case of France articles 119 bis and 125 A of the code général des impôts.

The United States and French delegations further agreed that the term "business property," as used in paragraph 3 of Article 13 (Capital Gains) and paragraph 3 of Article 23 (Capital), has a narrower meaning in some cases than does the term "assets," as used in paragraph 2 of Article 13 and paragraph 1 of Article 23, not withstanding that the single French term "actif" is used throughout.

If this is in accord with your understanding, I would appreciate a confirmation from you to this effect. If so, this understanding and your reply agreeing to its terms shall constitute an integral part of the Convention.

Accept, Excellency, the renewed assurances of my highest consideration.

(s) Pamela Harriman
Embassy of the United States of America,
Paris, 31st *August 1994*


RÉPUBLIQUE FRANÇAISE
MINISTÈRE DU BUDGET

LE MINISTRE

Madame l'Ambassadeur,

J'ai l'honneur d'accuser réception de votre lettre de ce jour dont le texte est le suivant:

"Monsieur le Ministre,

J'ai l'honneur de me référer à Convention fiscale, signée ce jour, entre la France et les Etats-Unis.

Au cours des discussions qui ont abouti à la mise au point de cette Convention, les délégations de la France et des Etats-Unis sont convenues que rien dans le paragraphe 5 de son article 11 (Intérêts) ne peut être interprété comme empêchant ou limitant l'application par un Etat contractant de sa législation interne ou de sa convention fiscale avec un Etat tiers, en ce qui concerne les intérêts payés par un établissement stable situé dans cet Etat contractant à un résident d'un Etat tiers.

Les dispositions de la législation interne auxquelles se réfère la phrase précédente sont, dans le cas des Etats-Unis, les dispositions de l'"Internal Revenue Code" relatives à l'imposition des intérêts définie à la section 884 (f)(1)(A) de ce code, et, dans le cas de la France, les articles 119 bis et 125 A du code général des impôts.

Les délégations des Etats-Unis et de la France sont convenues en outre que l'expression 'business property' employée au paragraphe 3 de l'article 13 (Gains en capital) et au paragraphe 3 de l'article 23 (Fortune) peut avoir un sens plus étroit que le terme 'assets' employé au paragraphe 2 de l'article 13 et au paragraphe 1 de l'article 23, bien que le terme français 'actif' soit utilisé dans tous les cas.

Je vous serais obligé de me confirmer que ce qui précède recueille votre agrément. Dans l'affirmative, cette lettre et votre réponse constitueront l'accord de nos deux Gouvernements sur ce point, accord qui fera partie intégrante de la Convention."

J'ai l'honneur de vous confirmer l'accord de mon Gouvernement sur ce qui précède.

Paris, le 31 *août   1994*

RÉPUBLIQUE FRANÇAISE
MINISTÈRE DU BUDGET

LE MINISTRE

Madame l'Ambassadeur,

Me référant à la Convention fiscale, signée ce jour, entre la France et les Etats-Unis, je souhaite, d'ordre de mon Gouvernement, vous proposer une position commune sur les deux points suivants.

En ce qui concerne le iv) du b) du paragraphe 2 de l'article 4 (Résident), dans la mesure où les associés ou membres d'une société de personnes, d'un groupement d'intérêt économique ou d'un groupement européen d'intérêt économique constitué en France, qui a son siège de direction effective en France et qui n'y est pas soumis à l'impôt sur les sociétés, sont des résidents d'un Etat tiers, l'assujettissement à l'impôt des Etats-Unis dans le cas de cette société de personnes ou de ce groupement est déterminé conformément à la convention fiscale en matière d'impôts sur le revenu, s'il en existe une, entre les Etats-Unis et cet Etat tiers, étant précisé que la société de personnes ou le groupement est traité comme un "partnership" aux fins de l'impôt des Etats-Unis pour l'octroi des avantages de cette convention avec l'Etat tiers.

En ce qui concerne l'application de l'article 8 (Navigation maritime et aérienne), nonobstant l'article 2 selon lequel la Convention ne s'applique qu'aux impôts nationaux des deux Etats, la France accepte que les entreprises des Etats-Unis qui exploitent des navires ou des aéronef en trafic international soient dégrevées d'office de la taxe professionnelle due en France à raison de cette exploitation, à condition que les entreprises de France qui exploitent des navires ou des aéronefs en trafic international ne soient pas soumises aux Etats-Unis, à raison de cette exploitation, aux impôts des Etats membres sur le revenu.

Je vous serais obligé de me confirmer que ce qui précède recueille l'agrément de votre Gouvernement. Dans l'affirmative, la présente lettre et votre réponse constitueront l'accord de nos deux Gouvernements sur ces points, accord qui fera partie intégrante de la Convention.

Paris , *le 31 août   1994*

DEPARTMENT OF STATE
WASHINGTON

Excellency:

I have the honor to acknowledge receipt of your Note of today's date which reads as follows:

"In connection with the Income Tax Convention between France and the United States, signed today, I should like, on behalf of my Government, to propose to you a common position with respect to the two following points.

With respect to the provisions of subparagraph 2 (b) (iv) of Article 4 (Resident), to the extent that the members of a "société de personnes," a "groupement d'intérêt économique" (economic interest group) or a "groupement européen d'intérêt économique" (European economic interest group) that is constituted in France and has its place of effective management in France and that is not subject to company tax therein are residents of a third State, the U.S. income tax liability in the case of such "société de personnes" or group shall be determined under the U.S. Income Tax Convention, if any, with that third State, it being understood that such "société de personnes" or group shall be treated as a partnership for the purposes of U.S. tax benefits under that Convention.

With respect to the application of Article 8 (Shipping and Air Transport), notwithstanding Article 2, under which the Convention applies only to taxes imposed by the national governments, France agrees that enterprises of the United States that operate ships or aircraft in international traffic shall be automatically relieved from the "taxe professionnelle" in France in respect of such operations, provided that enterprises of. France that operate ships or aircraft in international traffic are not subject to state income taxes in the United States in respect of such operations.

If this is in accord with your understanding, I would appreciate a confirmation from you to this effect. If so, this understanding and your reply agreeing to its terms shall constitute an integral part of the Convention."

I have the honor to confirm the agreement of my Government on the preceding points.


Accept, Excellency, the renewed assurances of my highest consideration.

(s) *Pamela Harriman*
Embassy of the United States of America, Paris,
*31 August 1994*